William F. Gray, Jr.
Alison D. Bauer
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, New York 10019
Tel: (646) 927-5500
Fax: (646) 927-5599

*Proposed Attorneys for Debtor and Debtor
in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LIDDLE & ROBINSON, L.L.P.,[1] | : | Case No.  19-12346 (SHL) |
|  | : |  |
| Debtor | : | (Joint Administration Requested) |

-------------------------------------------------------- x

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 507, RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING

Liddle & Robinson, L.L.P., as debtor and debtor-in-possession (the "Debtor" or the

"Firm"), in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby moves this

Court (the "Motion") for the entry of an interim order (the "Interim Order"), substantially in the

form attached hereto as **Exhibit A**, and a final order (the "Final Order"), (a) authorizing the

Debtor's use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) in which

---

[1] 1 The last four digits of the Debtor's taxpayer identification number are 6440.

the Prepetition Lenders (as defined herein) have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date (as defined herein) or arising pursuant to an Interim Order, the Final Order or otherwise (the "Cash Collateral"), (b) providing adequate protection for any diminution of their respective interests in the Prepetition Collateral (as defined herein), including in Cash Collateral, (c) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order, and (d) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and entry of a Final Order and approving the form of notice with respect to the Final Hearing. In support thereof, the Debtor relies on the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on July 22, 2019 in the Chapter 11 Case (the "First Day Declaration") and respectfully represents as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 541, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

4.      By this Motion, the Debtor requests entry of an Interim Order granting the following relief, and ultimately a Final Order upon a final hearing (the "Final Hearing"):

> (a)      **Cash Collateral:** authorizing the consensual use of Cash Collateral within the meaning of section 363 in which the Prepetition Lenders have an interest

under the Prepetition Credit Documents, as defined herein, pursuant to sections 361 and 363 of the Bankruptcy Code;

(b) **Budget:** authorizing the consensual use of Cash Collateral in accordance with the Budget annexed as Exhibit "A" to the Interim Order solely for (i) the post-petition and other agreed operating expenses of the Debtor and (ii) payment of costs of administration of the Chapter 11 Case, to the extent set forth in the Budget;

(c) **Adequate Protection:** granting the Prepetition Lenders the form of proposed Adequate Protection pursuant to sections 361, 362, 363(e), 503(b), and 507 of the Bankruptcy Code;

(d) **Final Hearing;** scheduling a Final Hearing pursuant to Bankruptcy Rules 2002, 4001(b)(c) and (d), to consider entry of the relief requested in this Cash Collateral Motion on a final basis and approve the form of notice with respect to the Final Hearing;

(e) **Waiver of Stay:** waiving any applicable stay as provided in the Bankruptcy Rules and providing for immediate effectiveness of the Interim Order; and

(f) **Other**: granting related relief and such other and further relief as this Court deems just and proper.

## BACKGROUND

5. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

6. The Debtor is a law firm partnership formed on June 4, 1979. First Day Declaration ¶ 1. Since its formation, the Firm has had a strong litigation practice with an emphasis on corporate, real estate and employment law. Revenues net of expense reimbursement from 1998 or earlier, through 2015, averaged about $13.5 million per year. This revenue generated a significant profit nearly every year. From 2015 until August 2016, however, revenue declined with the departures of five partners and a number of associates, which caused a reduced capacity to handle the volume of litigation it had previously handled. However, the generation of new business remained robust, as did the Firm's existing business. The Firm still has a valuable

practice that can be reorganized, including over 30 ongoing litigation matters. First Day Declaration ¶¶ 3, 22.

7. Jeffrey L. Liddle is the sole remaining partner of the Firm. On March 11, 2019, Mr. Liddle filed a voluntary petition for relief under the Bankruptcy Code. The Debtor is seeking joint administration of this Chapter 11 Case with Mr. Liddle's case to ease the administrative burden on this Court and streamline the reorganization process for the Debtor, Mr. Liddle, and their creditors, many of whom are creditors of both debtors. First Day Declaration ¶ 24.

8. The Debtor intends to continue to operate as a law firm and believes that under the protections granted by Chapter 11, the Debtor will be able to continue a strong practice and develop a consensual plan for payment to creditors or, at the very least, manage an orderly disposition of the Firm's affairs. First Day Declaration ¶¶ 63, 64.

**BASIS FOR RELIEF**

9. The ability of the Debtor to finance and continue its operations requires the use of the Cash Collateral, absent which serious, immediate and irreparable harm will result to the Debtor, its estate and its creditors. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course or to maintain its property without the use of the Cash Collateral. The relief requested in this Cash Collateral Motion is therefore necessary, essential, and appropriate for the continued operation of the Debtor's business and the preservation of its property.

**Prepetition Secured Indebtedness**

10. The Debtor's prepetition secured indebtedness consists of loans entered into in 2016 and 2017 from three affiliates of Counsel Financial Services LLC: Counsel Financial II LLC

("CF2"), LIG Capital LLC ("LIG"), and Counsel Financial Holdings LLC ("CF Holdings" and, collectively with CF2 and LIG, the "Prepetition Lenders").

11.     On August 4, 2016, the Debtor entered into a Revolving Promissory Note and Allonges thereto dated October 13, 2016 and December 21, 2016 with CF2 as the lender (collectively, the "CF2 Note").  In connection therewith, Mr. Liddle executed a Guaranty of Payment and Performance dated August 5, 2016 (the "CF2 Guaranty"), an absolute and unconditional guaranty of the Firm's payment and performance under the CF2 Note.  Mr. Liddle also executed a Security Agreement dated August 5, 2016 (the "CF2 Security Agreement), both on behalf of the Firm and in his individual capacity, and pledged substantially all of the Firm's assets and his personal assets to secure the Firm's payment and performance under the CF2 Note. Each of the CF2 Guaranty and CF2 Security Agreement were also executed by Blaine H. Bortnick, James Ryan Hubbard, and Christine A. Palmiere, former partners of the Firm.

12.     On March 5, 2019, an Order and Judgment (the "Judgment") in favor of CF2 against the Debtor and Mr. Liddle was entered in the amount of $6,546,448.83.  CF2 asserts that this amount is the principal amount outstanding under the CF2 Note as of the Petition Date.  The Debtor disputes this amount and the extent of CF2's liens, and the Judgment is under appeal.

13.     On October 13, 2016, the Debtor entered into a Term Promissory Note with LIG as the lender (the "LIG Note").  In connection therewith, Mr. Liddle executed a Guaranty of Payment and Performance dated October 13, 2016 (the "LIG Guaranty"), an absolute and unconditional guaranty of the Firm's payment and performance under the LIG Note.  Mr. Liddle also executed a Security Agreement, dated October 13, 2016 (the "LIG Security Agreement"), both on behalf of the Firm and himself in his individual capacity and pledged all of their respective assets to secure the Firm's payment and performance under the LIG Note.  As of the Petition Date, LIG asserts

that there is $634,910.04 in principal amount outstanding under the LIG Note. The Debtor disputes this amount and the extent of LIG's liens.

14. On June 2, 2017, Mr. Liddle executed a Revolving Promissory Note with CF Holdings as the lender (the "CF Holdings Note"). In connection therewith, Mr. Liddle executed a Guaranty of Payment and Performance (the "CF Holdings Guaranty"), dated June 2, 2017, an absolute and unconditional guaranty of the Firm's payment and performance under the CF Holdings Note. Mr. Liddle also executed a Security Agreement dated June 2, 2017 (the "CF Holdings Security Agreement" and, collectively with the CF2 Note, CF2 Guaranty, CF2 Security Agreement, LIG Note, LIG Guaranty, LIG Security Agreement, CF Holdings Note, and CF Holdings Guaranty, the "Prepetition Credit Documents"), both on behalf of the Firm and himself in his individual capacity and pledged substantially all of the Firm's assets and his personal assets to secure the Firm's payment and performance under the CF Holdings Note. As of the Petition Date, CF Holdings asserts that there is $1,906,621.00 in principal amount outstanding under the CF Holdings Note. The Debtor disputes this amount and the extent of CF Holdings' liens.

15. Pursuant to the Prepetition Credit Documents, substantially all of the Debtor's assets were pledged as collateral to secure the Debtor's obligations to the Prepetition Lenders.

**Prepetition Liens and Collateral**

16. The Prepetition Lenders claim that all of the Debtor's cash, whether as original collateral or proceeds of other Prepetition Collateral, constitutes the cash collateral of the Prepetition Lenders. Accordingly, the Prepetition Collateral includes cash collateral within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Debtor disputes the amount and validity of the Prepetition Lenders' claims and the liens related thereto, but

recognizes that this issue will not be resolved at the inception of the case and therefore seeks the relief herein.

17.     Currently, there are no alternative financing options available to facilitate the administration of the Debtor's Chapter 11 case, including continued operation of the business of the Firm, evaluation and administration of claims against the Debtor's estate, investigation and pursuit of potential estate claims and causes of action, and confirmation of a Chapter 11 plan.  For these reasons, the Debtor seeks use of Cash Collateral subject to the grant of adequate protection.

## AUTHORITY

18.     Section 363(c)(2) of the Bankruptcy Code provides that the Court, after notice and a hearing, may authorize the Debtor to use cash collateral, with or without the consent of the secured parties having an interest therein. *See* 11 U.S.C. § 363(c)(2)(B).  In considering whether to authorize use of cash collateral, however, upon a party's request, a court must find that the interests of the holder of the secured claim are adequately protected. 11 U.S.C. § 363(e).

19.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on the use of cash collateral may commence no earlier than 14 days after service of the Cash Collateral Motion but, "[i]f the Cash Collateral Motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." At the preliminary hearing, the court may authorize the use of cash collateral only if there is a reasonable likelihood that the debtor will prevail at the final hearing under section 363(e). 11 U.S.C. § 363(c)(3).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g.*, In re Ames Dep't Stores Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  The request for use of cash collateral on a

final basis is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to use cash collateral that it believes prudent in the operation of its business. *See, e.g.*, In re Simasko Production Co., 47 B.R. 444, 449 (D. Co. 1985); Ames Dep't Stores, 115 B.R. at 36.

20.     Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property used by the debtor, the court, with or without a hearing, is required to prohibit or condition such use as is necessary to provide adequate protection of such interest.[3] The Bankruptcy Code does not explicitly define "adequate protection," but it does contain a non-exclusive list of the means by which a debtor may provide adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361. Accordingly, what constitutes adequate protection must be decided on a case-by-case basis. See In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Realty Southwest Assocs., 140 B.R. 360 (Bankr. S.D.N.Y. 1992).

21.     As codified in Bankruptcy Code section 361, the principal purpose of adequate protection is to protect a secured creditor from diminution in value of its interest in collateral caused by the debtor's use of that collateral during the period that the collateral is used. In re Carbone Companies, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral"); In re Continental Airlines, Inc., 146 B.R. 536, 539 (Bankr. D. Del. 1992) (noting that "Post-Timbers courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral"); In re Alyucan Interstate Corp., 12 B.R. 803, 809-09 (Bankr. D. Utah 1981) (opining that creditor entitled to adequate protection only for impairment in collateral attributable to the stay

and that "not every decline in value must be recompensed, only those which, but for the stay, could be and probably would be prevented or mitigated").

22.     Thus, the focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process. In re Mosello, 195 B.R. at 288 (citation omitted); see In re WorldCom, Inc., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy. ... "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties.")

23.     Here, the Debtor proposes to use the Prepetition Lenders' Cash Collateral subject to (i) the use of such funds under the Budget and reporting requirements and (ii) the granting of the Adequate Protection Liens on the Debtor's accounts receivable, including billable hours and contingency fees collected on settlements, agreements, and judgments (collectively, the "Accounts Receivable". As to the latter, the Debtor proposes to give the Prepetition Lenders replacement liens on Accounts Receivable under section 507(b), *provided that* the claims and liens shall be granted to the extent of any diminution in the value of their respective interests in the Prepetition Collateral resulting from the use of Cash Collateral, the authorized use, sale or lease of Prepetition Collateral, and the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code.

24.     The proposed adequate protection package is reasonable, necessary and appropriate to preserve and protect against the diminution in value of the Prepetition Collateral and the

Prepetition Lenders' interests therein. As a practical matter, without use of the Cash Collateral, the Debtor has no available means of continuing to operate its business, including paying employee wages and protecting employee entitlements to accrued benefits, protecting remaining client documents, and administering its estate. The use of Cash Collateral prescribed in the Budget to continue operation of the Firm will help to preserve value for all interested stakeholders. The Debtor has determined, therefore, that seeking the use of Cash Collateral is an exercise of its reasonable business judgment. Accordingly, the Debtor should be authorized to use Cash Collateral as set forth herein.

25.     The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362(a) to the extent necessary to permit the Debtor to: (a) grant the Adequate Protection Liens; (b) permit the Debtor to perform such acts as the Prepetition Lenders may request, each in its sole discretion, to assure the perfection and priority of the liens granted herein; and (c) permit the Debtor to incur all liabilities and obligations to the Prepetition Lenders contemplated by this Motion.

26.     Stay modification provisions of this sort are, in the Debtor's business judgment, reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the proposed Orders.

27.     As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and to authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

28.     Given the immediate and irreparable harm to be suffered by the Debtor absent interim relief, the Debtor respectfully requests that the Court schedule and conduct a preliminary hearing on the motion and (a) authorize the Debtor, from the entry of the Interim Order until the Final Hearing to utilize Cash Collateral, and (b) schedule the Final Hearing.

29.     The Debtor believes an efficient and expeditious approval to utilize Cash Collateral is in the best interest of its creditors and other parties in interest. Accordingly, the Debtor seeks waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

30.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for Southern District of New York; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) (on a consolidated basis); (c) all secured creditors; (d) counsel to Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC; and (e) Blaine H. Bortnick, James W. Halter, James R. Hubbard, and Andrea Paparella, each as a former partner of the Firm. In light of the nature of the relief requested, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

31.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested in this Motion and such other and further relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: New York, New York
July 22, 2019

FOLEY HOAG LLP

By: */s/ William F. Gray, Jr.*

William F. Gray, Jr.
Alison D. Bauer
1301 Avenue of the Americas
25th Floor
New York, New York 10019
Tel: (646) 927-5500
Fax: (646) 927-5599

*Proposed Attorneys for the Debtor and Debtor in Possession*

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                                                         :
In re                                                    :    Chapter 11
                                                         :
LIDDLE & ROBINSON, L.L.P.,[1]                            :    Case No.  19-12346 (SHL)
                                                         :
                              Debtor                     :    (Joint Administration Requested)
-------------------------------------------------------- x

### INTERIM ORDER (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of Liddle & Robinson, L.L.P., as debtor and debtor-in-possession (the "Debtor"), in the above-captioned case (the "Chapter 11 Case"), for entry of an order: (i) authorizing the Debtor's use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) in which the Prepetition Lenders (as defined herein) have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date (as defined herein) or arising pursuant to this Interim Order, the Final Order (as defined herein) or otherwise (the "Cash  Collateral"); (ii) providing adequate protection to the Prepetition Lenders for any diminution in value of their interests in the Prepetition Collateral (as defined herein), including the Cash Collateral; (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and (iv) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and entry of a Final Order and approving the form of notice with respect to the Final Hearing, all

---

[1] [1] The last four digits of the Debtor's taxpayer identification number are 6440.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

as more fully described in the Motion; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Motion is granted as set forth herein on an interim basis.

2.      The Motion is granted, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

3.      Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral for the period (the "Specified Period") from the Petition Date through [ ]. Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts, at the times, and for the purposes identified in the cash collateral budget (the "Budget"), a copy of which is attached hereto as Exhibit A.

4.      Notwithstanding the foregoing, the Debtor is hereby authorized to pay any statutory fees or interest to the United States Trustee (to the extent required by applicable law) when such fees or interest become due or payable, regardless of the amount for which such fees or interest have been budgeted. The authorization for the Debtor to use Cash Collateral shall terminate at the expiration of the Specified Period. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim

Order or other order of the Court (in each case consistent with the Interim Order and the Budget), with the prior written consent of the Prepetition Lenders, and in accordance with the Budget. Any payments to be made under any order (including any "first day" orders) shall be made in accordance with this Interim Order and the Budget.

5.    Pursuant to section 361 and 363(e) of the Bankruptcy Code, the Prepetition Lenders are hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens") on the Debtor's Accounts Receivable to the extent of any Diminution in Value.

6.    The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (a "Successor Case"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Case or any Successor Case, or upon the dismissal of the Case or Successor Case. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

7.    The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens; (b) permit the Debtor

to perform such acts as the Prepetition Lenders may request, each in its sole discretion, to assure the perfection and priority of the liens granted herein; and (c) permit the Debtor to incur all liabilities and obligations to the Prepetition Lenders under the this Interim Order.

8. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens or to entitle the Prepetition Lenders to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Lenders are authorized to file, as it deems necessary or advisable in its sole discretion, such financing statements, mortgages, notices of lien and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date. However, no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens. The Debtor is authorized and directed to execute and deliver to the Prepetition Lenders, promptly upon demand, all such financing statements, mortgages, notices and other documents as any of the Prepetition Lenders may reasonably request. The Prepetition Lenders may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

9.      The Final Hearing to consider entry of the Final Order is scheduled for [ ], 2019, at [ ] (Eastern Time) before the Honorable Sean H. Lane, United States Bankruptcy Judge, Courtroom [ ], at the United State Bankruptcy Court for the Southern District of New York. On or before                    [                    ],                    2019 the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Statutory Committee; and (d) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the relief requested in the Motion on a final basis shall file written objections with the Clerk of the Court no later than on   [ ],   2019 at __:00 ___.m. (Eastern Time), which objections shall be served so as to be received on or before such date by: (i) proposed counsel for the Debtor, Foley Hoag, LLP, attn: William F. Gray, Jr. and Alison D. Bauer; (ii) counsel for the Prepetition Lenders, [ ] ; (iii) counsel to any Statutory Committee; and (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn: Andrea Schwartz, Esq.

10.     The Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.


Dated: _____ __, 2019
            New York, New York

                                                 _____
                                                 HONORABLE SEAN H. LANE
                                                 UNITED STATES BANKRUPTCY JUDGE

5

**Exhibit A to Interim Order**

**Budget**

# Liddle & Robinson

## Debtor-In-Possession Budget

### Date of Printout:

*July 18, 2019*

*United States Bankruptcy Court Southern District of New York*

# Liddle & Robinson, LLP Weekly Cash Flows

**BUDGET**

| Week: | 1 | 2 | 3 | 4 | 5 | 6 | Total |
|---|---|---|---|---|---|---|---|
| Actual / Forecast: | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
| Week Ending: | 7/27/19 | 8/3/19 | 8/10/19 | 8/17/19 | 8/24/19 | 8/31/19 | |
| **Cash Receipts** | | | | | | | |
| L&R Income | $160,000 | $0 | - | - | $0 | 100,000 | $260,000 |
| Other | - | - | - | - | - | - | - |
| **Total Cash Receipts** | **$160,000** | **$0** | **$0** | **$0** | **$0** | **$100,000** | **$260,000** |
| | | | | | | | |
| **Operating Expenses** | | | | | | | |
| Rent | - | ($9,400) | - | - | - | - | ($9,400) |
| Attorney Payroll | - | - | (15,000) | - | (15,000) | - | (30,000) |
| Headhunter | - | - | - | - | - | - | - |
| JLL Draw | - | (15,000) | - | - | - | - | (15,000) |
| Staff Payroll | - | - | (7,100) | - | (7,100) | - | (14,200) |
| New Hire (Paralegal/Assistant) | - | - | (5,000) | - | (5,000) | - | (10,000) |
| Health / Life Insurance | - | (8,500) | - | - | - | - | (8,500) |
| Malpractice Insurance | - | (6,000) | - | - | - | - | (6,000) |
| Utilities | - | - | - | - | - | - | - |
| Office Services (Solarus technologies) | - | (2,000) | - | - | - | - | (2,000) |
| Repairs/Maintenance | - | - | - | - | - | - | - |
| Other Operating Expenses | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (6,000) |
| Client Expenses to be Advanced [1] | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (12,000) |
| Accounting Services | - | (20,873) | - | (20,873) | - | (20,873) | (62,618) |
| Taxes | - | - | - | - | - | - | - |
| Storage Costs | - | (10,610) | - | - | - | - | (10,610) |
| **Total Operating Expenses** | **($3,000)** | **($75,383)** | **($30,100)** | **($23,873)** | **($30,100)** | **($23,873)** | **($186,328)** |
| | | | | | | | |
| **Operating Cash Flow** | **$157,000** | **($75,383)** | **($30,100)** | **($23,873)** | **($30,100)** | **$76,127** | **$73,672** |
| | | | | | | | |
| **Restructuring Costs** | | | | | | | |
| UST Fees | - | - | - | - | - | - | - |
| Bankruptcy Counsel | (50,000) | - | - | (25,000) | - | (25,000) | (100,000) |
| Accountants | (30,000) | - | - | (15,000) | - | (15,000) | (60,000) |
| Unsecured Creditors Professionals | - | - | - | - | - | - | - |
| **Total Restructuring Costs** | **(80,000)** | **-** | **-** | **(40,000)** | **-** | **(40,000)** | **(160,000)** |
| | | | | | | | |
| **Net Cash** | **$77,000** | **($75,383)** | **($30,100)** | **($63,873)** | **($30,100)** | **$36,127** | **($86,328)** |
| | | | | | | | |
| **Beginning Bank Cash [2]** | $114,112 | $191,112 | $115,729 | $85,629 | $21,757 | ($8,343) | 114,112 |
| Operating Cash Flow | 77,000 | (75,383) | (30,100) | (63,873) | (30,100) | 36,127 | (86,328) |
| **Ending Cash Balance** | **$191,112** | **$115,729** | **$85,629** | **$21,757** | **($8,343)** | **$27,784** | **$27,784** |

Notes: Approved Budget under the Jeffrey Lew Liddle Case (Case No: 19-10747).

[1] Amounts to be reimbursed by clients.

[2] Beginning cash balance of $114K based on Liddle & Robinson income transferred from the Jeffrey Lew Liddle Debtor-In-Possession account.

## **Exhibit B**

## **Proposed Final Order**

\

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
|  | : | Case No.  19-12346 (SHL) |
| LIDDLE & ROBINSON, L.L.P.,[1] | : |  |
|  | : | (Joint Administration Requested) |
| Debtor | : |  |

------------------------------------------------------- x

## FINAL ORDER (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of Liddle & Robinson, L.L.P., as debtor and debtor-in-possession (the "Debtor"), in the above-captioned case (the "Chapter 11 Case"), for entry of an order: (i) authorizing the Debtor's use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code) in which the Prepetition Lenders (as defined herein) have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date (as defined herein) or arising pursuant to Order or otherwise (the "Cash Collateral"); (ii) providing adequate protection to the Prepetition Lenders for any diminution in value of their interests in the Prepetition Collateral (as defined herein), including the Cash Collateral; and (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order, all as more fully described in the Motion; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this

---

[1] [1] The last four digits of the Debtor's taxpayer identification number are 6440.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

11.     The Motion is granted as set forth herein on an interim basis.

12.     The Motion is granted, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Order.

13.     Subject to the terms and conditions of this Order, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral for the period (the "Specified Period") from [ ] through [ ]. Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts, at the times, and for the purposes identified in the cash collateral budget (the "Budget"), a copy of which is attached hereto as Exhibit A.

14.     Notwithstanding the foregoing, the Debtor is hereby authorized to pay any statutory fees or interest to the United States Trustee (to the extent required by applicable law) when such fees or interest become due or payable, regardless of the amount for which such fees or interest have been budgeted. The authorization for the Debtor to use Cash Collateral shall terminate at the expiration of the Specified Period. Nothing in this Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Order or other order of the Court (in each case consistent with the Order and the Budget), with the prior written consent of the Prepetition Lenders, and in accordance with the Budget.

15.     Pursuant to section 361 and 363(e) of the Bankruptcy Code, the Prepetition Lenders are hereby granted additional and replacement continuing valid, binding, enforceable, non-

avoidable, and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens") on the Debtor's Accounts Receivable to the extent of any Diminution in Value.

16. The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (a "Successor Case"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Case or any Successor Case, or upon the dismissal of the Case or Successor Case. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

17. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens; (b) permit the Debtor to perform such acts as the Prepetition Lenders may request, each in its sole discretion, to assure the perfection and priority of the liens granted herein; and (c) permit the Debtor to incur all liabilities and obligations to the Prepetition Lenders under this Order.

18. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the

law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens or to entitle the Prepetition Lenders to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Lenders are authorized to file, as it deems necessary or advisable in its sole discretion, such financing statements, mortgages, notices of lien and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date. However, no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens. The Debtor is authorized and directed to execute and deliver to the Prepetition Lenders, promptly upon demand, all such financing statements, mortgages, notices and other documents as any of the Prepetition Lenders may reasonably request. The Prepetition Lenders may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

19. The Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

Dated: _____ __, 2019
        New York, New York

                                             _____
                                             HONORABLE SEAN H. LANE
                                             UNITED STATES BANKRUPTCY JUDGE