DAVIDOFF HUTCHER & CITRON LLP  
605 Third Avenue  
New York, New York 10158  
(212) 557-7200  
David H. Wander, Esq.  
dhw@dhclegal.com  
*Attorneys for Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC*

**Hearing Date and Time:**  
July 29, 2019 at 1:30 p.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
---------------------------------------------------------X  
In re:                                                                      Chapter 11

LIDDLE & ROBINSON, L.L.P.,                              Case No. 19-12346-shl

                                 Debtor.  
---------------------------------------------------------X

### RESPONSES AND OBJECTIONS BY COUNSEL FINANCIAL II LLC, LIG CAPITAL LLC, AND COUNSEL FINANCIAL HOLDINGS LLC TO DEBTOR'S FIRST DAY MOTIONS [DOCS 3, 4, 5, 6, 7, 8, 9, 10]

TO THE HONORABLE SEAN H. LANE,  
UNITED STATES BANKRUPTCY JUDGE:

Counsel Financial II LLC ("CF2"), LIG Capital LLC, and Counsel Financial Holdings LLC ("collectively "Counsel Financial"), by their attorneys, Davidoff Hutcher & Citron LLP, submits the following responses and objections to the Debtor's first day motions [Docs 3, 4, 5, 6, 7, 8, 9, 10] and represents and states:

### PRELIMINARY STATEMENT

1. Counsel Financial has no objection to the following first day motions by the Debtor:

    a. Joint administration [ Doc 3].  
    b. Maintenance of existing bank accounts [Doc 6].  
    c. Maintenance of existing insurance policies [Doc 9].  
    d. Payment of prepetition wages [Doc 10].

2. Counsel Financial objects to the following first day motions by the Debtor:

661245v.1

      a. Extension of time to files Schedules [Doc 4].
      b. Cash collateral [Doc 5].
      c. Retention and compensation of ordinary course of business professionals [Doc 7].
      d. Procedures for interim compensation [Doc 8].

**Extension of Time to File Schedules and Statements**

3.    Counsel Financial objects to the Debtor's motion dated July 22, 2019 requesting a forty-five (45) extension of time to file (i) schedules of assets and liabilities and a statement of financial affairs; (schedules of current income and expenditures; and (iii) statements of executory contracts and unexpired leases (collectively, the "Schedules and Statements") (the "Schedules and Statements Extension Motion") [Doc 4]. This extension is neither appropriate nor warranted under the present circumstances.

4.    For the past four months, Jeffrey Liddle and his bankruptcy attorneys have been advising the Court that the Debtor would be filing a chapter 11 petition. About a month ago, the Debtor's proposed bankruptcy counsel even told the Court the exact date by which this case would be filed.

5.    For over four months now, the Debtor has been considered part of Jeffrey Liddle's chapter 11 bankruptcy case. In fact, Jeffrey Liddle's monthly, cash collateral budgets have included line items for the Debtor's expenses. Similarly, Jeffrey Liddle's monthly operating reports filed to date include details regarding the Debtor's income and expenses.

6.    By now, the Debtor's proposed attorneys and accountants, who are the same professionals retained in Jeffrey Liddle's chapter 11 case, should be very familiar with the Debtor's business and financial affairs and should have already reviewed, to some extent at least, the Debtor's books and records. It is unclear, from the Motion, exactly what information the Debtor's proposed professionals do not already have.

661245v.1

7. While the Debtor refers to "a single administrative staff member available to maintain the Firm's operations," as part of the justification for the requested extension, see *Schedules and Statements Extension Motion*, ¶ 12, there is no disclosure about this person's role in preparing the Schedules and what necessary information she has been unable to provide the Debtor's attorneys and accountants during the past four months.

8. Notably, the Debtor expects to incur accounting fees of $30,000 during the first three (3) weeks of this case, according to the Debtor's revised budget. See Doc. 23. Yet, the Motion fails to explain why the Schedules and Statements cannot be completed within such period.

9. The legal authorities cited in the Motion to support the present request involve very large or even mega corporate cases, *e.g.* Quebecor, Bally, PSC, Linens Holding, Delta Fin. Corp, and Remy Worldwide Holdings, Inc., and are inapposite to the present case which involves a law firm with a single partner and, as of the Petition Date, no other attorneys and one support staff.

10. Accordingly, the requested 45-day extension of time should be denied and any extension limited to a few weeks.

**Cash Collateral**

11. Counsel Financial objects to the Debtor's motion dated July 22, 2019 authorizing the use of cash collateral and granting related relief. Doc 5.

12. Pending a final hearing, Counsel Financial will <u>conditionally</u> consent to the following expenses listed in the Debtor's revised budget:

    a. Rent      $ 9,400
    b. Attorney Payroll      $30,000
    c. JLL Draw      $15,000
    d. Staff Payroll      $14,200

661245v.1

      e. New Hire                               $10,000
      f. Health/Life Insurance           $ 8,500
      g. Malpractice Insurance         $ 6,000
      h. Office Services                    $ 2,000
      i. Other Operating Expenses    $ 6,000
      j. Client Expenses to be Advanced $12,000
      k. Storage Costs                     $10,610[1]

13. However, Counsel Financial's consent to the foregoing payments is conditioned on the Debtor's production of the following documents: (i) monthly bank statements of the Debtor covering the period January 1, 2016 to the present; (ii) monthly statements for all credit cards used by the Debtor covering the period January 1, 2016 to the present; (iii) a list of <u>all</u> of the Debtor's cases as of the Petition Date, including contingency cases, hourly fee cases, and any other cases that the Debtor was handling in any manner whatsoever (the "<u>List of Debtor's Cases</u>"); and (iv) a list of accounts receivable as of the Petition Date.

14. Most of these documents were requested months ago as part of Counsel Financial Rule 2004 motion in Jeffrey Liddle's chapter 11 case but, to date, none of these documents have been provided.

15. Counsel Financial's consent to the foregoing payments is also conditioned upon the Debtor's examination, under oath, regarding the List of Debtor's Cases. Counsel Financial is ready to begin this examination as soon as Jeffrey Liddle provides the List of Debtor's cases.

16. These documents, particularly the List of Debtor's Cases, along with the Debtor's examination, are needed for a proper valuation of Counsel Financial's secured claim and a proper determination of adequate protection to which Counsel Financial may be entitled.

17. Counsel Financial does not consent to the use of its cash collateral for the following payments in the Debtor's budget:

---

[1] Counsel Financial requests that the Debtor provide additional information regarding the Storage Costs, especially if this is a reoccurring monthly cost.

661245v.1

    a.  Accounting Services                $ 21,618.
    b.  Bankruptcy Counsel              $100,000.
    c.  Accountants                         $ 60,000.

Counsel Financial objects to the use of its cash collateral for any administrative expenses that do not <u>directly</u> benefit Counsel Financial, including attorney's fees and accounting fees. *See General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 76 (2d Cir.1984).

18.    Counsel Financial requests additional information regarding the proposed expenses for (i) Accounting Services, and (ii) Accountants. Counsel Financial is willing to discuss a reasonable budget for professional services in this case but, to date, Debtor's proposed counsel has not discussed this matter with Counsel Financial's attorneys.

**<u>Retention and Compensation of Ordinary Course of Business Professionals</u>**

19.    Counsel Financial objects to the Debtor's motion dated July 22, 2019 (i) authorizing the Debtor to retain and employ certain professionals purportedly utilized by the Debtor in the ordinary course of business; and (ii) pay compensation and reimbursement of expenses, including compensation due for prepetition work (the "<u>OCP Motion</u>") [Doc 7]. These professionals are listed in Exhibit B to the OCP Motion.

20.    The Debtor seeks to retain Richard J. Lynne, CPA, P.C. to provide:

- a. preparation of individual and partnership tax returns and allocation of partnership income for years 2017 and 2018;
- b. preparation of profit sharing census and submission to actuary and IRS forms for Years 2017 and 2018;
- c. preparation of books and records; and
- d. preparation of payroll tax returns and annual payroll reporting.

Notably, the Debtor also seeks to retain EisnerAmper LLP as the Debtor's accountants. The OCP Motion fails to explain why EisnerAmper cannot provide these services.

5

661245v.1

21. The Debtor seeks to retain "The Benefit Practice, Dan Crevani, QKA" to provide the following services: termination and resolution of the Liddle & Robinson LLP pension plan including compliance and government reporting and filings. The OCP Motion fails to explain why EisnerAmper cannot provide these services.

22. The Debtor seeks to retain McManimon, Scotland & Baumann, LLC (as successor to Trenk, DiPasquale, Della Fera & Sodono, P.C. as counsel in an adversary proceeding, <u>Liddle & Robinson L.L.P. v. Zakarin</u>, Adv. Proc. 18-1271 (RG). No information is provided about this matter.

23. In addition:

> The Debtor has not yet determined which of the parties identified on the OCP list in fact will continue to provide services to the Debtor on a post-petition basis. As such, the OCP List is not intended to constitute a representation that each party listed thereon will be retained, employed, and paid by the Debtor during the course of this case. Likewise, the Debtor believe[s] there may be additional professionals that will provide services as Ordinary Course Professionals in this case, but that were not identified by the Debtor's preliminary review and thus are not included on the attached OCP List.

*OCP Motion*, Exhibit B, fn. 3.

24. According to the OCP Motion, these professionals rendered services to the Debtor prior to the Petition Date. See OCP Motion, ¶ 10. However, no information is provided regarding any such services.

25. Upon information and belief, some of these professionals may be creditors of the Debtor. The Debtor should disclose any unpaid fees to these professionals, as well as the fees previously paid to these professionals.

6

26.     The OCP Motion, basically, is a means to avoid the normal retention procedures of the Court, the United States Trustee's Offices, the Bankruptcy Code and the Bankruptcy Rules:

> The relief requested will save the Debtor's estate the substantial expenses associated with applying separately for the retention of each professional, as well as the incurrence of additional fees related to the preparation and prosecution of interim fee applications.

OCP Motion, ¶ 11.

27.     While the Motion characterizes these retentions as "involving relatively small amounts of fees and expenses," *OCP Motion*, ¶ 11, the actual amount of compensation may exceed $120,000 a month. *OCP Motion,* ¶ 11(a).

28.     The Court should reject the Debtor's attempt to characterize these professionals as not being "professionals" within the meaning of § 327 of the Bankruptcy Code.  See *OCP Motion,* 12-14.  Proper retention applications should be filed for these professionals and they should go through the normal retention procedures.

29.     Moreover, Counsel Financial objects to any use of its cash collateral to pay any of these professionals.

**Procedures for Interim Compensation and Reimbursement of Expenses of Professionals**

30.     Counsel Financial objects to the Debtor's motion dated July 22, 2019 for an order establishing procedures for interim compensation and reimbursement of expenses of professionals (the "Professionals Compensation Procedures Motion") [Doc 8].

31.     The Professionals Compensation Procedures Motion is premature and it should be denied without prejudice.  There is no good reason for this matter to be included in the Debtor's first day motions.  Moreover, at this time, Counsel Financial does not consent to the use

of its cash collateral to pay the Debtor's professionals and, upon information and belief, there presently is no other source of payment.

Dated: New York, New York
      July 29, 2019

                              DAVIDOFF HUTCHER & CITRON LLP

                              By: /s/ David H. Wander
                                  David H. Wander
                              605 Third Avenue
                              New York, New York 10158
                              (212) 557-7200
                              dhw@dhclegal.com
                              *Attorneys for Counsel Financial II LLC, LIG Capital LLC,*
                              *and Counsel Financial Holdings LLC*

661245v.1