# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| MICHAEL BARR, | Index No. 159781/2014 |
|                               *Plaintiff*, | Date Purchased: 10/06/14 |
| -against- | SUMMONS |
| LIDDLE & ROBINSON, L.L.P. and JEFFREY L. LIDDLE, | **Plaintiff's Address:**<br>1130 Park Avenue, Suite 2-1<br>New York, New York |
|                             *Defendants*. | **The basis of the venue designated is:** Defendants' place of business |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**TO THE ABOVE NAMED DEFENDANT(S):**

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of the venue designated is CPLR 503(a).

Dated:   New York, New York
         October 6, 2014

                                                                       GARVEY SCHUBERT BARER

                                                                       By: _____
                                                                           Alan A. Heller
                                                             *Attorneys for Plaintiff*
                                                             100 Wall Street, 20th Floor
                                                            New York, New York 10005
                                                            (212) 965-4526

TO:    LIDDLE & ROBINSON, L.L.P.
        800 Third Avenue
        New York, New York  10022

        JEFFREY L. LIDDLE
        800 Third Avenue
        New York, New York  10022

NY_DOCS:623492.1 [50744.00100]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------X
MICHAEL BARR,

                *Plaintiff*,

    -against-

LIDDLE & ROBINSON, L.L.P. and JEFFREY L. LIDDLE,

                *Defendants*.
------------------------------------X

Index No. 159781/2014

Date Purchased: 10/06/14

*COMPLAINT*

Plaintiff, by his attorneys, Garvey Schubert Barer, as and for his Complaint against the defendants, alleges as follows:

### Introduction

1.    Plaintiff Michael Barr ("Barr") is a resident of the State of New York with a place of business at 1130 Park Avenue, Suite 2-1, New York, New York.

2.    Upon information and belief, Defendant Liddle & Robinson, L.L.P. ("L&R") is a domestic limited liability partnership with an address at 800 Third Avenue, New York, New York.

3.    Upon information and belief, Defendant Jeffrey L. Liddle ("Liddle") is an attorney duly admitted to practice law in the State of New York and is the Founding Partner of L&R. On the L&R website, Liddle presents himself as a renowned New York employment lawyer who represents employees and employers in all areas of employment litigation and contract negotiations.

4.    The L&R website further states that (i) Mr. Liddle has distinguished himself as an experienced New York employment lawyer and one of the leading trial lawyers in the country,

NY_DOCS:621631.1 [50744.00100]          1

having tried to conclusion and won dozens of court cases and arbitrations with claims involving compensation, defamation, unfair competition, discrimination, fraud, breach of contract, wrongful termination and securities-related issues, and (ii) Liddle has worked on numerous cases that have exposed misconduct by Wall Street securities firms, and in particular, the conflicts of interest that existed between the firms' investment banking and research departments and that his work in this area has led to significant media coverage and that he is "lead trial counsel in one of the largest securities industry arbitrations in history, representing over 40 former high-level Robertson, Stephens, Inc. investment bankers with compensation and related claims valued in excess of $500 million."

5. Plaintiff was one of the "former high-level Robertson Stephens, Inc. investment bankers" referred to in L&R's website.

6. Morevoer, the L&R website states that "[i]n recognition of his many successes, reporters from leading business and news publications, including The Wall Street Journal, The New York Times, Business Week, Newsweek, Investment Dealers' Digest, Securities Week, The Bond Buyer, Bloomberg, Reuters and The Economist frequently solicit Mr. Liddle's views and commentary on his cases, compensation issues and employment and other practices in the securities industry."

7. This action arises out of the negligent conduct and legal malpractice of Liddle and L&R where, among other things, Liddle disregarded the contractual rights and obligations of Barr by (i) filing an arbitration (the "Arbitration") on Barr's behalf (a) twenty-two (22) days before the vesting of 1/3 of $1,299,999.84 in deferred compensation due to Barr pursuant to a Cash Equivalent

Deferred Compensation Plan he had with Robertson Stephens, and (b) thirty-seven (37) days before the six (6) month expiration date of a non-disparagement clause in Barr's agreement with Robertson Stephens (the clause ultimately used by Robertson Stephens to avoid payment of Barr's entire deferred compensation), and (ii) eager to get his name in the papers and self-promote himself for his own and L&R's benefit (and have his quote, and the fact that he was quoted in the Wall Street Journal, published on his Firm's website), Liddle, without any consideration for the ramifications or impact on Barr's rights of statements made to the press or others, and without Barr's authorization, permission or consent, and a mere one (1) day after the lawsuit was filed, discussed his newly filed $500million Arbitration with Susanne Craig and John Hechinger of The Wall Street Journal and, while doing so, publically spoke about Barr's former employer Robertson Stephens.

8. As a direct result of Liddle's comments to the Wall Street Journal, by letter dated May 2, 2003, Robertson Stephens and its parent FleetBoston Financial Corporation determined that Barr had violated section 8.1 of his Cash Equivalent Plans, Section 4.6 of the Restricted Unit Plan and Section 8 of the Restricted Unit Award Agreement and canceled his rights thereunder including, but not limited to, his rights to $1,299,999.84 in deferred compensation. This defense was raised during the arbitration (and subsequent Federal District Court legal proceedings discussed below) as the basis for the forfeiture of Plaintiff's deferred compensation and was accepted by the New York Stock Exchange panel of arbitrators, on September 12, 2007, when it rejected plaintiff's claim to his deferred compensation.

9. After the NYSE September 12, 2007 Award (the "NYSE Award") was rendered, Liddle and L&R, maintaining that the NYSE Award did not result in a rejection of plaintiff's

deferred compensation, continued its pursuit of plaintiff's deferred compensation in counterclaims interposed by Liddle and L&R on Barr's behalf in the matter of *FleetBoston Financial Corporation, et. al. v. Alt, et. al.* pending in the United States District Court, District of Massachusetts (Case No. 03 Civ. 10597). By decisions dated December 1, 2009 (by the United States District Court) and March 23, 2011 (by the United States Court of Appeals, First Circuit), plaintiff's deferred compensation claims were dismissed as barred by the doctrine of *Res Judicata* (to wit: the NYSE Arbitration award definitively determined that Barr was not entitled to his deferred compensation because Liddle's actions had violated Barr's contractual obligation not to "disparage" or "defame" Robertson Stephens).

10.    After the First Circuit affirmed the Massachusetts District Court dismissal of plaintiff's deferred compensation claim, Liddle and L&R petitioned the Supreme Court of the United States on plaintiff's behalf for writ of certiorari. On October 11, 2011, the Supreme Court of the United States in the matter of *Alt v. Robertson Stephens Group, Inc.*, 132 S. Ct. 414 (2011), denied plaintiff's petition for writ of certiorari.

11.    Accordingly, as a direct result of Liddle's negligent conduct during his representation of Barr which resulted in a final determination on October 11, 2011 that Barr had forfeited his $1,299,999.84 in deferred compensation, Barr has been damaged in the amount of $1,299,999.84 with interest thereon from (i) from January 1, 2003 on $433,333.28 (the date of the first vesting of the deferred compensation lost by Barr as a direct result of Liddle's negligent conduct) and (ii) from January 1, 2004 on $866,666.56 (the date of the second vesting of the deferred compensation lost by Barr as a direct result of Liddle's negligent conduct).

## Background

12.  In or about March, 2000, Barr became a Managing Director of Robertson Stephens an investment banking firm organized under the laws of Massachusetts, with headquarters in San Francisco, California and offices in New York, Atlanta, Chicago, Boston and Tel Aviv.

13.  Upon information and belief, Robertson Stephens was a subsidiary of FleetBoston Financial Corporation ("FleetBoston").

14.  Upon information and belief, effective April 1, 2004, FleetBoston was acquired by merger by Bank of America Corporation.

15.  For work performed by Barr in 2001, his compensation consisted of a base salary and an annual bonus that comprised the great majority of his total compensation. This 2001 bonus compensation included, among other things, involuntary deferrals of 2001 year end bonus compensation in the Robertson Stephens Group, Inc. 2002 Cash Equivalent Plan and equity in RS Group in the form of Restricted Stock Units.

16.  The deferred compensation awarded to plaintiff under the Robertson Stephens 2002 Cash Equivalent Plan (the "2002 CEP") was $1,299,999.84 (referred to herein as the "Deferred Compensation" or "Award Amount") and the plaintiff was also awarded 165,512 Restricted Stock Units.

17.  Section 7.1 of the 2002 CEP provided that "one-third (1/3) of such Award Amount will vest on January 1, 2003, and two-thirds (2/3) of such Award Amount will vest on January 1, 2004."

18.     Section 7.2 of the 2002 CEP provided that Robertson Stephens was to pay plaintiff's vested Award Amount and any earnings thereon as soon as practicable following the vesting date.

19.     Section 8.1 of the 2002 CEP provided, in relevant part, as follows:

In the event that, at any time during the six month period immediately following any Participant's Termination Date ..., the Participant ... (ii) publicly disparages any member of the RS Group or Parent or any of their respective officers, directors or senior executive employees or otherwise makes any public statement that is adverse, inimical or otherwise materially detrimental to the interests of such Persons or individuals, or if the Company or the Committee, in its discretion or such officer or officers of the Company as the Company may from time to time designate, determines that the Participant's actions are adverse to the best interests of the RS Group or Parent, the Participant shall immediately forfeit any and all rights in respect of any [Deferred Amount or Award Amount] that is not Vested and the earnings thereon.

20.     On or about July 17, 2002, Barr was notified by Robertson Stephens that the business operations of Robertson Stephens and its subsidiaries were being wound down and that Barr's association with Robertson Stephens was being terminated.

21.     On or about September 18, 2002, Barr was sent a proposed Separation Agreement and Release by Brian Mearns, Director of Human Resources Technology and Shared Services, FleetBoston Human Resources (the "Proposed Separation Agreement"). Among the terms of the Proposed Separation Agreement, Barr would receive the Deferred Compensation from the 2002 CEP, he would forfeit his 165,512 RSUs and he would release FleetBoston, Robertson Stephens and their "past and present parent corporations, divisions, subsidiaries, affiliates and related companies and their respective successors and assigns" from any claims "conserning the terms and conditions of [his] employment with Robertson Stephens, FleetBoston or thir affiliates."

22.     <u>Exhibit A</u> to the Proposed Separation Agreement acknowledged, in relevant part, that the "2002 Cash Equivalent Plan Deferred Amount" due to Barr was $1,299,999.84.

23.     Plaintiff did not sign the Proposed Separation Agreement.

### **Plaintiff Engages L&R**

24.     In November, 2002, Barr, together with other former employees/managing directors of Robertson Stephens, engaged Liddle and L&R to commence an arbitration before the New York Stock Exchange against FleetBoston Financial Corporation, Fleet Securities, Inc. Robertson Stephens, Inc. and Robertson Stephens Group, Inc. for, *inter alia*, damages arising out of the failure to "pay promised and earned bonus compensation for 2001 and 2002."

25.     Because FleetBoston and Robertson Stephens had not challenged the payment of the Deferred Compensation and, as of the date of Liddle and L&R's November, 2002 retention, there was no basis for FleetBoston or Robertson Stephens to renege on the obligation to pay Barr his Deferred Compensation, L&R and Barr agreed that, upon Barr's receipt of payment of his Deferred Compensation, L&R would not receive a fee.

26.     It was further understood between Barr, on the one hand, and L&R and Liddle, on the other hand, that during their representation, L&R and Liddle would not act in a manner that would be detrimental to Barr including, but not limited to, conducting themselves in a manner that would give FleetBoston and Robertson Stephens an excuse or cause it to not to pay Barr all or a portion of the Deferred Compensation.

27. At or about the time Barr retained L&R in November, 2002, L&R and Liddle were in possession of the 2002 CEP and were fully aware of the terms and conditions of 2002 CEP. In particular, L&R and Liddle were aware of the following:

- That one-third (1/3) of such Award Amount will vest on January 1, 2003

- That two-thirds (2/3) of such Award Amount will vest on January 1, 2004.

- That Robertson Stephens was to pay plaintiff's vested Award Amount and any earnings thereon as soon as practicable following the vesting date.

- In the event that, at any time during the six month period immediately following Barr's termination date, Barr *publicly disparages any member of the RS Group or Parent or any of their respective officers, directors or senior executive employees or otherwise makes any public statement that is adverse, inimical or otherwise materially detrimental to the interests of such Persons or individuals*, or if the Company or the Committee, in its discretion or such officer or officers of the Company as the Company may from time to time designate, determines that the Participant's actions are adverse to the best interests of the RS Group or Parent, the Participant *small immediately forfeit any and all rights in respect of any Deferred Compensation or Award Amount that is not Vested and the earnings thereon.*

28. L&R and Liddle knew, or should have known, that 1/3 of Barr's Deferred Compensation would not be at risk under paragraph 8.1 of the 2002 CEP if a lawsuit was filed after January 1, 2003.

29.     L&R and Liddle knew, or should have known, that Barr's entire amount of the Deferred Compensation would not be at risk under paragraph 8.1 of the 2002 CEP if Barr and/or his legal representatives did not publically disparage Robertson Stephens or its parent.

30.     L&R and Liddle knew, or should have known, that Barr's entire amount of the Deferred Compensation would not be at risk under paragraph 8.1 of the 2002 CEP if no public statements were made by Barr and/or his legal representatives about Robertson Stephens, its parent, or its officers or executives that were adverse, inimical or otherwise materially detrimental to the interests of such Persons or individuals.

31.     L&R and Liddle knew, or should have known, that restriction on public disparagement and/or the making of public statements about Robertson Stephens that disparage and/or were adverse, inimical or otherwise materially detrimental to the interests of such Persons or individuals expired six (6) months from the date of Barr's termination – or January 17, 2003 – and that, upon such expiration, paragraph 8.1 of the 2002 CEP could no longer be used as an excuse to avoid payment of all or any portion of Barr's Deferred Compensation.

32.     Although L&R and Liddle were, or should have been, fully aware of the Deferred Compensation vesting dates and Deferred Compensation forfeiture clauses, L&R and Liddle not only chose to file the NYSE Arbitration on December 11, 2002 – 22 days before the first vesting of 1/3 of Barr's Deferred Compensation and 37 days before the six (6) month non-disparagement restrictions expired – but, one day later (on December 12, 2002), fatally chose to speak to the Wall Street Journal about this newly filed litigation and about Robertson Stephens and its parent FleetBoston.

33.   Barr did not authorize the filing of the NYSE arbitration on December 11, 2002 and certainly did not authorize L&R or Liddle to make any remarks to the press about Robertson Stephens or its parent FirstBoston.

34.   There was no reason for L&R or Liddle to rush to file the Arbitration and they could have waited until January 18, 2003 (the day after the non-disparagement restriction expired) to file the Arbitration, and there was absolutely no reason whatsoever for speaking to the press (if ever) until the non-disparagement provisions expired.

35.   As a direct result of L&R's December 11, 2002 filing of the Arbitration and communication with the Wall Street Journal, on May 2, 2003, Robertson Stephens and its parent FleetBoston Financial Corporation determined that Barr had, among other things, violated section 8.1 of his 2002 CEP and canceled his rights to his Deferred Compensation.

36.   The May 2, 2003 cancellation of the Barr's Deferred Compensation was not in any was related to or caused by any act or omission of Barr.

37.   After the May 2, 2003 cancellation by Robertson Stephens and FleetBoston of Barr's Deferred Compensation, L&R and Liddle included such cancelled Deferred Compensation as a claim in the NYSE Arbitration and asserted a Counterclaim for such cancelled Deferred Compensation in the matter of *FleetBoston Financial Corporation, et. al. v. Alt, et. al.* in the United States District Court, District of Massachusetts (Case No. 03 Civ. 10597) (the "District Court Action").

38.   On September 12, 2007, after two years of testimony, the NYSE arbitrators rejected Barr's claim to Deferred Compensation. The sole basis for such rejection was the fact that the arbitrators ruled that the Deferred Compensation had been "forfeited by the terms of the letter dated

May 2, 2003" – to wit: that on December 12, 2002, 22 days before the first vesting of 1/3 of Barr's Deferred Compensation and 37 days before the non-disparagement restriction expired in their entirety, Liddle made public statements to the press that Robertson Stephens and FleetBoston deemed to be disparaging, inimical and/or otherwise materially detrimental to the interests of Robertson Stephens and FleetBoston.

39. Liddle knew and/or should have known that he should not make any public remarks about Robertson Stephens and/or FleetBoston until the non-disparagement restriction expired on January 17, 2003 – or, at the very least, until after the first vesting of Deferred Compensation on January 1, 2003.

40. Liddle knew and/or should have known that any public statement to the press could put his client's Deferred Compensation at risk.

41. Lidlle knew and/or should have known that his clients would have been guaranteed their entire Deferred Compensation had he waited a mere 37 days to file the Arbitration and speak publically about Robertson Stephens and FleetBoston.

42. Notwithstanding the rejection by the NYSE panel of arbitrators of Barr's Deferred Compensation claims, L&R and Liddle continued to pursue those claims in the District Court Action.

43. By decisions dated December 1, 2009 (by the United States District Court) and March 23, 2011 (by the United States Court of Appeals, First Circuit), plaintiff's Deferred Compensation counterclaims were dismissed as barred by the doctrine of Res Judicata (to wit: the September 12,

2007 arbitration award definitively determined that Barr was not entitled to his Deferred Compensation).

44.  On October 11, 2011, the Supreme Court of the United States in the matter of *Alt v. Robertson Stephens Group, Inc.*, 132 S. Ct. 414 (2011), denied the petition filed by L&R and Liddle for writ of certiorari.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Legal Malpractice/Negligence)**

45.  Repeats and realleges each and every allegation in paragraphs "1" through "44" with the same force and effect as though more fully alleged herein.

46.  In accepting their retention as Barr's attorneys to prosecute Barr's claims against Robertson Stephens and FleetBoston, L&R and Liddle held themselves out as possessing the ability to provide competent legal representation and promised that they would provide such competent representation to Barr.

47.  In performing legal services for Barr, L&R and Liddle failed to exercise the care, skill and diligence commonly possessed and exercised by those in the legal profession by, among other things, speaking to the Wall Street Journal about their newly filed litigation and, during such conversation, speaking about Robertson Stephens and its parent FleetBoston in such a manner that allowed Robertson Stephens to cancel the Deferred Compensation.

48.  L&R and Liddle's speaking to the Wall Street Journal about their newly filed litigation and, during such conversation, speaking about Robertson Stephens and its parent FleetBoston in such a manner that allowed Robertson Stephens to cancel the Deferred Compensation

was a proximate cause of Barr's loss of $1,299,999.84 in Deferred Compensation because section 8.1 of the 2002 CEP provided, in relevant part, that in the event that, at any time during the six month period immediately following Barr's termination date, Barr *publicly disparages any member of the RS Group or Parent or any of their respective officers, directors or senior executive employees or otherwise makes any public statement that is adverse, inimical or otherwise materially detrimental to the interests of such Persons or individuals*, or if the Company or the Committee, in its discretion or such officer or officers of the Company as the Company may from time to time designate, determines that the Participant's actions are adverse to the best interests of the RS Group or Parent, the Participant *shall immediately forfeit any and all rights in respect of any Deferred Compensation or Award Amount that is not Vested and the earnings thereon.*

49.    At the time L&R and Liddle spoke to the Wall Street Journal about Robertson Stephens and FleetBoston, it was in possession of the 2002 CEP and, in particular, section 8.1 thereof, and knew or should have known with ordinary care and diligence, that speaking to the press about Robertson Stephens would risk Barr's unvested Deferred Compensation.

50.    At the time L&R and Liddle spoke to the Wall Street Journal about Robertson Stephens and FleetBoston, they knew or should have known with ordinary care and diligence, that none of Barr's deferred compensation had yet to be vested.

51.    Communicating with the Wall Street Journal in December, 2002 was a proximate cause of Barr's loss of $1,299,999.84 in Deferred Compensation because had L&R and Liddle not communicated with the Wall Street Journal, Robertson Stephens and FleetBoston would have had no excuse to cancel and avoid payment of $1,299,999.84 in Deferred Compensation to Barr.

52. As a direct result of L&R and Liddle's communication with the Wall Street Journal in December 2002 about Robertson Stephens and its parent FleetBoston, Barr has suffered damages.

53. But for the negligence of L&R and Liddle, Robertson Stephens and FleetBoston would have had no basis to cancel $1,299,999.84 in Deferred Compensation and Barr would have prevailed on his claims for such amount.

54. As a result of the negligence of L&R and Liddle, Barr has been damaged in the amount of $1,299,999.84 with interest thereon (i) from January 1, 2003 on $433,333.28 of such amount and (ii) from January 1, 2004 on $866,666.58 of such amount.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Legal Malpractice/Negligence)**

55. Repeats and realleges each and every allegation in paragraphs "1" through "54" with the same force and effect as though more fully alleged herein.

56. The failure to wait until January 18, 2003, the day after the non-disparagement restriction expired, to file the Arbitration and make public statements before January 18, 2003 about Robertson Stephens and/or FleetBoston, was the proximate cause of Barr's loss of $1,299,999.84 in Deferred Compensation.

57. As a direct result of L&R and Liddle's failure to wait until January 18, 2013 to file the Arbitration and speak with the press, Barr has suffered damages.

58. But for the negligence of L&R and Liddle, Robertson Stephens and FleetBoston would have had no basis to cancel $1,299,999.84 in Deferred Compensation and Barr would have prevailed on his claims for such amount.

59. As a result of the negligence of L&R and Liddle, Barr has been damaged in the amount of $1,299,999.84 with interest thereon (i) from January 1, 2003 on $433,333.28 of such amount and (ii) from January 1, 2004 on $866,666.58 of such amount.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Legal Malpractice/Negligence)**

60. Repeats and realleges each and every allegation in paragraphs "1" through "59" with the same force and effect as though more fully alleged herein.

61. As hereinabove alleged, In accepting their retention as Barr's attorneys to prosecute Barr's claims against Robertson Stephens and FleetBoston, L&R and Liddle held themselves out as possessing the ability to provide competent legal representation and promised that they would provide such competent representation to Barr.

62. In performing legal services for Barr, L&R and Liddle failed to exercise the care, skill and diligence commonly possessed and exercised by those in the legal profession by, among other things, failing to wait until January 2, 2003 to file the NYSE Arbitration so that the first vesting of 1/3 of Barr's Deferred Compensation could occur and, thus, any defenses to the payment of such amount would be precluded as a matter of law.

63. The failure to wait until the January 2, 2003 first vesting of Barr's Deferred Compensation was a proximate cause of Barr's loss of $433,333.28 in Deferred Compensation because such 1/3 of Barr's Deferred Compensation would have vested January 1, 2003 and, even if L&R and Liddle decided, after such vesting, and with Barr's consent, to disparage Robertson Stephens or its parent or make a public statement about Robertson Stephens and FleetBoston that

was adverse, inimical or otherwise materially detrimental to the interests of Robertson Stephens and FleetBoston, Robertson Stephens and FleetBoston would not have been permitted to use such as a basis to cancel or avoid payment of $433,333.28 in Deferred Compensation to Barr.

64. As a direct result of L&R and Liddle's failure to wait until the first vesting of Barr's first 1/3 in Deferred Compensation, Barr has suffered damages.

65. But for the negligence of L&R and Liddle, Robertson Stephens and FleetBoston would have had no basis to cancel $433,333.28 in Deferred Compensation and Barr would have prevailed on his claims for such amount.

66. As a result of the negligence of L&R and Liddle, Barr has been damaged in the amount of $433,333.28 with interest thereon from January 1, 2003.

**WHEREFORE**, plaintiffs demand judgment against defendants as follows:

    a. On his First and Second Causes of Action, damages in the amount of $1,299,999.84, with interest thereon (i) from January 1, 2003 on $433,333.28 of such amount and (ii) from January 1, 2004 on $866,666.58 of such amount;

    b. On his Third Cause of Action, damages in the amount of $433,333.28, with interest thereon from January 1, 2003; and

    c. Such other and further relief as to this Court may seem just and proper.

Dated:        New York, New York
              October 6, 2014

                                              **GARVEY SCHUBERT BARER**

                                              By: _____
                                                   Alan A. Heller
                                              *Attorneys for Plaintiff*
                                              100 Wall Street, 20th Floor
                                              New York, New York 10005
                                              (212) 965-4526

NY_DOCS:621631.3 [50744.00100]