FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO: 141
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 1 of 45

Lisa Bisaccia - September 28, 2017

35

1    Q.   And in 2002 do you know whether any of the

2         claimants were seeking compensation for anything

3         other than what you just described to me as their

4         interest in the stock in the firm?

5    A.    They were seeking compensation from the two

6         deferred comp. plans, '01 and '02, and they were

7         seeking compensation from the restricted unit

8         plan, and I honestly can't remember, Mr. Harris,

9         if they were seeking just regular annual bonuses

10        as well.  I just don't remember.

11   Q.   You identified the March 2nd, 2003 letter that was

12        addressed to Mr. Barr?

13                   MS. McCHESNEY: Exhibit 2.

14                   MR. HELLER: It's actually May 2.

15        Not March 2nd.

16                   MR. HARRIS: I'm sorry.

17   Q.   Did you write this letter?

18   A.    I did not.

19   Q.   You'd agree it was dated May 2nd, 2003, correct?

20   A.    Yes.

21   Q.   And the article you referred to in your testimony

22        before in arbitration, The Wall Street Journal

23        article, that was in December of 2002, correct?

24   A.    Correct.

25   Q.   The May 2nd, 2003 correspondence is addressed to

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 2 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

36

1          Michael Barr, who is the present plaintiff in this

2          case, correct?

3          A.   Yes.

4     Q.   Were there others that received a similar letter?

5          A.   Yes.

6     Q.   How many others?

7          A.   The total class, if my memory serves, was a

8          group of 42 people, managing directors and

9          principals.

10    Q.   And did that class include all those who were

11         making a claim against Fleet Boston?

12         A.   They included everybody who was making that

13         claim.  I don't know what other claims were out

14         there.

15    Q.   So, this letter was universally sent to everybody

16         that was making that claim?

17         A.   That's my understanding, yes.

18    Q.   Right.  And the letter of May 2nd is not signed by

19         anyone other than it says Robertson Stephens Comp.

20         I think -- Group?

21         A.   Group.

22    Q.   Inc.?

23         A.   Yes.

24    Q.   Do you know who wrote this letter?

25         A.   Well, based on the tone, I would say a lawyer

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014

NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 3 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

37

1          wrote it, but I don't know which lawyer wrote it.

2     Q.   Did you read it and review it?

3          A.   Yes, I did, because I'm in it.

4     Q.   You were in the executive group?

5          A.   No.  I'm in the letter.

6     Q.   I know that.  The letter in its first paragraph

7          says that Robertson Stephens Group, Inc., -- I'm

8          paraphrasing -- has reviewed the above plans and

9          agreements and has determined that you are due no

10         payments or awards of stock as a result of actions

11         taken in violation of Section 8.1 of the cash

12         equivalent plans, and Section 4.6 of the

13         restricted unit plan, and Section 8 of the

14         restricted unit award agreement; is that correct?

15         A.   Yes.

16    Q.   And do those three sections relate to bad boy

17         provisions?

18         A.   Yes.

19    Q.   All of them?

20         A.   Yes.

21    Q.   Do you know why it was that the specific conduct

22         of each of these claimants was not spelled out in

23         this letter that was deemed to be disparaging?

24         A.   I don't know why.

25    Q.   You were a member of the executive committee, were

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 4 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

38

1           you not?

2           A.   I don't remember.

3    Q.    I believe that was your testimony at the

4           arbitration, but if you don't remember that,

5           that's fine.

6           A.   I don't remember.

7    Q.    It says, as you are aware, actions and conduct

8           following your termination of employment have

9           violated one or more of these provisions of the

10          plans and agreement and constitute a basis for

11          cancellation.  Can you and I agree that the

12          actions or conduct are not defined in this letter?

13          A.   No, they're not specified in this letter.

14   Q.    The second paragraph states, "Should you have any

15          questions concerning the foregoing, your legal

16          counsel is directed to contact counsel for RSGI,

17          Elaine McChesney, Esquire, at Bingham McCutcheon,"

18          and it gives the address of that law firm.  And

19          Ms. McChesney sits next to you today as your

20          lawyer, correct?

21          A.   Yes.

22   Q.    So I assume that whoever drafted this letter

23          wanted to direct claimants who had a lawyer to

24          contact the firm's lawyer, Ms. McChesney, to

25          discuss a legal issue?

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM    INDEX NO. 159781/2014

NYSCEF DOC. NO. 141    19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C    RECEIVED NYSCEF: 08/13/2018
Part 2    Pg 5 of 45

Lisa Bisaccia - September 28, 2017

39

1          A.    Correct.

2     Q.   So I would assume that that paragraph was directed

3          to those claimants who were represented by

4          counsel, correct?

5                    MR. HELLER: Objection.  You can

6          answer.

7     Q.   It says have your legal counsel contact our legal

8          counsel --

9          A.    Yes.

10    Q.   -- that's what it says; right?

11         A.    Yes.

12    Q.   So, the next sentence says, "If you are not

13         represented by counsel and have any questions, you

14         may contact Lisa Bisaccia, director of

15         compensation and benefits at One Federal Street,

16         Boston, Massachusetts."  Do you see that?

17         A.    Yes.

18    Q.   Had the executive committee or had the management

19         of Robertson Stephens as of May 2nd, 2003

20         determined that those who were not represented by

21         counsel had also conducted acts or conduct that

22         were violative of the bad boy provision?

23         A.    They had decided that everyone who was in the

24         Alt group had violated the provisions.

25    Q.   And why would that be?  What was the basis of that

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 6 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

40

1          decision, as far as you know?

2          A.    The Wall Street Journal article.

3    Q.    So, The Wall Street Journal article damned

4          everyone, whether you were represented by counsel

5          or not?

6                    MS. McCHESNEY: Objection.  That's

7          not what she said.

8                    MR. HARRIS: You can answer.

9          A.    The Wall Street Journal article was about the

10         Alt group or class, whatever you call them, and

11         Fleet made a decision that because of what was

12         said about Fleet in the article by Mr. Liddle,

13         that -- since he was their lawyer, that they

14         violated the bad boy provisions.

15   Q.    So, they made a decision that those who were

16         represented by Mr. Liddle violated the bad boy

17         provisions, and those who were not represented by

18         Mr. Liddle violated it as well, correct?

19                    MS. McCHESNEY: Objection.

20         A.    I'm not aware of that decision, no.  We never

21         had that conversation.

22   Q.    Did any claimant who was unrepresented contact you

23         as this letter suggests they do?

24         A.    Yes.

25   Q.    Who was that?

Lisa Bisaccia - September 28, 2017

41

1          A.    Michael Barr.

2    Q.    And he was not represented by counsel?

3          A.    He contacted me, and I referred him over to

4          Elaine because he was represented by Mr. Liddle.

5          So we had a very brief conversation, if memory

6          serves, and then I said to him you need to talk to

7          Bingham, because Mr. Liddle is your lawyer.

8    Q.    I see.  When you spoke to Mr. Barr, were there any

9          discussions with him about the case itself?

10         A.    Not that I recall.

11   Q.    Did you indicate to him that he would be paid his

12         deferred compensation if he signed a release

13         regarding the claims he was making against the

14         bank?

15         A.    I don't remember that, no.

16   Q.    Now, you've indicated to me that the bank made its

17         decision on what you said was attributable to

18         Mr. Liddle, correct?

19         A.    In the Wall Street Journal article.

20   Q.    Why don't we take a look at that for a moment, The

21         Wall Street Journal article.  It's been marked as

22         4.  I'm sure you've seen this many times in the

23         past.

24         A.    Yes.

25   Q.    Can you and I agree on reading this article that

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014

NYSCEF DOC. NO. 141
19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 8 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

42

1    Mr. Liddle, the defendant in this case, is

2    referred to in one paragraph as part of the

3    article, and it can be found on -- it's on Page 2

4    of 6 the very last paragraph?

5    A.    That's the only time he's mentioned by name,

6    yes.

7    Q.  Right -- well, let me read you what this paragraph

8    says, okay, which is attributable to Mr. Liddle.

9    "Jeffrey Liddle, a lawyer in New York, who is

10    representing the group, says the executives are

11    seeking damages from Fleet Boston, including back

12    pay for the 2002 and compensation for what he

13    estimates to be their 45.6 million equity interest

14    in Robertson which was approximately 23 percent

15    employee owned." Do you see that?

16    A.    Yes.

17    Q.  Is there any quotations in there which would

18    indicate that the reporters are quoting Mr. Liddle

19    verbatim?

20    A.    No.

21    Q.  Is there anything in that sentence that in your

22    judgment violated the bad boy provisions?

23    A.    In that sentence, no.

24    Q.  Now, it says, Mr. Liddle asserts that the bank's

25    actions during the sales process drove down the

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 141
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 9 of 45

Lisa Bisaccia - September 28, 2017

43

1          value of the employees' stake in Robertson and

2          damaged their reputations.  Can you and I agree

3          that Mr. Liddle is not quoted in that sentence?

4                    MR. HELLER: Objection.

5                    THE WITNESS:  Verbatim?

6                    MR. HARRIS: Yes, ma'am.

7     A.   There are no quotes, so it's not verbatim.

8  Q. So, we don't know whether the language in that

9          sentence is that of the reporter's or somebody

10         else's?

11    A.   Correct.

12 Q. And we don't know from that statement whether the

13         phrase, "Mr. Liddle asserts," comes from the

14         actual claim that was filed in arbitration as

15         opposed to anything Mr. Liddle said directly to

16         The Wall Street Journal, do we?

17    A.   No, I don't know that.

18 Q. Was there any investigation by Fleet Bank into the

19         accuracy of the paragraph you and I are now

20         discussing before it chose to withhold

21         compensation from Mr. Barr?

22    A.   I have no idea.

23 Q. Do you know whether there was any effort on behalf

24         of Fleet Bank to contact the reporter who wrote

25         this article to determine whether in fact Mr.

Lisa Bisaccia - September 28, 2017

44

1              Barr's lawyer said the things they attribute to

2              him or that you attributed to him?

3         A.   I don't know.

4    Q.   The Wall Street Journal article does have quotes

5              attributable to some individuals mentioned in the

6              article, correct?

7                        THE WITNESS:  Say that again?

8    Q.   The Wall Street Journal that we're talking about,

9              the article, quotes a person by the name of

10             Mr. Mahoney?

11        A.   Yes.

12   Q.   Do you know Mr. Mahoney?

13        A.   I did, yes.

14   Q.   What was his position?

15        A.   He was in the external communications

16             department, public relations.

17   Q.   Of what company?

18        A.   Of Fleet Boston.

19   Q.   Had you had any discussions with Mr. Mahoney about

20             the article?

21        A.   I had not.

22   Q.   As I understand your testimony before the

23             arbitration regarding this discrete issue, I think

24             you said that you read the article and thought

25             that it might be violative of the bad boy

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 11 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

45

1        provision, correct?

2        A.    I read the article, and I thought that what

3        they were saying about Fleet and the fact that

4        they obviously -- they had given, in my opinion,

5        they had given the claim documents to The Wall

6        Street Journal, was violating both the bad boy

7        provisions and confidentiality and could be

8        grounds for canceling the payments based on those

9        provisions, so I referred it to the lawyers.

10   Q.   You didn't make the decision?

11        A.    No, I did not.

12   Q.   But were you on the executive committee that

13        finally decided to forfeit the deferred payments

14        to Mr. Barr and others?

15        A.    I was not part of that decision.

16   Q.   I believe your testimony at the arbitration was

17        that you felt the article indicating that Fleet

18        deliberately sabotaged the sale of Robertson

19        Stephens to avoid paying bonus deferred

20        compensation, and you felt that was disparaging,

21        correct?

22        A.    I wouldn't put it that way.  I felt the

23        article disparaged Fleet because it intimated that

24        Fleet had deliberately tried to sabotage the sale,

25        hadn't tried to sell it in good faith, and that

Lisa Bisaccia - September 28, 2017

46

1           the article said Fleet made compensation promises

2           that it had no intention of satisfying or

3           fulfilling, and it said that Fleet had --

4    Q.    I know what it said --

5    A.    -- had damaged the reputation of the

6           executives.

7    Q.    I know what it said.  I'm not going to belabor

8           this, but I'll have to point it out later, is it

9           not true that you never mentioned the

10          disparagement of the executives or that Fleet had

11          damaged the reputation of the executives in any of

12          your prior arbitration testimony?

13   A.    I don't remember that.  I don't know why you

14          say that.

15   Q.    Because I didn't see it, and I didn't read it, so

16          it's not there?

17   A.    The reason I thought this article was

18          indicating that Robertson and their lawyer were

19          disparaging Fleet was because of what it says.  It

20          says that we didn't do the sale in good faith,

21          that we made promises we never intended to keep,

22          and we said bad things about their business

23          acumen.

24   Q.    But that was not your testimony before the

25          arbitration board?

Lisa Bisaccia - September 28, 2017

47

1                    MR. HELLER: Objection.

2    Q.    The statement before the arbitration board I

3          believe stated that you thought it violated the

4          bad boy provision for the reasons that I expressed

5          to you.  We have a difference of agreement and the

6          jury will have to decide.

7                    MR. HELLER: Is that a question?

8                    MR. HARRIS: Yes, it is.

9                    MR. HELLER: No, it isn't

10                   MS. McCHESNEY: I have an objection to

11         the form as well.

12   Q.    Do you recall your testimony at arbitration

13         regarding whether you were of the opinion that --

14         I'll rephrase the question or withdraw it and

15         start again.  I'm going to refer you to the

16         transcript of your testimony that was taken on

17         March 9th, 2005, specifically Pages 83 to 84.  You

18         were asked whether or not the words in the article

19         regarding deliberately sabotaging the sale of the

20         company --

21                   MS. McCHESNEY: What page are you on?

22                   MR. HARRIS: I'm sorry, Page 83.

23                   THE WITNESS: Of March 9?

24                   MR. HARRIS: Yes, March 9th.

25                   THE WITNESS: I don't have that.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM       INDEX NO. 159781/2014

NYSCEF DOC. NO. 141       19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C   RECEIVED NYSCEF: 08/13/2018
                                         Part 2    Pg 14 of 45

Lisa Bisaccia - September 28, 2017

48

1                    MR. HELLER: I don't see the word

2        sabotage.

3                    THE WITNESS: I have scheduling

4        discussions.

5                    MR. HARRIS: Hearing sessions 11 and

6        12.

7                    MS. McCHESNEY: Sessions 13 and 14.

8                    MS. McCHESNEY: It's Exhibit 5.

9                    (OFF THE RECORD)

10                   MR. HARRIS: If you were just to go

11       to Page 1442 in this transcript.

12                   MS. McCHESNEY: Page 1442 which is

13       Page 109 of Exhibit 5.

14   Q.  You were being questioned about The Wall Street

15       Journal article.  The questioner asks, "Did you

16       find any quotes at all from any of the claimants

17       in this?"  And I assume he's talking about the

18       Wall Street Journal article.  And you say, "No."

19       Do you see that?

20   A.  Yes.

21   Q.  And the questioner was Liddle and you said, "Well,

22       you're not in quotes but they report that.  They

23       report what it is.  They said you said it."

24       Question, "I see.  Okay.  With regard to that, let

25       me ask you, you didn't find that to be

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM     INDEX NO. 159781/2014
NYSCEF DOC. NO. 141     19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C     RECEIVED NYSCEF: 08/13/2018
Part 2   Pg 15 of 45

Lisa Bisaccia - September 28, 2017

49

1          disparaging, did you?"  "No."  That was my

2          question, that confidentiality, and the question

3          is, "That's good, glad to hear it."  And then they

4          move on to something else?

5               So, is it not true that what you believed was

6          violative of certain provisions attributable to

7          Mr. Liddle dealt with confidentiality and was not

8          disparagement, correct?

9          A.   I don't know what that is.  When he asks you

10         don't find that to be disparaging, I'd have to

11         read going back in the transcript.  Can I do that?

12                    MR. HARRIS: Yes, please.

13                    (PAUSE)

14         A.   I still don't know what that is.  I can't --

15         without the context I can't comment on this.

16    Q.   I think that is the comment regarding the

17         sabotaging the sale --

18                    MR. HELLER: Objection.

19    Q.   -- and what was found in the claim as opposed to

20         what was found in the article?

21                    MR. HELLER: Once again, I object as

22         to form.

23                    MS. McCHESNEY: I object as well.

24                    THE WITNESS: I'm sorry, I'm not

25         following your line of questioning.  Sorry.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM

INDEX NO. 159781/2014

NYSCEF DOC. NO. 141

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 16 of 45

RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

50

1  Q.  I'll do it this way:  Before The Wall Street

2      Journal article was published, did you have

3      knowledge that a claim had been made against Fleet

4      Boston by these particular claimants?

5      A.   No, I didn't.

6  Q.  Did anyone, as far as you know, at Fleet Boston

7      have that information?

8      A.   I don't know.

9  Q.  Can you tell me when the first time it was you

10     became aware that a claim made by Mr. Barr and

11     others was made?

12     A.   I think it was concurrent with this article

13     coming out.  I don't remember exactly how I

14     learned about the claim.

15 Q.  Same day?

16     A.   I don't remember.  It's 15 years ago.

17 Q.  Do you know which you read first, or were aware of

18     first, the article or the claim?

19     A.   I never read the claim.

20 Q.  You never read the claim?

21            MR. HELLER:  Witness shook her head.

22     A.   No.

23 Q.  Did you believe that at the time you read the

24     article that the claimants had disparaged the

25     company disassociating them from Liddle for the

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
RECEIVED NYSCEF: 08/13/2018

19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 17 of 45

Lisa Bisaccia - September 28, 2017

51

1      time being?

2                    MS. McCHESNEY: Objection.  You mean

3      outside of The Wall Street Journal article?

4                    MR. HARRIS: By the Wall Street

5      Journal article, by having it in there.

6      A.    I don't remember making that distinction,

7      Mr. Harris.  I read the article, read what was

8      said in the article, what was asserted by

9      Mr. Liddle, what the content of the article -- in

10     my non-legal opinion, said this is something that

11     I think could be violation of the bad boy

12     provisions, I'm going to ask the lawyers what they

13     think about it.  I didn't dissect out who said

14     what.

15  Q.  And did you write some memorandum to whoever the

16     lawyers were that were going to review this issue,

17     setting forth your thoughts about this?

18     A.    I did not write anything.  We had a

19     conversation.

20  Q.  Did the lawyers ever write to you and tell you

21     what their opinions were regarding this issue?

22     A.    No.

23  Q.  Do you know whether or not the attorneys who made

24     the decision to defer compensation wrote any

25     explanation of their decision to Mr. Barr?

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 18 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

52

1              MR. HELLER: Objection as to form.

2              THE WITNESS:  Who made the decision

3       to defer compensation or to withhold the deferred

4       compensation?

5              MR. HARRIS: Withhold it or forfeit

6       it.

7    Q.  Did they ever express to any of the claimants

8        including Mr. Barr what their -- the basis of that

9        decision was?

10   A.   I don't know other than the May 2003 letter.

11   Q.  Do you have any facts that would help me

12       understand why it took from December, when The

13       Wall Street Journal article was written, to May of

14       2003, December 2002 to May of 2003 why it took so

15       long to decide whether or not something that

16       occurred in December 2002 was disparaging

17       requiring forfeiture?

18   A.   No.

19   Q.  Do you know whether between The Wall Street

20       Journal article and the May 2nd, 2003 letter

21       whether any of the claimants had been offered by

22       the company the deferred payment if they release

23       any rights that they had regarding the arbitration

24       and claims they were making against BankBoston?

25   A.   I don't know that.

53

1    Q.    Before testifying this morning did you review any

2          documents --

3          A.    Yes.

4    Q.    -- to prepare?

5          A.    Yes.

6    Q.    And tell me what you reviewed?

7          A.    I reviewed the article, the letter, the May

8          2003 letter, the deferred comp. plan, the SEP

9          plan, and I think those were the documents I

10         reviewed -- oh, I had some copies of my

11         transcripts, but I did not read them through.

12   Q.    Did you have any conversations with Mr. Barr --

13         A.    No.

14   Q.    -- about your testimony?

15         A.    No.

16   Q.    After The Wall Street Journal article was

17         published, did you have any conversations, other

18         than what you've testified to, with Mr. Barr

19         before the May 2nd, 2003 letter was written?

20              MR. HELLER: Objection as to form.

21         And just to let you know, for the record, she

22         testified that the conversation was after the May

23         2nd letter.

24              MR. HARRIS: I understand.

25         A.    Not that I recall, no.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 141
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 20 of 45

Lisa Bisaccia - September 28, 2017

54

1    Q.   In the conversation that you did have with Mr.

2         Barr, did he make inquiry as to why he wasn't

3         getting his deferred compensation?

4    A.   I don't remember.

5    Q.   Do you recall how long that conversation took

6         place?

7    A.   I recall it was very brief.  He was

8         represented by counsel.

9    Q.   You don't have any memory of making him any offers

10        during that conversation?

11   A.   No.

12   Q.   Did the legal team that made the decision to

13        forfeit the deferred compensation interview you?

14             THE WITNESS:  About what?

15             MR. HARRIS: Your feelings about what

16        the impact of the Wall Street Journal.

17   A.   I went to them and said I read this, sparked

18        a thought, this is what I think, what do you

19        think.  If you call that an interview, we talked

20        about it, yes.

21   Q.   What I mean is was there some formal meeting to

22        deal with your thought and determine what to do

23        about it?

24   A.   I was not part of that, no.

25   Q.   Were you aware of any social media or any other

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM       INDEX NO. 159781/2014

NYSCEF DOC. NO. 141      19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C     RECEIVED NYSCEF: 08/13/2018
                                    Part 2   Pg 21 of 45

Lisa Bisaccia - September 28, 2017

55

1        media before The Wall Street Journal article came

2        out that placed Fleet in a disparaging light?

3        A.   No.

4    Q.  I think you indicated in your testimony at

5        arbitration that in your view the confidentiality

6        provisions may have been violated in the Wall

7        Street Journal article, correct?

8        A.   Yes.

9    Q.  Do you know whether the attorneys for Fleet Bank

10       agreed with you regarding that issue?

11       A.   I think they did.  We never had a subsequent

12       specific conversation about the basis on which

13       they made their recommendation to withhold the

14       compensation.  So I can't speak with any

15       specificity as to why they made the recommendation

16       they did.

17   Q.  Do you know whether compensation, deferred

18       compensation was forfeited regarding claimants who

19       were not represented by Liddle & Robinson?

20                 MS. McCHESNEY: Objection.  When you

21       use the word claimants, do you mean someone who

22       has filed an arbitration claim?

23                 MR. HARRIS: Yes.

24                 MR. HELLER: Who was not represented

25       by Liddle & Robinson?

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM   INDEX NO. 159781/2014
NYSCEF DOC. NO. 141   19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 22 of 45   RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

56

1                    MR. HARRIS: Yes.

2                    MR. HELLER: There were separate

3          arbitration claims by others.

4                    MR. HARRIS: Generally speaking.

5     Q.   Did the company forfeit deferred compensation to

6          people other than those represented by Liddle

7          Robinson?

8     A.   I don't know.  I don't remember.

9     Q.   Do you know whether there were any claims being

10         made against the bank by others who were in fact

11         not represented by Liddle & Robinson?

12    A.   There were lots of claims against the bank

13         and I assume Liddle & Robinson didn't handle all

14         of them, but I don't know all the claims that were

15         being filed against Robertson and the bank.

16    Q.   Were their claimants who signed a release

17         regarding the ongoing arbitration or litigation in

18         exchange for receipt of deferred compensation

19         after The Wall Street Journal article came out?

20                   MR. HELLER: Can I hear that question

21         again, please?

22                   (QUESTION READ)

23                   MS. McCHESNEY: Again, I object to

24         the word claimant, and to the extent that there

25         were settlements with officially claimants or

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014

NYSCEF DOC. NO. 141

19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 23 of 45

RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

57

1          plaintiffs in other cases, all those settlements

2          were subject to a confidentiality agreement.

3                    MR. HARRIS: With all due respect, I

4          don't think you have a right to object, you're not

5          a party.

6                    MS. McCHESNEY: I certainly have a

7          right when you're asking a witness to violate a

8          confidentiality provision in an agreement that was

9          entered into by her former employer at the time

10         when she was employed.

11                   MR. HARRIS: I don't know what you're

12         saying is accurate or not, but all I'm suggesting

13         to you is you can put something on the record, but

14         I do not believe that in view of the fact that you

15         are simply representing a witness you have a right

16         to object.

17                   MR. HELLER: So I'm going to state

18         that objection.  I'm representing the plaintiff

19         here, so that objection is stated.

20                   MR. HARRIS: What is the nature of

21         the objection?

22                   MR. HELLER: I don't want the witness

23         to violate a confidentiality agreement.

24                   MR. HARRIS: What confidentiality

25         clause is it?

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM INDEX NO. 159781/2014

NYSCEF DOC. NO. 141    19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C   RECEIVED NYSCEF: 08/13/2018
Part 2    Pg 24 of 45

Lisa Bisaccia - September 28, 2017

58

1                 MR. HELLER: I don't know.  Ms.

2     McChesney said there may be one.

3                 MS. McCHESNEY: To the extent that

4     there were settlements with other plaintiffs who

5     had filed lawsuits or in other arbitrations, every

6     such settlement agreement had a confidentiality

7     provision.  So, if you want to rephrase the

8     question in a general way that would not violate

9     the confidentiality provisions, you can try to do

10    that.  But I am not going to let the witness talk

11    about a particular settlement agreement with other

12    plaintiffs who are not part of the Alt

13    arbitration.

14                MR. HARRIS: I'm not asking for

15    details of the settlement at all.  I just want to

16    know whether or not there were claimants who

17    settled their claims with the bank, whether they

18    were Alt claims or not, in exchange for deferred

19    compensation.  I don't want to know the details of

20    it.

21                MR. HELLER: That is a detail because

22    that may be giving up deferred compensation which

23    is a term of a confidential settlement agreement.

24                MR. HARRIS: I don't think so at all.

25                MS. McCHESNEY: That is one of the

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
RECEIVED NYSCEF: 08/13/2018
Part 2   Pg 25 of 45
Lisa Bisaccia - September 28, 2017

59

1      details of any kind of settlement.  Certainly with

2      respect to the Alt plaintiffs the record below is

3      clear that none of them settled, they all, 42 of

4      the original claimants, went all the way through

5      the arbitration.

6                    MR. HARRIS: You're not letting her

7      answer the question?

8                    MS. McCHESNEY: If you can rephrase

9      the question in such a way that it would not

10     reveal details of any settlement agreement, or you

11     can establish the witness doesn't have knowledge

12     because I do not know the answer as to whether she

13     knows about the details of any other settlement

14     agreement or not.

15  Q.  Do you know whether there were claimants who were

16     not part of the lawsuit who refused to sign a

17     release and whose cash equivalency was forfeited?

18  A.  I don't know.

19  Q.  Did you testify at your arbitration that there may

20     have been?

21  A.  I don't remember.

22  Q.  Do you have any idea what the rationale for the

23     forfeiture, had there been one, under those

24     circumstances, could have been?

25                    MR. HELLER: Objection as to form.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 141
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 26 of 45

Lisa Bisaccia - September 28, 2017

60

```
 1          A.   I don't understand the question.

 2     Q.   Other than Mr. Barr, did any other claimant who

 3          was unrepresented contact you in relation to the

 4          May 2nd, 2003 letter?

 5               MR. HELLER: Objection as to form.

 6               MS. McCHESNEY: Objection.

 7     A.   Mr. Barr was represented.

 8     Q.   I'm asking for anyone who was not represented,

 9          anyone else; did anyone else call you other than

10          Mr. Barr?

11     A.   I don't remember speaking to anyone else.

12     Q.   Do you know whether Mr. Liddle had a prior

13          litigation against Fleet Bank?

14     A.   I don't know.

15     Q.   In the documents regarding compensation, are you

16          aware of -- and deferred cash payments, there's a

17          provision dealing with change of control.  Are you

18          aware of that provision?

19               THE WITNESS:  Can I look at the

20          plan?

21               MR. HARRIS: Yes.

22     A.   Yes.

23     Q.   Did you have any role in drafting that provision?

24     A.   Drafting it, I did not.

25     Q.   Do you know who did?
```

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 141
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 27 of 45

Lisa Bisaccia - September 28, 2017

61

1         A.    The lawyers who drafted this plan, I believe.

2    I don't remember whether it was outside counsel or

3    inside.

4    Q.   Do you have an understanding as to what the change

5         of control provisions mean?

6         A.    Yes.

7    Q.   Can you explain that to me?

8         A.    So, change of control provisions in a

9    compensation plan are provisions that provide for

10   some specified treatment of the compensation in

11   question, if there's been a change in control as

12   defined by the plan document.

13   Q.   Was there a change in control by December of 2006

14        regarding Robertson Stephens?

15              THE WITNESS:  2006?

16              MR. HARRIS:  I'm sorry, 2002.

17        A.    No.

18   Q.   Why not?

19        A.    There was no change in control.  Fleet still

20   owned Robertson Stephens.

21   Q.   And would there be a change in control if Fleet

22        shut down Robertson Stephens?

23        A.    My understanding of the legal interpretation

24   of that is no.  It wasn't my call.

25   Q.   Where did you obtain that understanding, from what

Lisa Bisaccia - September 28, 2017

62

```
 1          lawyers in your firm -- in the company?
 2          A.    Lauren Mogenson.
 3    Q.    Did she draft a document explaining her position
 4          regarding change in control?
 5          A.    I have no idea.
 6    Q.    Did she provide an indication to you that
 7          liquidation is or is not a change in control?
 8          A.    My recollection is that liquidation was not a
 9          change in control.
10    Q.    What was the status of Robertson Stephens as of
11          the writing of the Wall Street Journal article?
12          A.    So almost all of the employees had been
13          released, I think there were still a few around
14          who were doing some essential functions, payroll
15          and IT.  Business operations had ceased, we closed
16          the offices.
17    Q.    Did you have an opinion as to whether by filing a
18          claim against Fleet, that that act was against the
19          interest of Fleet Boston and disparaging?
20          A.    That the act of filing a claim was in itself
21          disparaging?
22                    MR. HARRIS: Yes.
23          A.    Yes, I had an opinion.
24    Q.    What was it?
25          A.    Just filing a claim isn't a disparaging act.
```

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM    INDEX NO. 159781/2014
NYSCEF DOC. NO. 141    19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
    RECEIVED NYSCEF: 08/13/2018
Part 2    Pg 29 of 45

Lisa Bisaccia - September 28, 2017

63

1    Q.    Despite what the claim alleges?

2    A.    No, that's different.  Just the act of filing

3    a claim isn't disparaging.  It depends what the

4    claim says.

5    Q.    So if a claim asserts a dispute with the bank, and

6    you felt the allegations in that dispute were

7    against the interest of the bank, would you

8    believe that would be disparaging?

9              MR. HELLER: Objection as to form.

10             MS. McCHESNEY: Objection.

11   A.    I believe that the allegations made in the

12   claim were disparaging.  Not the act of filing a

13   claim.  If we're talking about Alt --

14             MR. HARRIS: Yes, we are.

15   Q.    So would you be of the opinion that the attorney

16   who files the claim on behalf of his client is

17   likewise disparaging the bank?

18             MR. HELLER: Objection as to form.

19             THE WITNESS:  Just by nature of

20   filing the claim?

21             MR. HARRIS: Yes.

22   A.    No.

23   Q.    No matter what it said?

24   A.    I didn't say that.  I just said the act of

25   filing a claim is not a disparaging act.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM

NYSCEF DOC. NO. 141

INDEX NO. 159781/2014

RECEIVED NYSCEF: 08/13/2018

19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 30 of 45

Lisa Bisaccia - September 28, 2017

64

1    Q.    Now let's assume that the attorney in filing the

2          claim on behalf of his clients brings the action

3          based on the information brought to him by his

4          clients, which may or may not be disparaging, and

5          files that complaint, would you be of the opinion

6          that the attorney is likewise disparaging the bank

7          by just bringing the action?

8    A.    I think I've answered that a couple of times.

9               MS. McCHESNEY: Objection.

10   Q.    I'll rephrase it.  I think it's too cumbersome.

11         If the assertion made by a lawyer's clients in

12         fact disparaged the bank, and he brings that

13         action, are you of the opinion that the attorney

14         as well is disparaging the bank?

15              MR. HELLER: I want to hear the

16         question again.

17              MS. McCHESNEY: Could you read it

18         back, please?

19                   (QUESTION READ)

20              MR. HELLER: I'll object as to form.

21              MS. McCHESNEY: I will as well.

22   A.    I don't know.

23   Q.    In this case Mr. Liddle brought an action?

24   A.    Yup.

25   Q.    He brought an action on behalf of his clients.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 31 of 45
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

65

```
 1          The action set forth in the complaint set forth

 2      facts that he asserts were true.  Are you of the

 3      opinion that by advancing those facts in a

 4      complaint on behalf of his clients, Mr. Liddle

 5      disparaged the bank?

 6                  MR. HELLER: Objection as to form.

 7                  MS. McCHESNEY: Object.

 8      A.    I believe that Mr. Liddle's allegations were

 9      disparaging.  I don't believe they were facts.

10  Q.  Well, what do you mean by Mr. Liddle's

11      allegations, the allegations he's bringing on

12      behalf of his clients?

13      A.    His allegations that Fleet had sabotaged the

14      sale and that Fleet had made compensation promises

15      that it had no intention of fulfilling were

16      disparaging.

17  Q.  Okay.  So, if those statements were provided to

18      him by his clients, and he puts them in his

19      complaint, are you of the opinion that the act of

20      being a lawyer in that regard is disparaging to

21      the bank?

22                  MR. HELLER: Objection as to form.

23                  MS. McCHESNEY: Objection.

24      A.    I can't answer that question.

25  Q.  Well, can you and I agree that The Wall Street
```

Lisa Bisaccia - September 28, 2017

66

1    Journal does not quote Mr. Liddle?

2              MR. HELLER: Objection.  Asked and

3    answered 20 times.

4              MR. HARRIS: You can answer it again.

5    A.    It doesn't quote him verbatim with quotation

6    marks, as I think we've established.

7    Q.   Yes, we have.  And so if there's no quotations,

8    and Mr. Liddle is speaking on behalf of his

9    clients, or doesn't speak at all, and those are

10   words of a reporter -- I'll strike that.

11             MR. HELLER: Thank you.

12   Q.   Let me start again.  I'm going to ask it until I

13   get an answer.  If a lawyer brings an action

14   against Fleet, and the words in that action you

15   deem to be disparaging to the interests of the

16   bank, are you of the opinion that the lawyer

17   himself has disparaged the bank?

18             MR. HELLER: Objection.  Calls for a

19   legal conclusion, and the witness answered that

20   question many times already.

21             MR. HARRIS: You can answer the

22   question.

23             MS. McCHESNEY: Objection.

24   A.    I don't know the answer to that.  I thought

25   the words were disparaging.  I referred it to the

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM    INDEX NO. 159781/2014
NYSCEF DOC. NO. 141    19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C    RECEIVED NYSCEF: 08/13/2018
Part 2    Pg 33 of 45

Lisa Bisaccia - September 28, 2017

67

1    lawyers, and the arbitration panel made a

2    decision.

3              MR. HARRIS: I have no further

4    questions.

5              MR. HELLER: Let me just take a few

6    minutes with Mr. Barr. So if you want to take a

7    break, I want to see if there's anything I want to

8    ask.

9                   (BRIEF RECESS)

10          FURTHER EXAMINATION BY MR. HELLER

11  Q.   Were you aware that Liddle & Robinson sent the

12       statement of claim to the Wall Street Journal

13       before it was filed?

14  A.   I became aware of it once I read The Wall

15       Street Journal article, but I wasn't aware he was

16       going to do it at the time he did it.

17              MR. HELLER: I have no further

18       questions.

19          FURTHER EXAMINATION BY MR. HARRIS

20  Q.   How did you get that awareness?

21  A.   By, A, what was in the article and, B, the

22       lawyers told me.

23  Q.   When did the lawyers tell you?

24  A.   I don't remember. Some time in that time

25       period.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 141
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

Lisa Bisaccia - September 28, 2017

68

```
 1   Q.   Well, if you didn't read it before you read The

 2        Wall Street Journal article, how did you know that

 3        it existed?

 4   A.   We talked about how did the reporter get all

 5        this information.

 6   Q.   What about Mr. Mahoney -- I'll ask you another

 7        question.  It's true that nobody contacted The

 8        Wall Street Journal to find out where they got the

 9        information from, did they?

10   A.   I don't know.  I didn't contact them.

11   Q.   You didn't.  Did any of the lawyers that were

12        talking to you do it, if you know?

13   A.   I don't know.

14             MR. HARRIS: I have no further

15        questions.

16             MR. HELLER: Thank you, very much,

17        for your time.

18             THE REPORTER:  I'd like to get

19        orders on the record, please.

20             MR. HELLER: Original plus two

21        copies.  Original to the witness and copy to the

22        other side, but send everything to me, and also

23        electronic.

24             (DEPOSITION CLOSED AT 12:52 P.M.)

25
```

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014

NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 35 of 45
RECEIVED NYSCEF: 08/13/2018

69

1              C-E-R-T-I-F-I-C-A-T-E

2       I, LINDA L. GUGLIELMO, do hereby certify that I
   am expressly approved as a person qualified and
3  authorized to take depositions pursuant to Rules
   of Civil Procedure of the Superior Court of Rhode
4  Island, especially, but without restriction
   thereto, under Rule 28 of said Rules; that the
5  witness was first sworn by me; that the transcript
   contains a true record of the proceedings.

6

7       Reading and signing of the transcript was not
   requested by the deponent or any parties involved
   upon completion of the deposition.

8

9       IN WITNESS WHEREOF, I have hereunto set my hand
   this 3rd day of October 2017.

10

11

12              *Linda L. Guglielmo*
13              *Notary Public*

14  _____
15       LINDA L. GUGLIELMO, NOTARY PUBLIC/RPR-RMR
           (MY COMMISSION EXPIRES AUGUST 13, 2021)

16

17  IN RE:  BARR VS. LIDDLE & ROBINSON, ET AL.
    DATE:   SEPTEMBER 29, 2017
18  WITNESS NAME: LISA BISACCIA

19

20

21

22

23

24

25

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. No. 41
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 2   Pg 36 of 45
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

Barr-v41
Liddle & Robinson, L.L.P.

Lisa Bisaccia
September 28, 2017

## A

ability (2)
6:24;29:18
able (1)
29:25
above (1)
37:8
account (1)
14:22
accuracy (1)
43:19
accurate (6)
7:9;12:2;17:6;
18:4;20:16;57:12
accurately (7)
14:5,14;20:1,10;
22:25;24:21;25:25
acquire (1)
27:20
acquired (5)
5:2,7;27:22,23;
28:3
acquisition (1)
5:8
act (8)
62:18,20,25;63:2,
12,24,25;65:19
action (10)
21:13;33:6;64:2,7,
13,23,25;65:1;66:13,
14
actions (4)
37:10;38:7,12;
42:25
acts (1)
39:21
actual (3)
5:21;28:21;43:14
actually (3)
10:14;14:3;35:14
acumen (1)
46:23
addition (1)
29:15
address (1)
38:18
addressed (2)
35:12,25
administered (1)
5:20
advancing (1)
65:3
advice (2)
31:2,4
advising (1)
11:22;31:15
affected (1)
30:5
again (9)
29:6;44:7;47:15;
49:21;56:21,23;

64:16;66:4,12
against (18)
3:13;8:4;23:19;
25:3;33:6,7;36:11;
41:13;50:3;52:24;
56:10,12,15;60:13;
62:18,18;63:7;66:14
ago (1)
50:16
agree (6)
29:14;35:19;38:11;
41:25;43:2;65:25
agreed (1)
55:10
agreement (11)
37:14;38:10;47:5;
57:2,8,23;58:6,11,23;
59:10,14
agreements (1)
37:9
agrees (1)
20:15
ahead (2)
4:5;15:25
al (1)
25:4
Alan (1)
3:11
allegations (6)
63:6,11;65:8,11,11,
13
alleges (1)
63:1
almost (1)
62:12
along (1)
21:2
Alt (9)
23:19;25:3;34:10;
39:24;40:10;58:12,
18;59:2;63:13
amount (2)
7:5;8:15
amounts (1)
25:12
announcement (2)
16:1;18:24
annual (1)
35:9
answered (4)
7:18;64:8;66:3,19
appeared (1)
19:5
appears (2)
7:12;13:25
applicable (1)
32:3
applies (1)
19:10
appointing (1)
21:14
appreciate (1)
3:15

appropriate (1)
32:1
approximately (1)
42:14
April (2)
25:1;26:1
arbitration (28)
12:11,16,22;13:2,4,
7,15;14:6;20:2;
25:19;35:22;38:4;
43:14;44:23;45:16;
46:12,25;47:2,12;
52:23;55:5,22;56:3,
17;58:13;59:5,19;
67:1
arbitrations (1)
58:5
area (2)
8:15;26:16
arm (1)
27:18
around (1)
62:13
Article (58)
9:17,19;10:6,7,8;
23:9,10,12;24:2,6,7,
11,12;35:21,23;40:2,
3,9,12;41:19,21,25;
42:3;43:25;44:4,6,9,
20,24;45:2,17,23;
46:1,17;47:18;48:15,
18;49:20;50:2,12,18,
24;51:3,5,7,8,9;
52:13,20;53:7,16;
55:1,7;56:19;62:11;
67:15,21;68:2
articles (3)
22:15,19,23
asserted (1)
51:8
assertion (1)
64:11
asserts (4)
42:24;43:13;63:5;
65:2
assisting (1)
22:5
assume (5)
38:22;39:2;48:17;
56:13;64:1
attendance (1)
16:7
attention (7)
14:15;18:9,15;
19:1;20:5;23:22;25:6
attorney (7)
22:16;31:8,11;
63:15;64:1,6,13
attorneys (2)
51:23;55:9
attributable (4)
41:17;42:8;44:5;
49:6

attribute (1)
44:1
attributed (1)
44:2
avoid (1)
45:19
award (4)
10:11;25:13,14;
37:14
awarded (1)
25:15
awards (5)
24:5;34:1,1,22;
37:10
aware (13)
18:19;22:4;25:23;
38:7;40:20;50:10,17;
54:25;60:16,18;
67:11,14,15
awareness (1)
67:20

## B

back (3)
42:11;49:11;64:18
background (1)
26:9
bad (36)
8:25;9:2,3,7,12,15;
12:7;15:23;18:12;
19:3,13;20:21;21:20;
22:3,18;25:19,20;
32:12;31:3,18;32:4,7,
10,17;33:13,21;
37:16;39:22;40:14,
16;42:22;44:25;45:6;
46:22;47:4;51:11
balances (6)
14:18;15:13;16:2,
9,12;18:24
bank (29)
4:21,22;5:9;27:15,
17,17,17;28:6;32:8;
41:14,16;43:18,24;
55:9;56:10,12,15;
58:17;60:13;63:5,7,
17;64:6,12,14;65:5,
21;66:16,17
BankBoston (7)
4:25;5:2,7,25;
27:23;28:3;52:24
Bankin (1)
21:14
bank's (1)
42:24
Barer (1)
3:12
Barr (29)
3:13;6:14,14;7:25;
8:2,3,7;10:16;11:14,
25;12:3,21;25:9;
35:12;36:1;41:1,8;

43:21;45:14;50:10;
51:25;52:8;53:12,18;
54:2;60:2,7,10;67:6
Barr's (4)
8:22;12:17;25:10;
44:1
based (4)
31:7;36:25;45:8;
64:3
basis (4)
38:10;39:25;52:8;
55:12
Bates (1)
6:13
became (2)
50:10;67:14
began (1)
23:25
beginning (3)
13:23;23:18;25:1
begins (2)
23:20;25:4
behalf (8)
29:23;43:23;63:16;
64:2,25;65:4,12;66:8
behavior (1)
31:25
behaviors (1)
9:8
belabor (1)
46:7
below (1)
59:2
benefits (5)
5:24;27:1;28:10;
34:5;39:15
best (2)
13:13,17
Bingham (2)
38:17;41:7
BISACCIA (24)
3:2,6,11;6:12,13;
8:21;9:20;10:1;
11:16,17;12:6,8,11;
13:20,21;20:8;23:4,5,
15,16;24:24,25;26:6;
39:14
B-i-s-a-c-c-i-a (1)
3:7
board (3)
21:13;46:25;47:2
bonus (3)
7:4,6;45:19
bonuses (1)
6:25;33:17;35:9
Boston (24)
4:16,16,18,24;5:9;
12:14;23:19;25:3;
26:24;27:3,9,20,25;
29:24;31:12;33:6,7;
36:11;39:16;42:11;
44:18;50:4,6;62:19
Boston's (1)

Min-U-Script®
Allied Court Reporters, Inc. (401)946-5500
115 Phenix Avenue, Cranston, RI 02920 www.alliedcourtreporters.com
(1) ability - Boston's

Liddle & Robinson, L.L.P.                                        Lisa Bisaccia
September 28, 2017

33:10
**Both (4)**
19:9,15;34:2;45:6
**bottom (1)**
33:18
**boy (35)**
8:25;9:2,3,7,13,15;
12:8;15:23;18:12;
19:3,13;20:21;21:20;
22:3,18;25:20,20;
30:12;31:3,18;32:4,7,
10,17;33:13,21;
37:16;39:22;40:14,
16;42:22;44:25;45:6;
47:4;51:11
**breach (2)**
19:6,12
**break (2)**
4:10;67:7
**Brian (1)**
26:6
**brief (3)**
41:5;54:7;67:9
**bringing (2)**
64:7;65:11
**brings (3)**
64:2,12;66:13
**Broad (3)**
13:23;23:18;25:2
**brought (5)**
19:1;33:6;64:3,23,
25
**business (7)**
7:21;24:4;27:14,
19;28:22;46:22;
62:15
**businesses (3)**
15:7;21:9;27:13
**buy (1)**
30:8
**buyout (2)**
29:6;30:1

**C**

**call (11)**
18:1,2,3,8,11,14;
33:11;40:10;54:19;
60:9;61:24
**called (2)**
19:3;34:3
**calls (2)**
4:1;66:18
**came (5)**
18:23;24:7,7;55:1;
56:19
**can (22)**
4:7;10:4;14:8;
31:6;38:11;39:5;
40:8;41:25;42:3;
43:2;49:11;50:9;
56:20;57:13;58:9;
59:8,11;60:19;61:7;

65:25;66:4,21
**canceled (5)**
10:25;11:3,5,6,11
**canceling (2)**
12:3;45:8
**cancellation (3)**
12:17,20;38:11
**case (8)**
18:22;33:5;34:5,
10;36:2;41:9;42:1;
64:23
**cases (1)**
57:1
**Casey (1)**
25:8
**cash (17)**
6:15,20,22,23;7:2,
6,10;9:11,23;10:21;
11:24;12:7;21:21;
24:5;37:11;59:17;
60:16
**cause (2)**
9:9;13:10
**ceased (1)**
62:15
**certain (10)**
6:7;7:5;9:5;11:1,8,
12;12:12;34:16,24;
49:6
**certainly (2)**
57:6;59:1
**Chairman (8)**
23:23;24:17;25:8,
12,18,20,21,23
**change (12)**
8:11;13:10;60:17;
61:4,8,11,13,19,21;
62:4,7,9
**changed (1)**
28:7
**charge (1)**
9:21
**choice (1)**
7:7
**chose (1)**
43:20
**circumstances (1)**
59:24
**claim (29)**
8:4;18:21;36:11,
13,16;43:14;45:5;
49:19;50:3,10,14,18,
19,20;55:22;62:18,
20,25;63:1,3,4,5,12,
13,16,20,25;64:2;
67:12
**claimant (4)**
11:22;40:22;56:24;
60:2
**claimants (21)**
12:20;14:18;15:14;
33:5;34:5;35:2;
37:22;38:23;39:3;

48:16;50:4,24;52:7,
21;55:18,21;56:16,
25;58:16;59:4,15
**claims (9)**
36:13;41:13;52:24;
56:3,9,12,14;58:17,
18
**class (3)**
36:7,10;40:10
**clause (9)**
12:8;18:12;19:4,
13;20:21;22:1,3,8;
57:25
**Clavin (1)**
21:3
**clear (1)**
59:3
**client (1)**
63:16
**clients (9)**
18:20;64:2,4,11,
25;65:4,12,18;66:9
**closed (2)**
62:15;68:24
**closing (1)**
28:21
**college (2)**
26:10,12
**coming (2)**
3:14;50:13
**COMMENCED (2)**
3:1;12:12
**comment (2)**
49:15,16
**committee (7)**
5:19;21:11,16,22;
37:25;39:18;45:12
**communication (1)**
31:8
**communications (1)**
44:15
**comp (4)**
24:9;35:6;36:19;
53:8
**companies (1)**
27:7
**company (12)**
28:8,25;29:15,18;
30:1;32:24;44:17;
47:20;50:25;52:22;
56:5;62:1
**comparison (1)**
22:6
**compensation (60)**
4:19,21;5:14,15,17,
23;6:4,6,8,10;7:15;
8:7,23;10:2,12,17,18,
24:5;26:24,25;28:5,
10;31:19,20;32:2,8;
33:11,22,25;34:3,13;
35:2,5,7;39:1;
41:12;42:12;43:21;

45:20;46:1;51:24;
52:3,4;54:3,13;55:14,
17,18;56:5,18;58:19,
22;60:15;61:9,10;
65:14
**complaint (4)**
64:5;65:1,4,19
**complete (1)**
4:4
**Concentration (1)**
26:17
**concerning (1)**
38:15
**conclusion (1)**
66:19
**concurrent (1)**
50:12
**conditions (4)**
9:3,5;10:22;34:24
**conduct (4)**
37:21;38:7,12;
39:21
**conducted (1)**
39:21
**confidential (1)**
58:23
**confidentiality (11)**
19:6;45:7;49:2,7;
55:5;57:2,8,23,24;
58:6,9
**conjunction (1)**
29:4
**Connecticut (2)**
26:13,15
**connection (3)**
7:3;10:9;24:12
**constitute (1)**
38:10
**constituted (1)**
22:17
**contact (8)**
38:16,24;39:7,14;
40:22;43:24;60:3;
68:10
**contacted (2)**
41:3;68:7
**contain (1)**
9:12
**contained (1)**
9:15
**content (1)**
51:9
**contest (1)**
4:12
**context (1)**
49:15
**continue (1)**
17:14
**control (10)**
60:17;61:5,8,11,13,
19,21;62:4,7,9
**conversation (10)**
22:4;31:16;40:21;

41:5;51:19;53:22;
54:1,5,10;55:12
**conversations (4)**
22:22;24:3;53:12,
17
**copies (2)**
53:10;68:21
**copy (5)**
7:9;12:2;14:22;
23:9;68:21
**Corp (2)**
23:20;25:4
**corporate (4)**
4:19,22;26:23;
27:17
**correspondence (1)**
35:25
**counsel (16)**
15:6;17:2;21:8;
31:1,13;38:16,16;
39:4,7,8,13,21;40:4;
41:2;54:8;61:2
**couple (1)**
64:8
**course (1)**
7:20
**court (4)**
3:24;4:7;18:22,23
**covered (1)**
34:13
**creation (1)**
10:21
**cross-examination (1)**
25:5
**cumbersome (1)**
64:10

**D**

**damaged (3)**
43:2;46:5,11
**damages (1)**
42:11
**damned (1)**
40:3
**Dana (3)**
31:1,10,11
**dated (3)**
12:3;13:22;35:19
**day (3)**
14:1,7;50:15
**deal (1)**
54:22
**dealing (1)**
60:17
**dealt (1)**
49:7
**December (10)**
10:11;12:12;23:11;
24:7;28:19;35:23;
52:12,14,16;61:13
**decide (2)**
47:6;52:15

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM INDEX NO. 159781/2014

NYSCEF DOC. NO. 41   19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C.   RECEIVED NYSCEF: 08/13/2018
                                                Part 2   Pg 38 of 45

Barr v
Liddle & Robinson, L.L.P.                                                                    Lisa Braccia
                                                                                             September 28, 2017

decided (2)
  39:23;45:13
decision (22)
  11:8;15:13,24;
  16:12,14;18:2,8,10,
  23;40:1,11,15,20;
  41:17;45:10,15;
  51:24,25;52:2,9;
  54:12;67:2
decisions (1)
  14:20
deem (1)
  66:15
deemed (2)
  30:4;37:23
defendant (2)
  26:7;42:1
defer (7)
  6:24;7:2,5,7,8;
  51:24;52:3
deferral (3)
  6:20,22,23
deferred (33)
  6:8,10;7:14;8:7,23;
  10:1,11,17,17,25;
  11:11;12:4,17;24:9;
  31:20;33:11,22,25;
  35:6;41:12;45:13,19;
  52:3,22;53:8;54:3,
  13;55:17;56:5,18;
  58:18,22;60:16
defined (2)
  38:12;61:12
deliberately (3)
  45:18,24;47:19
department (6)
  15:15,17;16:11,14;
  17:25;44:16
depends (1)
  63:3
deposes (1)
  3:3
DEPOSITION (3)
  3:1;17:3;68:24
described (1)
  35:3
design (1)
  5:17
designed (1)
  25:16
Despite (1)
  63:1
detail (1)
  58:21
details (5)
  58:15,19;59:1,10,
  13
determination (1)
  19:2
determine (3)
  32:23;43:25;54:22
determined (1)
  37:9;39:20

detrimental (2)
  31:25;32:24
difference (1)
  47:5
different (1)
  63:2
differing (1)
  27:13
direct (7)
  10:4;13:24;14:15;
  20:5;23:22;25:6;
  38:23
directed (2)
  38:16;39:2
directly (1)
  43:15
Director (6)
  4:19;5:23;26:23,
  25;28:5;39:14
directors (2)
  21:14;36:8
disassociating (1)
  50:25
disclose (1)
  31:7
discrete (1)
  44:23
discuss (1)
  38:25
discussed (1)
  22:24
discussing (1)
  43:20
discussion (1)
  20:21
discussions (6)
  14:24;15:1;19:12;
  41:9;44:19;48:4
disparaged (5)
  45:23;50:24;64:12;
  65:5;66:17
disparagement (5)
  19:5;32:20;33:3;
  46:10;49:8
disparaging (23)
  37:23;45:20;46:19;
  49:1,10;52:16;55:2;
  62:19,21,25;63:3,8,
  12,17,25;64:4,6,14;
  65:9,16,20;66:15,25
dispute (2)
  63:5,6
dissect (1)
  51:13
distinction (1)
  51:6
division (1)
  4:23
document (33)
  6:10,13,16,19;7:9,
  13,21,22;8:21,22;
  10:5;11:16,18;13:20;
  14:1;19:14,16,21,22;

21:13;23:4,6,8,15;
24:24;32:12,19,22;
33:1,22;34:4;61:12;
62:3
documents (9)
  14:20,23;19:15,18;
  30:11;45:5;53:2,9;
  60:15
dollars (1)
  33:17
done (1)
  4:6
down (12)
  3:25;4:7;8:5;13:3;
  18:23;28:14,16,17,
  23,25;42:25;61:22
draft (2)
  30:14;62:3
drafted (2)
  38:22;61:1
drafting (2)
  60:23,24
Drew (1)
  21:3
drove (1)
  42:25
due (3)
  24:11;37:9;57:3
duly (1)
  3:3
during (8)
  4:17;5:9;13:4,7;
  18:18;22:9;42:25;
  54:10
duties (2)
  6:2;10:9

E

Early (5)
  18:15;20:12,20;
  24:9;28:15
easiest (1)
  17:5
education (1)
  26:9
effort (2)
  15:11;43:23
either (2)
  16:7;29:8
Elaine (2)
  38:17;41:4
electronic (1)
  68:23
else (11)
  3:23;15:4;16:6;
  25:10,22,23;33:24;
  49:4;60:9,9,11
else's (1)
  43:10
employed (6)
  4:13,15,24;27:4;
  31:11;57:10

employee (3)
  27:24;33:8;42:15
employees (10)
  6:8;9:23;11:1,12,
  14;12:13;32:4,5;
  34:16;62:12
employees' (1)
  43:1
employer (4)
  27:2;32:15,20;57:9
employment (2)
  30:6;38:8
endurance (1)
  4:11
entail (1)
  5:16
entered (1)
  57:9
enterprise (2)
  28:11,12
entire (1)
  28:10
entitled (1)
  33:12
entity (3)
  5:1,3;15:9
equation (1)
  29:19
equity (3)
  34:18,21;42:13
equivalency (2)
  21:21;59:17
Equivalent (8)
  6:16;7:10;9:11,24;
  10:21;11:24;12:7;
  37:12
Eric (1)
  25:3
Esquire (1)
  38:17
essential (1)
  62:14
establish (1)
  59:11
established (1)
  66:6
estimates (1)
  42:13
estimating (1)
  8:20
et (1)
  25:4
events (2)
  26:20;30:22
everybody (3)
  28:18;36:12,15
everyone (2)
  39:23;40:4
exact (1)
  8:15
exactly (2)
  26:22;50:13
EXAMINATION (5)

3:10;13:24;26:5;
67:10,19
Exchange (3)
  13:3;56:18;58:18
Excuse (1)
  17:2
executive (7)
  21:11,16,22;37:4,
  25;39:18;45:12
executives (8)
  6:21;8:4;9:9;11:9;
  42:10;46:6,10,11
exemplars (1)
  32:16
Exhibit (11)
  6:12,13;9:12,20,
  20;11:17;13:21;23:5;
  35:13;48:8,13
EXHIBITS (1)
  3:8
existed (1)
  68:3
exists (1)
  19:23
explain (1)
  61:7
explaining (3)
  32:12,20;62:3
explanation (2)
  32:15;51:25
express (1)
  52:7
expressed (1)
  47:4
extent (3)
  20:17;56:24;58:3
external (1)
  44:15

F

fact (6)
  24:15;43:25;45:3;
  56:10;57:14;64:12
facts (4)
  52:11;65:2,3,9
faith (2)
  45:25;46:20
familiar (5)
  5:3,6;7:24;8:2,25
far (4)
  27:20;29:11;40:1;
  50:6
February (3)
  24:10;25:15,16
Federal (1)
  39:15
feelings (1)
  54:15
felt (4)
  45:17,20,22;63:6
Ferbin (3)
  21:3

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 541
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C.
Part 2    Pg 39 of 45

Barr vs 41
Liddle & Robinson, L.L.P.

Lisa Braccia
September 28, 2017

few (2)
  62:13;67:5
filed (5)
  43:14;55:22;56:15;
  58:5;67:13
files (2)
  63:16;64:5
filing (8)
  62:17,20,25;63:2,
  12,20,25;64:1
final (1)
  14:23
finally (1)
  45:13
Financial (9)
  4:16,18;23:20;
  25:4;26:24;27:3,9;
  33:10,15
find (6)
  17:23;24:18;48:16,
  25;49:10;68:8
fine (1)
  38:5
finish (2)
  4:3,5
firm (11)
  3:12;24:4,6,19;
  26:8;29:6;31:25;
  34:17;35:4;38:18;
  62:1
firm's (1)
  38:24
First (7)
  14:1;20:21;24:7;
  37:6;50:9,17,18
Fitzsimmons (1)
  30:3
five (1)
  21:1
Fleet (65)
  4:16,17,24;5:1,2,8;
  6:1,25;7:4,7;8:5;
  11:7,11;12:13;15:15,
  17;18:20;21:10;
  22:16;23:19;25:3;
  26:24;27:3,8,12,16,
  20,22,24;28:3;29:3,4,
  23;31:12;33:6,7,10;
  34:21;36:11;40:11,
  12;42:11;43:18,24;
  44:18;45:3,17,23,24;
  46:1,3,10,19;50:3,6;
  55:2,9;60:13;61:19,
  21;62:18,19;65:13,
  14;66:14
followed (1)
  24:8
following (2)
  38:8;49:25
follows (1)
  3:3
foregoing (1)
  38:15

forfeit (6)
  9:10;15:13;45:13;
  52:5;54:13;56:5
forfeited (8)
  14:19;16:10,12;
  18:25;25:10,13;
  55:18;59:17
forfeiture (15)
  14:24;16:4,16,24,
  25;17:22,24;18:17;
  19:9,12,17;25:18;
  33:11;52:17;59:23
form (12)
  7:17;47:11;49:22;
  52:1;53:20;59:25;
  60:5;63:9,18;64:20;
  65:6,22
formal (2)
  15:9;54:21
former (1)
  9:22;11:1,12;
  12:13;33:8;57:9
forth (3)
  51:17;65:1,1
forwarded (1)
  16:3
found (3)
  42:3;49:19,20
four (1)
  18:16
fulfilling (2)
  46:3;65:15
full (2)
  27:16;34:20
fully (1)
  24:8
functioning (3)
  21:5,6,18
functions (1)
  62:14
further (6)
  26:3;67:3,10,17,
  19;68:14

**G**

Garvey (1)
  3:12
gave (14)
  7:6;13:4,6,9,14;
  14:6;20:2,11;23:1;
  24:15,22;26:1;34:16,
  17
general (6)
  15:6;21:8;31:1,6,
  13;58:8
Generally (1)
  56:4
given (5)
  13:25;19:20;23:17;
  45:4,5
gives (1)
  38:18

giving (1)
  58:22
glad (1)
  49:3
good (3)
  45:25;46:20;49:3
Gormley (1)
  21:15
governed (4)
  6:10,19;7:14;8:22
graduated (1)
  26:13
grounds (1)
  45:8
Group (14)
  6:15;7:10;8:3;
  11:22;22:16;29:4;
  36:8,20,21;37:4,7;
  39:24;40:10;42:10
grunts (1)
  3:25
guess (1)
  8:17
guessing (2)
  8:12,19
guidance (1)
  33:2
guidelines (1)
  32:23

**H**

half (1)
  18:16
handle (1)
  56:13
happen (1)
  19:13
happened (2)
  15:24;33:19
happy (1)
  3:18
HARRIS (51)
  6:5;7:17;8:12,17;
  14:8;17:2,7,13,15;
  20:13;26:5,6,11;
  30:18;34:9,11;35:8,
  16;40:8;43:6;47:8,
  22,24;48:5,10;49:12;
  51:4,7;52:5;53:24;
  54:15;55:23;56:1,4;
  57:3,11,20,24;58:14,
  24;59:6;60:21;61:16;
  62:22;63:14,21;66:4,
  21;67:3,19;68:14
Hartford (1)
  26:12
head (1)
  50:21
hear (4)
  3:19;49:3;56:20;
  64:15
heard (1)

17:25
hearing (4)
  14:7;20:2;25:1;
  48:5
HELLER (45)
  3:10,11;9:18;
  10:20;17:4,11,14,16;
  20:8;18;35:14;39:5;
  43:4;47:1,7,9;48:1;
  49:18,21;50:21;52:1;
  53:20;55:24;56:2,20;
  57:17,22;58:1,21;
  59:25;60:5;63:9,18;
  64:15,20;65:6,22;
  66:2,11,18;67:5,10,
  17;68:16,20
help (2)
  3:18;52:11
himself (1)
  66:17
hold (1)
  5:22
honestly (1)
  35:8
HR (1)
  31:7
human (2)
  26:17,19

**I**

idea (4)
  31:24;43:22;59:22;
  62:5
identical (1)
  19:24
IDENTIFICATION (3)
  3:9;11:18;23:6
identified (1)
  30:12,13;35:11
impact (2)
  32:12;54:16
implementation (1)
  18:17
Inc (4)
  21:11,23;36:22;
  37:7
include (2)
  28:12;36:10
included (4)
  31:19,23;32:8;
  36:12
including (2)
  42:11;52:8
indicate (2)
  41:11;42:18
indicated (2)
  41:16;55:4
indicating (2)
  45:17;46:18
indication (1)
  62:6
individual (1)

7:24
individually (1)
  26:8
individuals (2)
  30:2;44:5
influence (1)
  24:13
information (4)
  50:7;64:3;68:5,9
inquiry (1)
  54:2
inside (1)
  61:3
instead (1)
  4:5
instruct (1)
  31:5
instructions (2)
  24:3,17
intended (2)
  9:5;46:21
intending (1)
  24:9
intention (2)
  46:2;65:15
interactions (1)
  18:5
interest (9)
  33:10,15;34:17,18,
  23;35:4;42:13;62:19;
  63:7
interests (1)
  66:15
interpret (1)
  30:20
interpretation (1)
  61:23
interview (2)
  54:13,19
intimated (1)
  45:23
into (10)
  6:25,25;7:2,8;9:4,
  9;23:2;32:11;43:18;
  57:9
investigation (1)
  43:18
investment (5)
  4:22;15:7;21:9;
  27:15,18
invoked (1)
  33:7
involved (1)
  18:7
involvement (1)
  18:8
IPOs (1)
  27:16
issue (6)
  25:19;38:25;44:23;
  51:16,21;55:10
issues (2)
  12:16,19;29:17,20;

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM   INDEX NO. 159781/2014

NYSCEF DOC. NO. 141        19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C   RECEIVED NYSCEF: 08/13/2018

Barr vs
Liddle & Robinson, L.L.P.

Part 2   Pg 40 of 45

Lisa Bisaccia
September 28, 2017

30:5;31:15

**J**

January (4)
5:1;24:10;25:17,17
Jeffrey (4)
3:13;14:17;26:8;
42:9
jeopardy (1)
9:9
job (1)
15:5
Journal (31)
22:20;23:11;24:2;
35:22;40:2,3,9;41:19,
21;43:16;44:4,8;
45:6;48:15,18;50:2;
51:3,5;52:13,20;
53:16;54:16;55:1,7;
56:19;62:11;66:1;
67:12,15;68:2,8
judgment (2)
33:3;42:22
jumble (1)
4:9
jumping (1)
4:5
June (2)
28:20,22
jury (1)
47:6

**K**

keep (1)
46:21
KELLER (2)
11:4;26:3
Ken (1)
30:3
key (1)
29:16
kind (1)
59:1
knew (3)
8:3;18:20;19:6
knowledge (6)
13:13,17;25:11;
33:9;50:3;59:11
knows (1)
59:13

**L**

language (1)
43:8
last (2)
34:6;42:4
late (5)
20:20;21:19;28:14,
17,19
later (2)

17:24;46:8
Lauren (1)
62:2
law (3)
3:12;26:7;38:18
lawsuit (2)
3:13;59:16
lawsuits (1)
58:5
lawyer (14)
21:5;36:25;37:1;
38:20,23,24;40:13;
41:7;42:9;44:1;
46:18;65:20;66:13,
16
lawyers (11)
19:7;45:9;51:12,
16,20;61:1;62:1;
67:1,22,23;68:11
lawyer's (2)
18:9;64:11
lay (1)
9:5
laying (1)
28:22
lead (1)
29:18
leaders (3)
15:11;27:11;29:5
leadership (1)
5:19
learned (1)
50:14
least (1)
18:5
led (1)
14:20
left (3)
5:1,2;28:8
legal (18)
15:12,15,17,23;
16:11,14;17:25;
18:10;21:24;24:15;
31:15;38:15,25;39:7,
7;54:12;61:23;66:19
letter (27)
11:21,25;12:2,6;
16:1;24:1,8;35:11,
17;36:4,15,18,24;
37:5,6,23;38:12,13,
22;40:23;52:10,20;
53:7,8,19,23;60:4
letting (1)
59:6
licensed (1)
30:8
licensing (1)
30:6
Liddle (36)
3:13,14;13:25;
14:17;23:21;26:7,8;
40:12,16,18;41:4,7,
18;42:1,8,9,18,24;

43:3,13,15;48:21;
49:7;50:25;51:9;
55:19,25;56:6,11,13;
60:12;64:23;65:4;
66:1,8;67:11
Liddle's (2)
65:8,10
light (1)
55:2
likewise (2)
63:17;64:6
Line (10)
14:16;17:17;20:5,
7,8;22:11;23:23;
25:7;33:18;49:25
liquidation (2)
62:7,8
LISA (3)
3:2,6;39:14
litigation (3)
18:19;56:17;60:13
Litsey (8)
15:1,16,18,22;16:5,
21;17:25;20:24
long (3)
4:24;52:15;54:5
longest (1)
17:4
look (2)
41:20;60:19
looked (2)
22:3,6
lots (1)
56:12

**M**

M&As (1)
27:16
ma'am (1)
43:6
Mahoney (4)
44:10,12,19;68:6
making (9)
9:22;18:7;36:11,
12,16;41:13;51:6;
52:24;54:9
management (10)
4:22;5:18;15:7;
21:9;27:10,18;29:6,
16,25;39:18
managing (1)
36:8
many (3)
36:6;41:22;66:20
March (12)
13:22;20:3,11;
23:1,13,17;24:22;
35:11,15;47:17,23,24
MARKED (8)
3:9;8:21;11:17;
13:21;23:5,16;24:25;
41:21

market (1)
5:18
marks (1)
66:6
Massachusetts (1)
39:16
matter (4)
23:19;25:3;29:23;
63:23
matters (1)
21:24
may (27)
4:2;5:2;12:3;
14:19;17:14;23:25;
24:8;35:14,19,25;
36:18;39:14,19;
52:10,13,14,20;53:7,
19,22;55:6;58:2,22;
59:19;60:4;64:4,4
MBA (2)
26:14,16
McChesney (38)
15:2,3,18,21;16:5;
17:17;20:7,25;25:6;
31:5;35:13;38:17,19,
24;40:6,19;47:10,21;
48:7,8,12;49:23;
51:2;55:20;56:23;
57:6;58:2,3,25;59:8;
60:6;63:10;64:9,17,
21;65:7,23;66:23
McCutcheon (1)
38:17
mean (10)
18:1;28:19,23;
32:14;34:10;51:2;
54:21;55:21;61:5;
65:10
meaning (1)
4:19
meant (1)
32:20
media (2)
54:25;55:1
meeting (10)
15:18,20,21;17:18,
20,20,21;20:24;22:9;
54:21
meetings (2)
16:3,7
member (3)
21:10,21;37:25
members (2)
22:15;29:16
memorandum (1)
51:15
memory (4)
21:18;36:7;41:5;
54:9
mentioned (4)
34:6;42:5;44:5;
46:9
message (2)

16:20,22
Michael (10)
3:13;7:25;10:16;
11:14,25;12:3,17,20;
36:1;41:1
might (1)
44:25
million (4)
8:11,11;25:14;
42:13
millions (1)
33:16
mind (1)
23:24
minutes (1)
67:6
missing (2)
19:22,23
Mitch (1)
30:3
Mogenson (13)
15:4,19,20;16:4,9,
18,20,23,24;20:22,
25;21:14;62:2
moment (1)
41:20
money (2)
24:19;33:20
monies (1)
25:9
months (1)
18:16
more (3)
3:18;8:16;38:9
morning (1)
53:1
most (2)
22:3,6
move (1)
49:4
much (4)
8:10,16;14:22;
68:16
Mulcahy (2)
21:3,15

**N**

name (7)
3:5,11;5:3;7:24;
31:9;42:5;44:9
nature (1)
57:20;63:19
near (1)
13:3
need (2)
4:10;41:6
New (2)
13:3;42:9
newspaper (1)
22:15,19
next (2)
38:19;39:12

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM

NYSCEF DOC. NO. 41

INDEX NO. 159781/2014

RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C,
Part 2    Pg 41 of 45

Liddle & Robinson, L.L.P.

Lisa Bisaccia
September 28, 2017

nobody (1)
68:7
nodding (1)
4:2
nods (3)
3:25;16:18;18:4
noncash (1)
25:14
none (1)
59:3
non-legal (1)
51:10
notice (1)
19:13
number (2)
3:16;9:4
numerous (1)
12:20

**O**

Object (8)
7:17;49:21,23;
56:23;57:4,16;64:20;
65:7
objection (30)
3:19,20;17:11;
39:5;40:6,19;43:4;
47:1,10;49:18;51:2;
52:1;53:20;55:20;
57:18,19,21;59:25;
60:5,6;63:9,10,18;
64:9;65:6,22,23;66:2,
18,23
objectionable (1)
17:9
obtain (1)
61:25
obviously (2)
34:20;45:4
occur (1)
18:17
occurred (3)
13:9;30:23;52:16
Off (4)
20:18,19;28:22;
48:9
offered (1)
52:21
offers (1)
54:9
officer (1)
21:21
officers (1)
21:1
offices (1)
62:16
officially (1)
56:25
Once (2)
49:21;67:14
one (21)
6:19,22;11:14;

12:16,19;15:10;16:4;
19:22;20:21,25;
22:21;29:13;32:7;
34:1,1;38:9;39:15;
42:2;58:2,25;59:23
ongoing (1)
56:17
only (4)
32:3,5;33:21;42:5
operations (1)
62:15
opinion (12)
22:1;45:4;47:13;
51:10;62:17,23;
63:15;64:5,13;65:3,
19;66:16
opinions (1)
51:21
opposed (4)
4:2,8;43:15;49:19
options (3)
6:20,22,23
orders (1)
68:19
original (3)
59:4;68:20,21
others (7)
22:21;36:4,6;
45:14;50:11;56:3,10
otherwise (2)
24:18;33:12
out (20)
4:12;9:5;11:21,23;
12:8;17:21,23;24:18;
25:16;29:5,8,9;
36:13;37:22;46:8;
50:13;51:13;55:2;
56:19;68:8
outside (2)
51:3;61:2
over (2)
12:25;41:3
overlap (1)
27:14
overseas (1)
27:18
oversee (2)
10:13,14
oversight (3)
4:20;5:13,15
own (1)
29:6
owned (2)
42:15;61:20
ownership (2)
34:17,23

**P**

package (1)
31:20
Page (16)
10:6;13:24;14:15;

17:17;20:5;22:11;
23:20,23;25:5,7;
42:3;47:21,22;48:11,
12,13
pages (2)
9:19;47:17
paid (4)
7:4;11:23;25:16;
41:11
Pamela (1)
21:15
panel (1)
67:1
paragraph (8)
30:14;37:6;38:14;
39:2;42:2,4,7;43:19
paraphrasing (1)
37:8
parentheses (1)
16:17
part (10)
8:3;9:8;12:21;
17:5;19:11;42:2;
45:15;54:24;58:12;
59:16
participated (2)
15:14;32:6
particular (4)
23:22;32:12;50:4;
58:11
party (1)
57:5
passage (1)
34:25
past (1)
41:23
PAUSE (1)
49:13
pay (4)
24:4,9,14;42:12
paying (2)
10:16;45:19
payment (3)
8:22;10:11;52:22
payments (11)
9:6,10,22;10:14;
11:8;33:12,16;37:10;
45:8,13;60:16
payroll (3)
5:21;10:15;62:14
people (9)
11:22;24:3,4;
28:22;29:20;30:4;
33:12;36:8;56:6
percent (1)
42:14
period (4)
12:25;18:18;23:25;
67:25
person (2)
14:22;44:9
person's (1)
31:9

phantom (1)
34:19
phonetic (3)
21:4,4,15
phrase (1)
43:13
place (2)
25:2;54:6
placed (5)
6:12;11:16;13:20;
24:24;55:2
placing (2)
23:4,15
plaintiff (2)
36:1;57:18
plaintiffs (4)
57:1;58:4,12;59:2
PLAINTIFF'S (3)
3:8;9:12,20
Plan (47)
6:16,19;7:1,3,8,11;
9:11;10:12,16,18,21,
23;14:18,23;15:13;
16:2,15;18:24;19:6,8,
9,11,14,15,15,16,18,
20;21:21;24:13,16;
34:3,3,4,6,8,15,15,22;
35:8;37:13;53:8,9;
60:20;61:1,9,12
plans (12)
9:4,24;11:24;12:7;
24:18;32:6,8;33:25;
35:6;37:8,12;38:10
play (1)
5:9
please (13)
3:5,17,20,23;4:1,4,
11;8:18;26:11;49:12;
56:21;64:18;68:19
plus (1)
68:20
PM (1)
68:24
point (1)
46:8
pointed (1)
12:8
portion (1)
6:24
portions (1)
14:13
pose (1)
17:8
posed (1)
20:14
position (2)
44:14;62:3
possession (1)
22:9
practices (1)
31:7
predecessor (3)
4:25;28:2,4

prepare (2)
7:21;53:4
prepared (2)
19:17,18
present (1)
36:1
president (1)
21:7
previously (2)
12:8;29:7
pricing (1)
5:18
principals (1)
36:9
prior (8)
16:1,8;19:19;
21:20;22:3;30:13;
46:12;60:12
problem (2)
4:12;14:5
problematic (1)
29:18
process (2)
14:21;42:25
programs (5)
4:21;5:14,16,17,20
promises (3)
46:1,21;65:14
promoted (3)
26:25;28:9,15
pronounce (1)
15:2
provide (5)
10:1;32:11;33:1;
61:9;62:6
provided (4)
10:4;32:19,22;
65:17
provision (26)
8:25;9:2,13,16;
21:20;22:18;25:20,
21;31:19,23;32:4,7,
10,13,17;33:7,13,21;
39:22;45:1;47:4;
57:8;58:7;60:17,18,
23
provisions (25)
9:3;7;15:23;16:15;
19:7,24;24:13,16;
30:13;31:3;37:17;
38:9;39:24;40:14,17;
42:22;45:7,9;49:6;
51:12;55:6;58:9;
61:5,8,9
public (1)
44:16
published (3)
23:10;50:2;53:17
pursuant (1)
9:23
put (7)
8:4;9:4,9;31:2,4;
45:22;57:13

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM INDEX NO. 159781/2014

NYSCEF DOC. NO. 41

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C

Part 2    Pg 42 of 45

RECEIVED NYSCEF: 08/13/2018

Barr - vs -

Liddle & Robinson, L.L.P.

Lisa Bisaccia

September 28, 2017

**puts (1)**
65:18

**Q**

**questioner (2)**
48:15,21
**quotation (1)**
66:5
**quotations (2)**
42:17;66:7
**quote (2)**
66:1,5
**quoted (1)**
43:3
**quotes (5)**
43:7;44:4,9;48:16,
22
**quoting (1)**
42:18

**R**

**rather (1)**
25:17
**rationale (1)**
59:22
**read (28)**
14:11,13;17:3,5;
20:9;22:14;23:1;
24:21;37:2;42:7;
44:24;45:2;46:15;
49:1;50:17,19,20,
23;51:7,7;53:11;
54:17;56:22;64:17,
19;67:14;68:1,1
**reading (3)**
17:10;24:1;41:25
**reason (1)**
46:17
**reasons (4)**
29:9,11,13;47:4
**recall (10)**
8:10;12:11,22,24;
13:2;41:10;47:12;
53:25;54:5,7
**receipt (1)**
56:18
**receive (1)**
32:15
**received (2)**
19:24;36:4
**recently (2)**
22:3,6
**RECESS (1)**
67:9
**recognize (3)**
6:16;11:18;23:6
**recollection (2)**
14:2;62:8
**recommendation (3)**
31:18;55:13,15
**record (13)**

3:5,21;4:4;9:18;
17:12;20:18,19;23:2;
48:9;53:21;57:13;
59:2;68:19
**refer (1)**
47:15
**referenced (1)**
23:13
**references (1)**
12:6
**referred (6)**
19:7;35:21;41:3;
42:2;45:9;66:25
**referring (1)**
22:19
**reflect (6)**
9:19;14:6;20:1;
22:25;24:21;25:25
**reflects (2)**
14:14;20:11
**refresh (1)**
14:2
**refreshed (1)**
21:17
**refused (1)**
59:16
**regard (4)**
15:8;30:8;48:24;
65:20
**regarding (16)**
30:12;31:15;32:10;
41:13;44:23;47:13,
19;49:16;51:21;
52:23;55:10,18;
56:17;60:15;61:14;
62:4
**regular (2)**
7:20;35:9
**regulatory (3)**
29:17,20;30:5
**relate (1)**
37:16
**relation (1)**
60:3
**relations (1)**
44:16
**release (4)**
41:12;52:22;56:16;
59:17
**released (1)**
62:13
**remember (21)**
8:15;21:17;22:10;
32:9,9;35:8,10;38:2,
4,6;41:15;46:13;
50:13,16;51:6;54:4;
56:8;59:21;60:11;
61:2;67:24
**rephrase (7)**
3:18,23;11:10;
47:14;58:7;59:8;
64:10
**report (2)**

48:22,23
**reported (1)**
27:11
**REPORTER (7)**
3:4,24;4:7;43:24;
66:10;68:4,18
**reporters (1)**
42:18
**reporter's (1)**
43:9
**represent (2)**
3:12;26:7
**represented (16)**
9:12;39:3,13,20;
40:4,16,17;41:2,4;
54:8;55:19,24;56:6,
11;60:7,8
**representing (3)**
42:10;57:15,18
**reputation (2)**
46:5,11
**reputations (1)**
43:2
**required (1)**
7:5
**requiring (1)**
52:17
**resource (2)**
15:12;21:24
**resources (2)**
26:17,19
**respect (6)**
5:10,22;6:2;30:11;
57:3;59:2
**responses (1)**
3:24
**responsibilities (1)**
10:10
**responsibility (1)**
10:13
**responsible (2)**
4:20;5:13
**restricted (9)**
19:11;24:5;34:3,7,
14,15;35:7;37:13,14
**result (2)**
25:18;37:10
**resulting (1)**
16:15
**retail (1)**
27:17
**reveal (1)**
59:10
**review (4)**
14:10;37:2;51:16;
53:1
**reviewed (5)**
14:9;37:8;53:6,7,
10
**right (13)**
15:2;16:6;17:1;
20:22;21:2;22:2;
33:17;36:18;39:10;

42:7;57:4,7,15
**rights (1)**
52:23
**Robert (2)**
21:3;26:7
**Robertson (65)**
5:4,7,19,22;6:3,7,
15,20;7:10,13,14,20;
8:4,5;9:4,8,22,23;
10:9,24;11:1,2,4,6,
12;12:13;15:8;21:1,
7,11,16,22,22;27:4,8,11,
15,21,22;28:12,14,
17;29:3,5,14,19;31:2,
13;32:3,5;34:16,18,
20,23;36:19;37:7;
39:19;42:14;43:1;
45:18;46:18;56:15;
61:14,20,22;62:10
**Robinson (8)**
3:14;5:10;55:19,
25;56:7,11,13;67:11
**role (7)**
4:17;5:10,12;15:8,
9;21:24;60:23
**roughly (1)**
25:15
**RSGI (1)**
38:16
**run (1)**
28:9

**S**

**sabotage (2)**
45:24;48:2
**sabotaged (2)**
45:18;65:13
**sabotaging (2)**
47:19;49:17
**sale (6)**
45:18,24;46:20;
47:19;49:17;65:14
**sales (1)**
42:25
**same (2)**
15:19;50:15
**satisfying (1)**
46:2
**save (1)**
24:18
**saw (1)**
24:11
**saying (5)**
29:21;45:3;57:12
**scheduling (1)**
48:3
**Schubert (1)**
3:12
**second (1)**
38:14
**section (5)**
9:15;12:6;37:11,

12,13
**sections (1)**
37:16
**seeking (6)**
34:5;35:2,5,7,9;
42:11
**sell (3)**
29:3;30:8;45:25
**send (1)**
68:22
**sent (5)**
11:21,25;12:3;
36:15;67:11
**sentence (5)**
39:12;42:21,23;
43:3,9
**SEP (1)**
53:8
**separate (3)**
27:7,10;56:2
**serves (2)**
36:7;41:6
**service (1)**
27:17
**sessions (2)**
48:5,7
**set (2)**
65:1,1
**setting (1)**
51:17
**settled (2)**
58:17;59:3
**settlement (7)**
58:6,11,15,23;59:1,
10,13
**settlements (3)**
56:25;57:1;58:4
**several (1)**
12:25
**shook (1)**
50:21
**showing (1)**
14:21
**shut (5)**
8:5;28:14,16,17;
61:22
**side (3)**
29:19,20;68:22
**sign (1)**
59:16
**signed (3)**
36:18;41:12;56:16
**similar (2)**
32:7;36:4
**simply (1)**
57:15
**sit (1)**
13:13
**sits (1)**
38:19
**skip (1)**
22:11
**so-called (1)**

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM

NYSCEF DOC. NO. 41

INDEX NO. 159781/2014

RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C.
Part 2    Pg 43 of 45

Barry -vs- 41

Liddle & Robinson, L.L.P.

Lisa Bisaccia

September 28, 2017

18:12

**social (1)**
54:25

**somebody (3)**
16:11;27:12;43:9

**Someone (3)**
15:16;16:13;55:21

**someone's (1)**
18:14

**sorry (5)**
35:16;47:22;49:24,
25;61:16

**sparked (1)**
54:17

**speak (2)**
55:14;66:9

**speaking (3)**
56:4;60:11;66:8

**specializing (1)**
27:16

**specific (3)**
17:8;37:21;55:12

**specifically (3)**
9:7;30:12;47:17

**specificity (1)**
55:15

**specifics (2)**
18:6,21

**specified (2)**
38:13;61:10

**spelled (1)**
37:22

**spoke (4)**
16:22,24;22:7;41:8

**spreadsheets (1)**
14:21

**stake (1)**
43:1

**stamped (1)**
6:14

**stand (1)**
29:25

**standing (1)**
24:17

**start (2)**
47:15;66:12

**started (3)**
4:25;28:20,22

**state (3)**
3:4;17:11;57:17

**stated (3)**
3:20;47:3;57:19

**statement (3)**
43:12;47:2;67:12

**statements (1)**
65:17

**states (1)**
38:14

**status (1)**
62:10

**Stephens (53)**
5:4,10,23;6:3,8,15;
7:10,13,14;8:5;9:22,

23;10:10,24;11:1,3,5,
6,12;12:13;15:9;
21:1,7,11,16,22;27:5,
8,11,15,21,22;28:13,
14,17;29:5,19;31:2,
14;32:3,5;34:16,18,
20,24;36:19;37:7;
39:19;45:19;61:14,
20,22;62:10

**Stephens's (1)**
7:21

**still (3)**
49:14;61:19;62:13

**stock (8)**
6:25;7:7;13:3;
25:9;30:9;34:19;
35:4;37:10

**stop (1)**
17:15

**straight (1)**
20:14

**Street (36)**
13:23;22:20;23:10,
12,19;24:1;25:2;
35:22;39:15;40:2,3,
9;41:19,21;43:16;
44:4,8;45:6;48:14,
18;50:1;51:3,4;
52:13,19;53:16;
54:16;55:1,7;56:19;
62:11;65:25;67:12,
15;68:2,8

**strike (1)**
66:10

**structured (1)**
29:15

**subject (5)**
10:22;16:4;34:24,
24;57:2

**subsequent (2)**
15:21;55:11

**subsequently (1)**
26:14

**subsidiary (1)**
27:8;34:21

**suggesting (1)**
57:12

**suggests (1)**
40:23

**sure (3)**
17:6;32:14;41:22

**sworn (2)**
3:3;13:11

**T**

**takers (1)**
29:4

**talk (2)**
41:6;58:10

**talked (3)**
21:19;54:19;68:4

**talking (7)**

16:8;19:22;30:22;
44:8;48:17;63:13;
68:12

**team (2)**
29:16;54:12

**telephone (1)**
18:3

**term (2)**
8:25;58:23

**termination (1)**
38:8

**terms (2)**
10:22;31:8

**testified (2)**
53:18,22

**testifies (1)**
3:3

**testify (1)**
59:19

**testifying (2)**
23:25;53:1

**testimony (33)**
13:4,7,10,11,14,17,
25;14:2,6,15;20:1,2,
11;22:25;23:13,17,
20;24:22;25:4,25;
26:1,18;30:14;35:21;
38:3;44:22;45:16;
46:12,24;47:12,16;
53:14;55:4

**thought (9)**
19:4;24:11;44:24;
45:2;46:17;47:3;
54:18,22;66:24

**thoughts (1)**
51:17

**three (4)**
8:11;18:16;25:15;
37:16

**times (5)**
12:25;41:22;64:8;
66:3,20

**title (6)**
5:22;25;26:22,23;
28:4,7

**titled (1)**
6:15

**today (5)**
3:15;13:10,14;
30:23;38:19

**together (1)**
16:5

**told (5)**
21:25;22:12,13,14;
67:22

**tone (1)**
36:25

**took (5)**
18:16;25:2;52:12,
14;54:5

**total (1)**
36:7

**transcript (12)**

14:5,12,13;17:10;
20:6,16;23:17;24:25;
25:7;47:16;48:11;
49:11

**transcripts (1)**
53:11

**transmit (1)**
16:20

**transmitted (1)**
16:21

**treatment (1)**
61:10

**tried (4)**
29:3,5;45:24,25

**Trinity (1)**
26:12

**true (6)**
7:9;12:2;46:9;
49:5;65:2;68:7

**truth (1)**
13:6

**truthful (2)**
13:15,18

**try (3)**
3:23;8:17;58:9

**two (7)**
8:11;27:7;29:13,
16;33:25;35:5;68:20

**U**

**ultimately (1)**
28:8

**unable (1)**
29:14

**under (6)**
9:5;10:11,17;
33:13;34:6;59:23

**unfolded (1)**
26:20

**unit (32)**
19:11;24:5;34:3,7,
14,15;35:7;37:13,14

**units (1)**
34:19

**universally (1)**
36:15

**University (1)**
26:14

**unless (2)**
14:9;17:7

**unrepresented (2)**
40:22;60:3

**up (5)**
14:20;24:1;29:25;
58:22

**use (1)**
55:21

**V**

**value (1)**
43:1

**verbal (1)**
3:24

**verbatim (4)**
42:19;43:5,7;66:5

**vest (1)**
10:2

**vested (2)**
24:10;25:11

**vice (1)**
21:6

**view (2)**
55:5;57:14

**violate (4)**
30:4;57:7,23;58:8

**violated (8)**
38:9;39:24;40:14,
16,18;42:22;47:3;
55:6

**violating (1)**
45:6

**violation (12)**
15:22;16:15;18:11,
12;19:3;21:20;22:1,
14,17;24:16;37:11;
51:11

**violative (4)**
32:16;39:22;44:25;
49:6

**W**

**wait (2)**
3:20;4:4

**walked (1)**
17:21

**Wall (32)**
22:20;23:10,12;
24:1;35:22;40:2,3,9;
41:19,21;43:16;44:4,
8;45:5;48:14,18;
50:1;51:3,4;52:13,
19;53:16;54:16;55:1,
6;56:19;62:11;65:25;
67:12,14;68:2,8

**way (8)**
17:5;24:18;26:8;
45:22;50:1;58:8;
59:4,9

**wealth (2)**
15:6;21:9

**Welch (3)**
31:1,10,11

**weren't (1)**
29:25

**what's (2)**
20:15;31:9

**Whiteford (1)**
30:3

**whole (2)**
14:12;17:3

**wholesale (2)**
4:21;28:5

**whose (1)**

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
INDEX NO. 159781/2014
NYSCEF DOC. NO. 141
19-12346-shl   Doc 55-4   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
RECEIVED NYSCEF: 08/13/2018
Barr v vs
Liddle & Robinson, L.L.P.
Part 2   Pg 44 of 45
Lisa Bisaccia
September 28, 2017

59:17

**wind (1)**
28:23

**wind-down (4)**
15:11;19:19;21:25;
28:20

**withdraw (1)**
47:14

**withhold (7)**
11:8;32:1;33:16;
43:20;52:3,5;55:13

**within (1)**
29:14

**without (1)**
49:15

**WITNESS (44)**
3:6;6:6;8:14,19;
10:19;11:2;12:22,24,
25;14:11;16:18;17:8;
18:4;20:15;24:6,19;
25:11,13,19,21,22;
26:10;30:17;31:6;
34:7;43:5;44:7;
47:23,25;48:3;49:24;
50:21;52:2;54:14;
57:7,15,22;58:10;
59:11;60:19;61:15;
63:19;66:19;68:21

**word (3)**
48:1;55:21;56:24

**words (6)**
3:25;28:18;47:18;
66:10,14,25

**work (4)**
7:3;29:5,8,9

**working (3)**
5:18;19:8;26:19

**wound (1)**
28:25

**write (5)**
30:17;35:17;51:15,
18,20

**writing (1)**
62:11

**written (4)**
32:11;33:1;52:13;
53:19

**wrote (5)**
36:24;37:1,1;
43:24;51:24

---

## Y

**year-end (1)**
7:4

**years (4)**
6:7;19:10,16;50:16

**York (2)**
13:3;42:9

**Yup (1)**
64:24

---

## 0

**002319 (1)**
6:14

**002329 (1)**
6:14

**01 (2)**
19:25;35:6

**02 (8)**
23:11;24:7;25:16;
28:14,17,18,19;35:6

**03 (6)**
24:8,10;25:16,17;
28:9,15

**04 (2)**
5:2;25:17

---

## 1

**1 (8)**
3:8;6:12,13;8:21;
9:12,20;10:1;12:9

**1,063 (1)**
25:14

**10 (2)**
23:18;24:22

**10:00 (2)**
13:22,23

**101 (1)**
25:7

**109 (1)**
48:13

**11 (1)**
48:5

**11:00 (1)**
3:1

**12 (2)**
25:7;48:6

**12:52 (1)**
68:24

**126 (1)**
14:15

**129 (1)**
17:17

**13 (1)**
48:7

**14 (3)**
25:1;26:1;48:7

**143 (2)**
20:5,7

**1442 (2)**
48:11,12

**146 (1)**
22:11

**15 (1)**
50:16

**1978 (1)**
26:13

**1998 (1)**
5:1

**1999 (1)**
27:23

---

## 2

**2 (6)**
11:17;12:3,6;
35:13,14;42:3

**20 (4)**
13:23;23:18;25:2;
66:3

**2000 (2)**
20:20;21:19

**2001 (5)**
4:13;6:7;19:10,21;
34:1

**2002 (30)**
4:13;6:7,15;7:10,
14;8:6,8,9:11,21;
10:11,17,21,25;
11:11;12:12;19:9,10,
14,16,21,22;20:20;
26:23;34:1;35:1,23;
42:12;52:14,16;
61:16

**2003 (18)**
9:21;12:3;14:19;
18:15;21:19;23:25;
26:24;35:11,19,25;
39:19;52:10,14,14,
20;53:8,19;60:4

**2004 (1)**
28:8

**2005 (10)**
13:22;14:3;20:3;
23:1,13,18;24:22;
25:1;26:1;47:17

**2006 (3)**
13:1;61:13,15

**2007 (1)**
13:1

**22 (1)**
22:11

**23 (3)**
20:5,8;42:14

**25 (1)**
23:23

**2nd (10)**
35:11,15,19,25;
36:18;39:19;52:20;
53:19,23;60:4

---

## 3

**3 (3)**
13:21;20:7,8

---

## 4

**4 (2)**
23:5;41:22

**4.6 (1)**
37:12

**42 (2)**
36:8;59:3

---

**45.6 (1)**
42:13

---

## 5

**5 (3)**
23:16;48:8,13

---

## 6

**6 (4)**
3:8;24:25;25:5;
42:4

---

## 7

**7 (2)**
10:6,6

**7.1 (2)**
10:7,8

---

## 8

**8 (5)**
9:19;14:16;17:17;
23:20;37:13

**8.1 (5)**
9:17,19;12:7;
30:16;37:11

**81 (1)**
23:23

**83 (2)**
47:17,22

**84 (2)**
13:24;47:17

---

## 9

**9 (7)**
9:19;13:22;20:3,
11;23:1,13;47:23

**9:30 (1)**
23:18

**9:35 (1)**
25:2

**98 (1)**
5:7

**9th (2)**
47:17,24

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM

NYSCEF DOC. NO. 142

INDEX NO. 159781/2014

RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-4    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 2    Pg 45 of 45

# EXHIBIT D