FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-8    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 6    Pg 1 of 8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------X
MICHAEL BARR,

                                                    *Plaintiff*,

                              -against-

LIDDLE & ROBINSON, L.L.P. and JEFFREY
L. LIDDLE,

                                                 *Defendants*.
---------------------------------------X

Index No. 159781/2014

AFFIRMATION OF
HAL R. LIEBERMAN

      HAL R. LIEBERMAN, an attorney duly admitted to practice law in the State of New York, affirms under penalties of perjury:

      1.     Plaintiff Michael Barr ("Barr" or "Plaintiff"), through his attorneys, Garvey Schubert Barer, P.C. ("GSB" or the "Firm"), has retained me as an ethics expert to render an objective opinion in connection with the above captioned matter. I do not provide this opinion, nor do I expect to testify if that is required, in the context of an attorney-client relationship with the Firm. Rather, the opinion is offered as my best professional assessment of the ethical issues raised, and the reasonable and customary standards that apply, in connection with the questions posed herein.

      2.     In particular, the Firm has requested my opinion as to whether defendants Liddle & Robinson, L.L.P. ("L&R") and Jeffrey L. Liddle ("Liddle," and together with L&R, the "Defendants") acted in accordance with accepted standards of care and practice,

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
19-12346-shl   Doc 55-8   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 6   Pg 2 of 8
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

and in compliance with the applicable rules of professional conduct, in the course of their representation of Plaintiff.

3.      In brief, based upon the assumed facts, accepted standards, and applicable ethical rules set forth below in more detail, in my opinion Defendants: failed to competently pursue Plaintiff's legal interests; failed to promptly inform Plaintiff of any decision or circumstance to which Plaintiff's informed consent was required, and failed to reasonably consult with Plaintiff as to the means by which the Plaintiff's interests were to be pursued; intentionally prejudiced Plaintiff; violated the pertinent ethics rules governing conflicts of interest; were dishonest and disloyal; and engaged in conduct that adversely reflects on the lawyer's fitness as a lawyer.

4.      In sum, within a reasonable degree of legal certainty, Defendants' conduct in the course of the attorney-client relationship was at best negligent and more properly can be described as malfeasance; Defendants' conduct was a proximate cause of Plaintiff's losses, and Plaintiff would not have suffered his losses "but for" Defendants' negligence and malfeasance; and, Plaintiff suffered actual and ascertainable damages.

I.      PROFESSIONAL QUALIFICATIONS

5.      My qualifications as an expert on lawyers' ethics and related areas are set forth in detail in the resume that is attached hereto as Exhibit "A." It describes my educational background, legal experience, bar admissions, academic affiliations, professional activities, bar committee memberships, publications and participation as a lecturer at bar seminars or on CLE panels related to professional responsibility or attorney discipline. In brief, I have worked in the field of legal ethics and attorney discipline on a

2

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018
19-12346-shl   Doc 55-8   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 6   Pg 3 of 8

full-time basis for the past more than thirty years, during nearly ten of which (from January 1989 until June 1998) I held the position of Chief Counsel to the Departmental Disciplinary Committee (the "Committee") for New York's First Judicial Department (covering approximately 75,000 lawyers in Manhattan and the Bronx). In that connection, I reviewed literally thousands of lawyer disciplinary matters, including numerous cases involving interpretation of the lawyer disciplinary rules and rules of professional conduct concerning, among other things, competence and diligence, communication, intentionally prejudicing a client, conflicts of interest, dishonesty and disloyalty, and conduct adversely reflecting on a lawyer's fitness as a lawyer. During the same period, I formally prosecuted more than 50 cases involving lawyer misconduct, and personally handled hundreds of less serious matters.

6. Further, in my capacity as Chief Counsel to the Committee I provided my professional opinion on legal ethics and disciplinary issues on numerous occasions to Justices of the Appellate Division and the Appellate Term, to the New York Office of Court Administration, to other state and federal judges (including, frequently, the Chair of the Grievance Committee for the Southern District of New York), to lawyer and non-lawyer members of the Committee, to bar committees, and to members of the bar who sought my advice. Additionally, for thirteen years I was a member of the adjunct faculty of Brooklyn Law School, where I taught a course entitled The Legal Profession, was recently an Adjunct Professor at Columbia Law School teaching legal ethics, and have been a visiting lecturer on legal ethics at several other law schools. I have also published articles for professional journals on the subject of legal ethics and professional discipline, have lectured widely in the field, and have served on New York State, New York City and New York County bar

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-8    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 6    Pg 4 of 8

committees concerned with professional discipline and professional responsibility. In 1996, I was elected to membership in the American Law Institute and served on the Members' Consultative Group for the Restatement of the Law Governing Lawyers. I am a current member of the Committee on Professional Ethics of the New York City Bar Association, a past member of the Committee on Professional Responsibility of the New York City Bar Association, the principal author of N.Y. City Op. 2000-1 (2000), and I was Chair of the Committee on Professional Discipline of the New York City Bar Association from 2001-2004. Since 1998, I have provided expert testimony on legal ethics in approximately 45 cases, state and federal. I am co-author of the recently published book NEW YORK ATTORNEY DISCIPLINE: PRACTICE AND PROCEDURE (ALM, 2018). I am also a regular columnist for the New York Law Journal on the subject of Professional Discipline, and I publish a blog at NYLegalEthics.Attorney.

## II. REMUNERATION

7. I am being compensated at the rate of $750 per hour associated with this matter, which is my customary hourly rate. My compensation is in no way dependent on the conclusions I have reached or the outcome of this case.

## III. MATERIALS REVIEWED

8. In connection with this matter, I have reviewed the following materials:

- March 9, 2000 Terms of Employment for Plaintiff at FleetBoston Robertson Stephens, Inc. ("RSI")

- September 28, 2001 Deferred Bonus Information for Plaintiff

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
19-12346-shl   Doc 55-8   Filed 09/05/19   Entered 09/05/19 18:22:01   Exhibit C
Part 6   Pg 5 of 8
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

- October 2, 2002 Letter to Defendants from Plaintiff Enclosing Separation Agreement and Release and Original Information Pack
- Plaintiff's Separation Agreement and Release
- November 11, 2002 Letter from Defendants to Plaintiff
- November 22, 2002 Defendants' Retainer Agreement
- December 10, 2002 Memorandum from "JLL" to "CAP" re: RSI
- December 10, 2002 Emails from Christine Palmieri to Susanne Craig
- December 11, 2002 Press Release (two versions)
- December 11, 2002 Statement of Claim
- December 12, 2002 *Wall Street Journal* article "Robertson Band Claims Fleet Owes Some Bonuses"
- December 12, 2002 Email from Sue Craig to Liddle
- RSI's Action of Directors In Lieu of Meeting
- May 2, 2003 Letter Cancelling Plaintiff's Deferred Compensation
- May 13, 2002 Letter from Liddle to Clients regarding Cancellation of Claim
- June 20, 2003 Amended Statement of Claim
- July 8, 2003 Email from Defendants to Arbitration Claimants regarding claims for recovery of CEP compensation and Amended Statement of Claim
- March 24, 2004 Memorandum from "JRH;" Subject: "Conversation with Michael Barr"

- August 10, 2006 Letter from Defendants to Plaintiff
- Affidavit of Plaintiff – Summary Judgment motion
- September 12, 2007 FINRA Decision and Award
- Petition for *Writ of Certiorari, Alt v. Robertson Stephens Group, Inc.*, 2011 WL 3562629 (2011)
- July 28, 2016 Liddle's Deposition Transcript
- July 26, 2016 Plaintiff's Deposition Transcript
- September 29, 2017 Deposition Transcript of Lisa Bisaccia
- Screenshot of Defendants' Website Press Section
- Plaintiff's Complaint and Defendants' Answer
- Plaintiff's Response to Defendant's First Set of Interrogatories
- Defendants' Verified Bill of Particulars
- First Circuit Decision, *FleetBoston Financial Corporation v. Eric E. Alt*
- Massachusetts District Court Action, First Amended Counterclaim

IV.   **ASSUMED FACTS**

9.   The factual evidence developed in connection with this matter, and upon which I rely in reaching my opinions, is discussed below. I did not independently investigate any facts. The facts stated herein come only from the documents provided for my review and consultations with Plaintiff's counsel. All statements herein in are subject to the above

6

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018

19-12346-shl    Doc 55-8    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 6    Pg 7 of 8

qualifications. I reserve the right to supplement or amend this Affirmation if new or different facts should emerge.

- In the spring of 2000, Plaintiff became a Managing Director of the now defunct Robertson Stephens investment banking firm ("RSI").

- Plaintiff's compensation for work he performed in 2001 consisted of a base salary and an annual bonus. Plaintiff's 2001 bonus of $1,299,999.84 was deferred (the "Deferred Compensation") pursuant to an agreement with RSI. The agreement was known as the Cash Equivalent Plan (the "CEP"). The CEP guaranteed that Plaintiff's Deferred Compensation would vest as follows: The first third on January 1, 2003 (the "First Vesting") and the remaining two-thirds on January 1, 2004 (the "Second Vesting").

- Subject to Section 7.2 of the CEP, RSI was to pay Plaintiff's Deferred Compensation as soon as practicable following the vesting dates.

- Section 8.1 of the CEP contained a Non-Disparagement Clause which provided, in relevant part:

    In the event that, at any time during the six month period immediately following any Participant's Termination Date..., the Participant...(ii) publicly disparages any member of the RS Group or Parent or any of their respective officers, directors, or senior executive employees or otherwise makes any public statement that is adverse inimical or otherwise materially detrimental to the interests of such Persons or individuals, or if the Company or the Committee, in its discretion or such officer or officers of the Company as the Company may from time to time designate, determines that the Participant's actions are adverse to the best interests of RS Group or Parent, the Participant shall immediately forfeit any rights in respect of any [Deferred Amount or Award Amount] that is not Vested and the earnings thereon.

FILED: NEW YORK COUNTY CLERK 08/13/2018 01:47 PM
NYSCEF DOC. NO. 163
INDEX NO. 159781/2014
RECEIVED NYSCEF: 08/13/2018
19-12346-shl    Doc 55-8    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit C
Part 6    Pg 8 of 8

- Once vested, the Deferred Compensation was guaranteed and could not be forfeited for a violation of Section 8.1 of the CEP.

- Plaintiff's termination date ("the Termination Date") was July 17, 2002. Accordingly, Section 8.1 was effective until January 17, 2003.

- In November 2002, Plaintiff, together with other former RSI employees (the "Claimants"), engaged the Defendants to commence an arbitration proceeding against RSI, RS Group, FleetBoston, and Fleet Securities, Inc., seeking, *inter alia*, damages arising from the failure to pay promised and earned bonus compensation from 2001 and 2002.

- At the time the Claimants engaged Defendants, there were no issues in connection with the Deferred Compensation. Liddle testified at his deposition that:

    > The people who had the cash equivalent plan amounts for '01 and '02 were adamant that they had been told on – on or about the July 17th date when they were all told what would happen, that they would get on the vesting dates their cash equivalent plan, plus whatever interest rate they were getting on it, whether or not they signed the separation agreement and release. (Liddle deposition, pp. 22-23)

- Liddle was therefore aware, prior to December 10, 2002, that the Claimants had been told in July 2002 that FleetBoston planned to pay Deferred Compensation under the 2001 and 2002 CEP agreements.

- Liddle has been practicing employment law since 1979 and has experience with deferred compensation and non-disparagement provisions.

- As part of their representation of Plaintiff, Defendants reviewed the CEP, including Section 8.1. Their review occurred prior to December 10, 2002.

- FleetBoston owned RSI during the period in which Plaintiff became RSI's Managing Director. Likewise, FleetBoston

8