# **EXHIBIT D**

FILED: NEW YORK COUNTY CLERK 12/05/2018 09:31 AM
NYSCEF DOC. NO. 181
19-12346-shl    Doc 55-16    Filed 09/05/19    Entered 09/05/19 18:22:01    Exhibit D
Pg 2 of 7
INDEX NO. 159781/2014
RECEIVED NYSCEF: 12/05/2018

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **MANUEL J. MENDEZ**    PART **13**
*Justice*

MICHAEL BARR,
                  Plaintiff,
- against-

LIDDLE & ROBERTSON, LL.P. and
JEFFREY L. LIDDLE,
                  Defendants,

INDEX NO. **159781 /14**
MOTION DATE **11-21-2018**
MOTION SEQ. NO. **005**
MOTION CAL. NO.

The following papers, numbered 1 to **16** were read on defendants' motion for summary judgment and plaintiff's cross-motion for summary judgment:

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1 - 4 |
| Answering Affidavits — Exhibits | 5 - 11, 12 |
| Replying Affidavits | 13, 14 - 16 |

**Cross-Motion:**    X  Yes    ☐  No

    Upon a reading of the foregoing cited papers it is ordered that defendants' LIDDLE & ROBERTSON, L.L.P. and JEFFREY L. LIDDLE's motion for summary judgment dismissing plaintiff's complaint, is denied. Plaintiff's cross-motion pursuant to CPLR §3212 for summary judgment on the complaint and for an award of damages against the defendants, is denied.

    This action arises from an alleged legal malpractice occurring in December 2002 and January 2003. Plaintiff was a managing director at an investment firm, Robertson Stephens Inc. (hereinafter "RSI"), which was indirectly owned by Robert Stephens Group Inc. (RSGI), both entities were subsidiaries of the parent company, FleetBoston Financial Corporation (hereinafter "FleetBoston"). In July of 2002 plaintiff was terminated from his employment as part of FleetBoston's shut down of the subsidiaries. Plaintiff's alleged compensation structure prior to termination consisted of a base salary and an annual bonus that included deferral of bonuses earned in the prior fiscal year, a Cash Equivalent Plan (CEP) and equity in the investment firm in the form of Restricted Stock Units (RSUs).

    On February 21, 2002 plaintiff was given a copy of the RSGI 2002 CEP, stating he had earned $1,299,999.84 in Deferred Compensation during 2001, as guaranteed income to be paid in accordance with a predetermined vesting schedule (Cross-Mot. Barr Aff., Exh. B). The first vesting period for one third of the total amount of Deferred Compensation due, $433,333.28, was scheduled for January 1, 2003. A second vesting period for the remaining two-thirds of the total amount was January 1, 2004 (Cross-Mot.,Barr Aff., Exh. B).

    After the termination, FleetBoston offered plaintiff a separation agreement dated September 18, 2002, that would have accelerated the bonus pay out, but barred plaintiff from commencing an arbitration action (Cross-Mot., Barr Aff., Exh. C). Plaintiff was advised in a letter accompanying the September 18, 2002 separation agreement that the Deferred Compensation would still be paid in accordance with the CEP vesting schedule, subject to his compliance with the non-solicitation and non-disparagement provisions of the CEP (Section 8.1) (Cross-Mot., Barr Aff., Exh. C). Plaintiff alleges he decided not to sign the separation agreement because pursuant to the vesting schedule he would still receive his Deferred Compensation, which he understood was being held in a segregated and separate money market account and he had other potential claims against RSI.

    Instead of signing the separation agreement plaintiff and 41 other former employees of RSI each separately retained defendants to represent them and commenced an arbitration action before the New York Stock Exchange against the RSI, RSGI, and FleetBoston (Mot. Exh.C). After commencement of the action, defendants made comments to the Wall Street Journal and the New

*MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):*

York Times about the arbitration. On December 12, 2002 an article was published in the *Wall Street Journal* titled "Robertson Band Claims Fleet Owes Some Bonuses." The article specifically referred to statements made by defendant Jeffrey Liddle (Mot. Exh. E, Cross-Mot., Barr Aff. Exh. G).

Plaintiff alleges that on December 10, 2002 defendants provided the Wall Street Journal with copies of two press releases, and a copy of a draft Statement of Claim for the arbitration, the day before it was actually filed (Cross-Mot., Haley Aff., Exhs. E, F, G and H). In a letter dated May 2, 2003 RSGI advised plaintiff that he was in violation of the non-disparagement provisions of the CEP section 8.1 and the Restricted Unit Award Agreement, section 4.6. The letter stated that plaintiff would not be paid his Deferred Compensation or awards of stock. The letter does not state the reasons for finding plaintiff was in violation of CEP section 8.1 or the Restricted Unit Awards Agreement (Mot. Exh. F).

The parties proceeded with the arbitration. On September 12, 2007 the arbitration panel issued a full and final award of $14,690,000.00, but only as to twenty seven of the claimants. Plaintiff and eleven other claimants were not awarded their bonuses or any compensation (Mot. Exh. I). The parties then commenced an action in the United States District Court which determined that the CEP and RSU claims were resolved as part of the arbitration and barred by res judicata (Mot. Exh. K). On March 23, 2011 the United States Court of Appeals for the First Circuit affirmed the United States District Court (Mot. Exh. L). The United States Court of Appeals for the First Circuit noted that the arbitration panel was silent as to how they reached the amount of the award, but none of the parties requested remand to the arbitral panel for clarification (Mot. Exh. L). On October 11, 2011 the Supreme Court of the United States denied plaintiff's petition for writ of certiorari (Alt v. Robertson Stephens Group, Inc., 132 S. Ct. 414 [2011]).

On October 14, 2014 plaintiff commenced this action asserting three causes of action against the defendants, alleging that due to their negligence and legal malpractice in making statements to the Wall Street Journal and commencing the arbitration, days before plaintiff's bonus was to vest and the non-disparagement agreement was to expire, plaintiff suffered a loss of $1,299,999.84.

Defendants now move pursuant to CPLR §3212 for an Order granting summary judgment and dismissing plaintiff's complaint.

Plaintiff opposes defendants' motion and cross-moves pursuant to CPLR §3212 for an Order granting summary judgment on his complaint and for an award of damages against the defendants in the amount of $1,299,999.84 with interest.

In order to prevail on a motion for summary judgment, the proponent must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence, eliminating all material issues of fact (Klein v. City of New York, 89 N.Y. 2d 833,675 N.E. 2d 458,652 N.Y.S. 2d 723 [1996]). Once the moving party has satisfied these standards, the burden shifts to the opponent to rebut that prima facie showing, by producing contrary evidence, in admissible form, sufficient to require a trial of material factual issues (Amatulli v. Delhi Constr. Corp.,77 N.Y. 2d 525,571 N.E. 2d 645, 569 N.Y.S. 2d 337 [1999]). In determining the motion, the court must construe the evidence in the light most favorable to the non-moving party by giving the nonmoving party the benefit of all reasonable inferences that can be drawn from the evidence (SSBS Realty Corp. v Public Service Mut. Ins. Co., 253 A.D. 2d 583, 677 N.Y.S. 2d 136 [1st Dept. 1998]).

Defendants preliminary argument that summary judgment is warranted because plaintiff failed to comply with the expert notice requirements of CPLR §3101(d)(1), and should be precluded from the use of the expert witness report annexed to the opposition and cross-motion papers, is unavailing. The December 11, 2015 legislative amendment to CPLR §3212(b) permits the Court to consider an expert affidavit submitted on a summary judgment motion, regardless of whether or not it was furnished pursuant to CPLR §3101(d)(1)(See McKinney's Consolidated Laws of New York Annotated, CPLR §3212(b), Supplementary Practice Commentaries "C3212:15. Proof on Motion. -

Failure to Identify Expert Doesn't Necessarily Bar Use of Expert's Affidavit on Summary Judgment Motion," and Washington v. Trustees of Methodist Episcopal Church of Livingston Mannor, 162 A.D. 3d 1368, 79 N.Y.S. 3d 720 [3rd Dept., 2018]).

　　　　Defendants argument that the November 8, 2017 Status Conference Order directed that "expert disclosures be served by 2/14/18," and the plaintiff waited until July 27, 2018 almost six months later, is unavailing. The six months delay in serving the expert disclosure was minimal, and defendants have not shown they were prejudiced by the delay. In any case, the Court has broad discretion in permitting post-Note of Issue discovery without vacating the Note of Issue and defendants have not shown that they have been prejudiced since there has been no trial date assigned to the case (Cabrera v. Abaev, 150 A.D. 3d 588, 55 N.Y.S. 3d 207 [1st Dept., 2017] and Kanaly v. DeMartino, 162 A.D. 3d 142, 77 N.Y.S. 3d 234 [3rd Dept., 2018]). Defendants fail to establish that plaintiff cannot raise an issue of fact due to the lack of an expert to substantiate his claims. The expert affirmation of Hal R. Lieberman, his curriculum vitae and resume, and expert witness disclosure submitted on behalf of the plaintiff are annexed to the cross-motion papers (See NYSCEF Docs. 163 and 164 and Mot. Exh. L).

　　　　Defendants make three substantive arguments in support of summary judgment: (1) they did not breach the duty of care because the retainer agreement excluded representation of the plaintiff (or any of the claimants) as to the terms and enforcement of the CEP; (2) they properly concluded that the restrictive provisions of the CEP Section 8.1 (non-disparagement provision) were not triggered because RSI was shutting down, which amounted to a "change in control," identified as an exclusion in CEP Section 8.1; and (3) they reasonably believed that their conduct in contacting the *Wall Street Journal* and the *New York Times,* and providing them with a copy of the Statement of Claim was protected by "litigation privilege."

　　　　A claim for legal malpractice has three required elements, negligence, proximate cause of loss, and actual damages (Brooks v. Lewin, 21 A.D. 3d 731, 800 N.Y.S. 2d 695 [1st Dept., 2005]). Plaintiff must establish "that the defendant attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession which results in actual damages to a plaintiff, and that the plaintiff would have succeeded on the merits of the underlying action 'but for' the attorneys negligence"(Leder v. Spiegel, 9 N.Y. 3d 836, 872 N.E. 2d 1194, 840 N.Y.S. 2d 888 [2007] citing to Am-Base Corp. v. Davis Polk & Wardwell, 8 N.Y. 3d 428, 866 N.E. 2d 1033, 834 N.Y.S. 2d 705 [2007]). In order to establish proximate cause, plaintiff is required to prove that "but for" the attorney's negligence, damages would not have been sustained (Nomura Asset Capital Corp. v. Cadwalader, Wickersham & Taft, LLP, 115 A.D. 3d 228, 980 N.Y.S. 2d 95 [1st Dept., 2014]).

　　　　Defendants claim they did not breach the duty of care because the retainer agreement excluded representation of the plaintiff as to the terms and enforcement of the CEP. Defendants cite to the provisions of the retainer agreement, paragraphs D and E (Mot.Exh. C), and plaintiff's deposition testimony (Mot. Exh. O, pg. 53, lines 5-24) in support of their argument that they are entitled to summary judgment on the issue of negligence.

　　　　Plaintiff raises an issue of fact on the issue of negligence and duty of care by arguing that only defendants' "fee" was excluded in the retainer agreement, and that there is no specific language excluding representation as to the CEP plan. Paragraphs D and E exclude the CEP for 2001 and 2002 from the percentage of "recovery" defendants would be entitled to as part of their fees (Mot. Exh. C). The retainer agreement goes on to state "...our understanding is that...Robertson Stephens and FleetBoston have indicated you will be paid the items listed in A through I above. In the event Robertson Stephens and/or FleetBoston contend, however that you are not entitled to any of the items listed in A through I above, then such contested items will be included within the term "recovery" for the purposes of the above percentages"(Mot. Exh. C). Plaintiff also claims he provided the Separation Agreement and release to the defendants, before he signed the retainer agreement, to show that they were aware his Deferred Compensation was guaranteed, as long as he complied with the requirements of section 8.1 of the CEP (Barr Aff. in Opp., Exh. D).

Defendants claim that plaintiff testified at his deposition that they were not retained to provide representation as to the Deferred Compensation under the CEP (Mot. Exh. O, pg. 53, lines 5-24) provides conflicting statements and raises an issue of fact on both defendants' and plaintiff's motion for summary judgment as to defendants' duty of care and whether the retainer agreement included defendants' representation as to the CEP, warranting denial of summary judgment (See 180 Ludlow Development LLC v. Olshan Frome Wolosky LLP, 165 A.D. 3d 594, 2018 N.Y. Slip Op. 07255 [1st Dept., 2018] and Genesis Merchant Partners, L.P. v. Gilbride, Tusa, Last & Spellane, LLC, 157 A.D. 3d 479, 69 N.Y.S. 3d 30 [1st Dept., 2018]).

Defendants argue that there was no violation of their duty of care because their reasonable belief that RSI was shutting down amounted to a "change in control," identified as an exclusion in CEP Section 8.1.

Section 8.1 titled "Post-Termination Forfeiture Provisions," states in relevant part:

"8.1. Restrictions and Forfeiture. In the event that, at any time during the six month period immediately following any Participant's Termination Date (*other than any such Termination Date occurring due to a termination of employment within eighteen months following a Change in Control by the Participant for Good Reason or by the RS Group without Cause*), the Participant ...or (2) publicly disparages any member of the RS Goup or Parent or any of their respective officers, directors or senior executive employees or otherwise makes any public statement that is adverse, inimical or otherwise materially detrimental to the interests of such Persons or individuals, or if the Company or the Committee, in its discretion, or such officer or officers of the Company as the Company may from time to time designate, determines that the Participant's actions are adverse to the best interests of the RS Group or Parent, the Participant shall immediately forfeit any and all rights in respect of any Deferred Amount that are not Vested and the earnings thereon." (Emphasis added) (Barr Aff. to Cross-Mot. Exh. C).

Defendants cite to Mr. Liddle's deposition testimony to establish that they acted reasonably and did not violate any duty of care, because there had been meetings wherein members of the firm debated the applicability of the change in control provision, and that there were "numerous discussions with claimants," other than the plaintiff, to analyze the change in circumstances and protect their clients interests (Mot. Exh. N, pg. 39 lines 21-25, pgs. 40-41, 44 and 53-54). Mr. Liddle's deposition testimony did not identify specific claimants that were spoken to, only that the plaintiff was not included, or provide details of when the meetings were conducted or who was present. He could not recall if any of his colleagues took notes, and claims he did not take any notes at the meetings (Mot. Exh. N, pg. 39, lines 21-25, pgs. 40-42, 44 and 53-54).

Conclusory assertions, speculation, surmise and conjecture without admissible evidence are insufficient on a summary judgment motion (Madeline D'Anthony Enterprises Inc. v. Sokolowsky, 101 A.D. 3d 606, 957 N.Y.S. 2d 88 [1st Dept., 2012]). Mr. Liddle's testimony is speculative and insufficient to establish prima facie that defendants reasonably relied on the "change in control" provisions of CEP section 8.1 or that there were no violations of the duty of care.

Plaintiff argues, in support of the cross-motion, that the deposition testimony of Ms. Lisa Bisaccia - FleetBoston's director of corporate compensation - stating there was no "change in control" because FleetBoston still owned RSI and liquidation of RSI is not a "change in control" under the CEP plan (Cross-Mot. Heller Aff., Exh. C, pgs. 61-62) and his reference to unidentified "documents produced in this action," makes a prima facie case of malpractice. This evidence and plaintiff's description of Mr. Liddle's conclusions as to "change in control" as "contrived" and "beyond credulity" does not establish that the defendants' actions were unreasonable, amounted to more than an error in judgment, or constituted a deviation from the appropriate standard of care amounting to malpractice (See Mars v. Dobrish, 66 A.D. 3d 403, 885 N.Y.S. 3d 593 [1st Dept. 2009]).

Defendants argue that they reasonably and strategically submitted a copy of the Statement of Claim and contacted the *New York Times* and the *Wall Street Journal* as both a pre-emptive measure and to protect their clients' interests because of potential negative publicity. Defendants provide no proof of their allegation that another reporter from the *Wall Street Journal*, "Hechinger," was writing articles or about to write articles that would portray plaintiffs and the other claimants in a negative light, warranting his contacting a trusted reporter (Mot. Exh. N, pgs. 72-74). There are no e-mails, references to, or copies of any articles by "Hechinger" concerning the claimants, RSI or FleetBoston, provided by defendants in support of this argument.

Plaintiff raises issues of fact as to the reasonableness of defendants' actions by annexing emails from their associate attorney, Christine A. Palmieri, which include a reference to a "hard sell" to the *Wall Street Journal* (Cross-Mot. Heller Aff., Exhs. G & H).

Defendants argue that they reasonably believed that they were protected by "litigation privilege" in contacting the newspapers and providing them with a copy of the Statement of Claim prior to the commencement of the arbitration and there is no basis for finding them negligent. Defendants argue that Mr. Liddle was not quoted directly in the article and had no direct discussions with the *Wall Street Journal*. They claim that Mr. Liddle's deposition testimony further demonstrates he acted in good faith to protect the clients' reputation which was deemed paramount (Mot. Exh. N, pgs. 53-55, 61, 72-74).

The "litigation privilege" is a qualified privilege applied to pre-litigation claims of defamation and statements made by an attorney on behalf of the client, pertinent to a good faith anticipated litigation (Front, Inc. v. Khalil, 24 N.Y. 3d 713, 28 N.E. 3d 14, 4 N.Y.S. 3d 581 [2015]).

Plaintiff correctly argues that the "litigation privilege" protects lawyers from claims of defamation and that the defendants have conflated "disparagement" as relevant to the provisions of CEP section 8.1, with "defamation." Plaintiff has raised an issue of fact as to whether defendants acted negligently in making statements to the press in reliance on the "litigation privilege." There remains issues of fact as to whether defendants' erroneously relied on the "litigation privilege" and whether their actions were a reasonable pre-emptive measure to avoid anticipated negative publicity of their clients.

Plaintiff, on the cross-motion, argues that defendants' negligent actions caused his loss. He provides Ms. Bisaccia's deposition testimony wherein she states that she had set aside the funds to pay plaintiff's Deferred Compensation when he vested. She also testified that she went to the legal department of FleetBoston with a copy of the *Wall Street Journal* article to advise them that the provisions of CEP section 8.1 had been triggered and that a determination was subsequently made by the legal department that defendant had violated CEP section 8.1 (Cross-Mot., Heller Aff., Exh. C, pgs. 18,22-25, 39-40, 45-46, 51, 55). Plaintiff claims that statements were made by RSI and FleetBoston in their pleadings, as part of the underlying arbitration and actions, that the *Wall Street Journal* article was one of the triggering factors for the provisions of CEP section 8.1 that resulted in his failing to vest.

Plaintiff's expert, Hal Lieberman, opines that defendants' actions in failing to consult with the plaintiff or obtain his consent before going to the Wall Street Journal and the New York Times, and acting in a manner that did not protect plaintiff's interests in vesting and obtaining his Deferred Compensation under the CEP, constituted malpractice. He concludes that defendants were aware of the vesting period and, "but for" defendants' negligence, plaintiff would have been guaranteed at least a partial recovery (Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y. 3d 438, 867 N.E. 2d 385, 835 N.Y.S. 2d 534 [2007]).

Plantiff's cross-motion makes a prima facie case of malpractice arguing that but for the derogatory statements made by the defendants in the Wall Street Journal article that triggered the "bad boy" provision in CEP section 8.1, he would have been able to vest, and this resulted in the loss of the guaranteed compensation under the CEP.

Defendants raise an issue of fact as to whether their statements made to the *Wall Street Journal* are the sole trigger of CEP section 8.1, and their actions the sole cause of plaintiff's loss. There remains an issue of fact as to whether defendants actions and alleged strategies substantially deviated from the standard of care so as to constitute malpractice. They argue that the May 2, 2003 letter sent to the plaintiff (and all of the other claimants) advising of the violation of the CEP section 8.1 and that there would be no payment of Deferred Compensation, does not specifically identify the article in the *Wall Street Journal* as a reason for the forfeiture (Mot. Exh. F). They further argue that even commencing the lawsuit/arbitration could have been perceived as "disparagement" by FleetBoston (Mot. Exh. F). Defendants claim Ms. Bisaccia's deposition testimony states she did not make the final determination that the *Wall Street Journal* article triggered CEP section 8.1, and that she was not a participant in the decision making process (Cross-Mot. Heller Aff., Exh. C, pg. 45).

Plaintiff also argues defendants committed malpractice and that it was unreasonable for them to believe that there would have been considerable depreciation if they had waited the approximately twenty (20) days until the initial vesting date of January 1, 2003, and to risk his recovery of $433,333.28 in CEP funds. Plaintiff's expert, Hal Lieberman, opines that defendants' actions constituted malpractice, because they were aware of the vesting period and, but for their actions, plaintiff would have vested and obtained his Deferred Compensation under the CEP.

Defendants raise an issue of fact with their claim that the failed sale of RSI to another entity, which had allegedly been going on for months, and the loss of RSI's reputation, were factors that they reasonably believed would diminish all of the claimants prospects for receiving bonus compensation. Defendants argue that their strategy of commencing arbitration on December 11, 2002 was to preserve the value of the claimants unpaid bonuses before RSI further depreciated in value. There remains issues of fact as to whether defendants' strategy was a reasonable course of action that did not deviate from the applicable standard of care, and whether plaintiff's claims are being made with hindsight, which is not sufficient to establish negligence (Boye v. Rubin & Ballin, LLP, 152 A.D. 3d 1, 56 N.Y.S. 3d 57 [1st Dept., 2017]).

The conflicting facts presented warrant a determination at trial as to whether the defendants act of filing for arbitration on December 11, 2002 was reasonable, warranting denial of plaintiff's cross-motion for summary judgment (See Ansah v. A.W.I. Sec. & Investigation, Inc., 129 A.D. 3d 538, 12 N.Y.S. 3d 35 [1st Dept., 2015], 180 Ludlow Development LLC v. Olshan Frome Wolosky LLP, 165 A.D. 3d 594, supra and Genesis Merchant Partners, L.P. v. Gilbride, Tusa, Last & Spellane, LLC, 157 A.D. 3d 479, supra).

Accordingly, it is ORDERED that defendants' LIDDLE & ROBERTSON, L.L.P. and JEFFREY L. LIDDLE's motion pursuant to CPLR §3212 for summary judgment dismissing plaintiff's complaint, is denied, and it is further,

ORDERED that plaintiff's cross-motion pursuant to CPLR §3212 for summary judgment on the complaint and for an award of damages against the defendants, LIDDLE & ROBERTSON, L.L.P. and JEFFREY L. LIDDLE, in the amount of $1,299,999.84 with interest, is denied.

**ENTER:**

_____
MANUEL J. MENDEZ,
J.S.C.

*MANUEL J. MENDEZ*
*J.S.C.*

Dated: December 3, 2018

Check one:  ☐ FINAL DISPOSITION      X NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST      ☐ REFERENCE