Blaine H. Bortnick
c/o Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, NY 10017
Tel: (305) 476-7100
Fax: (305) 675-7944
*Creditor, pro se*

**Hearing Date and Time:**
December 19, 2019 at 11:00 a.m.

**Objection Deadline:**
December 12, 2019

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                      :      Chapter 11
                                                           :
LIDDLE & ROBINSON, L.L.P.,                                 :      Case No. 19-12346 (SHL)
                                                           :
Debtor                                                     :      (Jointly Administered with Case No.
-----------------------------------------------------------:      19-10747)

# MOTION BY BLAINE H. BORTNICK PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, TO CONVERT THIS CHAPTER 11 REORGANIZATION TO A CHAPTER 7 LIQUIDATION

Blaine H. Bortnick, a creditor in this action, respectfully submits this motion pursuant to section 1112(b) of the Bankruptcy Code, to convert this chapter 11 reorganization to a chapter 7 liquidation, and for related relief.

1.    This motion should be granted for at least three reasons. First, as set forth in the *Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC pursuant to section 1112(b) of the bankruptcy code, to convert this chapter 11 reorganization to a chapter 7 liquidation* (*Dkt. No. 103*) (the "CF Chapter 7 Motion"), this bankruptcy does not qualify under the law for a chapter 7 reorganization. The law is clear that Debtor is a dissolved partnership that cannot continue in business except to wind up its affairs. Accordingly, Chapter 11 is not available to Debtor by operation of law. In this regard, I hereby join the CF Chapter 7 Motion. The factual and legal arguments and authorities set forth in the Chapter 7 Motion are incorporated by reference as if fully set forth herein.

1

2. Second, it is in the best interest of all creditors to prevent a further wasting of estate assets available to pay creditors' claims by preventing Mr. Liddle from continuing to weaponize the bankruptcy proceeding to pursue objectively baseless litigation in furtherance of Mr. Liddle's personal animus toward me. Even if the bankruptcy is not converted to Chapter 7, Mr. Liddle's actions demonstrate that he cannot be trusted to be in charge of managing the estate for the benefit of creditors.

3. Third, Mr. Liddle is conflicted to the estate, and as such unfit to act as a fiduciary, as demonstrated by his actions and several of the proofs of claims submitted by creditors.

4. I incorporate by reference my objection to Debtor's Rule 2004 motion (Dkt. No. 82). While this Court stated that concerns over Mr. Liddle's actions were not relevant to his Rule 2004 motion and my objection thereto, here they are. This is compounded by Mr. Liddle's deliberate untruthful statements made during his October 2, 2012 341 examination under oath. During that examination, Mr. Liddle stated that I had breached my obligations as a partner and was thus liable to the firm because I had, unknown to him, and against his express direction, filed a state court case. While at this stage there is admittedly some "he-said she-said" evidence, what cannot be challenged is that Mr. Liddle executed a "New Matter Sheet" that described the case and assigned an attorney in charge (not me). Mr. Liddle is in possession of this document. While it may seem a lesser issue in the overall context of the bankruptcy, it points up Mr. Liddle's willingness to be untruthful about the little things.[1]

5. The creditors listed by Mr. Liddle and proofs of claim filed in this bankruptcy state that Mr. Liddle and his wife received loans from family and friends totaling several hundred

---

[1] This is also the likely reference to Mr. Liddle's assertion during the October 24, 2019 hearing that I may have conducted business outside of the firm's books and records, despite the fact that a case number was assigned to this matter and thus automatically part of the firm's computer records.

2

thousand dollars. See, e.g. Proof of Claim #21, a promissory note executed by Mr. Liddle and his wife, for $140,000. Since Mr. Liddle's wife is an obligor on such loan, it follows that the estate has claims against her for at least one-half of the obligation. This is particularly an issue given that Ms. Liddle had released to her in excess of $1 million from the DIP account. It is hard to imagine the estate run by Mr. Liddle filing an action to recover monies from his wife in order to reimburse it for any sums it ultimately pays to family and friends' creditors.

6. The financial reports and requests for compensation filed by Mr. Liddle show that as of the present time, the Cash Collateral of approximately $1 million has been offset by professionals' post-petition expenses. There is now, primarily as the result of a single arbitration win, close to $2 million in cash assets in the estate. This money needs to be protected for the benefit of all creditors and not wasted on baseless and bad faith litigation against myself and others as previously submitted to this Court as claims of the estate -- litigations against (1) myself, (2) Counsel Financial, (3) Mr. Liddle's former attorneys in the litigation in which Counsel Financial obtained its judgment against him and the firm, (4) three principles and John Does of Counsel Financial, (5) Counsel Financial's outside counsel (the same firm representing it in the bankruptcies), and (6) eight former partners of Debtor's predecessors, some of whom departed seven or more years ago.

7. This desire to pursue anyone and everyone shows what is truly going on here – Mr. Liddle blames everyone for his situation caused by his actions. As the largest partner by multiples in the firm, he made virtually every single significant decision without consultation, including the decision to dramatically overpay himself to support a lifestyle as described earlier to this Court and all the accoutrements that come with it.

3

8. This is the same person who by his own submission to this Court stated that the firm received approximately $5 million in revenues in 2017. *See Statement of Debtor's Financial Affairs dated 9/10/19, Dkt. No. 61* This $5 million is in addition to a new loan agreed to in December 2017 with Counsel Financial for another $775,000. The 2018 revenues were nearly $2 million. *Id.* Yet by his own admission to this Court, when the firm had revenues and new loans totaling approximately $7.75 million for 2017-2018, Mr. Liddle:

a. Failed to file tax returns for the firm for 2017 (and possibly himself). *See Motion to Employ Richard J. Lynne as Tax Accountant at ¶9, Dkt. No. 61*

b. Failed to remit to the New York City Department of Finance taxes for the period January 1, 2016 through May 31, 2019 $163,693.71. *see Proof of Claim #20*

c. Failed to file tax returns for 2018. *Id.*

d. Failed to file payroll tax returns for 2018-2019. *Id.*

e. Failed to file required tax forms for the firm's retirement plans (both 401(k) and commingled employee profit sharing) for 2017 and 2018. *See Motion to Employ The Benefit Practice at ¶9, Dkt. No. 58; Id.*

f. Failed to perform any compliance, valuation, government reporting, or census data calculations (Mr. Liddle is the sole trustee of the firm's retirement plans). *Id.*

g. Failed to pay New York State unemployment contributions *See NYSDOL Proof of Claim (Claim No. 12)*

h. Failed to pay a mere $3,459 owed by Debtor to the IRS covering the month of July 2018. *See IRS Proof of Claim (Claim No. 11)*

i. Failed to pay his own taxes, owing the IRS $114,157.72 for tax years 2015-2018. *See IRS Proof of Claim (Claim No. 11)*[2]

j. Failed to list himself in his personal bankruptcy as owing a debt to the Debtor (or file a proof of claim in this bankruptcy), despite his overpaying himself millions of dollars and having a negative capital account on August 2016 of approximately negative $3.4

---

[2] It is remarkable that this failure to pay taxes covers 2015, a time period in which Mr. Liddle does not claim that the firm was in financial distress (and indeed was profitable). It is even more remarkable given that Mr. Liddle had a personal IRS tax lien in excess of $1.1 million which was paid off in its entirety in August 2016 by the firm using proceeds from a loan made to it by from Counsel Financial in violation of the loan agreement. In other words, his lifestyle took precedence over his tax obligations.

4

million.³ While admittedly this amounts to not filing a proof of claim against himself on behalf of a dissolved and winding down partnership, it highlights the inherent conflict of Mr. Liddle wearing two hats at the same time – one representing his personal interests and one that is supposed to be looking out for all creditors.

k. In a recent filing with the Court, admitted to paying $3,000 for a tennis membership, an expense that certainly could not have been approved as permissible by this Court. While the Court may see this as a minor infraction, it once again demonstrates that Mr. Liddle places his lifestyle ahead of his fiduciary obligations to all creditors.

9. The foregoing is undoubtedly the tip of a very large iceberg. He cannot, and must not, be allowed to maintain a fiduciary role as the person in charge with respect to both the estate and its creditors. He cannot, and must not, be allowed to make decisions to spend what will undoubtedly be millions of estate dollars, over and above what by now must be in excess of $1 million in professional fees.⁴

**Conclusion**

10. The law is clear – a dissolved partnership that is winding up as required by law cannot obtain chapter 11 relief.

11. In addition, it is clear that Mr. Liddle cannot act as a debtor in possession for the purpose of winding up the Debtor's affairs and pay off creditors. He is irreparably conflicted. His past behavior demonstrates that even when the Debtor has received nearly $8 million in combined revenue and loans for 2017 – 2018, he was incapable of performing basic obligations such as the preparation and filing of Debtor's (and perhaps his own) tax returns and the accounting/tax filings for the Debtor's ERISA retirement plans for which he is the fiduciary (and admittedly has failed

---

³ Indeed, in his October 2, 2019 341 examination, Mr. Liddle remarkably stated that he did not think he owed any money to the firm.

⁴ This also brings up Section 1112(b), (b)(4)(A), and (b)(4)(B), which states that the Court "shall convert a case under this chapter to a case under Chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate [not Mr. Liddle] for cause...." "Cause includes substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; [or] gross mismanagement of the estate." That is obviously the case here.

5

to pay/rollover sums owed to participants from such funds segregated from Debtor's bank accounts). Indeed, this alone calls into question his fitness to practice law. Rather than focus on the best interests of the creditors, he is intent on pursuing bad faith discovery and litigation as part of his mindset to blame anyone but himself for his actions and to harass his perceived "enemies." This must stop.

Dated: New York, New York
November 18, 2019

                                                                                           Blaine Bortnick
                                                            c/o Rasco Klock Perez & Nieto, LLC
                                                            555 Fifth Avenue, 17th Floor
                                                            New York, NY 10017
                                                            Tel: (305) 476-7100

                                                            *Creditor, pro se*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
In re                                                        :  Chapter 11
                                                             :
LIDDLE & ROBINSON, L.L.P.,                                   :  Case No. 19-12346 (SHL)
                                                             :
                    Debtor                                   :  (Jointly Administered with Case No. 19-
                                                             :  10747)
------------------------------------------------------------ x

**ORDER GRANTING MOTION PURSUANT TO § 1112(b) OF
THE BANKRUPTCY CODE, TO CONVERT THIS CHAPTER 11
<u>REORGANIZATIONTO A CHAPTER 7 LIQUIDATION</u>**

Upon the motion dated November 18, 2019 of Blaine H. Bortnick for an order, pursuant to §1112(b) of the Bankruptcy Code, converting this chapter 11 case to a chapter 7 liquidation (the "Motion"); and it appearing that good and sufficient notice of the Motion has been given; and a hearing on the Motion having been held on December 19, 2019; and after considering all papers filed in connection with the Motion; and upon the record of the hearing; and after due deliberation; and good and sufficient cause appearing therefor, it is hereby

**ORDERED,** that the Motion is granted; and it is further

**ORDERED,** that this case is converted to chapter 7, pursuant to §1112(b) of the Bankruptcy Code.

Dated: New York, New York
       December __, 2019

                                                        _____
                                                        SEAN H. LANE
                                                        UNITED STATES BANKRUPTCY JUDGE

8