| | |
|---|---|
| William F. Gray, Jr. | Michael J. Licker |
| Alison D. Bauer | Meredith S. Parkinson |
| Jiun-Wen Bob Teoh | James S. Fullmer |
| FOLEY HOAG LLP | FOLEY HOAG LLP |
| 1301 Avenue of the Americas | 155 Seaport Boulevard |
| 25th Floor | Boston, Massachusetts 02210 |
| New York, New York 10019 | Tel: (617) 832-1000 |
| Tel: (646) 927-5500 | Fax: (617) 832-7000 |
| Fax: (646) 927-5599 | |

*Attorneys for Liddle & Robinson, L.L.P.,
a Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| In re | : Chapter 11 |
| LIDDLE & ROBINSON, L.L.P.,[1] | : Case No. 19-12346 (SHL) |
| Debtor | : Related Docs. 103, 130, 155 (and 257 filed in 19-10747) |

---

**OMNIBUS OBJECTION BY DEBTOR LIDDLE & ROBINSON, L.L.P TO: (A) MOTION BY COUNSEL FINANCIAL II LLC, LIG CAPITAL LLC, AND COUNSEL FINANCIAL HOLDINGS LLC, PURSUANT TO § 1112(b) OF THE BANKRUPTCY CODE, TO CONVERT THIS CHAPTER 11 REORGANIZATION TO A CHAPTER 7 LIQUIDATION, (B) MOTION BY BLAINE H. BORTNICK PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, TO CONVERT THIS CHAPTER 11 REORGANIZATION TO A CHAPTER 7 LIQUIDATION AND (C) UNITED STATES TRUSTEE'S MOTION: (I) PURSUANT TO 11 U.S.C. § 1112, FOR CONVERSION OF THE CORPORATE CASE TO A CASE UNDER CHAPTER 7, OR IN THE ALTERNATIVE, (II) PURSUANT TO 11 U.S.C. § 1104, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Liddle & Robinson, L.L.P., as debtor and debtor-in-possession (the "Debtor" or the "Firm Debtor"), in the above-captioned Chapter 11 case (the "Chapter 11 Case"), hereby files this Omnibus Objection by the Debtor (the "Objection") to the (A) *Motion of Counsel Financial II*

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.

B5073419.3

LLC, LIG Capital LLC, and Counsel Financial Holdings LLC Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Doc. No. 103] (the "CF Firm Motion");[2] (B) the *Motion by Blaine H. Bortnick Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Doc. No. 130] (the "Bortnick Motion") and (C) *United States Trustee's Motion: (I) Pursuant to 11 U.S.C. § 1112, for Conversion of the Chapter 11 Case of Liddle & Robinson L.L.P. to a Case under Chapter 7 of the Code, or (II) In the Alternative, Pursuant to 11 U.S.C. § 1104, for Appointment of a Chapter 11 Trustee* [Doc. No. 257 filed in 19-10747, Notice of Motion filed in 19-12346 at Doc. No. 155] (the "U.S. Trustee Motion" and collectively with the CF Firm Motion and the Bortnick Motion, the "Motions"). In support of this Objection, the Debtor relies on: the *Memorandum of Law* filed contemporaneously herewith; the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on July 22, 2019 in the Chapter 11 Case (Doc. No. 2) (the "Firm First Day Affidavit"); the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on March 11, 2019 in the Chapter 11 case of *In re Jeffrey Lew Liddle*, Case No. 19-10747 jointly administered herewith [Doc. No. 1] (the "Individual First Day Affidavit"); the *Affidavit of Jeffrey L. Liddle in Support of the Objection to the Conversion Motions* filed contemporaneously herewith (the "Liddle Objection Affidavit" and together with the Firm First Day Affidavit, the "Liddle Affidavits") and the *Declaration of Allen Wilen in Support of: (I) Omnibus Objection by Debtor Liddle & Robinson, L.L.P to: (A) Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant to § 1112(B) of the Bankruptcy Code, to Convert this*

---

[2] Counsel Financial initially incorrectly filed a duplicate of the Motion in the Chapter 11 case of the individual debtor, Jeffrey Lew Liddle, Case No. 19-10747, Doc. No. 207. To the extent it is necessary to object to two motions, this Objection serves as an objection to the motion filed in the law firm case as well as to the one in the individual case.

2

B5073419.3

*Chapter 11 to a Chapter 7, (B) Motion by Blaine H. Bortnick Pursuant to Section 1112(B) of the Bankruptcy Code, to Convert this Chapter 11 Reorganization to a Chapter 7 Liquidation and (C) United States Trustee's Motion: (I) Pursuant to 11 U.S.C. § 1112, for Conversion of the Corporate Case to a Case under Chapter 7, or in the Alternative, (II) Pursuant to 11 U.S.C. § 1104, for Appointment of a Chapter 11 Trustee; and (II) Objection by Debtor Jeffrey Lew Liddle to (I) Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant t § 1112(B) of the Bankruptcy Code, To Convert This Chapter 11 To a Chapter 7 Liquidation* (the "Wilen Declaration" and collectively with the Liddle Affidavits, the "Supporting Affidavits") filed contemporaneously herewith. In further support of this Objection, the Debtor respectfully states as follows:

## Preliminary Statement

Since the filing of this Chapter 11 Case, the Firm Debtor and its professionals have successfully made good faith efforts to maximize value for the benefit of all stakeholders. Mr. Liddle, the sole remaining partner, is willing and able to continue handling the Firm Debtor's client cases. There are unusual circumstances in this law firm bankruptcy case. Unlike other law firm cases where all the partners flee to other firms and take their cases with them, leaving the estate with little but to litigate clawback claims, Mr. Liddle is implementing an orderly wind up of the affairs of the Firm Debtor. Mr. Liddle's prepetition attempts to merge with other firms were scuttled by the actions of Counsel Financial (as defined below), the entity that made equity-like investments in the Debtor. Post-petition, Counsel Financial's interference in the day-to-day operations of the firm has been minimized because of the public nature of the proceedings and court supervision. By the plethora of motions and objections filed by Counsel Financial and, more recently, Blaine Bortnick, they have increased administrative costs and, as the U.S. Trustee notes, created "incessant acrimony" for which they now seek to be rewarded by removing the Debtor as

3

B5073419.3

debtor-in-possession to thwart claims against each of them. Their actions mask the true successes of the Debtor in the process of dissolving the partnership. The movants bear the burden of providing by clear and convincing evidence that "cause" exists for the appointment of a Chapter 11 trustee or that such appointment is in the best interests of the estate or that cause exists for the conversion of the Firm's case to a Chapter 7 liquidation. None of the movants have met this burden. There are no allegations of fraud, dishonesty, incompetency or gross mismanagement. The debtor-in-possession is the most knowledgeable and best able to run the Debtor's business until the confirmation of a plan of liquidation.

## BACKGROUND

1. On July 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor is a law firm partnership formed on June 4, 1979. Firm First Day Affidavit ¶ 1. Jeffrey L. Liddle is the sole remaining partner of the Firm. Firm First Day Affidavit ¶ 4.

3. Prior to the filing date of this Chapter 11 Case, Mr. Liddle filed for Chapter 11 relief as an individual debtor on March 11, 2019, which case is closely related to this Chapter 11 Case. *In re Jeffrey Lew Liddle*, Case No. 19-10747 (SHL); Firm First Day Affidavit ¶ 24. Mr. Liddle is a debtor-in-possession (the "Individual Debtor") in his individual case. CF has filed a motion to convert the case of the Individual Debtor to a Chapter 7 case. [Case No. 19-10747, Doc. No. 249]

4. Many, but not all, of the Individual Debtor's and the Firm Debtor's creditors overlap as Mr. Liddle's personal liabilities arise mainly from guarantees of the Firm Debtor's obligations. Moreover, the Firm's business is the source of effectively all his personal income and provides the financial underpinning for distributions to creditors in both the Individual Debtor case as well as this Chapter 11 case. Firm First Day Affidavit at ¶ 5.

5. In August 2016, the Firm commenced a relationship with an organization that refers to itself as Counsel Financial and is comprised of several entities, including Counsel Financial II LLC ("CFII"), LIG Capital LLC ("LIG"), and Counsel Financial Holdings LLC ("Holdings" and, collectively with CFII and LIG, "Counsel Financial"). Firm First Day Affidavit ¶ 3. Counsel Financial is a litigation funder comprising multiple distinct pools of investors who take speculative interests in contingency fee cases. Liddle Objection Affidavit ¶ 19.

6. Prior to the Firm Debtor's Petition Date, on April 8, 2019, Mr. Liddle filed a motion in his individual Chapter 11 case to extend the automatic stay imposed by section 362(a) to the Firm to stay pending litigation and collection actions against the Firm. Firm First Day Affidavit at ¶ 21. In addition to collection threats by CFII for the Erie County Judgment (as defined in the Firm First Day Affidavit), the Firm was facing a collection action by Kasowitz Benson Torres LLP in the New York State Supreme Court, in which the Firm is a judgment debtor in the amount of $189,257.35. Firm First Day Affidavit at ¶ 21. In response to that stay relief motion and other creditor actions, this Court entered a series of interim orders extending the automatic stay imposed by section 362(a) to the Firm pursuant to section 105 of the Bankruptcy Code. *In re Jeffrey Lew Liddle*, Case No. 19-10747, Doc. Nos. 50, 71 and 101.

7. As set forth in the Firm First Day Affidavit, the filing of the Firm Debtor stemmed from the impending expiration of the stay in the face of various creditor actions against the Firm Debtor and CFII's actions in the Erie County action as well as its diversion of client payments. In the individual Chapter 11 case, *In re Jeffrey Lew Liddle*, it was clear to this Court that the value of the individual estate rested upon the assets of the law firm. The filing was at the suggestion of the Bankruptcy Court, the insistence of creditor Kasowitz Benson Torres and the implied consent of Counsel Financial. *See* Transcript at 32:15-33:7, *In re Jeffrey Lew Liddle*, No. 19-10747 (Mar. 28,

2019) (the Court describing the Firm Debtor case as a "Chinese nesting doll" and a case within the Individual Debtor case); Transcript at 21:21-21:24, *In re Jeffrey Lew Liddle*, No. 19-10747 (Apr. 11, 2019) (Counsel Financial's attorney explaining that it released restraining notices on the Firm's account and stating, "And if the debtor makes a business decision that it's in the best interests of the estate to file, he should do that"); Transcript at 14:2-14:7, *In re Jeffrey Lew Liddle*, No. 19-10747 (May 1, 2019) (Kasowitz Benson Torres requesting a timeline directing the Firm Debtor to file).

8.  At the first day hearing for the law firm, Ms. Andrea Schwartz, counsel to the United States Trustee for Region 2, informed the Court that the U.S. Trustee's Office questioned the eligibility of the Firm Debtor to commence a Chapter 11 case:

> The idea behind advising counsel of the issue -- and, in fact, Your Honor, Judge Bernstein in Hagerstown[3] dealt with the exact issue that counsel for the debtor is raising about -- and he found that, in that case that a dissolved partnership that filed for bankruptcy could not, in fact, use Chapter 11 to liquidate. And so it's a very -- it's a gating issue in terms of whether or not this case will stay in Chapter 11.

Transcript at 8:5-8:11, *In re Liddle & Robinson*, No. 19-12346 (July 29, 2019).

9.  Three months after the Firm Debtor's Petition Date and two weeks after CFII filed its notice of appeal of this Court's decision denying the lien of CFII on the Individual Debtor's sale proceeds[4], Counsel Financial filed the CF Firm Motion seeking to convert this Chapter 11 Case to a Chapter 7 liquidation on the premise that a limited liability partnership with one partner

---

[3] The *Hagerstown* case to which Ms. Schwartz referred included several orders which will be discussed *infra*, including orders reported at *In re Hagerstown Fiber Ltd. P'ship*, 226 B.R. 353 (Bankr. S.D.N.Y. 1998), and *In re Hagerstown Fiber Ltd. P'ship*, No. No. 16-13153 (MKV), 1998 Bankr. LEXIS 1054 (Bankr. S.D.N.Y. Aug. 24, 1998).

[4] *Order Denying Counsel Financial II LLC's Claim of a Perfected Security Interest in and Lien on Certain Cash Collateral and Granting Related Relief*, Case No. 19-10747[Doc. No. 185]; Notice of Appeal, Case No. 19-10747 [Doc. No. 194].

"has been dissolved by operation of law," "must wind up its affairs," cannot avail itself of reorganization in Chapter 11 and therefore must be converted to a Chapter 7 liquidation. *See* CF Firm Motion ¶ 1.

10. Blaine H. Bortnick ("Bortnick"), a former partner of the Firm, filed the Bortnick Motion on November 19, 2019, a few weeks after the Court approved the Debtor's examination of Mr. Bortnick pursuant to Rule 2004 on October 24, 2019. Bortnick joins and incorporates the CF Firm Motion.

11. Subsequently, the United States Trustee filed the U.S. Trustee Motion arguing that the Firm Debtor improperly entered into Chapter 11 as a dissolved partnership with the intent to reorganize and therefore should be converted to a Chapter 7 case, or in the alternative, that a Chapter 11 trustee be appointed given that the Firm Debtor has been in Chapter 11 for four months and acknowledging the precedent in this jurisdiction of partnerships in dissolution remaining in Chapter 11.

**ARGUMENT**

**A.    In the Second Circuit, a Partnership in Dissolution is Eligible to "Wind-Up" Its Affairs and Be Dissolved in Chapter 11.**

12. As set forth in the accompanying Memorandum of Law, under New York partnership law and the law of the Second Circuit, the Debtor may engage in a Chapter 11 case to confirm a plan in which the partnership is dissolved. Counsel Financial and the U.S. Trustee concede that the decision of the Court of Appeals for the Second Circuit in *In re C-TC 9th Ave. Partnership* only applies to prohibit a partnership in dissolution from reconstituting the dissolved entity in a Chapter 11 plan of reorganization, but a partnership in dissolution may file a Chapter 11 case for the purpose of liquidating. CF Firm Motion ¶ 13; U.S. Trustee Motion § A.2. *In re C-TC 9th Ave. Partnership,* 113 F.3d 1304, 1309 (2d Cir. 1997) ("C-TC"). .

B5073419.3

13. The Firm Debtor has and continues to express its intent to liquidate under Chapter 11. Liquidation does not mean, however, the immediate cessation of all client services or the inability to orderly wind down its affairs and transfer cases. It would seem that all parties agree that continuing active litigation matters through settlement or trial was, and is, essential to maximizing the value of the Firm Debtor's assets, and with the attendant consequence of maximizing the value of the Individual Debtor's estate. Mr. Liddle's knowledge of the cases place him in a unique position to liquidate the Firm Debtor with more value in a Chapter 11 than a Chapter 7 case. Liddle Objection Affidavit ¶¶ 5, 10. As set forth in the Memorandum of Law and Liddle Objection Affidavit, there are numerous instances in this case and the Individual Debtor case where the Firm Debtor and Individual Debtor contend that the Firm Debtor intends to wind up the affairs of the partnership, maximize recovery to the estate by realizing on work in progress, collect accounts receivables, assert avoidance actions and thereby develop a plan of liquidation for payment to its legitimate creditors. Liddle Objection Affidavit ¶ 3.

14. There is a long history of law firm partnerships in dissolution winding up their affairs in Chapter 11 cases, both before and after *Hagerstown*, including within the United States Bankruptcy Court for the Southern District of New York: *See In re Dewey & LeBouef LLP*, Case No. 12-12321 (Bankr. S.D.N.Y. 2012) (Wind up Committee appointed to oversee the law firm's wind up on May 11, 2012 and bankruptcy petition filed two weeks later on May 28, 2012); *In re Drier LLP*, Case No. 08-15051 (Bankr. S.D.N.Y. 2008) (After the only equity partner of the firm was arrested, a receiver was appointed and on December 15, 2008 the United States District Court granted the receiver authority to commence a Chapter 11 bankruptcy case which was filed on December 16, 2008; Judge Stuart Bernstein confirmed the plan of liquidation on April 28, 2014 at Doc. No. 1921); *In re Coudert Brothers*, Case No. 06-12226 (Bankr. S.D.N.Y. 2006) (Wind up

commenced prepetition and the affidavit in support of the First Day Motions states that "The Debtor is determined to complete the Wind-Down of its affairs through Chapter 11 and to confirm a plan of liquidation", Doc. No. 2 at ¶ 15); *In re Berger, Steingut & Stern*, Case No. 95-41198; *In re Shea & Gould*, Case No. 95-45978 (Bankr. S.D.N.Y. 1995); *In re Bower & Gardner*, Case No. 94-44743 (Bankr. S.D.N.Y. 1994); and *In re Finley & Kumble*, Case No. 88-103377. Similar cases in other jurisdictions include: *In re Archer Norris*, Case No. 18-30924 (Bankr. N.D. Cal. 2018); *In re Sedgwick, Detert, Moran & Arnold LLP*, Case No. 18-31087 (Bankr. N.D. Cal. 2018) (joint plan of liquidation filed on November 7, 2019 at Doc. No. 295); *In re Ruden McClosky P.A.*, Case No. 11-40603 (Bankr. S.D. Fla. 2011) (Chapter 11 plan confirmed on October 12, 2012 at Doc. No. 58); *In re Howrey LLP*, Case No. 11-31376 (Bankr. N.D. Cal. 2011) (involuntary Chapter 7 filed and case converted to a Chapter 11); *In re Heller Ehrman LLP*, Case No. 08-32514 (Bankr. N.D. Ca 2008) (joint Chapter 11 plan of liquidation on August 13, 2010 at Doc. No. 1446); and *In re Altheimer & Gray*, Case No. 03-43547 (Bankr. N.D. Ill. 2003).

15.     Therefore, this Court should hold that neither *C-TC* nor *Hagerstown* bar a partnership in dissolution from being a Chapter 11 debtor and follow the long line of precedential cases which upheld and maintained such Chapter 11 cases. After much discussion in Court in the Individual Debtor case, the Firm Debtor filed in good faith and the case should not be converted or dismissed.

**B.     There Is No Cause to Convert or Dismiss the Chapter 11 Case under Bankruptcy Code Section 1112(b).**

16.     This is not the usual law firm bankruptcy case. The movants' "one size fits all" solution doesn't fit here. There is an active law practice retaining and still attracting clients. While the firm known as Liddle & Robinson L.L.P. is winding up its affairs and developing a plan of

9

liquidation, the practice may be sold, merged into, or transferred to another entity to service its clients' needs.

17. Bankruptcy Code section 1112(b)(1) provides, in relevant part, that on request of a party in interest, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). Although section 1112(b)(4) provides a non-exhaustive list of what constitutes cause, whether "cause" exists is determined on a case-by-case basis, and courts are "free to consider other factors" and have "wide discretion" in determining to dismiss or convert a case. *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

18. The movants have not met their burden in proving "cause" to convert the case by relying solely on the eligibility argument under *C-TC* and have not proved bad faith by the Firm Debtor. The Firm Debtor filed in good faith to have the benefit of the automatic stay. It has: multiple, diverse, distinct assets, including its clients, client cases, pending litigation and anticipated clawback actions, as compared and contrasted to a single asset real estate bankruptcy case (as was the case in *C-TC*); secured creditors and a number of varied unsecured creditors; been meeting its current expenses as they become due; and has hired two new employees since the Petition Date so that it may continue to administer its assets and complete work on the cases for the benefit of all creditors.

19. None of the enumerated factors for cause in section 1112(b) that have warranted conversion or dismissal of other Chapter 11 cases are present.

    **C.**     **Unusual Circumstances Exist Such That Conversion or Dismissal is not in the Best Interests of Creditors and the Estate.**

20. Even if cause exists, Section 1112(b)(2) applies an exception to the obligation of the court to dismiss, convert or appoint a Chapter 11 trustee where the court finds both that there exists

10

unusual circumstances specifically identified by the court that establish that conversion or dismissal is not in the best interests of creditors and the estate and an objecting party establishes that (1) there is a reasonable likelihood that a plan will be confirmed within the timeframes established under section 1121(e) and 1129(e), or, if such sections are inapplicable, within a reasonable time, (2) the cause for dismissal or conversion is other than continuing loss or diminution to the estate without a reasonable likelihood of rehabilitation and (3) there is a reasonable justification for the act or omission of the debtor constituting cause and the act or omission will be cured within a reasonable time.  11 U.S.C § 1112(b)(2).

21.     Here there are compelling unusual circumstances warranting that the Firm Debtor remain a debtor-in-possession under Chapter 11.  If the Firm Debtor's case converts to a Chapter 7 case and a Chapter 7 trustee is appointed, or if a Chapter 11 trustee is appointed, Mr. Liddle would not be able to service the law firm clients.  It is inconceivable that a Chapter 11 or a Chapter 7 trustee could service the Firm's clients and represent the clients in their complex cases. Clients have retained the Firm to have Jeffrey Lew Liddle represent them.  A Chapter 11 trustee would have to hire its own lawyers to run the cases.  Even if Mr. Liddle was employed by and continued to work for a Chapter 11 trustee, the clients are free to leave and there is absolutely no reason to think they would not go elsewhere.  It is highly likely that the transfer of cases to a new lawyer (whether by departure of the client or retention of lawyers by a Chapter 11 trustee) would cause catastrophic delay in cases, additional costs to the clients in getting new counsel up to speed, risk of missing deadlines and loss of knowledge in the case.  All these would likely amount to post-petition lawsuits against the estate for malpractice, fees and expenses, and result in huge administrative claims against the estate.  The harm to the clients of the Firm Debtor upon conversion or appointment of a trustee is insurmountable.

22. The remaining clauses of Section 1112(b)(2) are equally satisfied. There is a reasonable likelihood that a plan of liquidation will be confirmed, within a reasonable time. The debtor intends to confirm a plan that distributes funds to legitimate creditors, and believes, as set forth in the Liddle Objection Affidavit and the Wilen Declaration, that Counsel Financial's claims will be recharacterized and/or subordinated. The movants have not demonstrated cause for conversion or appointment of a trustee and certainly not cause based upon any acts or omission that the Debtor could not cure within a reasonable time. Therefore the unusual circumstances exception has been met in this case. 11 U.S.C § 1112(b)(2).

### D. There Is No Cause to Appoint a Chapter 11 Trustee under 11 U.S.C. §1104(a).

23. A Chapter 11 trustee should only be appointed pursuant to 11 U.S.C. § 1104(a): (1) "for cause, including fraud, dishonesty, incompetence, or gross management of the affairs of the debtor by current management" or (2) "if such appointment is in the interest of creditors, any equity security holders and other interests of the estate." The appointment of a Chapter 11 trustee is an extraordinary remedy. *In re 1031 Tax Group, LLC,* 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007); *In re Sharon Steel Corp.*, 871 F. 2d 1217, 1225 (3d Cir. 1989). The standard for § 1104 appointment is "very high." *Smart World Techs., LLC. v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005). The U.S. Trustee has the burden of showing by "clear and convincing evidence that the appointment is warranted." *Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541 (2d Cir. 2009).

24. There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee because the debtor-in-possession is already a fiduciary for the estate and has an obligation to refrain from acting in a manner that could damage the estate and is the best party to conduct operations during the case.

12

25. A court has "wide discretion in considering the relevant facts" and "wide latitude in determining whether the challenged conduct rises to the level of "cause." *In re 1031 Tax Group, LLC,* 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007).

26. The U.S. Trustee has failed to prove cause by clear and convincing evidence based upon the factors courts consider: (i) the trustworthiness of the debtor; (ii) the debtor in possession's past and present performance and prospects of the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of the creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of appointment. *In re 1031 Tax Group, LLC,* 374 B.R. 78, 91 (Bankr. S.D.N.Y. 2007).

27. The trustworthiness of the Debtor has not been refuted and is supported by the fact that it has retained legal counsel and financial advisors who are reviewing all cash disbursements and receipts, bank statements and filing monthly operating reports.

28. The Debtor has been performing both its bankruptcy fiduciary duties such as filing schedules, statements of financial affairs, monthly operating reports, and responding to creditor inquiries, and its duties to clients. The Trustee's main argument that cause exists is that the recently filed monthly operating reports for the Firm Debtor are allegedly missing bank statements and that certain items are redacted. On the Petition Date, the Firm Debtor proposed to have Richard Lynne, who had previously prepared financial statements for the Firm and who could thus provide information to EisnerAmper in the preparation of the monthly operating reports, to serve as an ordinary course professional and then applied for retention of Lynne as a tax accountant on September 5, 2019 [Doc. No. 53]. The Order Authorizing the Retention of Richard Lynne was entered on October 30, 2019 [Doc. No. 111]. In about one month from his retention, on December 3, 2019, the Firm Debtor filed all four of its operating reports for the months of July, August,

13

September and October [Doc. Nos. 145-148]. Each operating report was accompanied by a Wells Fargo bank statement. The Firm Debtor, as one-partner partnership, had trouble opening up a debtor-in-possession bank account with Wells Fargo and other banks, and it was not able to open a DIP account in its name until M&T Bank agreed on October 11, 2019. Liddle Objection Affidavit ¶ 14 n.5. M&T Bank's account does not provide online bank statements and the Debtor must await hard copies or request monthly statements by email with the branch manager. *Id.* Until the opening of the M&T DIP account, the firm's cash receipts and disbursements were run through the Individual Debtor's DIP account so that all amounts would be transparent to the U.S. Trustee and creditors. *Id.* EisnerAmper redacted items in the Firm Debtor's monthly operating reports to protect the confidentiality of the law firm's clients or because the items were on account of the Individual Debtor and therefore already reflected in the Individual Debtor's monthly operating reports. *Id.* The later was a way to differentiate the law firm amounts in response to the request by Counsel Financial in one of its many objections. *Id.* In addition to the monthly operating reports, the Firm Debtor has also filed budgets with each of its five cash collateral motions and orders showing actual and forecasted income and expenses [Doc. Nos. 5, 23, 73, 94, 132; Doc. No. 158 in Case No. 19-10747]. The Firm Debtor has provided in open court status updates with respect to the law firm income and accounts receivables. Thus, the Firm Debtor has worked diligently to provide financial information to the U.S. Trustee, the creditors and the Court.

29.     The Firm Debtor is continuing to service clients, retaining new clients and earning income. Clearly the business community—the clients—have confidence in the Debtor. The oppositional nature of Counsel Financial has driven up professional fees in the case, but is not because of a failure by the Debtor to perform or provide confidence in its ability to operate the Firm or as a debtor-in-possession. There is also no reason to doubt that causes of action of the

14

B5073419.3

estate will not be pursued by the debtor which will benefit almost all creditors of the estate—perhaps to the detriment of the movants Counsel Financial and Bortnick.

30. The cost of appointment of a trustee far outweighs any benefit derived by the appointment of a trustee. This is not a law firm Chapter 11 case where all the partners have left the firm and a management committee is simply collecting account receivables and bringing clawback actions; this is an unusual circumstance: a law firm business operating to winding up its affairs to maximize value to the estate. Maximization of value is best achieved by Mr. Liddle because his interests are aligned with the estate. The likelihood that clients will take their cases elsewhere because they would not want to be represented by a firm run by a third party trustee, and the intendant harm to the receivables of the Firm, far outweighs any benefit.

31. Counsel Financial, Bortnick, the U.S. Trustee and the Debtor have the same goals for the Chapter 11 case—wind up the affairs of the Firm, transfer the cases to another law firm in which Mr. Liddle is a partner or employed to continue servicing those cases, provide for the liquidation of the assets of the Debtor and distribute proceeds to creditors. Nothing to date warrants the appointment of a trustee, whether in Chapter 7 or 11, and the demise of the ability to maximize value and marshal assets into the estate.

## **CONCLUSION**

For the reasons set forth above, the Debtor respectfully requests that the Court deny the relief requested in the Motions, allow the Debtor to continue as a debtor-in-possession in a case under Chapter 11 of the Bankruptcy Code and issue such other and further relief as is just and proper under the circumstances.

Dated: December 13, 2019
       New York, New York

Respectfully submitted,

*/s/ William F. Gray, Jr.*

FOLEY HOAG LLP
William F. Gray, Jr.
Alison D. Bauer
Jiun-Wen Bob Teoh
1301 Avenue of the Americas
New York, New York 10019
Tel:   646.927.5500
Fax:   646.927.5599
wgray@foleyhoag.com
abauer@foleyhoag.com
jteoh@foleyhoag.com

Michael J. Licker
Meredith S. Parkinson
James S. Fullmer
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel:   617.832.1000
Fax:   617.832.7000
mlicker@foleyhoag.com
mparkinson@foleyhoag.com
jfullmer@foleyhoag.com

*Attorneys for Liddle & Robinson, L.L.P.,
a Debtor and Debtor in Possession*

B5073419.3