William F. Gray, Jr.
Alison D. Bauer
Jiun-Wen Bob Teoh
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, New York 10019
Tel: (646) 927-5500
Fax: (646) 927-5599

Michael J. Licker
Meredith S. Parkinson
James S. Fullmer
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

*Attorneys for Liddle & Robinson, L.L.P.,*
*Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

|  |  |
|---|---|
| In re | : Chapter 11 |
| | : |
| LIDDLE & ROBINSON, L.L.P.,[1] | : Case No.  19-12346 (SHL) |
| | : Related Docs. 103, 130, 155 (and 257 |
| Debtor | : filed in 19-10747) |

--------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS OBJECTION BY DEBTOR LIDDLE & ROBINSON, L.L.P TO: (A) MOTION BY COUNSEL FINANCIAL II LLC, LIG CAPITAL LLC, AND COUNSEL FINANCIAL HOLDINGS LLC, PURSUANT TO § 1112(b) OF THE BANKRUPTCY CODE, TO CONVERT THIS CHAPTER 11 REORGANIZATION TO A CHAPTER 7 LIQUIDATION, (B) MOTION BY BLAINE H. BORTNICK PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, TO CONVERT THIS CHAPTER 11 REORGANIZATION TO A CHAPTER 7 LIQUIDATION AND (C) UNITED STATES TRUSTEE'S MOTION: (I) PURSUANT TO 11 U.S.C. § 1112, FOR CONVERSION OF THE CORPORATE CASE TO A CASE UNDER CHAPTER 7, OR IN THE ALTERNATIVE, (II) PURSUANT TO 11 U.S.C. § 1104, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................2

BACKGROUND ............................................................................................................3

ARGUMENT .................................................................................................................6

    **A.**    In the Second Circuit, a Partnership in Dissolution is Eligible to "Wind-Up" Its Affairs and Be Dissolved in Chapter 11 ..................................................................6

    **1.**    The Firm Debtor Was Not Terminated By Dissolution; It Must Wind Up ...............7

    **2.**    The Sole Remaining Partner Of Liddle & Robinson LLP Is Eligible To Wind Up Its Affairs Under Chapter 11 ...................................................................................7

    **3.**    The Firm Debtor Intends To File A Plan Of Liquidation Under Chapter 11. .............8

    **4.**    *C-TC* Does Not Prohibit the Firm Debtor from being a Chapter 11 Debtor.............10

    **5.**    *In re Hagerstown* Has Not Been Followed by Bankruptcy Courts in the Second Circuit and Elsewhere. ............................................................................................15

    **B.**    There Is No Cause to Convert or Dismiss the Chapter 11 Case under Bankruptcy Code Section 1112(b) ...............................................................................................18

    **C.**    Unusual Circumstances Exist Such That Conversion or Dismissal is not in the Best Interests of Creditors and the Estate ...........................................................................24

    **D.**    There Is No Cause to Appoint a Chapter 11 Trustee under 11 U.S.C. §1104(a)..........27

CONCLUSION..............................................................................................................31

B5074876.7

## CASES

*Ad Hoc Comm. Of Bondholders v. Citicorp Venture Capital Ltd. (In re Fairwood Corp.)*

2000 U.S. Dist. LEXIS 2606 (Bankr. S.D.N.Y. 2000) ........................................................... 27

*Adams v. Marwil (In re Bayou Group, LLC)*

564 F.3d 541 (2d Cir. 2009) ................................................................................................. 31

*Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 336 n.1 (Bankr. S.D.N.Y.

1999) ..................................................................................................................................... 19

*Castro v. James J. Feder & Assocs. (In re Realty Trust Corp.)*

1994 U.S. App. LEXIS 13034 (9th Cir. May 12, 1994) ....................................................... 18

*Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.)*

859 F.2d 1127 (2d Cir.  1988) .............................................................................................. 17

*Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard. Inc.)*

119 B.R. 14 (Bankr. E.D.N.Y. 1990) ................................................................................... 12

*In re 1031 Tax Group, LLC*

374 B.R. 78 (Bankr. S.D.N.Y. 2007) ................................................................... 30, 31, 32, 33

*In re 234-6 West 22nd St. Corp.*

214 B.R. 751 (Bankr. S.D.N.Y. 1997) .................................................................................. 25

*In re Adamo*

2016 Bankr. LEXIS 694 (Bankr. E.D.N.Y. Mar. 4. 2016) .................................................... 27

*In re Adelphia Communications Corp.*

336 B.R. 610 (Bankr. S.D.N.Y. 2006) .................................................................................. 33

*In re Altheimer & Gray*

Case No. 03-43547 (Bankr. N.D. Ill. 2003) .................................................................... 21, 30

*In re Archer Norris*

Case No. 18-30924 (Bankr. N.D. Cal. 2018) .................................................................. 20, 30

*In re Balco Ltd.*

312 B.R. 734 (Bankr. S.D.N.Y. 2004) .................................................................................. 24

*In re Berger, Steingut & Stern*

Case No. 95-41198 ............................................................................................................... 19

*In re BH S&B Holdings, LLC*

439 B.R. 342 (Bankr. S.D.N.Y. 2010) .................................................................................. 21

*In re Bower & Gardner*

    Case No. 94-44743 (Bankr. S.D.N.Y. 1994) .......................................................................... 20

*In re Century/ML Cable Venture*

    294 B.R. 9 (Bankr. S.D.N.Y. 2003) ..................................................................................... 24

*In re Coudert Brothers*

    Case No. 06-12226 (Bankr. S.D.N.Y. 2006) .................................................................... 19, 30

*In re C-TC 9th Ave. Partnership*

    113 F.3d 1304 (2d Cir. 1997) ......................................................................................... passim

*In re D&F Meat Corp.*

    68 B.R. 39 (Bankr. S.D.N.Y. 1986) ....................................................................................... 25

*In re Dewey & LeBouef LLP*

    Case No. 12-12321 (Bankr. S.D.N.Y. 2012) .................................................................... 19, 30

*In re Drier LLP*

    Case No. 08-15051 (Bankr. S.D.N.Y. 2008) ........................................................................... 19

*In re Eurospark Indus., Inc.*

    424 B.R. 621 (Bankr. S.D.N.Y. 2010) ................................................................................... 33

*In re Finley & Kumble*

    Case No. 88-103377 .............................................................................................................. 20

*In re Hagerstown Fiber Ltd. P'ship*

    1998 Bankr. LEXIS 1054, 1998 WL 538607 (Bankr. S.D.N.Y. Aug. 24, 1998) ......... 10, 16, 17

*In re Hagerstown Fiber Ltd. P'shop.*

    226 B.R. 353 (Bankr. S.D.N.Y. 1998) ................................................................................... 10

*In re Heller Ehrman LLP*

    Case No. 08-32514 (Bankr. N.D. Cal. 2008) ...................................................................... 20, 30

*In re Howrey LLP*

    Case No. 11-31376 (Bankr. N.D. Cal. 2011) .......................................................................... 20

*In re Ionosphere Clubs, Inc.*

    113 B.R. 164 (Bankr. S.D.N.Y. 1990) ................................................................................... 32

*In re Kuvykin*

    2019 Bankr. LEXIS 631 (Bankr. S.D.N.Y. Feb. 26, 2019) ...................................................... 27

iii

*In re Luckenback's Estate*

    45 Misc. 2d 897, 258 N.Y.S. 2d 44 (1965) ............................................................................. 7

*In re Marvel Entertainment Group, Inc.*

    140 F.3d 463 (3d Cir. 1998) ............................................................................. 32

*In re Neilson,*

    2018 Bankr. LEXIS 4107 (Bankr. N.D.N.Y. Aug. 31, 2018) ................................................. 23

*In Re New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*

    760 F.2d 1334 (2d Cir. 1985) ............................................................................. 17

*In re Nugelt, Inc.*

    142 B.R. 661 (Bankr. D. Del. 1992) ..................................................................... 22

*In re Pleasant East Assocs.*

    286 B.R. 509 (Bankr.S.D.N.Y.2002) ..................................................................... 22

*In re Preferred Door Co.*

    990 F.2d 547 (10th Cir. 1993) ............................................................................. 22

*In re Prism Properties. Inc.*

    200 B.R. 43 (Bankr. D. Ariz. 1996) ..................................................................... 18

*In re Red Bull Taxi Inc.*

    2017 Bankr. LEXIS 1209 (Bankr. S.D.N.Y. May 3, 2017) ..................................................... 28

*In re Ruden McClosky P.A.*

    Case No. 11-40603 (Bankr. S.D. Fla. 2011) ..................................................... 20, 30

*In re Sedgwick, Detert, Moran & Arnold LLP*

    Case No. 18-31087 (Bankr. N.D. Cal. 2018) ..................................................... 20, 30

*In re Sharon Steel Corp.*

    871 F. 2d 1217 (3d Cir. 1989) ............................................................................. 31

*In re Shea & Gould*

    214 B.R. 739 (Bankr. S.D.N.Y. 1997) ............................................................. passim

*In re Shea & Gould*

    Case No. 95-45978 (Bankr. S.D.N.Y. 1995) ........................................................... 20

*In re Sletteland*

    260 B.R. 657 (Bankr. S.D.N.Y. 2001) ................................................................... 24

iv

*In re Soundview Elite, Ltd.*

    503 B.R. 571 (Bankr. S.D.N.Y. 2014) ................................................................. 27

*In re Statepark Bldg. Group. Ltd*.

    316 B.R. 466 (Bankr. N.D. Tex. 2004) ................................................................. 12

*In re Superior Boat Works, Inc.*

    438 B.R. 878 (N.D. Miss. 2010) ..................................................................... 11, 18

*In re Syndicom Corp.*

    268 B.R. 26 (Bankr. S.D.N.Y. 2001) ............................................................. 22, 25

*In re Woodbrook Associates*

    19 F.3d 312 (7th Cir. 1994) ................................................................................. 22

*In re Young*

    76 B.R. 376 (Bankr. D. Del. 1987) ...................................................................... 22

*Lai v. Gartlan*

    46 A.D.3d 237 (N.Y. App. Div. 1st Dep't Nov. 1, 2007) ...................................... 7

*N. River Ins. Co. v. Spain Oil Corp.*

    515 N.Y.S.2d 703 (1987) ....................................................................................... 8

*Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*

    881 F.2d 1346 (5th Cir. 1989) ............................................................................. 11

*Santa Fe Minerals v. Bepco (In re 15375 Memorial Corp*.)

    382 B.R. 652 (Bankr. D. Del.  2008) ................................................................... 18

*Smart World Techs., LLC. v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*

    423 F.3d 166 (2d Cir. 2005) ................................................................................ 31

*St. Petersburg Fed. Savings & Loan Ass'n v. Vincent (In re Vincent)*

    7 B.R. 866 (Bankr. M.D. Fla. 1980) ................................................................... 12

*Toibb v. Radloff*

    501 U.S. 157, 111 S. Ct. 2197 ............................................................................. 18

**STATUTES**

11 U.S.C § 1112(b)(2) ................................................................................... 29, 30

11 U.S.C. § 1104(a) .............................................................................................. 31

11 U.S.C. § 1112(b)(1) ......................................................................................... 21

11 U.S.C. § 1141(d) .............................................................................................. 13

v

11 U.S.C. § 727(a) ................................................................................................ 12

N.Y. P'ship Law § 60 ............................................................................................ 7

N.Y. P'ship Law § 61 ......................................................................................... 7, 8

**OTHER AUTHORITIES**

1 N.Y. Practice Guide: Business and Commercial § 5.07 (2019) ................................... 8

18 Moore's Federal Practice - Civil § 134.02 (2019) ................................................ 19

7 Collier on Bankruptcy P 1112.05 (16th ed. 2019) ................................................. 22

B5074876.7

Liddle & Robinson, L.L.P., as debtor and debtor-in-possession (the "<u>Debtor</u>" or the "<u>Firm Debtor</u>"), in the above-captioned Chapter 11 case (the "<u>Chapter 11 Case</u>"), hereby files this Memorandum of Law (the "<u>Memorandum</u>") in Support of the Omnibus Objection by the Debtor (the "<u>Objection</u>"), filed contemporaneously herewith, to the (A) *Motion of Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Doc. No. 103] (the "<u>CF Firm Motion</u>")[2]; (B) the *Motion by Blaine H. Bortnick Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Doc. No. 130] (the "<u>Bortnick Motion</u>") and (C) *United States Trustee's Motion: (I) Pursuant to 11 U.S.C. § 1112, for Conversion of the Chapter 11 Case of Liddle & Robinson L.L.P. to a Case under Chapter 7 of the Code, or (II) In the Alternative, Pursuant to 11 U.S.C. § 1104, for Appointment of a Chapter 11 Trustee* [Doc. No. 257 filed in 19-10747, Notice of Motion filed in 19-12346 at Doc. No. 155] (the "<u>U.S. Trustee Motion</u>" and collectively with the CF Firm Motion and the Bortnick Motion, the "<u>Motions</u>").  In support of this Memorandum, the Debtor relies on: the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on July 22, 2019 in the Chapter 11 Case [Doc. No. 2] (the "<u>Firm First Day Affidavit</u>"); the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on March 11, 2019 in the Chapter 11 case of *In re Jeffrey Lew Liddle*, Case No. 19-10747 jointly administered herewith [Doc. No. 1] (the "<u>Individual First Day Affidavit</u>"); the *Affidavit of Jeffrey L. Liddle in Opposition to the Conversion Motions* filed contemporaneously herewith (the "<u>Liddle Objection Affidavit</u>" and together with the Firm First

---

[2] Counsel Financial initially incorrectly filed a duplicate of the Motion in the chapter 11 case of the individual debtor, Jeffrey Lew Liddle, Case no. 19-10747, Doc. No. 207.  To the extent it is necessary to object to two motions, this Objection serves as an objection to the motion filed in the law firm case as well as to the one in the individual case.

Day Affidavit, the "Liddle Affidavits"); and the *Declaration of Allen Wilen in Support of: (I) Omnibus Objection by Debtor Liddle & Robinson, L.L.P to: (A) Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant to § 1112(B) of the Bankruptcy Code, to Convert this Chapter 11 to a Chapter 7, (B) Motion by Blaine H. Bortnick Pursuant to Section 1112(B) of the Bankruptcy Code, to Convert this Chapter 11 Reorganization to a Chapter 7 Liquidation and (C) United States Trustee's Motion: (I) Pursuant to 11 U.S.C. § 1112, for Conversion of the Corporate Case to a Case under Chapter 7, or in the Alternative, (II) Pursuant to 11 U.S.C. § 1104, for Appointment of a Chapter 11 Trustee; and (II) Objection by Debtor Jeffrey Lew Liddle to (I) Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant to § 1112(B) of the Bankruptcy Code, To Convert This Chapter 11 To a Chapter 7 Liquidation* (the "Wilen Declaration" and collectively with the Liddle Affidavits, the "Supporting Affidavits") filed contemporaneously herewith. In further support of this Objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

This is not a typical law firm bankruptcy. There are "unusual circumstances" in this law firm bankruptcy case. Unlike other law firm cases where all the partners flee to other firms and take their cases with them, leaving the estate with little but to litigate clawback claims, Mr. Liddle remains at the helm trying cases for the benefit of clients and creditors to implement an orderly wind up of the Firm Debtor's affairs. Converting this case or appointing a trustee now—when the Firm Debtor is winning cases and generating profits at a remarkable clip—would thwart these efforts and jeopardize the Firm Debtor's clients and creditors.

Conversion is particularly inappropriate given that two of the parties seeking this relief stand to benefit the most to the detriment of the Firm Debtor's other creditors and clients. Counsel Financial and more recently in the case, former partner Blaine Bortnick, have summarily opposed

2

actions by the Debtor, even if typical and mundane. They rely on their own unreasonable objections to the payment of professionals and the Rule 2004 examinations of themselves to give the false appearance of never-ending disputes and an estate in disarray. They have created an air of enmity and now seek to be rewarded for their oppositional behavior by removing the debtor as debtor-in-possession to thwart claims against each of them by and for the benefit of the estate. The movants bear the burden of proving by clear and convincing evidence that "cause" exists for conversion of the Firm's case to a Chapter 7 liquidation or the appointment of a Chapter 11 trustee or that such appointment is in the best interests of the estate. None has met this burden. They rest their laurels on the proposition that a law firm in dissolution is ineligible to be a Chapter 11 debtor, despite the overwhelming cases to the contrary and unique circumstances of this case. Moreover, it is clear that the Debtor's goals are in sync with the positions of Counsel Financial, Bortnick and the U.S. Trustee—to have Mr. Liddle represent clients so the law firm receives fees and awards for the benefit of the Firm Debtor's estate. The only way to accomplish these goals is to have the Debtor remain a debtor-in-possession under Chapter 11.

## **BACKGROUND**

1.      On July 22, 2019 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      The Debtor is a law firm partnership formed on June 4, 1979. Firm First Day Affidavit ¶ 1. Jeffrey L. Liddle is the sole remaining partner of the Firm. Firm First Day Affidavit ¶ 4.

3.      Prior to the filing date of this Chapter 11 Case, Mr. Liddle filed for Chapter 11 relief as an individual debtor on March 11, 2019, which case is closely related to this Chapter 11 Case. *In re Jeffrey Lew Liddle*, Case No. 19-10747 (SHL). Firm First Day Affidavit ¶ 24. Mr. Liddle is a debtor-in-possession (the "Individual Debtor") in his individual case. Counsel Financial has

3

filed a motion to convert the case of the Individual Debtor to a Chapter 7 case [Case No. 19-10747, Doc. No. 249].

4.      Many, but not all, of the Individual Debtor's and the Firm Debtor's creditors overlap, as Mr. Liddle's personal liabilities arise mainly from guarantees of the Firm Debtor's obligations. Moreover, the Firm's business is the source of effectively all of Mr. Liddle's personal income and provides the financial underpinning for distributions to creditors in both the Individual Debtor case as well as this Chapter 11 case.  Firm First Day Affidavit at ¶ 5.

5.      In August 2016, the Firm commenced a relationship with an organization that refers to itself as Counsel Financial and is comprised of several entities, including Counsel Financial II LLC ("CFII"), LIG Capital LLC ("LIG"), and Counsel Financial Holdings LLC ("Holdings" and, collectively with CFII and LIG, "Counsel Financial").   Firm First Day Affidavit ¶ 3.  Counsel Financial is a litigation funder comprising multiple distinct pools of investors who take speculative interests in contingency fee cases.  Liddle Objection Affidavit ¶ 19.

6.      Prior to the Firm Debtor's Petition Date, on April 8, 2019, Mr. Liddle filed a motion in his individual Chapter 11 case to extend the automatic stay imposed by section 362(a) to the Firm to stay pending litigation and collection actions against the Firm. Firm First Day Affidavit at ¶ 21.  In addition to collection threats by CFII for the Erie County Judgment (as defined in the Firm First Day Affidavit), the Firm was facing a collection action by Kasowitz Benson Torres LLP in the New York State Supreme Court, in which the Firm is a judgment debtor in the amount of $189,257.35.  Firm First Day Affidavit at ¶ 21.  In response to that stay relief motion and other creditor actions, this Court entered a series of interim orders extending the automatic stay imposed by section 362(a) to the Firm pursuant to Section 105 of the Bankruptcy Code.  *In re Jeffrey Lew Liddle*, Case No. 19-10747, Doc. Nos. 50, 71 and 101.

4

7.    As set forth in the Firm First Day Affidavit, the filing of the Firm Debtor stemmed from the impending expiration of the Section 105 stay in the face of various creditor actions against the Firm Debtor and CFII's actions in the Erie County action as well as its diversion of client payments.  In the individual Chapter 11 case, *In re Jeffrey Lew Liddle*, it was clear to this Court that the value of the individual estate rested upon the assets of the law firm.  The filing was at the suggestion of the Bankruptcy Court, the insistence of creditor Kasowitz Benson Torres and the implied consent of Counsel Financial.  *See* Transcript at 32:15-33:7, *In re Jeffrey Lew Liddle*, No. 19-10747 (Mar. 28, 2019) (the Court describing the Firm Debtor case as a "Chinese nesting doll" and a case within the Individual Debtor case); Transcript at 21:21-21:24, *In re Jeffrey Lew Liddle*, No. 19-10747 (Apr. 11, 2019) (Counsel Financial's attorney explaining that it released restraining notices on the Firm's account and stating, "And if the debtor makes a business decision that it's in the best interests of the estate to file, he should do that"); Transcript at 14:2-14:7, *In re Jeffrey Lew Liddle*, No. 19-10747 (May 1, 2019) (Kasowitz Benson Torres requesting a timeline directing the Firm Debtor to file).

8.    At the first day hearing for the law firm, Ms. Andrea Schwartz, counsel to the United States Trustee for Region 2 informed the Court that the U.S. Trustee's Office questioned the eligibility of the Firm Debtor to commence a Chapter 11 case:

> The idea behind advising counsel of the issue -- and, in fact, Your Honor, Judge Bernstein in Hagerstown dealt with the exact issue that counsel for the debtor is raising about -- and he found that, in that case that a dissolved partnership that filed for bankruptcy could not, in fact, use Chapter 11 to liquidate. And so it's a very -- it's a gating issue in terms of whether or not this case will stay in Chapter 11.

Transcript at 8:5-8:11, *In re Liddle & Robinson*, No. 19-12346 (July 29, 2019).

9.    Three months after the Firm Debtor's Petition Date and two weeks after CFII filed its notice of appeal of this Court's decision denying the lien of CFII on the Individual Debtor's

B5074876.7

sale proceeds,[3] Counsel Financial filed the CF Firm Motion seeking to convert this Chapter 11 Case to a Chapter 7 liquidation on the premise that a limited liability partnership with one partner "has been dissolved by operation of law," "must wind up its affairs," cannot avail itself of reorganization in Chapter 11 and therefore must be converted to a Chapter 7 liquidation. (CF Firm Motion ¶ 1.)

10.     Blaine H. Bortnick ("Bortnick"), a former partner of the Firm, filed the Bortnick Motion on November 19, 2019, a few weeks after the Court approved the Debtor's examination of Mr. Bortnick pursuant to Rule 2004 on October 24, 2019. Bortnick joins and incorporates the CF Firm Motion.

11.     Subsequently, the United States Trustee filed the U.S. Trustee Motion arguing that the Firm Debtor improperly entered into Chapter 11 as a dissolved partnership with the intent to reorganize and therefore should be converted to a Chapter 7 case, or in the alternative, that a Chapter 11 trustee be appointed given that the Firm Debtor has been in Chapter 11 for four months and acknowledging the precedent in this jurisdiction of partnerships in dissolution remaining in Chapter 11.

## ARGUMENT

### A.     In the Second Circuit, a Partnership in Dissolution is Eligible to "Wind-Up" Its Affairs and Be Dissolved in Chapter 11.

12.     Under New York partnership law and the law of the Second Circuit, the Debtor may engage in a Chapter 11 case to confirm a plan of liquidation in which the partnership is dissolved. Counsel Financial and the U.S. Trustee concede that the decision of the Court of Appeals for the

---

[3]*Order Denying Counsel Financial II LLC's Claim of a Perfected Security Interest in and Lien on Certain Cash Collateral and Granting Related Relief*, Case No. 19-10747 [Doc. No. 185]; Notice of Appeal, Case No. 19-10747 [Doc. No. 194].

B5074876.7

Second Circuit in *In re C-TC 9th Ave. Partnership* only applies to prohibit a partnership in dissolution from reconstituting the dissolved entity in a Chapter 11 plan of reorganization, but a partnership in dissolution may file a Chapter 11 for the purpose of liquidating.  CF Firm Motion ¶ 13; U.S. Trustee Motion § A.2; *In re C-TC 9th Ave. Partnership,* 113 F.3d 1304, 1309 (2d Cir. 1997) ("C-TC").

1. **The Firm Debtor Was Not Terminated By Dissolution; It Must Wind Up.**

13.    Liddle & Robinson L.L.P. is a partnership in dissolution but the partnership has not terminated.  The dissolution of a partnership is defined as "the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."  N.Y. P'ship Law § 60.  The Debtor remains in existence until the winding up of its affairs is completed.  "On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."  N.Y. P'ship Law § 61.  Winding up means the process of settling partnership affairs after dissolution.  *In re Luckenback's Estate*, 45 Misc. 2d 897, 258 N.Y.S. 2d 44 (1965).  "[I]t is common during the winding up process for partnership assets to be sold, resulting in additional net profit or loss to the partnership."  *Lai v. Gartlan*, 46 A.D.3d 237, 245 (N.Y. App. Div. 1st Dep't Nov. 1, 2007)).  "[E]ven after termination, a partnership or joint venture continues for the purpose of collecting, liquidating and distributing its assets and for the purpose of winding up claims against it."  *N. River Ins. Co. v. Spain Oil Corp*., 515 N.Y.S.2d 703, 706 (1987).

2. **The Sole Remaining Partner Of Liddle & Robinson LLP Is Eligible To Wind Up Its Affairs Under Chapter 11.**

14.    Mr. Liddle is allowed under New York partnership law to operate the partnership to wind up the partnership's affairs.  N.Y. P'ship Law § 61.  "[T]he tasks of winding up must be accomplished by a partner who was within the partnership at the time of dissolution."  1 N.Y.

Practice Guide: Business and Commercial § 5.07 (2019). In fact, Mr. Liddle must abide by applicable professional rules to maintain the firm's records upon dissolution. "Upon the dissolution of any firm of lawyers, the former partners or members shall make appropriate arrangements for the maintenance, by one of them or by a successor firm, of the records specified in Rule 1.15(d) [Required Bookkeeping Records]." NY Rules Prof'l Conduct R 1.15.

15.    It would seem that all parties agree that continuing active litigation matters through settlement or trial was, and is, essential to maximizing the value of the Firm Debtor's assets, and with the attendant possibility of maximizing the value of the Individual Debtor's estate. These efforts have yielded substantial benefit postpetition. Wilen Declaration ¶¶ 19, 20. Having the Firm Debtor preserve the value of the client cases makes sense for all parties and is consistent with New York Partnership Law and the Bankruptcy Code.

### 3.    The Firm Debtor Intends To File A Plan Of Liquidation Under Chapter 11.

16.    The U.S. Trustee and Counsel Financial acknowledge that a dissolved partnership is eligible for Chapter 11 if it seeks to confirm a plan of liquidation. U.S. Trustee's Motion at 2; CF Firm Motion ¶ 13 (citing *In re Shea & Gould,* 214 B.R. 739 (Bankr. S.D.N.Y. 1997) ("*Shea & Gould*")). However, Counsel Financial attempts to layer on an additional requirement, asserting that a dissolved partnership is only eligible "when the debtor expressly states its intent to liquidate under chapter 11." CF Motion ¶ 13. The Firm Debtor has and continues to express its intent to liquidate under Chapter 11. Liquidation does not mean, however, the immediate cessation of all client services or the inability to orderly wind down its affairs and transfer cases.

17.    In contending that the Firm Debtor does not intend to file a plan of liquidation, Counsel Financial cites to statements in the Firm First Day Affidavit that Mr. Liddle "intend[ed] to continue to operate the [Debtor's] business" and "continue [its] robust practice ... and develop

8

a consensual plan for payment of all legitimate creditors." CF Firm Motion ¶¶ 4, 13,[4] citing Firm First Day Affidavit at ¶¶ 6, 46.

18.    This statement is not contrary to *Shea & Gould*, which interpreted Second Circuit precedent to allow for a Chapter 11 liquidation. First, the statement was a declaration by Mr. Liddle who is a debtor-in-possession under Chapter 11 and who is statutorily charged under New York partnership law with operating the partnership to wind up the Firm Debtor's affairs.

19.    Second, having a "robust practice" is not antithetical to winding up the affairs. It means that the Debtor is able to maximize value to the estate to settle partnership affairs after dissolution. The Debtor had an advanced plan in place to relocate the active matters to a new firm until Counsel Financial interfered with and then scuppered that plan. Liddle Objection Affidavit ¶ 33-38. Mr. Liddle had no option but to continue working the cases. Mr. Liddle at the same time continued meeting with headhunters and other lawyers to explore opportunities for relocation.

20.    Third, "developing a consensual plan for payment" of creditors by its terms does not necessitate a plan of reorganization. Many Chapter 11 cases result in a sale or transfer of assets to a new entity, often one owned or controlled by the former insiders of the Debtor, and funding the Chapter 11 plan through a liquidation trust. These are deemed plans of liquidation. The Debtor may, and intends to, propose a consensual plan of liquidation for payment to its legitimate creditors. Liddle Objection Affidavit ¶ 3.

---

[4] Counsel Financial incorrectly cites to the Firm First Day Affidavit at ¶ 46 in the Motion at ¶ 13, but those statements are not in that paragraph.

B5074876.7

4.      *C-TC* Does Not Prohibit the Firm Debtor from being a Chapter 11 Debtor.

21.      The Second Circuit's alleged holding in *C-TC* that partnerships in dissolution are not eligible for Chapter 11 relief was *dicta*, as the *C-TC* debtor had waived the issue and the Bankruptcy Code clearly includes partnerships as persons eligible to commence a case.  *Shea & Gould*, at 745; *In re Hagerstown Fiber Ltd. P'shop.*, 226 B.R. 353, 357-358 (Bankr. S.D.N.Y. 1998) ("*Hagerstown*").  In the first of two opinions, the court in *Hagerstown* held that a dissolved partnership can file in Chapter 11 for the purpose of liquidation.  *In re Hagerstown Fiber Ltd. P'ship*, 1998 Bankr. LEXIS 1054, 1998 WL 538607, at *32 (Bankr. S.D.N.Y. Aug. 24, 1998). However, the *Hagerstown* court found that Debtor filed with a purpose that is "improper and legally impossible"—to reorganize—and therefore the Chapter 11 case was dismissed.  In reconsidering the opinion, the court subsequently held that a dissolved partnership could not liquidate through Chapter 11 proceedings despite noting that *C-TC*'s discussion was *dicta* and despite the contrary line of cases that have held that liquidation is a proper function in Chapter 11.

22.      As the *Shea & Gould* court reasoned, the Second Circuit could not have meant that the filing of a Chapter 11 petition, which renders the partnership in dissolution under New York law, causes the partnership to be automatically ineligible for Chapter 11 relief upon its filing.  *Shea & Gould* at 745.  That court held that the *C-TC* dicta was not persuasive authority and did not believe that the Second Circuit would bar the law firm partnership from liquidating in Chapter 11. *Shea & Gould*, 214 B.R. at 745-46.

23.      The Bankruptcy Code provides instances where a partnership can be a debtor in Chapter 11.  *Id.*  Section 101 (41) authorizes a partnership to be a Chapter 11 debtor; Sections 109 and 303 permit the filing of involuntary Chapter 11 cases against partnerships in dissolution.

10

24.     It is well established that liquidation is a permissible goal in a Chapter 11 bankruptcy case.  *See, e.g.*, *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1352 (5th Cir. 1989); *In re Superior Boat Works, Inc.*, 438 B.R. 878 (N.D. Miss. 2010) (liquidation is an appropriate use of Chapter 11 and dissolved corporation could wind up business affairs in Chapter 11 irrespective of corporation's ability to reinstate); *In re Statepark Bldg. Group. Ltd.*, 316 B.R. 466, 474 (Bankr. N.D. Tex. 2004) ("[L]iquidation of a state created entity thorough a Chapter 11 was not only authorized, but specifically contemplated by Congress when it enacted the Code."); *St. Petersburg Fed. Savings & Loan Ass'n v. Vincent (In re Vincent)*, 7 B.R. 866, 870 (Bankr. M.D. Fla. 1980) ("The Bankruptcy Code now expressly permits a plan under Chapter 11 which contemplates . . . a liquidating plan at the outset."); *Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard. Inc.)*, 119 B.R. 14, 19 (Bankr. E.D.N.Y. 1990) ("While the primary purpose of Chapter 11 is reorganization, liquidation is not prohibited.").   The Bankruptcy Code indeed sanctions liquidating Chapter 11 plans.  *Id.*; 11 U.S.C. §§ 1123(b)(4), 1141(d).  The US Courts' government website explains that:

> In a chapter 11 case, a liquidating plan is permissible. Such a plan often allows the debtor in possession to liquidate the business under more economically advantageous circumstances than a chapter 7 liquidation. It also permits the creditors to take a more active role in fashioning the liquidation of the assets and the distribution of the proceeds than in a chapter 7 case.
>
> Confirmation does not discharge the debtor if the plan is a liquidation plan, as opposed to one of reorganization, unless the debtor is an individual. When the debtor is an individual, confirmation of a liquidation plan will result in a discharge (after plan payments are made) unless grounds would exist for denying the debtor a discharge if the case were proceeding under chapter 7 instead of chapter 11. 11 U.S.C. §§ 727(a), 1141(d).

(United States Courts, Chapter 11 Bankruptcy Basics, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-11-bankruptcy-basics.)    Here,    the    Individual

11

Debtor's stature in the field of employment litigation, his relationship with his clients, and his knowledge of the cases place him in a unique position to liquidate the Firm Debtor with more value in a Chapter 11 than a Chapter 7 case.  Liddle Objection Affidavit ¶¶ 5, 10.

25.    Aside from questioning the movants' interpretation of *C-TC*'s holding, the facts of *C-TC* are distinguishable.  *C-TC* was a single asset real estate case where the asset was the subject of a prepetition judgment of foreclosure and receivership.  *C-TC*, 113 F. 3d at 1307.  The Second Circuit viewed the case as a dispute between two parties that could have been resolved in state court and therefore dismissed it as a bad faith filing.  *Id*. at 1311-12.  *Shea & Gould*, similar to the case at hand, was a law firm partnership in dissolution.  *Shea & Gould* was decided a few months after *C-TC* and before *Hagerstown*.  The *Shea & Gould* court held that a dissolved partnership is eligible for Chapter 11 relief in New York when the relief sought is liquidation.  *Shea & Gould*, 214 B.R. at 746.  At the time of the *Shea & Gould* decision denying the dismissal motion, the Bankruptcy Court noted that 260 proofs of claim had been filed against the debtor.  *Id.* at 742.  Further, the Firm Debtor like *Shea & Gould* and unlike *C-TC*, has "assets consisting of work in process, accounts receivables, non-receivable assets and avoidance causes of action."  *Id.* at 744.

26.    As the *Shea & Gould* court noted in distinguishing *C-TC*, "throughout the life of its case *C-TC* held itself out as an entity seeking to reorganize in chapter 11."  *Id.* at 745.  The Second Circuit found that *C-TC* had waived its right to argue that it could liquidate in Chapter 11.  *Id.* at 745 (citing *C-TC*, 113 F. 3d at 1309). In support of its contention that the case was "impermissibly filed as a chapter 11 reorganization" (CF Firm Motion ¶ 1), Counsel Financial relies on one affidavit filed in one of the two debtor cases, the Firm First Day Affidavit, in which Mr. Liddle stated that he intended to "continue to operate the [Debtor's] business … and to continue [its] robust practice."  Firm First Day Affidavit ¶ 6.  Counsel Financial's contention, however, ignores

B5074876.7

the fact that Mr. Liddle needed to continue to operate the Firm Debtor in order to wind up the cases, which are the Firm Debtor's sole source of income for distribution to creditors.

27.     Counsel Financial also asserts that the Debtor "cannot now claim that it intends to liquidate."  CF Firm Motion ¶ 15.[5]  However, this is not a new contention.  There are numerous instances in this case where the Firm Debtor and Individual Debtor asserted that the Firm Debtor intends to wind up the affairs of the partnership, maximize recovery to the estate by realizing on work in progress, collect accounts receivables, assert avoidance actions and thereby develop a plan of liquidation.  *See, e.g.*, Transcript at 12:15-12:16, *In re Jeffrey Lew Liddle*, No. 19-10747 (May 1, 2019) ("[A]s the firm is dissolved into a single-lawyer firm, it is winding up.").  The Firm Debtor's intent is also evident from numerous pleadings in this Chapter 11 Case:

- Firm First Day Affidavit [Doc. No. 2]

  o "My individual case, *In re Jeffrey Lew Liddle*, Case No. 19-10747 (SHL), is still ongoing and closely related to this case.  As detailed below, many of my individual and the Firm's creditors overlap as some of my personal liabilities arise from guarantees of Firm obligations." ¶ 5.

  o "This Chapter 11 filing is necessary to the orderly administration of my individual and the Firm's estates and to enable me to continue to the Firm's active practice of law, which currently includes over thirty active litigations." ¶ 22.

  o "It is my belief and hope that under the protections granted by Chapter 11, I will be able to continue a strong practice, develop a consensual plan for creditors of payment or at the very least manage an orderly disposition of my and the Firm's affairs." ¶ 63.

- EisnerAmper was retained, in part, to assist "in the preparation of a plan for the winding up of the affairs of the Debtor." *Application of Liddle & Robinson, LLP for Entry of an Order Authorizing the Employment and Retention of EisnerAmper LLP as Accountant to Liddle & Robinson, LLP Effective Nunc Pro Tunc to the*

---

[5] Mr. Liddle could in fact move to dismiss the case, and refile the Firm Debtor's bankruptcy case with a supporting first day affidavit clarifying his intent to continue operating the Firm Debtor only as necessary to wind up its affairs— but to do so would be a waste of the judicial resources already expended in this Chapter 11 Case.

*Petition Date, In re Jeffrey Lew Liddle*, No. 19-10747 (Bankr. S.D.N.Y. Aug. 5, 2019) at ¶ 9(a)(E) [Doc. No. 153].

28.     Similarly, as set forth in the following excerpts from pleadings and transcripts in the Individual Debtor's Chapter 11 case, Mr. Liddle has always maintained his desire to maximize the value to his estate by continuing to represent the firm's clients to generate liquidity as he winds down the affairs of the firm:

- *Motion Pursuant to 11 to 11 U.S.C. § 105 to Extend the Automatic Stay Under 11 U.S.C. § 362 to Liddle & Robinson LLP and For Related Relief, In re Jeffrey Lew Liddle*, No. 19-10747 (Bankr. S.D.N.Y. Apr. 8, 2019) [Doc. No. 35].

  o   "Debtor wishes to continue operating L&R and manage its robust practice. Debtor represents clients in over thirty ongoing litigation matters. Those representations allow Debtor to continue to earn a livelihood and will produce revenue to fund reorganization plan of Debtor's estate. L&R continues to generate new business. As this Court noted at the March 28 hearing, the law firm business of L&R is the 'nesting doll' case-within-the-case." ¶ 4.

  o   "Debtor is reviewing the need to file a separate bankruptcy case for L&R. Debtor's responsibility as a Chapter 11 debtor and the litigious nature of the case to date are placing an extraordinary burden on the Debtor's continuing to operate the business of L&R. Extending the automatic stay to L&R would provide Debtor the ability to focus on his client needs and further business generation." ¶ 8.

- Transcript at 11:7-15:12; 32:15-33:7, *In re Jeffrey Lew Liddle*, No. 19-10747 (May 1, 2019).

  o   THE COURT: "All right. So let me ask you about the law firm. The last time we were talking about the motion to extend the automatic stay, we were talking about the big argument on the other side was the ability of the law firm to put itself in bankruptcy. And so I had some questions about whether that was value destructive. And there were some discussion about well, isn't it better to actually do it this way rather than simply say I'm going to set up shop at a new law firm which has been subject to a bankruptcy. And so there were some various pros and cons that were batted about. And so I don't know if the thinking has progressed any further on those issues."

  o   Mr. Gray: . . . "the ability of the firm to function more effectively in some kind of wind up of the partnership, because effectively, as a matter law, under New York law, as the firm is dissolved into a single-lawyer firm, it is winding up. And it's perfectly appropriate for that windup to be handled

14

under some kind of protective court proceeding. And since the sole
remaining lawyer, former partner, is in bankruptcy, it makes sense. So we
would anticipate, Your Honor, a filing of the law firm within the next two
weeks, I would say."

- "The Debtor is the sole remaining partner of Liddle & Robinson. The Debtor intends
  to continue to operate the Firm and believes that under the protections granted by
  Chapter 11, he will be able to continue a strong practice and develop a consensual
  plan for payment to credits or, at the very least, manage an orderly disposition of
  his and his Firm's affairs." *Motion Upon Presentment With 14 Days Notice for An
  Order Under 11 U.S.C. § 105 and 2002(M), 9007 and 9014 of the Federal Rules of
  Bankruptcy Procedure Establishing Certain Notice, Case Management, and
  Administrative Procedures, In re Jeffrey Lew Liddle*, No. 19-10747 (Bankr.
  S.D.N.Y. Jun. 27, 2019), ¶ 7 [Doc. No.110].

- "The Debtor will continue to focus all of his time and effort to overcoming CF
  II's tactics, representing clients and winding-down the Firm and planning chapter
  11 exit strategy." *Motion for Entry of an Order Further Extending the Debtor's
  Exclusive Period to File a Chapter 11 Plan and Solicit Acceptances Thereof
  Pursuant to Section 1121 of the Bankruptcy Code, In re Jeffrey Lew Liddle*, No.
  19-10747 (Bankr. S.D.N.Y. Oct. 7, 2019), ¶ 15 [Doc. No. 188].

29.    Thus, it is clear that the Firm Debtor and the Individual Debtor always intended for

the law firm in dissolution to wind up its affairs through a liquidating plan in Chapter 11.

### 5.    *In re Hagerstown* **Has Not Been Followed by Bankruptcy Courts in
the Second Circuit and Elsewhere.**

30.    The debtor in *Hagerstown* was a limited partnership created to acquire, construct,

own and operate a waste paper treatment facility (the "Mill"). *In re Hagerstown,* 1998 Bankr.

LEXIS 1054 at 2.  The case involved "a single unproductive asset," *id*. at 34, as the Mill never

successfully operated commercially. *Id*. at 4.  The case was commenced by a representative of the

limited partners who removed the sole general partner and acted in its stead as the general partner.

The removal of the general partner for cause met the Maryland statute's definition of dissolution

following an event of withdrawal. *Id*. at 13-14.  "Through the process of winding up, the

partnership marshals, liquidates and distributes its assets." *Id*. at 31.  Like *C-TC*, many of the

factors that courts cite for dismissal as a bad faith filing were present in *Hagerstown* according to

Judge Bernstein. This single asset case "represents a dispute between two factions of partners, and bankruptcy has little to contribute and less purpose to serve. The parties can obtain full relief without the aid of bankruptcy." *Id.* at 33-34. Here, in contrast, there are multiple clients with active case files generating fee-awards and accounts receivables.

31. Moreover, numerous cases in the Second Circuit support the holding that a partnership in dissolution can liquidate in Chapter 11. *See In Re New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334 (2d Cir. 1985) (holding that a Connecticut corporation dissolved by the secretary of state pursuant to Conn. Gen. Statute § 33387 could wind up its affairs and liquidate its assets under Chapter 11 of the Bankruptcy Code); *Cedar Tide Corp. v. Chandler's Cove Inn, Ltd.* (*In re Cedar Tide Corp.*), 859 F.2d 1127, 1132-33 (2d Cir. 1988) (holding that a New York corporation dissolved for failing to pay franchise taxes was eligible to file a Chapter 11 case); *see also Toibb v. Radloff*, 501 U.S. 157, 163, 111 S. Ct. 2197, 2201 (Chapter 11 is not limited to business debtors seeking to reorganize and restructure their debts, but "also embodies the general Code policy of maximizing the value of the bankruptcy estate").

32. Cases from other circuits and courts likewise support the ability of dissolved entities to seek relief under Chapter 11. *See, e.g.*, *Castro v. James J. Feder & Assocs.* (*In re Realty Trust Corp.*), No. 91-00007-ARM, 1994 U.S. App. LEXIS 13034, at *3 (9th Cir. May 12, 1994) (noting that there is "substantial authority that a dissolved corporation may file a Chapter 11 petition, provided it continues to exist under the law of the state of incorporation for the purpose of winding up its affairs."); *In re Superior Boat Works,* 438 B.R. 878 (N.D. Miss. 2010) ; *In re Prism Properties. Inc.*, 200 B.R. 43 (Bankr. D. Ariz. 1996) ; *Santa Fe Minerals v. Bepco* (*In re 15375 Memorial Corp.*), 382 B.R. 652 (Bankr. D. Del. 2008), rev'd on other grounds, 400 B.R. 420 (D. Del. 2009), aff'd, 589 F.3d 605 (3d Cir. 2009).

33.    There is a long history of law firm partnerships in dissolution winding up their affairs

in Chapter 11 cases, both before and after *Hagerstown*, including within the United States

Bankruptcy Court for the Southern District of New York.[6]    Specifically, Chapter 11 law firm

partnership cases that were filed in and confirmed a plan of liquidation in the United States

Bankruptcy Court for the Southern District of New York include: *In re Dewey & LeBouef LLP*,

Case No. 12-12321 (Bankr. S.D.N.Y. 2012) (Wind up Committee appointed to oversee the law

firm's wind up on May 11, 2012 and bankruptcy petition filed two weeks later on May 28, 2012);

*In re Drier LLP*, Case No. 08-15051 (Bankr. S.D.N.Y. 2008) (After the only equity partner of the

firm was arrested, a receiver was appointed and on December 15, 2008 the United States District

Court granted the receiver authority to commence a Chapter 11 bankruptcy case which was filed

on December 16, 2008; Judge Stuart Bernstein confirmed the plan of liquidation on April 28, 2014

at Doc. No. 1921); *In re Coudert Brothers*, Case No. 06-12226 (Bankr. S.D.N.Y. 2006) (Wind up

commenced prepetition and the affidavit in support of the First Day Motions states that "The

Debtor is determined to complete the Wind-Down of its affairs through Chapter 11 and to confirm

a plan of liquidation", Doc. No. 2 at ¶ 15); *In re Berger, Steingut & Stern*, Case No. 95-41198; *In

re Shea & Gould*, Case No. 95-45978 (Bankr. S.D.N.Y. 1995); *In re Bower & Gardner*, Case No.

94-44743 (Bankr. S.D.N.Y. 1994); and *In re Finley & Kumble*, Case No. 88-103377.

---

[6] The *Hagerstown* decision is not binding on this Court.  A decision by a district court judge is not binding on the judges of the same judicial district.  18 Moore's Federal Practice - Civil § 134.02 (2019) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011))).  *See also Barnett v. Jamesway Corp. (In re Jamesway Corp.)*, 235 B.R. 329, 336 n.1 (Bankr. S.D.N.Y. 1999) ("[W]here the bankruptcy Court sits in a multi-judge district, it is not bound by principles of stare decisis by the decision of a district judge in that district.").  Therefore, Judge Bernstein's decision in *Hagerstown* is not be binding on another judge of the same bankruptcy court.

B5074876.7

34.     Chapter 11 law firm cases in other jurisdictions include: *In re Archer Norris*, Case No. 18-30924 (Bankr. N.D. Cal. 2018); *In re Sedgwick, Detert, Moran & Arnold LLP*, Case No. 18-31087 (Bankr. N.D. Cal. 2018) (joint plan of liquidation filed on November 7, 2019 at Doc. No. 295); *In re Ruden McClosky P.A.*, Case No. 11-40603 (Bankr. S.D. Fla. 2011) (Chapter 11 plan confirmed on October 12, 2012 at Doc. No. 58); *In re Howrey LLP*, Case No. 11-31376 (Bankr. N.D. Cal. 2011) (involuntary Chapter 7 filed and case converted to a Chapter 11); *In re Heller Ehrman LLP*, Case No. 08-32514 (Bankr. N.D. Cal. 2008) (joint Chapter 11 plan of liquidation on August 13, 2010 at Doc. No. 1446); and *In re Altheimer & Gray*, Case No. 03-43547 (Bankr. N.D. Ill. 2003).

35.     Therefore, this Court should follow the long line of cases that have upheld and maintained the Chapter 11 cases of partnerships in dissolution.  The Firm Debtor is eligible to be a Chapter 11 debtor to wind up its affairs consistent with the law of the Second Circuit and the majority of law firm partnerships in dissolution which have successfully confirmed plans of liquidation under Chapter 11 of the Bankruptcy Code.  The Firm Debtor filed in good faith and the case should not be converted or dismissed.

### B.    There Is No Cause to Convert or Dismiss the Chapter 11 Case under Bankruptcy Code Section 1112(b)

36.     This is not the usual law firm bankruptcy case.  The movants' "one size fits all" solution doesn't fit here. There is an active law practice retaining and still attracting clients.  While the firm known as Liddle & Robinson L.L.P. is winding up its affairs and developing a plan of liquidation, the practice may be sold, merged into, or transferred to another entity to service its clients' needs.

37.     Bankruptcy Code section 1112(b)(1) provides, in relevant part, that on request of a party in interest, "the court shall convert a case under this chapter to a case under chapter 7 or

18

dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).  Although section 1112(b)(4) provides a non-exhaustive list of what constitutes cause, whether "cause" exists is determined on a case-by-case basis, and courts are "free to consider other factors" and have "wide discretion" in determining to dismiss or convert a case.  *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).  *See also In re Pleasant East Assocs.*, 286 B.R. 509, 516 (Bankr.S.D.N.Y.2002) *and In re Syndicom Corp.*, 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001) (each noting that determinations of cause are within the discretion of the court).[7]

38.    The initial burden to establish cause exists to convert a Chapter 11 case to Chapter 7, or to dismiss the case, whichever is in the best interest of creditors and the estate, lies with the movants.  7 Collier on Bankruptcy P 1112.05 (16th ed. 2019).  Counsel Financial relies solely on *C-TC* in support of its argument that the Firm Debtor neither intends to reorganize nor is capable of reorganization and therefore cause exists to convert the Chapter 11 Case.  Counsel Financial does not analyze or put forth any other causation factors or bad faith factors and has not met its burden.

39.    In *C-TC*, the Second Circuit identified eight factors that tend to indicate that a debtor does not have a genuine intent to reorganize or a reasonable prospect of emerging successfully from bankruptcy, including:

> (i) the debtor has only one asset; (ii) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (iii) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (iv) the debtor's financial condition is, in essence, a two party dispute

---

[7]Courts in other jurisdictions agree that "cause" under section 1112(b) is a factual determination, to be made on a case-by-case basis within the discretion of the court.  *See, e.g., In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993); *In re Woodbrook Associates*, 19 F.3d 312, 316 (7th Cir. 1994); *In re Nugelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992); *In re Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987).

B5074876.7

between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (v) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (vi) the debtor has little or no cash flow; (vii) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (viii) the debtor has no employees.

*C-TC*, 113 F.3d at 1311.  Counsel Financial's reliance on *C-TC*, however, is misguided.

Applying the above factors to the Firm Debtor, cause does not exist to convert the Chapter 11

Case.  Here, the Firm Debtor has multiple, diverse, distinct assets, including its clients and client

cases, as compared and contrasted to a single asset real estate bankruptcy case (as was the case in

*C-TC*).  The Firm Debtor has both secured creditors and a number of varied unsecured creditors.

Its assets are not the subject of a foreclosure action, but are subject to claims before prior courts

and appeals of those claims, as well as continuing pending litigation in this Court.  The timing of

the Firm Debtor's Chapter 11 filing was spurred by another creditor's objections to extensions of

the automatic stay made applicable to the Firm Debtor by virtue of its relationship to the

Individual Debtor.  The Firm Debtor is meeting its current expenses as they become due and, not

only does the firm have employees, it has hired two new employees since the Petition Date so

that it may continue to administer its assets and complete work on the cases for the benefit of all

creditors.

40.    Regarding the Firm Debtor's pending state court litigation, it is well settled law that

filing for Chapter 11 relief to stay state court litigation is not *per se* bad faith.  *In re Neilson*, No.

17-10631, 2018 Bankr. LEXIS 4107 at *7-8 (Bankr. N.D.N.Y. Aug. 31, 2018) (distinguishing *C-*

*TC* and stating that, "When a court determines that a debtor filed for a proper bankruptcy purpose,

the court will generally not dismiss those cases, absent other indicia of bad faith, even though the

filings may largely be designed to frustrate one creditor's efforts in state court.").  In interpreting

*C-TC*, bankruptcy courts within the this district have noted that the Second Circuit's ruling in *C-*

*TC* relied on a finding by the bankruptcy court that the debtor knew there was no reasonable probability that it would ever emerge from bankruptcy yet "chose to file the petition anyway," and that the debtor's main purpose in filing its Chapter 11 petition was to stay state court proceedings and "relitigate in the bankruptcy forum the matters that had been settled in the state court." *In re Balco Ltd.*, 312 B.R. 734, 753-54 (Bankr. S.D.N.Y. 2004). The Bankruptcy Court in *Balco* noted that the case at hand was not one of bad faith, but one where the debtor had "excess of optimism that was not supported by sufficiently diligent efforts to reorganize in a speed and manner that would not prejudice its secured creditors." *Id.*; *see also In re Sletteland*, 260 B.R. 657, 662 (Bankr. S.D.N.Y. 2001) (holding that the movant did not demonstrate that the debtor lacked a good faith intent or that he intended to use the court simply as a mechanism for frustrating movants' efforts to gain the fruits of their litigation).

41.     The burden is on the movant to prove bad faith, and conversion or dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief except in extraordinary circumstances. *See, e.g.*, *In re Century/ML Cable Venture,* 294 B.R. 9 (Bankr. S.D.N.Y. 2003); *In re Syndicom Corp.*, 268 B.R. at 47 (citing *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)); *In re D&F Meat Corp.*, 68 B.R. 39, 40 (Bankr. S.D.N.Y. 1986) ("It is settled law that the burden of establishing cause for dismissal or conversion rests squarely on the party seeking such relief"). Counsel Financial and the U.S. Trustee have not met their burden here. Their complete reliance on *C-TC* is misplaced. They solely rely on their argument that this Firm Debtor is ineligible to reorganize, which is not its intent, and therefore cannot be in Chapter 11 without briefing any of the enumerated examples of cause for conversion in 1112(b)(4) nor the factors that courts look at to determine if dismissal or conversion is in the best interests of the creditors and the estate.

B5074876.7

42.     Similarly, Bortnick has not met his burden to demonstrate cause exists to convert the Chapter 11 case to a Chapter 7 case.  Bortnick argues that the Chapter 11 case of the Firm should be converted to a Chapter 7 case to prevent Mr. Liddle from pursuing litigation against him and Counsel Financial.  Bortnick Motion ¶¶ 2, 6.  Bortnick does not cite any cases for the proposition that a case should be converted to thwart a debtor's legitimate efforts to retrieve information pursuant to a Rule 2004 motion or to commence litigation against a former partner of a debtor law firm or its alleged lender.  Just the reverse is true.  Numerous law firm Chapter 11 cases, such as those cited *infra,* involved avoidance actions and clawback settlements against former partners.

43.     Bortnick further argues with no appropriate evidence that Mr. Liddle is "unfit to act as a fiduciary" because (1) Bortnick disagrees with Mr. Liddle's assertions that Mr. Bortnick breached obligations to the Firm; (2) Mrs. Liddle is a co-debtor to some obligations as evidenced by a proof of claim filed in the Individual Debtor case not this case; and (3) the law firm failed to pay taxes. Bortnick Motion ¶¶ 4, 5 and 8.  First, the fact that a debtor raises concerns about actions of a former partner and may pursue litigation against that partner is not a factor for cause to convert—rather, it demonstrates that the debtor is exercising its fiduciary duties to marshal assets into the estate.  Second,  Mr. Bortnick cites claims filed by creditors in the Individual Debtor case, specifically proof of claim #21 filed in *in re Jeffrey Lew Liddle*, which he argues may lead to contribution claims (assuming Mrs. Liddle has not already reimbursed creditors to which she is co-liable) in the Individual Debtor case.  There is no evidence that the Firm Debtor would not fairly adjudicate claims at the appropriate point in time.  The Firm Debtor has filed a motion to set the bar date.  Doc. No. 161.  Mr. Bortnick further misleads the court in asserting that the Firm breached a fiduciary duty by releasing $1 million from the DIP Account to Mrs. Liddle (Bortnick

Motion ¶ 5), when in fact, the funds released were the sale proceeds authorized to be transferred to Mrs. Liddle pursuant to an order of this Court. *See Order Denying Counsel Financial II LLC's claim of a Perfected Security interest in and Lien on Certain Cash Collateral and Granting Related Relief*, Case No. 19-10747 Doc. No. 185, ¶ 4 ("For the reasons stated on the record at the September 19 Hearing, the Debtor is authorized and directed to release to the Debtor's wife, Tara Liddle, her entire remaining interest in the Escrowed Funds, as defined in the Turnover Order."). Third, the Firm has retained professionals (Tax Benefits Practice Group and Richard Lynne) to address the filing of tax returns, thus it is indeed fulfilling its obligations as a debtor in possession. Docs. No. 53, 58, 111, 113.

44.     In stark contrast to the scant number of cases in the Motions, there are a number of cases within the Second Circuit where courts have denied motions to convert or dismiss on facts similar to the Firm Debtor's case. *See, e.g.*, *Ad Hoc Comm. Of Bondholders v. Citicorp Venture Capital Ltd. (In re Fairwood Corp.)*, 2000 U.S. Dist. LEXIS 2606 (Bankr. S.D.N.Y. 2000) (affirming the bankruptcy court's denial or a conversion motion where there was no evidence that the debtor was incapable of administering its own affairs or that the debtor failed or refused to bring any claims held by the estate, or that there was an absence of reasonable likelihood of rehabilitation); *In re Soundview Elite, Ltd*., 503 B.R. 571, 580 (Bankr. S.D.N.Y. 2014) (denying a motion to dismiss based in part on the argument that the debtors could not reorganize, finding that "it is not bad faith to file a chapter 11 petition for the purpose of a more orderly liquidation"); *In re Adamo*, No. 14-73640-las, 2016 Bankr. LEXIS 694 (Bankr. E.D.N.Y. Mar. 4. 2016) (denying a motion to convert premised in part on the alleged substantial and continuing diminution of the estate, where the debtor's monthly operating reports showed that it was able to meet its ongoing obligations, even though it had some postpetition negative cash flow).

B5074876.7

45.     In cases where courts have granted motions to convert or dismiss, the facts are distinguishable from those in the Firm Debtor's Chapter 11 Case.  For example, in *In re Kuvykin*, No. 18-10760 (JLG), 2019 Bankr. LEXIS 631 (Bankr. S.D.N.Y. Feb. 26, 2019), the Court found cause to dismiss where the debtor was a serial filer, had offered conflicting evidence regarding potential value of estate, had not filed monthly operating reports, and was generally not forthcoming with respect to extent and value of assets.  Similarly, in *In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 Bankr. LEXIS 1209 (Bankr. S.D.N.Y. May 3, 2017), conversion or dismissal was warranted where the debtor has lost its taxicab medallions which were the sole source of its revenue and there was a resulting unavoidable, substantial and continuing loss to the debtor's estate.

46.     Here, the Motions have failed to demonstrate that cause exists to convert the Firm Debtor's case to Chapter 7.  The Firm Debtor did not file its Chapter 11 case in bad faith, but rather with the intention of continuing to operate the firm long enough to administer its cases— its sole source of operating income—so as to effectuate an orderly wind up for the benefit of the estate and its creditors.  Moreover, none of the enumerated factors for cause in section 1112(b) that have warranted conversion or dismissal of other Chapter 11 cases are present.

**C.     Unusual Circumstances Exist Such That Conversion or Dismissal is not in the Best Interests of Creditors and the Estate.**

47.     Even if cause exists, Section 1112(b)(2) provides an exception to the obligation of the court to dismiss, convert or appoint a Chapter 11 trustee where the court finds both that there exists unusual circumstances specifically identified by the court that establish that conversion or dismissal is not in the best interests of creditors and the estate and an objecting party establishes that (1) there is a reasonable likelihood that a plan will be confirmed within the timeframes established under section 1121(e) and 1129(e), or, if such sections are inapplicable, within a

reasonable time, (2) the cause for dismissal or conversion is other than continuing loss or diminution to the estate without a reasonable likelihood of rehabilitation and (3) there is a reasonable justification for the act or omission of the debtor constituting cause and the act or omission will be cured within a reasonable time.  11 U.S.C § 1112(b)(2).

48.     Here, there are compelling unusual circumstances warranting that the Firm Debtor remain a debtor-in-possession under Chapter 11.  If the Firm Debtor's case converts to a Chapter 7 case and a Chapter 7 trustee is appointed, or if a Chapter 11 trustee is appointed, Mr. Liddle would not be able to service the law firm clients.  It is inconceivable that a Chapter 11 or a Chapter 7 trustee could service the Firm's clients and represent the clients in their complex cases. Clients have retained the Firm to have Jeffrey Lew Liddle represent them.  A Chapter 11 trustee would have to hire its own lawyers to run the cases.  Even if Mr. Liddle was employed by and continued to work for a Chapter 11 trustee, the clients are free to leave and there is absolutely no reason to think they would not go elsewhere.  It is likely that the transfer of cases to a new lawyer (whether by departure of the client or retention of lawyers by a Chapter 11 trustee)  would cause catastrophic delay in cases, additional costs to the clients in getting new counsel up to speed, risk of missing deadlines and loss of knowledge in the case.  All these would likely amount to post-petition lawsuits against the estate for malpractice, fees and expenses, and result in huge administrative claims against the estate.  The harm to the clients of the Firm Debtor upon conversion or appointment of a trustee is insurmountable.

49.     The remaining clauses of Section 1112(b)(2) are equally satisfied. There is a reasonable likelihood that a plan of liquidation will be confirmed within a reasonable time.  The debtor intends to confirm a plan that distributes funds to legitimate creditors, and believes, as set forth in the Liddle Objection Affidavit and the Wilen Declaration, that Counsel Financial's claims

25

will be recharacterized and/or subordinated.   The movants have not demonstrated cause for conversion or appointment of a trustee and certainly not cause based upon any acts or omission that the Debtor could not cure within a reasonable time.   Therefore the unusual circumstances exception has been met in this case.  11 U.S.C § 1112(b)(2).

50.     Precedent demonstrates that many law firm partnerships confirmed a plan of liquidation while the debtor remained in possession without the appointment of a Chapter 11 trustee during the case.   *See, e.g.*, *In re Archer Norris*, Case No. 18-30924 (Bankr. N.D. Cal. 2018); *In re Sedgwick, Detert, Moran & Arnold LLP*, Case No. 18-31087 (Bankr. N.D. Cal. 2018); *In re Dewey & LeBouef LLP*, Case No. 12-12321 (Bankr. S.D.N.Y. 2012); *In re Ruden McClosky P.A.*, Case No. 11-40603 (Bankr. S.D. Fl. 2011); *In re Heller Ehrman LLP*, Case No. 08-32514 (Bankr. N.D. Ca 2008); *In re Coudert Brothers*, Case No. 06-12226 (Bankr. S.D.N.Y. 2006); *In re Altheimer & Gray* Case No. 03-43547 (Bankr. N.D. Ill 2003).  *See also In re 1031 Tax Group, LLC,* 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007) (finding that cause did not exist for appointment of a Chapter 11 trustee or for conversion to a Chapter 7 where the debtors continued to operate as debtors-in-possession primarily in a wind-down or liquidation mode).

51.     Those law firm cases that had a Chapter 11 trustee during the pendency of the case either were involuntary Chapter 7 cases which converted to a Chapter 11 case, *see In re Howrey LLP*, Case No. 11-31376 (Bankr. N.D. Cal. 2011)), or where there was no partner left to run the firm, *see In re Drier LLP*, Case No. 08-15051 (Bankr. S.D.N.Y. 2008) (partner was arrested prior to the bankruptcy).  Those situations are inapposite to the Firm where Mr. Liddle is actively servicing client needs and trying cases for the benefit of the estate.

### D.     There Is No Cause to Appoint a Chapter 11 Trustee under 11 U.S.C. §1104(a)

52.     A Chapter 11 trustee should only be appointed pursuant to 11 U.S.C. § 1104(a): (1) "for cause, including fraud, dishonesty, incompetence, or gross management of the affairs of the debtor by current management" or (2) "if such appointment is in the interest of creditors, any equity security holders and other interests of the estate."  The appointment of a Chapter 11 trustee is an extraordinary remedy.  *In re 1031 Tax Group, LLC*, 374 B.R. 85 (Bankr. S.D.N.Y. 2007); *In re Sharon Steel Corp.*, 871 F. 2d 1217, 1225 (3d Cir. 1989).  The standard for § 1104 appointment is "very high."  *Smart World Techs., LLC. v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005).  The U.S. Trustee has the burden of showing by "clear and convincing evidence that the appointment is warranted."  *Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541 (2d Cir. 2009).

53.     There is a strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee.  *In re 1031 Tax Group, LLC*, 374 B.R. at 85. This "strong presumption" against appointment of a trustee is based on the fact that the debtor-in-possession is already a fiduciary for the estate and has an obligation to refrain from acting in a manner that could damage the estate.  *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463, 471 (3d Cir. 1998).  The strong presumption is also because the debtor in possession is the best party to conduct operations during the case.  *Id.*

54.     A court has "wide discretion in considering the relevant facts" and "wide latitude in determining whether the challenged conduct rises to the level of "cause."  *In re 1031 Tax Group, LLC*, 374 B.R. at 85.

27

55.     In determining whether the appointment is in the creditors' best interests under §1104(2), courts look to the "practical realities and necessities". *In re Ionosphere Clubs, Inc*., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).  Courts consider the following factors:

1.     The trustworthiness of the debtor;

2.     The debtor in possession's past and present performance and prospects of the debtor's rehabilitation;

3.     The confidence—or lack thereof—of the business community and of the creditors in present management; and

4.     The benefits derived by the appointment of a trustee, balanced against the cost of appointment.

*In re Adelphia Communications Corp.,* 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006); *In re 1031 Tax Group, LLC*, 374 B.R. at 91; *In re Eurospark Indus., Inc.,* 424 B.R. 621, 627 (Bankr. S.D.N.Y. 2010). "In essence, §1104(a)(2) reflects the practical reality that a trustee is needed." *In re 1031 Tax Group, LLC*, at 91.

56.     Trustworthiness of the Debtor has not been refuted and is supported by the fact that it has retained legal counsel and financial advisors who are reviewing all cash disbursements and receipts, bank statements and filing monthly operating reports.

57.     The Debtor has been performing both its bankruptcy fiduciary duties such as filing schedules, statements of financial affairs, monthly operating reports, and responding to creditor inquiries, and its duties to clients.  The Trustee's main argument that cause exists is that the recently filed monthly operating reports for the Firm Debtor are allegedly missing bank statements and that certain items are redacted.  On the Petition Date, the Firm Debtor proposed to have Richard Lynne, who had previously prepared financial statements for the Firm and who could thus provide information to EisnerAmper in the preparation of the monthly operating reports, to serve as an ordinary course professional and then applied for retention of Lynne as a tax accountant on

September 5, 2019 [Doc. No. 53].  The Order Authorizing the Retention of Richard Lynne was entered on October 30, 2019 [Doc. No. 111].  In about one month from his retention, on December 3, 2019, the Firm Debtor filed all four of its operating reports for the months of July, August, September and October [Doc. Nos. 145-148].  Each operating report was accompanied by a Wells Fargo bank statement.  The Firm Debtor, as one-partner partnership, had trouble opening up a debtor-in-possession bank account with Wells Fargo and other banks, and it was not able to open a DIP account in its name until M&T Bank agreed on October 11, 2019.  Liddle Objection Affidavit ¶ 14 n.5.  M&T Bank's account does not provide online bank statements and the Debtor must await hard copies or request monthly statements by email with the branch manager.  *Id.*  Until the opening of the M&T DIP account, the firm's cash receipts and disbursements were run through the Individual Debtor's DIP account so that all amounts would be transparent to the U.S. Trustee and creditors.  *Id.*  EisnerAmper redacted items in the Firm Debtor's monthly operating reports to protect the confidentiality of the law firm's clients or because the items were on account of the Individual Debtor and therefore already reflected in the Individual Debtor's monthly operating reports.  *Id.*  The later was a way to differentiate the law firm amounts in response to the request by Counsel Financial in one of its many objections.  *Id.*  In addition to the monthly operating reports, the Firm Debtor has also filed budgets with each of its five cash collateral motions and orders showing actual and forecasted income and expenses [Doc. Nos. 5, 23, 73, 94, 132; Doc. No. 158 in Case No. 19-10747].  The Firm Debtor has provided in open court status updates with respect to the law firm income and accounts receivables. Thus, the Firm Debtor has worked diligently to provide financial information to the U.S. Trustee, the creditors and the Court.

58.    The Firm Debtor is continuing to service clients, retaining new clients and earning income.  Clearly the business community—the clients—have confidence in the Debtor. The

29

oppositional nature of Counsel Financial has driven up professional fees in the case, but is not because of a failure by the Debtor to perform or provide confidence in its ability to operate the Firm or as a debtor-in-possession.  There is also no reason to doubt that causes of action of the estate will not be pursued by the debtor which will benefit almost all creditors of the estate— perhaps to the detriment of the movants Counsel Financial and Bortnick.

59.    The cost of appointment of a trustee far outweighs any benefit derived by the appointment of a trustee.  This is not a law firm Chapter 11 case where all the partners have left the firm and a management committee is simply collecting account receivables and bringing claw back actions—this is an unusual circumstance—a law firm business operating to winding up its affairs to maximize value to the estate. Maximization of value is best achieved by Mr. Liddle because his interests are aligned with the estate.  The likelihood that clients will take their cases elsewhere because they would not want to be represented by a firm run by a third party trustee, and the intendant harm to the receivables of the Firm, far outweighs any benefit.

60.    The U.S. Trustee has not demonstrated by clear and convincing evidence that the extraordinary remedy of appointing a Chapter 11 trustee is warranted for cause or in the best interests of creditors or the estate.

61.    At the end of the day, Counsel Financial, Bortnick, the U.S. Trustee and the Debtor have the same goals for the Chapter 11 case—wind up the affairs of the Firm, transfer the cases to another law firm in which Mr. Liddle is a partner or employed to continue servicing those cases, provide for the liquidation of the assets of the Debtor and distribute proceeds to creditors. Nothing to date warrants the appointment of a trustee, whether in Chapter 7 or 11, and the demise of the ability to maximize value and marshal assets into the estate.

## CONCLUSION

For the reasons set forth above, the Debtor respectfully requests that the Court deny the relief requested in the Motions, allow the Debtor to continue as a debtor-in-possession in a case under Chapter 11 of the Bankruptcy Code and issue such other and further relief as is just and proper under the circumstances.

Dated: December 13, 2019  
      New York, New York

Respectfully submitted,  
*/s/ William F. Gray, Jr.*

FOLEY HOAG LLP  
William F. Gray, Jr.  
Alison D. Bauer  
Jiun-Wen Bob Teoh  
1301 Avenue of the Americas  
New York, New York 10019  
Tel:   646.927.5500  
Fax:   646.927.5599  
wgray@foleyhoag.com  
abauer@foleyhoag.com  
jteoh@foleyhoag.com

Michael J. Licker  
Meredith S. Parkinson  
James S. Fullmer  
155 Seaport Boulevard  
Boston, Massachusetts 02210  
Tel:   617.832.1000  
Fax:   617.832.7000  
mlicker@foleyhoag.com  
mparkinson@foleyhoag.com  
jfullmer@foleyhoag.com

*Attorneys for Liddle & Robinson, L.L.P.,*  
*a Debtor and Debtor in Possession*

B5074876.7