UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
In re                                                        : Chapter 11
                                                             :
LIDDLE & ROBINSON, L.L.P.,[1]                                : Case No. 19-12346 (SHL)
                                                             :
                    Debtor                                   : (Jointly Administered with Case No. 19-
------------------------------------------------------------ x 10747)


**NINTH INTERIM ORDER (1) AUTHORIZING USE OF
CASH COLLATERAL BY LIDDLE & ROBINSON, L.L.P.,
(2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING
THE AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion") [ECF No. 5][2] of Liddle & Robinson, L.L.P., as debtor and debtor-in-possession (the "Debtor"), in the above-captioned case (the "Chapter 11 Case"), for entry of an order: (i) authorizing the Debtor's use of "cash collateral" (as defined in section 363(a) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code")) in which the Prepetition Lenders (as defined in the Motion) have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on July 22, 2019 (the "Petition Date") or arising pursuant to this Interim Order, the Final Order (as defined herein) or otherwise (the "Cash Collateral"); (ii) providing adequate protection to the Prepetition Lenders for any diminution in value of their respective interests in substantially all of the Debtor's assets (the "Prepetition Collateral"), including the Cash Collateral; (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and (iv) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.
[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

3479189.2

Motion and entry of a final order (the "Final Order") and approving the form of notice with respect to the Final Hearing, all as more fully described in the Motion; it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; it appearing that notice of this Motion and the opportunity for a hearing on this Motion was appropriate under the particular circumstances and that no other or further notice need be given; and the Prepetition Lenders having filed the *Responses and Objections by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC to Debtor's First Day* Motions [ECF No. 25]; and this Court having entered the *Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 30] authorizing the relief sought in the Motion on an interim basis through August 21, 2019; and this Court having entered the *Second Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 46] authorizing the relief sought in the Motion on an interim basis through September 21, 2019; and this Court having entered the *Third Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 81] authorizing the relief sought in the Motion on an interim basis through October 26, 2019; and this Court having entered the *Fourth Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 108] authorizing the relief sought in the Motion on an interim basis through December 2, 2019; and this Court having entered the *Fifth Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate*

*Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 157] authorizing the relief sought in the Motion on an interim basis through December 20, 2019; and this Court having entered the *Sixth Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 198] authorizing the relief sought in the Motion on an interim basis through January 31, 2020; and this Court having entered the *Seventh Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 227] authorizing the relief sought in the Motion on an interim basis through March 18, 2020; and this Court having entered the *Eighth Interim Order (1) Authorizing Use of Cash Collateral, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [ECF No. 251] authorizing the relief sought in the Motion on an interim basis through April 30, 2020; and by Order dated January 6, 2020 [ECF No. 201], Jonathan L. Flaxer (the "Trustee") was appointed as the chapter 11 trustee for the Debtor; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1. The Motion is granted on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2. Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, the Debtor is authorized to use Cash Collateral for the period (the "Specified Period") from April 30, 2020 through June 18, 2020. Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts, at the times, and for the purposes identified in the cash collateral budget (the "Budget"), a copy of which is attached hereto as **Exhibit A**.

3479189.2

3. Notwithstanding the foregoing, the Debtor is hereby authorized to pay any statutory fees or interest to the United States Trustee (to the extent required by applicable law) when such fees or interest become due or payable, regardless of the amount for which such fees or interest have been budgeted. The authorization for the Debtor to use Cash Collateral shall terminate at the expiration of the Specified Period. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order or other order of the Court (in each case consistent with the Interim Order and the Budget), with the prior written consent of the Prepetition Lenders, and in accordance with the Budget. Any payments to be made under any order shall be made in accordance with this Interim Order and the Budget.

4. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Prepetition Lenders are hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests in and liens on (the "<u>Adequate Protection Liens</u>") the Debtor's Accounts Receivable (as defined in the Motion) to the extent of any Diminution in Value (as defined in the Motion).

5. The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successor thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceedings superseding or related to any of the foregoing (a "<u>Successor Case</u>"). Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case or any Successor Case, and shall be valid and enforceable against any trustee appointed

3479189.2

in the Case or any Successor Case, or upon the dismissal of the Case or Successor Case. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

6. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens; (b) permit the Debtor to perform such acts as the Prepetition Lenders may request, each in its sole discretion, to assure the perfection and priority of the liens granted herein; and (c) permit the Debtor to incur all liabilities and obligations to the Prepetition Lenders under the this Interim Order.

7. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens or to entitle the Prepetition Lenders to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Lenders are authorized to file, as it deems necessary or advisable in its sole discretion, such financing statements, mortgages, notices of lien and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date. However, no such filing or

recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens. The Debtor is authorized and directed to execute and deliver to the Prepetition Lenders, promptly upon demand, all such financing statements, mortgages, notices and other documents as any of the Prepetition Lenders may reasonably request. The Prepetition Lenders may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

8. The Final Hearing to consider entry of the Final Order is scheduled for June 18, 2020 at 10:00 a.m. (Eastern Time) before the Honorable Sean H. Lane, United States Bankruptcy Judge, Courtroom 701, at the United State Bankruptcy Court for the Southern District of New York; provided, however, that if the Trustee seeks entry of a Final Order, on or before June 11, 2020, the Trustee shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with a copy of this Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Statutory Committee; and (d) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the relief requested in the Motion on a final basis shall file written objections with the Clerk of the Court no later than on June 15, 2020 at 4:00 p.m. (Eastern Time), which objections shall be served so as to be received on or before such date by: (i) counsel for the Debtor, Foley Hoag, LLP, Attn: William F. Gray, Jr. and Alison D. Bauer; (ii) counsel for the Prepetition Lenders, Davidoff Hutcher & Citron, LLP, 605 Third Avenue, New York, NY 10158, Attn: David H. Wander, Esq.; (iii) counsel to any Statutory Committee; (iv) the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10004,

3479189.2

Attn: Andrea Schwartz, Esq.; and (v) counsel for the Trustee, Golenbock Eiseman Assor Bell & Peskoe LLP, 711 Third Avenue, New York, NY 10017, Attn: Michael S. Weinstein, Esq.

9. The Trustee, on behalf of the Debtor's bankruptcy estate, hereby admits, stipulates, acknowledges and agrees as follows:

### The CFII Loan

a) Pursuant to that certain Revolving Promissory Note dated as of August 5, 2016 (as amended, restated, supplemented, or otherwise modified from time to time, the "CFII Note," and collectively with the Loan Documents (as defined in the CFII Note) and any other documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "CFII Loan Documents"), by and between the Debtor and Counsel Financial II LLC ("CFII"), CFII agreed to provide a loan to the Debtor up to the amount of $5,500,000 (the "CFII Loan").

b) As of the Petition Date, the aggregate principal amount outstanding under the CFII Loan is not less than $5,500,000 (the "Allowed CFII Claim").

c) The Allowed CFII Claim constitutes an allowed, legal, valid, binding, enforceable and non-avoidable obligation of the Debtor, and it is not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of the Allowed CFII Claim.

3479189.2

    d)    As of the Petition Date, the Allowed CFII Claim is secured pursuant to the CFII Security Agreement dated August 5, 2016, by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by the Debtor to CFII, upon substantially all of the Debtor's assets (as delineated in the CFII Security Agreement, the "CFII Collateral") (the "CFII Lien"). The CFII Lien on the CFII Collateral is valid, binding, enforceable, non-avoidable, and properly perfected and was granted to CFII by the Debtor for fair consideration and for reasonably equivalent value.

**The LIG Loan**

    a)    Pursuant to that certain Term Promissory Note dated as of October 13, 2016 (as amended, restated, supplemented, or otherwise modified from time to time, the "LIG Note," and collectively with the Loan Documents (as defined in the LIG Note) and any other documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "LIG Loan Documents"), by and between the Debtor and LIG Capital LLC ("LIG"), LIG agreed to provide a loan to the Debtor in the amount of $1,500,000 (the "LIG Loan").

    b)    As of the Petition Date, the aggregate principal amount outstanding under the LIG Loan was not less than $459,887.25 (the "Allowed LIG Claim").

    c)    The Allowed LIG Claim constitutes an allowed, legal, valid, binding, enforceable and non-avoidable obligation of the Debtor, and it is not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and

3479189.2

|   |   |
|---|---|
|   | the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of the Allowed LIG Claim. |
| d) | As of the Petition Date, the Allowed LIG Claim is secured pursuant to the LIG Security Agreement dated October 13, 2016, by valid, perfected, enforceable and non-avoidable security interests and liens granted by the Debtor to LIG, upon substantially all of the Debtor's assets (as delineated in the LIG Security Agreement, the "LIG Collateral") (the "LIG Lien"). The LIG Lien on the LIG Collateral is valid, binding, enforceable, non-avoidable, and properly perfected and was granted to LIG by the Debtor for fair consideration and for reasonably equivalent value. |

**The Holdings Loan**

|   |   |
|---|---|
| a) | Pursuant to that certain Revolving Promissory Note dated as of June 2, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "CFH Note," and collectively with the Loan Documents (as defined in the CFH Note) and any other documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "CFH Loan Documents"), by and between the Debtor and Counsel Financial Holdings LLC ("CFH"), CFH agreed to provide a loan to the Debtor up to the amount of $1,775,000 (the "CFH Loan"). |
| b) | As of the Petition Date, the aggregate principal amount outstanding under the CFH Loan was not less than $1,729,004.29 (the "Allowed CFH Claim"). |

c) The Allowed CFH Claim constitutes an allowed, legal, valid, binding, enforceable and non-avoidable obligation of the Debtor, and it is not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of the Allowed CFH Claim.

d) As of the Petition Date, the Allowed CFH Claim is secured pursuant to the CFH Security Agreement dated June 2, 2017, by valid, perfected, enforceable and non-avoidable security interests and liens granted by the Debtor to CFH, upon substantially all of the Debtor's assets (as delineated in the CFH Security Agreement, the "CFH Collateral") (the "CFH Lien"). The CFH Lien on the CFH Collateral is valid, binding, enforceable, non-avoidable, and properly perfected and was granted to CFH by the Debtor for fair consideration and for reasonably equivalent value.

10. Each of the Prepetition Lenders, on the one hand, and the Trustee, on the other hand, hereby acknowledges and agrees that, in accordance with section 552 of the Bankruptcy Code, with respect to each of the CFII Lien, LIG Lien, and CFH Lien (collectively, the "Prepetition Liens"), (a) on or attaching to any fee to which the Debtor becomes entitled in connection with a contingency fee engagement entered into prior to the Petition Date that may be paid to the Debtor post-petition or that may in the future be owed to the Debtor, or (b) on or attaching to (i) any reimbursement of expenses (whether in connection with an hourly fee engagement or a contingency fee engagement) or (ii) any fee owed in connection with an hourly fee engagement,

3479189.2

in each case where the Debtor's engagement commenced prior to the Petition Date, the amounts paid to the Debtor must be allocated under and in accordance with Section 552 of the Bankruptcy Code. The Trustee and Prepetition Lenders shall negotiate in good faith to resolve the allocation issue described above and, in the event agreement cannot be reached, will submit the dispute to this Court for resolution. For the avoidance of doubt, nothing in this Paragraph 10 shall affect or limit the Adequate Protection Liens granted to Prepetition Lenders pursuant to the terms of this Interim Order.

11. The Court retains jurisdiction with respect to all matters arising from or relating to the implementation of this Order.

Dated: May 22, 2020  
       New York, New York

*/s/ Sean H. Lane*

HONORABLE SEAN H. LANE  
UNITED STATES BANKRUPTCY JUDGE

3479189.2

## Liddle & Robinson, LLP Weekly Cash Flows

**BUDGET**

| Week: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual / Forecast: | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| Week Ending: | 7/27/19 | 8/3/19 | 8/10/19 | 8/17/19 | 8/24/19 | 8/31/19 | 9/7/19 | 9/14/19 | 9/21/19 | 9/28/19 | 10/5/19 | 10/12/19 | 10/19/19 | 10/26/19 | 11/2/19 | 11/9/19 | 11/16/19 | 11/23/19 | 11/30/19 | 12/7/19 |
| **Cash Receipts** | | | | | | | | | | | | | | | | | | | | |
| L&R Income | $21,862 | $6,750 | $3,113 | $0 | $7,225 | $1,925 | $12,213 | $0 | $1,793 | $0 | $0 | $1,920,610 | $0 | $19,713 | $51,000 | $0 | $1,413 | $200,000 | $0 | $0 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | **$21,862** | **$6,750** | **$3,113** | **$0** | **$7,225** | **$1,925** | **$12,213** | **$0** | **$1,793** | **$0** | **$0** | **$1,920,610** | **$0** | **$19,713** | **$51,000** | **$0** | **$1,413** | **$200,000** | **$0** | **$0** |
| **Operating Expenses** | | | | | | | | | | | | | | | | | | | | |
| Rent | - | ($13,213) | - | - | ($11,851) | - | - | - | - | ($14,054) | - | - | - | ($13,077) | - | - | - | - | (12,555) | - |
| Attorney Payroll | - | - | (13,110) | - | (13,029) | - | (13,029) | - | (13,029) | - | (13,029) | - | - | (13,029) | - | (13,029) | - | (13,029) | - | (13,029) |
| Headhunter | - | - | - | - | - | - | (32,500) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| JLL Draw | - | - | - | - | - | - | - | - | - | - | - | (3,000) | - | - | - | (72,000) | - | - | - | - |
| Staff Payroll | - | - | (6,972) | - | (6,931) | - | (6,931) | - | (6,931) | - | (6,931) | - | - | (6,931) | - | (6,931) | - | (6,931) | - | (6,931) |
| New Hire (Paralegal/Assistant) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Health / Life Insurance | - | - | - | - | - | - | - | (22,005) | - | - | - | - | (5,606) | - | - | - | (5,918) | - | - | - |
| Malpractice Insurance | - | - | (5,751) | (5,992) | - | - | - | - | - | (5,850) | - | - | - | (5,569) | - | (5,569) | - | - | - | - |
| Utilities | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Services (Solarus Technologies) | - | - | (2,000) | - | - | - | - | (2,000) | - | - | - | (2,000) | - | - | - | (2,000) | - | - | - | - |
| Repairs/Maintenance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating Expenses [1] | (311) | - | (855) | (1,414) | (316) | (75) | (930) | (541) | (131) | (60) | (3,900) | (259) | (80) | (471) | - | (306,230) | (350) | (30) | (3,059) | (3,475) |
| Client Expenses to be Advanced [2] | - | (44) | (7,775) | (1,000) | (95) | - | - | (958) | (366) | (2,824) | (196) | - | (643) | (287) | (1,496) | - | - | - | (172) | - |
| Tax / Benefit Accounting Services | - | - | - | - | - | (20,000) | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Storage Costs | - | - | - | - | - | - | - | - | - | (7,903) | - | (7,903) | - | - | - | - | - | (7,903) | - | - |
| **Total Operating Expenses** | **($311)** | **($13,257)** | **($36,463)** | **($8,406)** | **($20,371)** | **($64,426)** | **($20,891)** | **($33,407)** | **($20,457)** | **($8,734)** | **($51,013)** | **($5,865)** | **($723)** | **($26,286)** | **($14,574)** | **($411,677)** | **($8,252)** | **($19,990)** | **($15,786)** | **($23,436)** |
| **Operating Cash Flow** | **$21,551** | **($6,507)** | **($33,350)** | **($8,406)** | **($13,146)** | **($62,501)** | **($8,678)** | **($33,407)** | **($18,665)** | **($8,734)** | **($51,013)** | **$1,914,745** | **($723)** | **($6,574)** | **$36,426** | **($411,677)** | **($6,840)** | **$180,010** | **($15,786)** | **($23,436)** |
| **Restructuring Costs** | | | | | | | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (325) | - | - | - | - | - |
| Bankruptcy Counsel [3] | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Accountants [3] | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Chapter 11 Trustee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Trustee's Counsel | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Trustee's Financial Advisors | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Restructuring Costs** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(325)** | **-** | **-** | **-** | **-** | **-** |
| **Net Cash** | **$21,551** | **($6,507)** | **($33,350)** | **($8,406)** | **($13,146)** | **($62,501)** | **($8,678)** | **($33,407)** | **($18,665)** | **($8,734)** | **($51,013)** | **$1,914,745** | **($723)** | **($6,574)** | **$36,101** | **($411,677)** | **($6,840)** | **$180,010** | **($15,786)** | **($23,436)** |
| **Beginning Bank Cash** | $215,222 | $236,773 | $230,266 | $196,916 | $188,511 | $175,364 | $112,864 | $104,186 | $70,778 | $52,113 | $43,379 | ($7,634) | $1,907,112 | $1,906,388 | $1,899,814 | $1,935,916 | $1,524,239 | $1,517,400 | $1,697,409 | $1,681,624 |
| Operating Cash Flow | 21,551 | (6,507) | (33,350) | (8,406) | (13,146) | (62,501) | (8,678) | (33,407) | (18,665) | (8,734) | (51,013) | 1,914,745 | (723) | (6,574) | 36,101 | (411,677) | (6,840) | 180,010 | (15,786) | (23,436) |
| **Ending Cash Balance** | **$236,773** | **$230,266** | **$196,916** | **$188,511** | **$175,364** | **$112,864** | **$104,186** | **$70,778** | **$52,113** | **$43,379** | **($7,634)** | **$1,907,112** | **$1,906,388** | **$1,899,814** | **$1,935,916** | **$1,524,239** | **$1,517,400** | **$1,697,409** | **$1,681,624** | **$1,658,188** |
| Plus: Prepaid Fee Retainers | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Cash Balance (Incl. Prepaid Fee Retainers)** | **$236,773** | **$230,266** | **$196,916** | **$188,511** | **$175,364** | **$112,864** | **$104,186** | **$70,778** | **$52,113** | **$43,379** | **($7,634)** | **$1,907,112** | **$1,906,388** | **$1,899,814** | **$1,935,916** | **$1,529,239** | **$1,522,400** | **$1,702,409** | **$1,686,624** | **$1,663,188** |

Notes:

[1] Includes office supplies, employee reimbursements, account maintenance fees and other firm operating expenses. Included in Wk 16 is the reimbursement of $305,781 to the J. Liddle Debtor-in-Possession account for Firm transactions in the account. Please refer to the November 2019 monthly operating report for a cash reconciliation analysis of income and expenses.

[2] Amounts to be reimbursed by clients.

[3] Excludes payment amounts for the July - November monthly fee statements that are subject to Court approval.

**Liddle & Robinson, LLP Weekly Cash Flows**

| BUDGET | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week: | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 |
| Actual / Forecast: | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual | Actual |
| Week Ending: | 12/14/19 | 12/21/19 | 12/28/19 | 1/4/20 | 1/11/20 | 1/18/20 | 1/25/20 | 2/1/20 | 2/8/20 | 2/15/20 | 2/22/20 | 2/29/20 | 3/7/20 | 3/14/20 | 3/21/20 | 3/28/20 | 4/4/20 |
| **Cash Receipts** | | | | | | | | | | | | | | | | | |
| L&R Income | $5,000 | $1,325,050 | $0 | $59,538 | $50,000 | $0 | $4,000 | $49,739 | $29,064 | $0 | $6,100 | $7,163 | $0 | $0 | $24,990 | $39,976 | $0 |
| Other | - | - | - | - | - | - | - | 898 | - | - | - | 3,254 | (713) | - | - | 100 | 2,774 |
| **Total Cash Receipts** | **$5,000** | **$1,325,050** | **$0** | **$59,538** | **$50,000** | **$0** | **$4,000** | **$50,637** | **$29,064** | **$0** | **$6,100** | **$10,416** | **($713)** | **$0** | **$24,990** | **$40,076** | **$2,774** |
| **Operating Expenses** | | | | | | | | | | | | | | | | | |
| Rent | - | (17,304) | - | - | - | - | - | - | - | (12,253) | - | (13,815) | - | - | - | - | - |
| Attorney Payroll [1] | - | (13,086) | - | - | (1,249) | - | - | - | (13,094) | (27,162) | (13,070) | - | (13,070) | - | (13,956) | - | - |
| Headhunter | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| JLL Draw | (15,000) | (15,000) | - | - | - | - | - | - | (15,000) | (15,000) | - | (15,000) | - | - | - | - | - |
| Staff Payroll [1] | - | (6,962) | - | - | - | - | - | - | (6,998) | (14,518) | (6,986) | - | (6,986) | - | (7,459) | - | - |
| New Hire (Paralegal/Assistant) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Health / Life Insurance | (75) | (5,918) | - | (45) | - | (45) | - | - | - | (5,918) | - | - | (22,317) | - | - | - | - |
| Malpractice Insurance | - | - | - | - | - | - | - | - | - | (11,137) | - | - | (5,568) | - | - | - | - |
| Utilities | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Services (Solarus Technologies) | - | (2,000) | - | - | - | - | - | - | - | (2,000) | - | - | (2,000) | - | - | - | - |
| Repairs/Maintenance | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating Expenses | (180) | (1,668) | - | (274) | (7,903) | - | (174) | (33,615) | (8,119) | (6,146) | 40 | (2,766) | (8,204) | - | (10) | - | (199) |
| Client Expenses to be Advanced | (300) | (1,938) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tax / Benefit Accounting Services | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (11,500) | - | - |
| Storage Costs | - | (7,903) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Expenses** | **($15,555)** | **($71,778)** | **$0** | **($319)** | **($9,152)** | **($45)** | **($174)** | **($33,615)** | **($43,212)** | **($94,134)** | **($20,015)** | **($31,581)** | **(58,145)** | **$0** | **($32,925)** | **$0** | **($199)** |
| **Operating Cash Flow** | **($10,555)** | **$1,253,272** | **$0** | **$59,218** | **$40,848** | **($45)** | **$3,826** | **$17,022** | **($14,148)** | **($94,134)** | **($13,915)** | **($21,165)** | **($58,857)** | **$0** | **($7,935)** | **$40,076** | **$2,575** |
| **Restructuring Costs** | | | | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | (6,501) | - | - | - | - | - | - | - |
| Bankruptcy Counsel | - | - | - | (261,233) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Accountants | (7,309) | - | - | - | - | - | - | - | - | - | - | (2,428) | - | - | - | - | - |
| Chapter 11 Trustee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Trustee's Counsel | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Trustee's Financial Advisors | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Restructuring Costs** | **(7,309)** | **-** | **-** | **(261,233)** | **-** | **-** | **-** | **-** | **-** | **(6,501)** | **-** | **(2,428)** | **-** | **-** | **-** | **-** | **-** |
| **Net Cash** | **($17,864)** | **$1,253,272** | **$0** | **($202,015)** | **$40,848** | **($45)** | **$3,826** | **$17,022** | **($14,148)** | **($100,635)** | **($13,915)** | **($23,593)** | **($58,857)** | **$0** | **($7,935)** | **$40,076** | **$2,575** |
| **Beginning Bank Cash [2]** | $1,658,188 | $1,640,324 | $2,800,128 | $2,800,128 | $2,598,113 | $2,638,962 | $2,638,917 | $2,642,742 | $2,659,764 | $2,645,616 | $2,544,981 | $2,531,065 | $2,507,472 | $2,448,615 | $2,448,615 | $2,440,680 | $2,480,757 |
| Operating Cash Flow | (17,864) | 1,253,272 | - | (202,015) | 40,848 | (45) | 3,826 | 17,022 | (14,148) | (100,635) | (13,915) | (23,593) | (58,857) | - | (7,935) | 40,076 | 2,575 |
| **Ending Cash Balance** | **$1,640,324** | **$2,893,596** | **$2,800,128** | **$2,598,113** | **$2,638,962** | **$2,638,917** | **$2,642,742** | **$2,659,764** | **$2,645,616** | **$2,544,981** | **$2,531,065** | **$2,507,472** | **$2,448,615** | **$2,448,615** | **$2,440,680** | **$2,480,757** | **$2,483,331** |
| Plus: Prepaid Fee Retainers | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| **Cash Balance (Incl. Prepaid Fee Retainers)** | **$1,645,324** | **$2,898,596** | **$2,805,128** | **$2,603,113** | **$2,643,962** | **$2,643,917** | **$2,647,742** | **$2,664,764** | **$2,650,616** | **$2,549,981** | **$2,536,065** | **$2,512,472** | **$2,453,615** | **$2,453,615** | **$2,445,680** | **$2,485,757** | **$2,488,331** |

Notes:

[1] Attorney and Staff Payroll for January were paid out of JLL's personal account and reimbursed in the WE 2/15/2020.

[2] The cash balance as of 12/31/19 has been restated, see January 2020 Monthly Operating Report for details.

**Liddle & Robinson, LLP Weekly Cash Flows**

| BUDGET | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week: | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | 49 | 50 | Total |
| Actual / Forecast: | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
| Week Ending: | 4/11/20 | 4/18/20 | 4/25/20 | 5/2/20 | 5/9/20 | 5/16/20 | 5/23/20 | 5/30/20 | 6/6/20 | 6/13/20 | 6/20/20 | 6/27/20 | 7/4/20 | |
| **Cash Receipts** | | | | | | | | | | | | | | |
| L&R Income [1] | $0 | $0 | $125,000 | $0 | $0 | $0 | $125,000 | $0 | $0 | $0 | $125,000 | $0 | $0 | $4,223,233 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | 6,313 |
| **Total Cash Receipts** | **$0** | **$0** | **$125,000** | **$0** | **$0** | **$0** | **$125,000** | **$0** | **$0** | **$0** | **$125,000** | **$0** | **$0** | **$4,229,546** |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Rent | - | - | - | (15,000) | - | - | - | (15,000) | - | - | - | (15,000) | - | (153,121) |
| Attorney Payroll | - | (15,000) | - | (15,000) | - | (15,000) | - | (15,000) | - | (15,000) | - | (15,000) | - | (302,029) |
| Headhunter | - | - | - | - | - | - | - | - | - | - | - | - | - | (32,500) |
| JLL Draw | - | - | (15,000) | - | - | - | (15,000) | - | - | - | (15,000) | - | - | (195,000) |
| Staff Payroll | - | (7,100) | - | (7,100) | - | (7,100) | - | (7,100) | - | (7,100) | - | (7,100) | - | (154,929) |
| New Hire (Paralegal/Assistant) | - | (5,000) | - | (5,000) | - | (5,000) | - | (5,000) | - | (5,000) | - | (5,000) | - | (30,000) |
| Health / Life Insurance | - | - | - | (8,500) | - | - | - | (8,500) | (16,400) | - | - | (8,500) | - | (109,747) |
| Malpractice Insurance | - | - | - | (6,000) | - | - | - | (6,000) | - | - | - | (6,000) | - | (63,435) |
| Utilities | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Office Services (Solarus Technologies) | - | - | - | (2,000) | - | - | - | (2,000) | - | - | - | (2,000) | - | (20,000) |
| Repairs/Maintenance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Operating Expenses | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (1,000) | (404,707) |
| Client Expenses to be Advanced | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (2,000) | (44,095) |
| Tax / Benefit Accounting Services | - | - | - | - | - | - | - | - | - | - | - | - | - | (20,000) |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | (11,500) |
| Storage Costs | - | - | - | (10,610) | - | - | - | (10,610) | - | - | - | (10,610) | - | (63,440) |
| **Total Operating Expenses** | **($3,000)** | **($30,100)** | **($18,000)** | **($72,210)** | **($3,000)** | **($30,100)** | **($18,000)** | **($72,210)** | **($19,400)** | **($30,100)** | **($18,000)** | **($72,210)** | **($3,000)** | **($1,604,502)** |
| **Operating Cash Flow** | **($3,000)** | **($30,100)** | **$107,000** | **($72,210)** | **($3,000)** | **($30,100)** | **$107,000** | **($72,210)** | **($19,400)** | **($30,100)** | **$107,000** | **($72,210)** | **($3,000)** | **$2,625,044** |
| **Restructuring Costs** | | | | | | | | | | | | | | |
| UST Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | (6,826) |
| Bankruptcy Counsel | - | - | - | - | - | - | - | - | - | - | - | - | - | (261,233) |
| Accountants | - | - | - | - | - | - | - | (8,099) | - | - | - | - | - | (17,835) |
| Chapter 11 Trustee | - | - | - | - | - | - | - | - | - | - | - | (100,000) | - | (100,000) |
| Trustee's Counsel | - | - | - | - | - | - | - | - | - | - | - | (200,000) | - | (200,000) |
| Trustee's Financial Advisors | - | - | - | - | - | - | - | - | - | - | - | (195,000) | - | (195,000) |
| **Total Restructuring Costs** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(8,099)** | **-** | **-** | **-** | **(495,000)** | **-** | **(780,895)** |
| **Net Cash** | **($3,000)** | **($30,100)** | **$107,000** | **($72,210)** | **($3,000)** | **($30,100)** | **$107,000** | **($80,309)** | **($19,400)** | **($30,100)** | **$107,000** | **($567,210)** | **($3,000)** | **$1,844,150** |
| **Beginning Bank Cash** | $2,483,331 | $2,480,331 | $2,450,231 | $2,557,231 | $2,485,021 | $2,482,021 | $2,451,921 | $2,558,921 | $2,478,613 | $2,459,213 | $2,429,113 | $2,536,113 | $1,968,903 | $215,222 |
| Operating Cash Flow | (3,000) | (30,100) | 107,000 | (72,210) | (3,000) | (30,100) | 107,000 | (80,309) | (19,400) | (30,100) | 107,000 | (567,210) | (3,000) | 1,844,150 |
| **Ending Cash Balance [2]** | **$2,480,331** | **$2,450,231** | **$2,557,231** | **$2,485,021** | **$2,482,021** | **$2,451,921** | **$2,558,921** | **$2,478,613** | **$2,459,213** | **$2,429,113** | **$2,536,113** | **$1,968,903** | **$1,965,903** | **$2,059,371** |
| Plus: Prepaid Fee Retainers | - | - | - | - | - | - | - | - | - | - | - | - | - | 5,000 |
| **Cash Balance (Incl. Prepaid Fee Retainers)** | **$2,485,331** | **$2,455,231** | **$2,562,231** | **$2,490,021** | **$2,487,021** | **$2,456,921** | **$2,563,921** | **$2,483,613** | **$2,464,213** | **$2,434,113** | **$2,541,113** | **$1,973,903** | **$1,970,903** | **$2,064,371** |

Notes:
[1] Projected income is a conservative estimate of fees given the nature of the business.

[2] Forecasted ending cash balance and total ending cash balance discrepancy is due to a re-stated cash balance as of 12/31/19.
The initial cash balance in July 2019 was overstated in error (see January 2020 Monthly Operating Report for details).