Michael S. Weinstein
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0777

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Liddle & Robinson, L.L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
| | |
|---|---|
| In Re | : Chapter 11 |
| | : |
| LIDDLE & ROBINSON, L.L.P.,[1] | : Case No. 19-12346 (SHL) |
| | : |
| | : Jointly Administered with 19-10747 (SHL) |
| Debtor | : |

---------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S OBJECTION TO MOTIONS OF JEFFREY LEW LIDDLE FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO 11 U.S.C. §§503(b)(3)(D), 506(c), 105(a) AND OTHER AUTHORITY**

Jonathan L. Flaxer, solely in his capacity as the chapter 11 trustee (the "**Trustee**") for the estate (the "**L&R Estate**") of the above captioned debtor ("**L&R**"), by his counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, hereby files this objection (the "**Objection**") to the two separate motions filed by Jeffrey Lew Liddle ("**Liddle**") on June 4, 2020, for entry of orders for the allowance and payment of administrative claims to Liddle for (i) his alleged contributions to the value of the L&R Estate, and (ii) reimbursement of certain amounts previously paid by Liddle's individual chapter 11 estate (the "**Liddle Estate**") to Foley Hoag LLP ("**FH**"). In support of the Objection, the Trustee respectfully states as follows:

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.

**Preliminary Statement**

1. The two motions filed by Liddle not only directly contradict the statutes upon which they rely, but they also seek grossly inequitable results that would turn the bankruptcy code, the tax code, fundamental bankruptcy policy and core principles of equity, on their heads. At their core, these motions seek to overturn the absolute priority rule by proposing to take much of the remaining funds in the L&R Estate and put them in the pocket of L&R's last remaining general partner, Liddle. Compounding the inequity is the fact that more than $9 million of debt against the L&R Estate exists primarily as a result of Liddle driving L&R into insolvency through excessive borrowing while never responsibly curbing his lifestyle, resulting in him running up a negative capital balance with L&R in excess of $5.5 million, and creating huge debts in its wake. Liddle now, in essence, wants L&R's creditors to pay his personal tax bill and fund an additional $500,000 to him – notwithstanding the fact that his personal estate possesses assets with more than enough value to pay his taxes (but which he has not liquidated). As a matter of law and equity, the L&R Estate and its creditors should neither be required to pay Liddle's debts nor fund his lifestyle, and these motions should be summarily denied.

**Background**

2. On March 11, 2019, Liddle commenced with this Court a voluntary case under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

3. On July 22, 2019, L&R commenced with this Court a voluntary case under Chapter 11 of the Bankruptcy Code. Both cases are being jointly administered.

4. Until December 23, 2019, L&R was authorized to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3513089.5                                      2

5. On or about December 6, 2019, the United States Trustee (the "**United States Trustee**") filed a motion for the appointment of a chapter 11 trustee [Dkt. No. 191; Case No. 19-10747, Dkt. No. 257], and on December 23, 2019, the Court granted that motion directing appointment of a chapter 11 trustee for the L&R Estate [Dkt. No. 192].

6. On December 23, 2019, the United States Trustee filed a notice appointing Jonathan L. Flaxer as the chapter 11 trustee for the L&R Estate [Dkt. No. 193] as well as an application to approve the appointment of Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 195]. The Court approved the United States Trustee's application by order dated January 6, 2020 [Dkt. No. 201].

7. L&R is a law firm partnership formed on or about June 4, 1979. Since its formation, L&R had a strong litigation practice, led by Liddle, with an emphasis on corporate, real estate and employment law. Liddle is the sole remaining partner of L&R, and thus L&R is obligated to wind down in accordance with New York law. Since his appointment, the Trustee has overseen the wind down of L&R, and operations will terminate as of June 30, 2020.

8. On June 4, 2020, Liddle filed in L&R's chapter 11 case a Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 506(c), and Other Authority (the "**Liddle Compensation Motion**"). [Dkt. No. 290]. By this motion, Liddle is seeking an allowed administrative expense claim in the amount of $1,225,518 for additional compensation in excess of his $15,000 per month draw from the L&R Estate. The Liddle Compensation Motion also states that Liddle intends to use $695,518 of the extra compensation to pay his estimated 2019 tax liability.

9. Also on June 4, 2020, Liddle filed in L&R's chapter 11 case a Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§

3513089.5      3

503(b)(3)(D) and 105(a), and Other Authority (the "**FH Claim Motion**") [Dkt. No. 291]. By this motion, Liddle is seeking a reimbursement of the fees and expenses in the amount of $101,445.86 that had been paid to FH by the Liddle Estate for pre-petition services purportedly rendered on behalf of L&R.

## Objections

### I. The Liddle Compensation Motion

10. In the Liddle Compensation Motion, Liddle seeks an administrative expense claim in the aggregate amount of $1,225,518, consisting of "(i) $530,000 in reasonable compensation for his substantial contribution to the L&R Estate, and (ii) $695,518 in the estimated tax liability Liddle incurred on behalf of L&R". (Proposed Order, ¶ 2). Liddle's request is flawed in every respect and must be denied.

    **a. Courts May Award Only Actual and Necessary Expenses, and Not Compensation, Under Bankruptcy Code § 503(b)(3)(D)**

11. On April 11, 2019, prior to the commencement of the L&R chapter 11 case, the Court approved a monthly draw to Liddle from L&R in the amount of $15,000. This draw was a compromise between Liddle, on the one hand, and Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC (collectively, "**Counsel Financial**"), on the other hand, to fairly compensate Liddle for his services on behalf of L&R's clients. Upon filing this chapter 11 case, while Liddle still controlled L&R, L&R filed a motion seeking authority to pay Liddle the same $15,000 draw that was approved in the Liddle bankruptcy case. [Dkt. Nos. 5, 23]. The Court approved the budget providing for such draw in this case, and Liddle has been paid $15,000 per month as a draw in accordance with such orders of the Court. [Dkt. Nos. 30, 46, 81, 108, 157, 198, 227, 251, 284].

12. Liddle now asserts that the draw "does not reflect the value of the services rendered by [him] in 2019", and that he should receive over $1.2 million more from L&R based on a calculation of either (i) one-third of L&R's net income or (ii) the number of billable hours he recorded during 2019, plus $695,518 to pay his personal taxes.

13. In support of this request for additional compensation, Liddle points to Bankruptcy Code § 503(b)(3)(D), which states in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—…
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—…
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

14. Liddle's primary argument is that his continued services to L&R has resulted in a "substantial contribution" to the L&R Estate and therefore entitles him to compensation for such services under section 503(b)(3)(D) substantially in excess of what had already been agreed upon earlier in these cases. Liddle describes in detail all of the services and value he has allegedly provided to the L&R Estate to justify the request for increased compensation.

15. Despite the extensive focus in the motion on the issue of "substantial contribution", the Court does not need to even reach this issue under the statute. The *prima facie* element of a request under Section 503(b)(3)(D) for an administrative expense claim is that such request be solely for the reimbursement of **actual and necessary expenses**, and not a claim for compensation for services rendered. "The plain language of section 503(b)(3)(D) is clear that an applicant who substantially contributes to a debtor's estate and creditors may be awarded only actual and necessary *expenses*." *In re Summit Metals, Inc.*, 379 BR 40, 50 *(*Bankr. D. Del.

2007), *aff'd*, 406 Fed Appx 634 (3d Cir. 2011) (emphasis in original) (holding that section 503(b)(3)(D) only allows an administrative claim for expenses, therefore denying a request for administrative claim for fees by a management consulting firm under such section).[2] Since Liddle is seeking an award of compensation for services rendered to the L&R Estate under section 503(b)(3)(D), and not reimbursement of actual and necessary out-of-pocket expenses, his request must be denied under the plain language of section 503(b)(3)(D).[3]

### b. Liddle Does Not Have Standing to Pursue a Claim under Bankruptcy Code § 503(b)(3)(D)

16. In addition to the foregoing, Liddle does not have standing to seek relief under the plain language of section 503(b)(3). Under section 503(b)(3)(D) of the Bankruptcy Code, the party seeking reimbursement of actual, necessary out of pocket expenses for a substantial contribution must be either a "creditor, indenture trustee, an equity security holder or a committee representing creditors or equity security holders." Neither Liddle nor the Liddle

---

[2] In fact, in the cases cited by Liddle in support of his position, the parties only seek reimbursement of out-of-pocket expenses for legal fees under sections 503(b)(3)(D) and 503(b)(4). *See In re Granite Partners*, 213 B.R. 440 (Bankr. S.D.N.Y. 1997) (granting, in part, application of law firm for payment of fees and reimbursement of expenses rendered to unofficial investors committee under sections 503(b)(3)(D) and 503(b)(4)); *In re Bayou Grp., LLC*, 431 B.R. 549, 553 (Bankr. S.D.N.Y. 2010) (granting, in part, application by members of the unofficial creditors committee for payment of fees and reimbursement of expenses to its law firm for services rendered prior to chapter 11 case under sections 503(b)(3)(D) and 503(b)(4)).. *See also, e.g., In re AMR Corp.*, No. 11-15463 (SHL), 2014 WL 3855320, at *1 (Bankr. S.D.N.Y. Aug. 5, 2014) (denying application of debtor's shareholder for payment of fees and reimbursement of expenses to its consulting firm for services that firm allegedly rendered to shareholder during the chapter 11 case).

[3] To the extent that Liddle may argue that, as an attorney, he may also be entitled to compensation for his services under Bankruptcy Code § 503(b)(4) independent of section 503(b)(3)(D), courts have held that such section only allows for reimbursement of professional fees incurred by a party that has contributed substantially and otherwise met all of the standards under section 503(b)(D)(3), and is not designed to compensate the party itself for its own time expended on the matter. *See In re Gimelson*, No. 00-11773F, 2004 WL 2713059, at *22 (E.D. Pa. Nov. 23, 2004) ("Section 503(b)(4) does not include the time spent by a creditor who represents himself and has not incurred any attorney's fees, but affords an administrative priority to reimburse a creditor for compensation paid for professional services provided by an attorney for an entity."); *In re Pappas*, 277 B.R. 171, 177 (Bankr. E.D.N.Y. 2002) ("[The court finds] no authority for the premise that Section 503(b) provides a basis to compensate a creditor for his own personal time devoted to a matter. The mere fact that the creditor happens to be an attorney who bills $250 per hour does not change the inquiry. Section 503(b) provides that 'actual' 'expenses' may be afforded administrative expense status. [Creditor attorney's] billable time, although valuable, was not an 'actual expense' to [creditor attorney].").

Estate fall into any of those categories. Neither has filed a proof of claim or asserted any pre-petition claims against the L&R Estate, so neither is a "creditor" of the L&R Estate.

17. Further, Liddle is not an "equity security holder" of L&R as such term is defined in the Bankruptcy Code. Bankruptcy Code § 101(17) defines an "equity security holder" as the holder of an "equity security", which is defined as follows:

> (A) share in a corporation, whether or not transferable or denominated "stock", or similar security;
>
> (B) interest of a *limited partner in a limited partnership*; or
>
> (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph.

(Emphasis supplied). 11 U.S.C. §101(16).

18. Under N.Y. Partnership Law § 121-1500, however, a limited liability partnership is a specialized form of a general partnership that only has *general partners*. "Article 8-B [§§ 121-1500 to 121-1507] of the Partnership Law . . . establishes . . . Limited Liability Partnerships . . . as a separate form of business entity for general partnerships engaged in professional services in New York." Rich, Practice Commentary, McKinney's Cons Laws of NY, 2019 Electronic Update, N.Y. Partnership Law § Ch. 39, art. 8-B.

19. Accordingly, Liddle's interest in L&R is solely as a general partner in a limited liability partnership, and is thus excluded from the Bankruptcy Code definition of an "equity security".[4] Since Liddle (and the Liddle Estate, to the extent that his estate is successor to his

---

[4] The Bankruptcy Code also clearly differentiates between an equity security holder and a general partner in section 1141(a): "…the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, *equity security holder, or general partner* in the debtor, whether or not the claim or interest of such creditor, *equity security holder, or general partner* is impaired under the plan and whether or not such creditor, *equity security holder, or general partner* has accepted the plan. (Emphasis supplied).

interest in L&R) is neither an equity security holder, indenture trustee, creditor, or committee of L&R, he (and by extension, FH, as discussed below) is not entitled to a reimbursement of expenses or payment of fees under sections 503(b)(3)(D) and 503(b)(4), respectively.

### c. Compensation for Liddle's Services in Winding Up the Partnership Was Previously Negotiated by All Parties and Approved by the Court and Should Not be Disturbed

20. In the Liddle Compensation Motion, Liddle also contends that his $15,000 per month draw that the Court has continuously approved throughout these bankruptcy cases is not "reasonable" based on the post-petition services that he has rendered to the L&R Estate, relying on N.Y. Partnership Law § 40(6), which states in pertinent part that "…a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs".

21. Liddle neither cites to any statute nor case law that defines what constitutes "reasonable" under this statue nor any case law providing that New York partnership law supersedes the standard set for substantial contribution claims under Section 503(b)(3)(D). Liddle's position, moreover, is inapposite to the standards under Section 503(b)(3)(D) as it is based on what an originating partner in an otherwise healthy and prosperous firm might expect to earn, rather than the last remaining partner in a grossly insolvent firm who has contributed greatly to its insolvent state. Similarly, Liddle's argument conflates his former rights as a partner to share in the income of the partnership (to which he no longer has the right since the assets of the partnership are property of the estate under Bankruptcy Code § 541) with his current position as a fiduciary for two bankruptcy estates, who, in such capacity, must look out for the best interest of, and maximize its distributions to, the creditors of those estates.

22. In addition to the foregoing, the prior ruling by the Court that the monthly draw of $15,000 (which equals an annual salary of $180,000, plus an additional approximately $40,000

in health insurance payments)[5] is sufficient and reasonable to compensate Liddle for the services he is rendering for the L&R Estate is dispositive. The amount of the draw was an integral component of the heavily negotiated and meticulously ruled upon budgets for both the Liddle Estate and the L&R Estate.[6] If Liddle would have demanded the amount of compensation that he is now seeking when the cash collateral motion and budget were first before the Court, he would have been requesting a monthly draw of approximately $150,000 for 2019 (*i.e.*, $15,000 monthly draw plus $1,225,518 over the nine month period of April 2019 through December 2019). If Liddle had requested such amount, it is a virtual certainty that the cash collateral budget would never have been approved and both cases would have immediately converted to chapter 7. Viewed in this light, the amount paid to Liddle is more than reasonable and, indeed, quite generous.

23.    In addition, the amounts requested by Liddle and his professionals in the Liddle Compensation Motion would render the L&R Estate close to insolvent. Between the Liddle Compensation Motion, the FH Claim Motion, and the fee applications on file to date of FH and EisnerAmper LLP ("**EisnerAmper**") (L&R's financial advisor prior to the Trustee's appointment), the L&R Estate would be paying nearly $1.95 million of the approximately $2

---

[5] It is almost unfathomable for Liddle to complain that a salary of $180,000 per year is insufficient and unreasonable for the services he is performing in winding down the L&R Estate. Perhaps the real issue is not his income, but his rate of spending, which has seen him burn through most of the cash in the Liddle Estate because he refused to give up living his lavish lifestyle. *See* Supplemental Declaration of Robert L. Rattet in Further Support of Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant to § 1112(B) of the Bankruptcy Code, to Convert Debtor's Chapter 11 Reorganization to a Chapter 7 Liquidation [Case No. 19-10747, Dkt. No. 351]. Moreover, his personal estate continues to own real property in the Hamptons, plus a fine wine collection, that have more than sufficient value to pay his tax liability, but Liddle has for over a year declined to sell them (and only recently has agreed to rent his estate in the Hamptons for the summer).

[6] It should also be noted that Liddle's intention is to continue to practice law in a new entity, and his current efforts are, in part, being exerted to maintain the going concern value to preserve his future endeavors.

3513089.5                                9

million remaining in the estate to Liddle and his professionals.[7]  Such amounts would be in addition to nearly $500,000 already paid by L&R to the same parties.  It is difficult to ignore the irony in Liddle predicating the Liddle Compensation Motion on his contention that he has been "maximizing the value of the estate" and "substantially contributing" to the L&R Estate only to request payment of nearly all of the funds in the L&R Estate for his personal benefit and the benefit of his professionals, and at the expense of L&R's creditors.[8]  By granting the motion, the Court would instead be allowing Liddle to use all available funds in two bankruptcy estates for Liddle's personal benefit, while leaving both of those estates administratively insolvent.  It would also flip the absolute priority rule on its head by permitting the "last in line" party to grab from the senior classes virtually all of the property of the estate.

24.     Liddle's attempt to gut the L&R Estate by saddling it with an unreasonable request for compensation, more than a year after agreeing to a budget that included an agreed upon monthly draw, violates his fiduciary duty to the creditors of the L&R Estate for his own personal benefit, and is an egregious attempt to destroy the delicate bridge that this Court constructed between these two difficult cases.  It should be denied by the Court.

---

[7] Pursuant to the Order Authorizing Certain Payments Pursuant to Monthly Fee Statements, entered on December 19, 2019  [Dkt. No. 205], FH has a pending holdback of fees owed in the amount of $174,155.17. FH has also filed a second interim fee application [Dkt. No. 289] seeking allowance and payment of fees and reimbursement of expenses through April 30, 2020 in the amount of $374,794.04.  EisnerAmper has filed a second interim fee and final fee application [Dkt. No. 292] seeking payment of additional fees and expenses in the amount of $71,729.86 (total fees less $7,308.60 previously asserted to have been paid).  Liddle is now seeking payment from the L&R Estate in the amount of $1,225,518, and demanding that L&R "reimburse" additional legal fees and expenses paid to FH in the amount of $101,445.86.  In all, Liddle and his chosen professionals are requesting $1,947,642.93 of the remaining cash of the L&R Estate – which does not include any fees after April 30, 2020 for which FH may seek compensation.

[8] Liddle also fails to acknowledge anywhere in his motion that reimbursement of expenses to those parties that made a "substantial contribution" in a case under section 503(b)(3)(D) is "designed to promote meaningful participation in the reorganization process, but at the same time, discourage mushrooming administrative expenses." *AMR Corp.*, 2014 WL 3855320, at *2  (citing *Granite Partners*, 213 B.R. at 445).  The subtext of Liddle's entire motion is to deplete the L&R Estate of all of its assets, which is the antithesis of "meaningful participation in the reorganization process".

### d. Liddle's Estate – Not the L&R Estate – Is Responsible for Liddle's 2019 Tax Liabilities

25. The Liddle Compensation Motion seeks to shift the liability for the 2019 taxes owed by the Liddle Estate to the L&R Estate. As noted above, applicable statutory and case law bars the granting of any of the relief requested in the Liddle Compensation Motion. Similarly, it would turn settled tax law on its head to simply shift a tax liability from the Liddle Estate to the L&R Estate, and the Liddle Compensation Motion cites no authority whatsoever to justify this.

26. Liddle does not dispute that, under the Internal Revenue Code ("**IRC**"), L&R is a "pass-through" entity for tax purposes, and thus its income, and attendant tax liability, lies with the Liddle Estate. The Trustee understands that all prior tax returns of both L&R and Liddle have been prepared and filed consistent with the foregoing. Moreover, Liddle himself set up L&R specifically to obtain the benefits (for example, avoiding double taxation) and burdens of the limited liability partnership structure.

27. By seeking to shift the liability of the 2019 taxes owed by the Liddle Estate to the L&R Estate, Liddle is effectively seeking to change L&R's election under the IRC from a partnership to a corporation – a decision which belongs exclusively to the Trustee. The Trustee, as the estate representative under Bankruptcy Code § 323(a), has chosen not to change the tax election because such election will inure solely to the benefit of Liddle to the detriment of the creditors of the L&R estate, and thus is not in the best interests of the L&R Estate. Liddle no longer has the authority to make such an election, but if the Court were to grant the Liddle Compensation Motion, Liddle will have created an end around that both undermines the duties and responsibilities of the Trustee and saddles L&R's creditors with Liddle's own tax liability.

28. Moreover, such election would only be permissible if it "benefits the [d]ebtor, its estate and its creditors." *See In re Schroeder Bros. Farms of Camp Douglas LLP,* 602 B.R. 695,

700 (Bankr. W.D. Wis. 2019). If such election results in a benefit to the partners of the partnership to the detriment of creditors, such tax election is not fair and equitable and violates the absolute priority rule. *Id.*, at 701.

29.    In this respect, Liddle's negative capital account with L&R must be considered. In years past, Liddle has run up a negative capital account in excess of $5.5 million by, in essence, taking out far more money from L&R than L&R actually earned in fees.[9] The following chart, based on L&R's books and records, illustrates the increasing negative amount in Liddle's capital account:

| | | As of | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 12/31/2013 | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | 12/31/2018 | Total |
| **Jeffrey Liddle** | | | | | | | | |
| Capital Contributed | | - | - | 50,000.00 | 35,000.00 | 171,987.57 | - | 256,987.57 |
| Beginning Capital | | (679,834.71) | (971,745.76) | (1,342,326.28) | (1,860,598.30) | (4,517,418.17) | (5,655,629.96) | (679,834.71) |
| P&L Activity | | 2,289,700.52 | 2,250,125.41 | 714,388.50 | (1,077,856.48) | (1,014,696.00) | 16,737.00 | 3,178,398.95 |
| 2016 Amended Return - Reallocation of P&L (not booked in GL) | | | | | (110,182.00) | | | (110,182.00) |
| Draws: | | | | | | | | |
| | 401(k) | (23,000.00) | (23,000.00) | (20,000.00) | - | - | - | (66,000.00) |
| | Auto Lease | (24,118.20) | (22,876.00) | (20,252.40) | (17,899.05) | (14,666.32) | (7,495.93) | (107,307.90) |
| | Cash | (2,449,742.80) | (2,471,406.28) | (1,172,344.69) | (1,420,617.80) | (279,902.48) | (267,233.55) | (8,061,247.60) |
| | Disability Insurance | (4,449.96) | (4,469.19) | (5,573.29) | (4,445.00) | (934.56) | - | (19,872.00) |
| | Medical | (47,677.92) | (64,454.46) | (64,490.14) | (60,819.54) | - | - | (237,442.06) |
| | Pension | (32,622.69) | (34,500.00) | - | - | - | - | (67,122.69) |
| Total Draws | | (2,581,611.57) | (2,620,705.93) | (1,282,660.52) | (1,503,781.39) | (295,503.36) | (274,729.48) | (8,558,992.25) |
| **Ending Capital - Jeffrey Liddle** | | (971,745.76) | (1,342,326.28) | (1,860,598.30) | (4,517,418.17) | (5,655,629.96) | (5,913,622.44) | (5,913,622.44) |

As illustrated by the chart, Liddle's negative capital account increased dramatically over 2016 and 2017, years in which L&R's income was significantly below prior levels (producing negative P&L activity), but where Liddle failed to reduce his own compensation accordingly.

30.    Seeing how Liddle's capital account changed over time vividly demonstrates how Liddle contributed substantially to driving L&R into insolvency. But, it also makes apparent that

---

[9] This, in part, was how he was able to support his lavish lifestyle.

the Liddle Compensation Motion provides an incomplete picture of the effect of L&R's income on Liddle's taxes. In those prior low revenue years, L&R had net operating losses that would have been passed through to Liddle and created positive tax attributes to offset the positive net income generated in 2019. But, upon information and belief, instead of retaining those losses, Liddle chose to carry back those losses into prior tax years and, as a result, obtained a refund which, based on the size of the carry-back, would suggest a refund in the amount of approximately $500,000, which funds have now been spent. Moreover, during the low revenue years, Liddle continued to take large sums out of the L&R by, among other things, taking borrowed funds as compensation – thereby driving up his negative capital account – which he now owes to L&R. In the ordinary course, the income generated in 2019 would merely reduce Liddle's obligation to repay his negative capital account (currently in excess of $5.5 million).

31.  The Liddle Compensation Motion ignores all of the foregoing, and effectively seeks a distribution to pay his own taxes that would only further increase his negative capital account.[10] This is in spite of the fact that L&R has already gone down this path before with grave ramifications. As part of the initial Counsel Financial loan, L&R borrowed approximately $1.1 million to pay Liddle's personal tax bill at the time, and such additional loan proceeds, which were used solely by Liddle, contributed to L&R's current insolvency with debts exceeding $9 million.[11] In a final flouting of his creditors' rights and interests, Liddle again seeks to take funds of L&R to pay off his personal tax liability.

---

[10] In the Trustee's view, this is also, in part, a timing issue. L&R will continue to be a pass-through entity, and it is possible, if not likely, that L&R's future tax returns may result in losses that would be passed through to the Liddle Estate. It is highly doubtful that the Liddle Estate intends to, or will even be in a position to, reimburse the L&R Estate for any beneficial positive tax attributes that may be generated in the future, so there is no reason why the L&R Estate should be responsible for the current taxes owed.

[11] The Trustee has in fact filed a proof of claim in the Liddle chapter 11 case asserting that this $1.1 million loan was a potentially avoidable fraudulent transfer. [Case No. 19-10747, Claim No. 31].

3513089.5                                13

32.     In reality, if Liddle had been serving as a fiscally responsible fiduciary of his own personal estate, as is required by the Bankruptcy Code, then he should have had the funds necessary to pay his 2019 personal tax liability. Liddle, however, chose to burn through the cash in his DIP account by living a lavish lifestyle beyond his means, all of which was paid out of his personal chapter 11 estate at the expense of his creditors. And to add insult to injury, he has not liquidated his valuable assets to pay his debts, evidently believing that he is entitled to pay his debts with other people's money. *See* Note 5, *supra*. To now force the creditors of the L&R Estate to suffer the consequences of Liddle's mismanagement of his own estate would be grossly inequitable. The underpinnings of the motion – Liddle's failure to live within his means and retain sufficient funds for his known pass-through tax liability – reflect that Liddle seeks to once again misuse L&R's assets for his personal obligations. The Trustee respectfully asks this Court to decline the invitation to continue – and arguably reward – Liddle's past and continuing financial irresponsibility.

      **e.  Only a Trustee or Debtor May Seek Award of Administrative Expense Claim under Bankruptcy Code § 506(c)**

33.     Last, Liddle argues that he is entitled to additional compensation under Bankruptcy Code § 506(c) for the "exceptional and vital role" he has played in maximizing the value of the L&R Estate. Liddle Motion, ¶ 34. Section 506(c) states as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

34.     Liddle has no standing to assert a claim under Section 506(c) of the Bankruptcy Code. The Supreme Court in *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000), held that section 506(c) only applies to the case trustee or debtor in possession

itself, and no other creditor or entity is entitled to an administrative claim under such section. "The statute appears quite plain in specifying who may use § 506(c) — '[t]he trustee.' . . . The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes." *Id.*, at 6.[12]  As Liddle is neither the debtor nor the trustee, he cannot invoke section 506(c) as the basis for an award of an administrative expense claim, and such request must be denied.

## II. The FH Claim Motion

### a. Liddle Cannot Be Reimbursed Personally for Funds that Were Paid to FH by the Liddle Estate

35.  By the FH Claim Motion, Liddle is seeking reimbursement under Bankruptcy Code § 503(b)(3)(D) and (b)(4) for the fees and expenses in the aggregate amount of $101,445.86 that had been paid by the Liddle Estate to FH for pre-petition services rendered by FH.  The Trustee notes that, although the Liddle Estate paid the fees and expenses to FH per Court order, Liddle seeks allowance and payment in the amount of those fees and expenses directly to **himself**, rather than to the Liddle Estate.  This is an improper request from a fiduciary for a chapter 11 estate, and for this reason alone, the FH Claim Motion should be denied.

### b. Liddle, and by Extension FH, Does Not Have Standing to Pursue a Claim under Bankruptcy Code § 503(b)(3)(D)

36.  Also, as discussed above,[13] neither Liddle nor the Liddle Estate has standing to pursue an allowance of an administrative expense under section 503(b)(3)(D), since neither are "a creditor, an indenture trustee, an equity security holder, or a committee" of L&R.  Therefore,

---

[12] The only case cited by Liddle in support of his section 506(c) claim is *In re Pudgie's Dev. of N.Y.*, 223 B.R. 421, 424 (Bankr. S.D.N.Y. 1998).  We note that the party in that case who received an administrative expense claim under section 506(c) was the Debtor's counsel, which is consistent with the plain language of section 506(c) and the later decision by the Supreme Court in *Hartford*.

[13] *See* Section 1(b), *supra*.

they (and by extension, FH) are not entitled to a reimbursement of expenses or payment of fees under sections 503(b)(3)(D) and 503(b)(4), respectively.

### c. FH's Pre-Petition Services Should Not Be Subject to Reimbursement from the Post-Petition L&R Estate

37. Even if the Court were to find that the Liddle Estate has standing to request reimbursement for the fees it paid to FH for pre-petition services rendered to L&R, the cases cited in the FH Claim Motion do not support such relief. The cases cited in FH Claim Motion that grant a request for allowance and payment of pre-petition fees and expenses under section 503(b)(3)(D) involve creditors or outsider equity holders who acted selflessly pre-petition on behalf of all creditors of the debtor rather than in their own self-interest.[14] "'Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily for their own interests' and '[e]fforts undertaken by creditors solely to further their own self interest are not compensable under section 503(b).'" *In re Bayou Group., LLC*, 431 B.R. 549, 561 (Bankr. S.D.N.Y. 2010) (quoting *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr.S.D.N.Y.2008); *In re Granite Partners*, 213 B.R. at 446.). Even in those rare circumstances when selfless creditors may be entitled to reimbursement of its actual, necessary expenses, such reimbursement is "limited to those extraordinary actions, that lead to an 'actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders.'… Conversely, insubstantial services include those that do not actually increase the size of the estate, or deplete the assets of the estate without providing any corresponding greater benefit." *In re Granite Partners*, 213 B.R. at 446.

---

[14] In fact, of the four cases cited by Liddle, two actually deny section 503(b)(3)(D) claims for prepetition services rendered to the movant. *See In re Essential Therapeutics, Inc.*, 308 B.R. 170, 175 (Bankr. D. Del. 2004); *In re Brooke Corp.*, 443 B.R. 856, 868 (Bankr. D. Kan. 2011).

38. Liddle, as the principal and insider of L&R, has the burden to prove that he has acted primarily in the interests of the L&R and its creditors in seeking a substantial contribution claim for FH's fees in this case. The Liddle Compensation Motion alone (as more fully described above) is evidence to the contrary, as the motion seeks to deplete almost all of L&R Estate's assets for Liddle's own benefit and to the detriment of all of L&R's creditors. Any prepetition legal services rendered by FH and paid by Liddle's estate therefore should not be a cost borne by L&R's creditors, since they were clearly not intended to "increase the size of the estate" for the benefit of all creditors, and the FH Claim Motion must be denied. *Id.*

        d. **Pre-Petition Payment of FH's Legal Fees by Third Party Is Subject to Waiver in Accordance with the Rule Set Forth in *In re Lar-Dan Enterprises, Inc.***

39. The Trustee also notes that, arguably, Liddle (or the Liddle Estate) funding the pre-petition services by FH would fall under the guidelines established by *In re Lar-Dan Enterprises, Inc.*, 221 B.R. 93 (Bankr. S.D.N.Y. 1998). "As a general matter, when considering a debtor's request for authorization of payment of its attorney's fees by a third party, bankruptcy courts in this District typically require that (1) the arrangement be fully disclosed to the debtor, as client, and to the third party payor; (2) the debtor expressly consents to the arrangement; (3) the third party payor retains independent legal counsel and understands that the attorney's duty of undivided loyalty is owed exclusively to the debtor—and not the payor—; (4) the factual and legal relationship among the third party payor, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, be fully disclosed to the Court at the outset of the debtor's bankruptcy representation; (5) the debtor's attorney must demonstrate and represent, to the court's satisfaction, the absence of facts which otherwise create non disinterestedness, actual conflict, or impermissible potential for a conflict of interest. *In re Ancona*, No. 14-10532

(MKV), 2016 WL 7868696, at *11 (Bankr. S.D.N.Y. Nov. 30, 2016) (citing *Lar-Dan*, 221 B.R. at 96). Upon information and belief, in nearly all *Lar-Dan* circumstances in this district, the party paying the pre-petition retainer for bankruptcy services is obligated to waive their claim against the estate for such payment. Liddle now seeks to circumvent those typical procedures by filing an after-the-fact motion for reimbursement of amounts paid. Such attempts to circumvent ordinary bankruptcy procedure should be denied.

**WHEREFORE**, for the reasons set forth herein, the Trustee respectfully requests that the Court enter an order denying the Liddle Compensation Motion and the FH Claim Motion, and such other and further relief as the Court deems appropriate.

Dated: New York, New York
June 15, 2020

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile: (212) 754-0330

By: /s/ Michael S. Weinstein
    Michael S. Weinstein

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Liddle & Robinson, L.L.P.*

3513089.5                                    18