UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LIDDLE & ROBINSON, L.L.P

<u>**OPINION & ORDER**</u>

20 Civ. 865 (ER)

Ramos, D.J.:

Before the Court is Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC's (collectively, "Counsel Financial") motion for permission to appeal an interlocutory order issued by the United States Bankruptcy Court for the Southern District of New York.[1] The order Counsel Financial seeks to appeal concerns the Bankruptcy Court's authorization of certain interim payments to professional firms hired by Liddle & Robinson, L.L.P ("L&R"), including the law firm Foley Hoag LLP. Counsel Financial believes these fees were paid in error because there was no determination that they were incurred for Counsel Financial's benefit.

Counsel Financial also moves, pursuant to Rule 12(f), to strike the response to Counsel Financial's motion for permission to appeal filed by Foley Hoag purportedly on behalf of L&R. Foley Hoag previously represented L&R before the Bankruptcy Court. Counsel Financial argues that because the Bankruptcy Court appointed a trustee of L&R's estate, Foley Hoag no longer has standing to defend the appeal on L&R's behalf.

For the reasons stated below, Counsel Financial's motion for permission to appeal is DENIED and Counsel Financial's motion to strike is DENIED.

**I.     BACKGROUND**

The dispute before the Court arises out of the Chapter 11 bankruptcy of the law firm Liddle & Robinson. Bankruptcy proceedings have been underway since July 2019 before Judge Sean H. Lane. (Doc. 3 ¶ 1; *In re Liddle &* Robinson, No. 19-12346 (SHL)

---

[1] Jonathan L. Flaxer, the Bankruptcy Court-appointed Trustee joins in Counsel Financial's motion for permission to appeal. (Doc. 14.)

(Bankr. S.D.N.Y.) ("Bkr. Docket").) Counsel Financial is a secured creditor of L&R. (*Id.* ¶ 2.) On December 19, 2019, the Bankruptcy Court ordered the appointment of a Chapter 11 Trustee for L&R, a position to which Jonathan L. Flaxer was named on January 6, 2020. (*Id.* ¶ 3.) Prior to the appointment of the Trustee, L&R retained Foley Hoag as its attorneys, EisnerAmper LLP as its accountants, and The Benefit Practice as its benefits consultant (collectively, the "Professionals"). (*Id.* ¶ 4.)

On September 4, 2019, the Bankruptcy Court entered an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Interim Fee Procedures Order"). (Bkr. Docket Doc. 48.) The Interim Fee Procedures Order provides for interim payments following the filing by professionals of "Monthly Statements," as well as for periodic review of compensation every four months through "Interim Fee Applications." (*Id.*) The first Interim Fee Applications period ended on November 30, 2019. According to the Interim Fee Procedures Order, a professional may file a Monthly Statement on or before the 20th day of the month following the month for which compensation is sought. (*Id.* ¶ 2(b).) Other parties may object to the Monthly Statements within a specified period. (*Id.* ¶ 2(e).) If no objection is filed, L&R is required to pay 80 percent of the fees requested in the Monthly Statement, and 100 percent of the expenses. (*Id.* ¶ 2(f).) If an objection is filed, L&R is required to withhold payment of that portion of the Monthly Statement to which an objection is directed, unless the Court, upon notice and a hearing, orders otherwise. (*Id.* ¶ 2(g).) All objections that are not resolved by the parties are preserved and presented to the Court at hearings on interim or final fee applications. (*Id.* ¶ 2(i).)

The Professionals each filed a number of Monthly Statements, requesting reimbursement for, among numerous other things, updating cash flow budgets and legal research regarding Chapter 11 eligibility. (*See* Bkr. Docket Docs. 85, 107, 118, 119, 131, 134, 135, 140.) Counsel Financial filed blanket objections, arguing that fees could only be paid to the extent the services being charged directedly benefited Counsel Financial

2

and, in Counsel Financial's view, none of the services provided had benefited them. (Bkr. Docket Docs. 95, 128, 150, 151.) The Professionals also filed their first Interim Fee Applications on December 5, 2019, to which Counsel Financial also objected. (Bkr. Docket Docs. 152, 153, 154, 160.)

The Bankruptcy Court held an omnibus hearing on a number of issues in the L&R bankruptcy matter on December 19, 2019 (the "December Hearing").[2] The Court addressed a motion to convert the matter into a Chapter 7 case from a Chapter 11 one, various discovery disputes, and a motion to extend the exclusivity period for the filing of a Chapter 11 plan and disclosure statement. (*See* Bkr. Docket Doc. 204.) And, the Bankruptcy Court appointed a Trustee. (*See id.* 204 at 75:23.) The parties also discussed the pending fee applications. Counsel for Counsel Financial raised with the Court its objections to fee payments absent a finding that the fees were incurred for Counsel Financial's benefit.[3] The Bankruptcy Court disagreed that such a determination was necessary, stating its belief that Counsel Financial was only entitled to "adequate protection" of the cash collateral. (*Id*. 204 at 113:16-115:10, 118:9-21.) Given the appointment of a Trustee, however, the Bankruptcy Court found it appropriate to not issue an order on the Interim Fee Applications, but instead to discuss the Monthly Statements, noting that these payments were ultimately subject to interim and final fee applications. (*Id.* at 120:11.)

On January 15, 2020, the Bankruptcy Court issued an order authorizing certain payments pursuant to the Monthly Statements (the "Bankruptcy Court Order"). (Bkr. Docket Doc. 205.) That order authorizes the payment of 60 percent of the fees and 100 percent of the expenses to Foley Hoag and EisnerAmper, as well as an additional payment to The Benefit Practice. (*Id.*) The order does not contain legal analysis, but

---

[2] At the time of a hearing on December 19, 2019, the Professionals had not been paid for their work since the inception of the bankruptcy proceedings. (*See* Bkr. Docket Doc. 204 at 96:1-4.)

[3] Counsel Financial made no specific objection to any service provided or fee charged.

3

notes that the Bankruptcy Court overruled Counsel Financial's objections at the December Hearing. (*Id.*)

Counsel Financial initiated this action with a notice of appeal on January 1, 2020.

## II.     COUNSEL FINANCIAL'S MOTION TO STRIKE

The Court addresses Counsel Financial's motion to strike first. The Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Despite this authority, the Second Circuit has held that "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Motions to strike are disfavored and not frequently granted. *Low v. Robb*, No. 11 Civ. 2321 (JPO), 2012 WL 173472, at *8 (S.D.N.Y. Jan. 20, 2012). "To prevail in such a motion, defendants must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Ruiz v. New Avon LLC*, No. 18 Civ. 9033 (VSB), 2019 WL 4601847, at *17 (S.D.N.Y. Sept. 22, 2019); *see also Lipsky*, 551 F.2d at 893.

Counsel Financial seeks to strike the brief filed by Foley Hoag on the grounds that only the Trustee has standing to pursue causes of action that belong to the bankruptcy estate. Counsel Financial also argues that Foley Hoag no longer represents L&R, and as such does not have standing to bring a fee application.

The Court denies Counsel Financial's motion to strike.

*First*, motions to strike under Rule 12(f) are only properly directed at pleadings. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Hicks, Muse, Tate & Furst, Inc.*, No. 02 Civ. 1334 (SAS), 2002 WL 1482625, at *6 (S.D.N.Y. July 10, 2002) ("Rule 12(f) allows a court to strike *pleadings* only.") (emphasis in original). Rule 12(f) does not apply to memoranda. *Taneja v. Health Law Firm*, No. 17 Civ. 5618 (ER), 2017 WL 11475266, at *3 (S.D.N.Y. Nov. 20, 2017) (citing Fed. R. Civ. P. 12(f)). Because Foley Hoag's

4

response is not a pleading, it is not properly stricken pursuant to Rule 12(f). *See* Fed. R. Civ. P. 7(a) (defining pleadings).

*Second*, even if Counsel Financial's Rule 12(f) motion were proper, the Court would nonetheless deny it. Foley Hoag's response to Counsel Financial's motion to strike disputes that it no longer represents L&R, but nonetheless asks that the Court accept its brief (and presumably also its initial response to Counsel Financial's motion for permission to appeal) as being filed by Foley Hoag, as appellee. The Court need not decide whether Foley Hoag represents L&R because the positions it asserts are properly asserted in its own right. The Second Circuit has "long allowed appeals by a nonparty 'when the nonparty has an interest that is affected by the trial court's judgment." *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 204 (2d Cir. 2016) (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 82 (2d Cir. 2002)). Foley Hoag, as a recipient of the interim fees awarded by the Bankruptcy Court, undoubtedly has an interest in the order Counsel Financial seeks to appeal. Foley Hoag's papers do not seek to assert any rights belonging to L&R.[4]

Moreover, the arguments Foley Hoag makes are largely ones that the Court would itself have to consider in determining whether it has jurisdiction to consider the appeal, even if not raised by the parties. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

---

[4] Counsel Financial asserts that an attorney who no longer represents a party no longer has standing to bring a fee application. Regardless of whether Counsel Financial is correct on the law, it is incorrect on the application here. Foley Hoag is not pursuing a fee application before this Court. It is merely defending a decision by the Bankruptcy Court that considered a fee application all agree was properly sought.

5

**III.     COUNSEL FINANCIAL'S MOTION FOR PERMISSION TO APPEAL**

Counsel Financial seeks to appeal the interlocutory order by the Bankruptcy Court authorizing payment of interim fees to the Professionals retained by L&R.  Counsel Financial argues that, absent agreement, a secured creditor's collateral may only be charged to the extent the expenses directly benefited the secured creditor.  According to Counsel Financial, this principle is established in *General Electric Credit Corporation v. Levin & Weintraum (In re Flagstaff Foodservice Corporation)*, 739 F.2d 73, 76 (2d. Cir. 1984).  In awarding interim fees pursuant to the Monthly Statements, the Bankruptcy Court did not explicitly make a finding that the expenses were incurred for services that benefited Counsel Financial.  Counsel Financial argues that the Bankruptcy Court erred because it "may have conflated the applicable standard under 11 U.S.C. § 506(c)," which, provides the "benefit" test Counsel Financial thinks is appropriate here, "with the standard for use of cash collateral under 11 U.S.C. § 363," which only requires "adequate protection."  (Doc. 3 at 4 n.2.)

      A.     Interlocutory Appeal Standard

"Under [28 U.S.C.] § 158(a)(3), a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court." *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003).  While neither § 158 nor the Bankruptcy Rules "provides guidelines for determining whether a district court should grant leave to appeal, . . . most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b)." *In re Cutter,* No. 05 Civ. 5527 (FB), 2006 WL 2482674, at *4 (E.D.N.Y. Aug. 29, 2006) (citations omitted)*; see also In re Futter Lumber Corp.*, 473 B.R. 20, 26–27 (E.D.N.Y. 2012).

In order to permit an interlocutory appeal under § 1292(b), the order being appealed must involve "[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the

6

order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "This standard is strictly applied as interlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit." *In re Madoff*, No. 08 Civ. 01289 (SAS), 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010) (citing *Fox v. Mandiri (In re Perry H. Koplik & Sons, Inc.*), 377 B.R. 69, 73 (S.D.N.Y. 2007). All three § 1292(b) criteria must be met before a court may grant leave to appeal. *In re Futter Lumber Corp.*, 473 B.R. at 26–27 (citing *N. Fork Bank v. Abelson,* 207 B.R. 382, 390 (Bankr. E.D.N.Y. 1997). "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances to overcome the general aversion to piecemeal litigation and justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 74 (S.D.N.Y. 2007) (citations omitted).

"[D]istrict court judges have broad discretion to deny certification even where the statutory criteria are met." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-CV-15375 (KMK), 2007 WL 1119753, at *1 (S.D.N.Y. Apr. 12, 2007) (quoting *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 166 E.D.N.Y. 1999)). "Indeed 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *In re Lehman Bros. Holdings Inc.*, No. 13 Civ. 2211 (RJS), 2014 WL 3408574, at *1 (S.D.N.Y. June 30, 2014) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990)). "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir.1996). The use of § 1292(b) is therefore "reserved for those cases where an intermediate appeal may avoid protracted litigation." *Id*. (citing *Milbert v. Bison Labs.*, 260 F.2d 431, 433–35 (3d Cir. 1958)).

7

B.  Counsel Financial's Request for Permission to Appeal

The Court here need only consider the last of the § 1292(b) factors in determining that appeal is not warranted: whether an immediate appeal may materially advance the ultimate termination of the litigation. The Court finds that it would not. The Court further finds that Counsel Financial has not remotely established the exceptional circumstances required to allow an appeal even if it otherwise met the § 1292(b) criteria.

This third factor, which primarily concerns judicial efficiency is considered the most important of the § 1292(b) factors. *See SEC v. Gruss,* No. 11 Civ. 2420 (RWS), 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012); *In re Lehman Bros. Holdings Inc.*, No. 13 Civ. 2211 (RJS), 2014 WL 3408574, at *1 (S.D.N.Y. June 30, 2014). The factor is satisfied when the "appeal promises to advance the time for trial or to shorten the time required for trial." *In re St. Clair*, No. 13-mc-1057 (SJF), 2014 WL 279850, at *5 (E.D.N.Y Jan. 21, 2014) (citing *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. at 74).

While Counsel Financial acknowledges the importance of this consideration to the Court's analysis, it simply argues conclusorily that "an interlocutory appeal will advance the ultimate termination of litigation relating to the Order," and that an "appeal will also advance the termination of future, related litigation concerning additional fee applications by the same professionals and others in this case." (Doc. 15 at 8.)

The Court is unconvinced. There are numerous other issues involved in the underlying bankruptcy litigation beyond this fee issue, the resolution of which it seems an appeal now would not affect. Indeed, the December 19 Hearing alone considered many weighty questions, including whether to convert the case into a Chapter 7 case. And, Foley Hoag points to several other open questions in the litigation, including whether Counsel Financial is a secured creditor with properly perfected liens, the extent and validity of Counsel Financial's liens, whether Counsel Financial's claim should be recharacterized from debt to equity or equitably subordinated, among others.

Moreover, it is not apparent to the Court how Counsel Financial's arguments support a finding that an appeal will advance or shorten resolution of the dispute, even assuming that this litigation only concerned these fee issues. Either Counsel Financial is incorrect about the law, in which case appellate review could only prolong the course of the proceedings below. Or, Counsel Financial is correct on the law, in which case the issue will be returned to the Bankruptcy Court to decide whether the services were incurred for Counsel Financial's benefit. But the Court does not see how issuing that decision now appreciably advances resolution of the matter. Certainly the parties would be aware of the "correct" standard sooner, but it is not clear that the ultimate question of the appropriate fees would be determined any more quickly. Further, Counsel Financial (or, indeed, L&R or the Professionals) could appeal the Bankruptcy Court's subsequent order, for example on its analysis of whether the services provided benefited Counsel Financial, resulting in multiple appeals, piecemeal litigation, and greater delay. *See S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) ("The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). The efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case."); *MCI WorldCom Commc'ns v. Commc'ns Network Int'l, Ltd.*, 358 B.R. 76, 80 (S.D.N.Y. 2006) (denying request for interlocutory appeal where there was a "likelihood of multiple appeals"). Judging by the Bankruptcy Court's comments on the contentiousness of this litigation, that is not an unlikely scenario. [5]

---

[5] At the December Hearing, the Bankruptcy Court observed, in colloquy with Counsel Financial's counsel:

> Mr. Wander, . . . [y]our client has done at least as much attacking as it has been attacked; at least as much. The fees in this case are very large. You've objected to some things that I understand and some things where I've sustained your position. But you've also objected to pretty much everything else, and some of that has been really value-destructive in terms of the amount of fees to address.

(Bankruptcy Court Doc. 204 at 115:11-18.)

9

Counsel Financial further argues that there is no guaranty that the professionals who received the fee payments "will voluntarily return the funds or be in a position to comply with a disgorgement order . . . at some future date." (Doc. 15 at 7.) This is rank and unwarranted speculation. There is nothing before the Court to suggest that these professional firms, not the subject of the bankruptcy proceedings, would not or could not comply with a disgorgement order duly issued by the Bankruptcy Court. Counsel Financial also argues that it continues to be harmed every day that its money is incorrectly in the professionals' hands. This argument appears unrelated to the efficiency question under consideration, but would be the case in every instance in which a court makes a determination on fees as to which there is an objection.

Interlocutory appeal is not "intended as a vehicle to provide early review of difficult rulings in hard cases." *German by German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995); *United States v. Am. Soc'y of Composers, Authors & Publishers*, 333 F. Supp. 2d 215, 221 (S.D.N.Y. 2004) (same). Rather, it is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation." *Id.* The Court is not convinced, on the record before it, that interlocutory appeal will avoid "protracted and expensive litigation."

Put simply, the Court does not see the presence of any exceptional circumstances justifying interlocutory appeal. From the Court's perch, this is a garden variety bankruptcy case involving a garden variety fee dispute. "The Second Circuit has noted that 'Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be able to rule on . . . ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record.'" *In re Lehman Bros. Holdings Inc.*, 2014 WL 3408574, at *1 (quoting *Weber v. United States Trustee,* 484 F.3d 154, 159 (2d Cir. 2007) (quotations omitted). The Bankruptcy Court could ultimately apply the standard Counsel Financial believes is appropriate. Or it could not. But, in any event, appellate review

will only be stronger with the Bankruptcy Court's considered opinion of the law on this question.

## IV. CONCLUSION

For the foregoing reasons, Counsel Financial's motion for permission to appeal and Counsel Financial's motion to strike are DENIED.

The Clerk of the Court is respectfully requested to terminate the motions at Docs. 3 and 18, and to close the case.

It is SO ORDERED.

Dated: July 21, 2020
New York, New York

EDGARDO RAMOS, U.S.D.J.