Michael S. Weinstein
GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
Telephone: (212) 907-7300
Facsimile:  (212) 754-0777

*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Liddle & Robinson, L.L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

| | | |
|---|---|---|
| In Re | : | Chapter 11 |
| | : | |
| LIDDLE & ROBINSON, L.L.P.,[1] | : | Case No. 19-12346 (SHL) |
| | : | |
| | : | Jointly Administered with 19-10747 (SHL) |
| Debtor | : | |

-----------------------------------------------------------x

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION OF BLOOMINGDALE ROAD JUDGMENT RECOVERY AS COLLECTION AGENT FOR THE TRUSTEE EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING THE SETTLEMENT AGREEMENT BETWEEN THE CHAPTER 11 TRUSTEE AND ERIC BUTLER, AND (III) ALLOWING FINAL COMPENSATION FOR PROFESSIONAL SERVICES RENDERED BY BLOOMINGDALE ROAD JUDGMENT RECOVERY FOR THE PERIOD OF JULY 22, 2019 THROUGH JULY 31, 2020**

Jonathan L. Flaxer, solely in his capacity as the chapter 11 trustee (the "**Trustee**") for the estate (the "**Estate**") of the above captioned debtor (the "**Debtor**"), by his counsel, Golenbock Eiseman Assor Bell & Peskoe LLP, hereby files this Motion (the "**Motion**") for an order, a proposed form of which is attached hereto as **Exhibit A,** (i) pursuant to § 327(a) and 328(a) of chapter 11 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the retention of Bloomingdale Road Judgment Recovery ("**BRJR**") as collection

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.

3536303.1

agent for the Trustee as of the Petition Date, (ii) pursuant to Bankruptcy Rule 9019, approving a settlement agreement (the "**Settlement Agreement**"), a copy of which is annexed hereto as **Exhibit B**, between the Trustee and Eric Butler ("**Butler**"), on the terms and conditions contained therein and summarized below, and (iii) pursuant to Bankruptcy Code § 330(a), Bankruptcy Rule 2016, Rules 2016-1 and 2016-2 of the Local Bankruptcy Rules for the Southern District of New York, and the Guidelines of the Office of the United States Trustee for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "**Guidelines**"), granting the final allowance, and approval of payment, of fair and reasonable compensation for professional services rendered on behalf of the Trustee by the BRJR through July 31, 2020. In support of the Motion, the Trustee respectfully states as follows:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code §§ 327(a), 328(a), and 330(a) and Bankruptcy Rules 2014, 2016 and 9019.

### Background

4. On July 22, 2019 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under the Bankruptcy Code. Until December 23, 2019, the Debtor was authorized to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On or about December 6, 2019, the United States Trustee (the "**United States Trustee**") filed a motion for the appointment of a chapter 11 trustee [Dkt. No. 191; Case No. 19-10747, Dkt. No. 257], and on December 23, 2019, the Court granted that motion directing appointment of a chapter 11 trustee [Dkt. No. 192].

6.  On December 23, 2019, the United States Trustee filed a notice appointing Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 193] as well as an application to approve the appointment of Jonathan L. Flaxer as the chapter 11 trustee [Dkt. No. 195]. The Court approved the United States Trustee's application by order dated January 6, 2020 [Dkt. No. 201].

7.  The Debtor is a law firm partnership formed on or about June 4, 1979. Since its formation, the Debtor had a strong litigation practice, led by Jeffrey L. Liddle, with an emphasis on corporate, real estate and employment law. Mr. Liddle was the sole remaining partner of the Debtor, and thus the Debtor was obligated to wind down in accordance with New York law. The Trustee continued to operate the Debtor during this wind down, and as of June 30, 2020, the Debtor is no longer operating.

## The Dispute with Eric Butler and Collection Efforts

8.  Upon information and belief, Butler was a former client of the Debtor. On December 15, 2011, the Debtor filed a complaint in the Supreme Court of the State of New York, New York County, to recover unpaid legal bills in the amount of approximately $33,669. Butler failed to respond to the complaint. On July 2, 2012, the Debtor obtained a default judgment (the "**Judgment**") against Butler in the amount of $35,919.42.

9.  On May 27, 2015, the Debtor engaged BRJR to enforce and collect on the Judgment. In accordance with the engagement letter (the "**Engagement Letter**") executed by both parties, BRJR is entitled to be paid 33.3% of any sums recovered from Mr. Butler, after

deduction of the actual costs incurred in locating and executing on any assets. A copy of the Engagement Letter is annexed as Exhibit "A" to the Declaration (as defined herein).

10. After locating Butler and serving on him an income execution, BRJR and Butler engaged in good faith, arms-length negotiations, and successfully negotiated a settlement in principal with respect to the Judgment, whereby Butler will pay the Estate the sum of $15,000 in equal monthly payments over a thirty (30) month period.

11. On June 24, 2020, BRJR contacted the Debtor's former principal, Jeffrey Liddle, to inform him of the settlement, and Mr. Liddle promptly notified the Trustee of the matter. Until that date, the Trustee was unaware that BRJR had been engaged by the Debtor in 2015 to enforce and collect on the Judgment, and upon information and belief, BRJR was unaware that the Debtor had filed this bankruptcy case.

12. On July 31, 2020, Butler signed the Settlement Agreement.

## Legal Argument

### a. Retention of BRJR

13. The Trustee seeks an order of this Court authorizing the retention of BRJR as collection agent for the Trustee pursuant to Bankruptcy Code §§ 327(a) and 328(a) for the purposes described below.

14. Bankruptcy Code § 327(a) states:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

15. Bankruptcy Code § 328(a) empowers the Trustee to employ, subject to court approval, one or more professionals under any reasonable terms and conditions of employment,

4
3536303.1

including on a contingent fee basis. Given the nature of the engagement, the fact that most engagements of this type are paid through a contingency fee arrangement, and the value to be realized thereon, the Trustee believes that the retention of BRJR pursuant to sections 327(a) and 328(a) under the terms set forth herein is reasonable and appropriate under the circumstances.

16. In the declaration of Gil Kreiter, sworn to on July 17, 2020 (the "**Declaration**" annexed hereto as **Exhibit C**), Mr. Kreiter, principal of BRJR, represents that to the best of his knowledge, after due inquiry, BRJR does not hold or represent, and has never held or represented, any interest adverse to any interest of the Trustee, the Debtor or its creditors with respect to the matters upon which it has been engaged, and that BRJR is a "disinterested person" as that term is defined by Bankruptcy Code § 101(14).

17. BRJR represents that it is not a creditor of the Debtor and has never had any relevant connection with any parties in interest or their respective attorneys.

18. Professional services that BRJR has rendered to the Debtor and the Trustee can be summarized as follows: (i) researching the assets of Butler and (ii) performing such services that may be necessary to collect the Judgment.

19. BRJR's fees for the matter in which it was engaged is 33.3% of any sums recovered from Butler, after deduction of the actual costs incurred in locating and executing on any assets.

20. As represented by Mr. Kreiter in the Declaration, upon information and belief, BRJR has extensive familiarity with debt collection practice.

21. As represented by Mr. Kreiter in the Declaration, BRJR commenced rendering services to the Debtor on May 27, 2015. BRJR was unaware that the Debtor had filed a chapter 11 petition for bankruptcy until after Mr. Kreiter had reached a settlement with Mr. Butler and

contacted the Debtor's former principal, Jeffrey Liddle, to inform him of such settlement on June 24, 2020. Furthermore, the Trustee was unaware of BRJR's engagement until that date as well. In light of this representation, the Trustee respectfully requests that the Court authorize the retention of BRJR on terms set forth in the Engagement Letter effective as of the Petition Date.

    b. **Approval of the Settlement Agreement Under Bankruptcy Rule 9019**

22.    The Trustee requests approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a), which governs approval of compromises and settlements of claims. Bankruptcy Rule 9019(a) provides, in pertinent part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

23.    This rule empowers the bankruptcy court to approve a proposed compromise or settlement "if [it is] in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.,* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). The settlement need not result in the best possible outcome for the Debtor, but must not "fall below the lowest point in the range of reasonableness." *Id.* (citation omitted).

24.    Approval of a proposed compromise or settlement is within the sound discretion of the Court. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968); *In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983), *cert. denied sub nom., Cosoff v. Rodman*, 464 U.S. 822 (1983); *Fischer v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997).

25.    In determining whether to approve a proposed compromise or settlement, the Court need not decide the numerous issues of law and fact raised by the compromise or

6

settlement but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d at 608; s*ee also Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) (emphasizing that "the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation").

26. The courts have set forth factors under which settlements are evaluated to determine if they are fair and equitable. *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). Among other things, in making such a determination, the bankruptcy court "must apprise itself of all 'factors relevant to a full and fair assessment of the wisdom of the proposed compromise' and make an informed and independent judgment of whether a settlement is 'fair and equitable' and in the best interests of the estate." *In re Telcar Group, Inc.*, 363 B.R. 345, 352-53 (Bankr. E.D.N.Y. 2007) (quoting *Protective Comm. for Indep. Stockholders*, 390 U.S. 414 at 424-25 (1968). These factors include:

   a. The balance between the likelihood of the plaintiff's or the defendant's success should the case go to trial as compared with the benefits of the settlement without the expense and delay of a trial;

   b. The prospect of a complex and protracted litigation if the settlement is not approved;

   c. The paramount interests of the creditors, including the proportion of creditors who do not object to, or who affirmatively support, the proposed settlement;

   d. Whether other parties in interest support the settlement;

   e. The competency and experience of counsel supporting the settlement;

   f. The proposed benefits to be received;

   g. The nature and breadth of releases to be issued as a result of the settlement; and

h. The extent to which the settlement is truly the product of arms' length bargaining and not the product of fraud or collusion.

*Telcar Group, Inc.*, 363 B.R. at 352-53 (citing *In re Interstate Cigar Co.*, 240 B.R. 816, 822 (Bankr. E.D.N.Y. 1999)); *In re Iridium Operating LLC*, 478 F.3d at 462.

27. The Court should also consider additional factors such as weighing the informed judgments of the trustee and considering the competency and experience of counsel. *Telcar Group, Inc.*, 363 B.R. at 352 (citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991)).

28. For the following reasons, the Trustee respectfully submits that this Court can and should approve the Settlement Agreement under Bankruptcy Rule 9019(a) as being fair and equitable and in the best interests of the Debtor's estate.

29. Upon information and belief, during settlement negotiations, Butler has represented to BRJR that he has a good faith basis for his failure to respond to the complaint. Although the Trustee believes that Butler may not have good cause to vacate the Judgment and reopen the underlying proceeding, the Trustee recognizes that further pre-answer litigation of this matter, in light of the amount at stake, will diminish the funds in the Estate available to creditors and the value of this litigation to the Estate. Furthermore, upon information and belief, Butler has claimed to BRJR that he does not have the financial wherewithal to pay the judgment in full, and that the amount he is offering in the Settlement Agreement is the highest and best offer he can make based on his financial condition. BRJR, drawing on its experience in the debt collection arena and their investigation into Butler's assets, has advised the Trustee that the settlement offer is likely the highest and best offer the Trustee will receive from Butler.

8

3536303.1

30. Based on the foregoing, the Trustee has conducted due diligence concerning the prospects for success in continuing the litigation against Butler. If approved, the Settlement Agreement will fully and finally resolve the Judgment. If the Settlement Agreement is not approved, then contested, fact-intensive, protracted, and expensive litigation would continue against Butler. Even if Butler does not succeed in vacating the Judgment, the Trustee faces potentially costly post-judgment discovery and collection issues. Although the Trustee believes he has a strong case against Butler, there would be no guarantee that the Trustee would ultimately prevail. Therefore, in light of the amount of the claim, the asserted defenses and the Butler's willingness to settle the matter, the Trustee proposes to settle the claim and the Judgment for $15,000, which is approximately 45% of the amount sought by the initial complaint.

31. As to the non-financial criteria set forth in Paragraph 26 above, the Settlement Agreement was the product of extensive, arm's length negotiations between BRJR and Butler. The Settlement Agreement also includes a release by the Trustee limited to the causes of action in the complaint after payment in full of the settlement amount. The Trustee respectfully submits that such release is ordinary, reasonable and appropriate under the circumstances.

32. Based upon the factual circumstances and the applicable law as described above, the Trustee submits that the proposed settlement is well above the lowest point of the range of reasonableness and is in the best interests of the Debtor's estate and, accordingly, should be approved. For these reasons, the Trustee requests that the Court approve the Settlement Agreement.

c. **Payment of BRJR's Fees**

33. The Trustee further requests a final allowance, and approval of payment, of fair and reasonable compensation in the total amount of $5,000 (the "**Fee Amount**") for professional

9

services rendered on behalf of the Trustee and the Estate by BRJR from the Petition Date through July 31, 2020 (the "**Fee Period**"). The Fee Amount represents 33.3% of the Settlement Amount, as had been agreed upon by the Debtor and BRJR pre-petition per the Engagement Letter. In accordance with the Settlement Agreement, BRJR will be paid the Fee Amount on a monthly basis solely and directly from the monthly installments paid by Butler over the course of the Settlement Agreement, and not from any other funds held by the Trustee on behalf of the Estate.

34. In accordance with Bankruptcy Rule 2016(a), as set forth in the annexed Declaration, Mr. Kreiter of BRJR states under penalty of perjury that to the best of his knowledge, information and belief, formed after reasonable inquiry, (a) the fees sought in the Motion are permissible under the relevant rules, court orders, and Bankruptcy Code provisions; (b) the fees sought are billed at rates and in accordance with practices customarily employed by BRJR and generally accepted by the BRJR's clients; (c) in providing a reimbursable service, BRJR does not make a profit on the service, whether the service is performed by the Firm in-house or through a third party; (d) no agreement or understanding exists or has ever existed between BRJR and any other person for a division of compensation to be received for services rendered in, or in connection with, this chapter 11 case, nor shall BRJR share or agree to share the compensation paid or allowed from the Estate for such services with any other person; and (e) no agreement or understanding prohibited by § 155 of title 18, United States Code or § 504 of the Bankruptcy Code has been, or will be, made by BRJR.

35. As represented by Mr. Kreiter in the Declaration, during the Fee Period, BRJR (i) researched the assets of Butler and (ii) performed such services that were necessary to collect the Judgment, including but not limited to serving an income execution on Butler.

36. In light of the nature of BRJR's practice, as well as the contingency fee arrangement with the Debtor, BRJR did not maintain contemporaneous records of the time it had spent on pursuing collection of the Judgment. BRJR estimates that it expended approximately 20 hours in rendering debt collection services to the Estate, for a total blended hourly rate of approximately $250.

37. Upon information and belief, the professional services rendered by BRJR during the Fee Period on behalf of the Trustee and the Estate required the expenditure of substantial time and effort and have been necessary and appropriate in furtherance of the interests of the Estate, and were of material benefit to the Estate. The Trustee believes that these efforts and services were instrumental in ultimately realizing funds for the Estate

38. Section 330(a) of the Bankruptcy Code describes the general standards for determining the amount of compensation. It is to be:

> [R]easonable compensation for actual, necessary services rendered by such . . . professional person, or attorney, . . . and by any paraprofessional persons . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title . . .

39. In considering compensation awards under section 330 of the Bankruptcy Code, courts generally take into account twelve factors first identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), overruled on other grounds, *Auer v. Robbins*, 519 U.S. 452 (1997). *See also In re Masterwear Corp.*, 233 B.R. 266, 277 (S.D.N.Y. 1999); *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 580 (E.D.N.Y. 1990); *In re Cuisine Magazine, Inc.*, 61 B.R. 210, 212-213 (Bankr. S.D.N.Y. 1986). These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the

attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

40. "To facilitate consideration of the relevant factors, courts have adopted the 'lodestar' approach. This involves multiplying the reasonable attorney billing rate by the reasonable number of hours expended." *Masterwear*, 233 B.R. at 277; *Cena's Fine Furniture, Inc.*, 109 B.R. at 581. The "lodestar" approach incorporates most of the Johnson factors through its application. *Masterwear*, 233 B.R. at 277; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986).

41. The Trustee submits that considering (a) the time and labor required of BRJR; (b) the novelty and difficulty of many of the questions involved in this case; (c) the skill required of BRJR to perform the services involved; (d) BRJR's customary fees for such work; (e) the time limitations upon and pressures borne by BRJR; (e) BRJR's experience, reputation and ability; (f) the awards under similar circumstances; and (g) the favorable results obtained, the compensation sought in this Motion is fair and reasonable.

### Notice

42. Notice of this Motion has been given to the following parties: (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d) (on a consolidated basis); (c) counsel to Counsel Financial II LLC; and (d) counsel to Jeffrey

Lew Liddle. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

43. No previous motion for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** the Trustee respectfully requests that the Court issue an Order, in the proposed form of which is attached hereto as **Exhibit A**, (i) granting the Motion, and (ii) granting such other relief as the Court deems just.

<table>
<tr><td>Dated: New York, New York<br>    August 27, 2020</td><td>GOLENBOCK EISEMAN ASSOR<br>   BELL & PESKOE LLP<br>711 Third Avenue<br>New York, New York 10017<br>Telephone: (212) 907-7300<br>Facsimile: (212) 754-0330<br><br>By: /s/ Michael S. Weinstein<br>   Michael S. Weinstein<br><br>*Counsel for Jonathan L. Flaxer, Chapter 11 Trustee for Liddle & Robinson, L.L.P.*</td></tr>
</table>