| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>*Attorneys for Counsel Financial II,*<br>*LIG Capital LLC and*<br>*Counsel Financial Holdings LLC*<br>605 Third Avenue<br>New York, New York 10158<br>(212) 557-7200<br>Robert L. Rattet, Esq.<br>Jonathan S. Pasternak, Esq. | *Hearing Date:*<br>*September 21, 2020 @ 11:00 A.M.* |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
In re                                                                      :  Chapter 11
                                                                                  :
                                                                                  :  Case No. 19-12346 (SHL)
LIDDLE & ROBINSON, L.L.P.,[1]                          :
                                                                                  :  (Jointly Administered with Case No. 19-
                    Debtor                                                :  10747)
---------------------------------------------------------- x

### RESPONSE IN SUPPORT OF APPROVAL OF FINAL ORDER (1) AUTHORIZING USE OF CASH COLLATERAL BY THE TRUSTEE OF LIDDLE & ROBINSON, L.L.P., (2) GRANTING ADEQUATE PROTECTION, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SCHEDULING A FINAL HEARING

Counsel Financial II, LIG Capital LLC and Counsel Financial Holdings LLC, the sole secured and largest creditors in these Chapter 11 cases (the "Prepetition Lenders"), hereby submit this Response in support of the motion (the "Motion") of Jonathan Flaxer (the "Trustee"), Chapter 11 trustee of Liddle & Robinson, L.L.P (the "Debtor"), in the above-captioned case (the "Chapter 11 Case"), for entry of a final order (the "Final Order"): (i) authorizing the Trustee's use of "cash collateral" (as defined in section 363(a) of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") in which the Prepetition Lenders (as defined in the Motion)

---

[1] The last four digits of Liddle & Robinson, L.L.P.'s taxpayer identification number are 6440.

1

have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests), in each case whether existing on July 22, 2019 (the "Petition Date") or arising pursuant to this Final Order or otherwise (the "Cash Collateral"); (ii) providing adequate protection to the Prepetition Lenders for any diminution in value of their respective interests in substantially all of the Debtor's assets (the "Prepetition Collateral"), including the Cash Collateral; and (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Final Order and in response to the Objection ("Objection") dated September 17, 2020 filed by Jeffrey Liddle.

In summary, the Final Order is the culmination of several months of successful good faith, arms' length negotiations between the Trustee and the Prepetition Lenders and resolves a myriad of contentious and complex issues which will pave the way towards a smooth and consensual plan confirmation process, now that the issues between the Debtor's estate and the Prepetition Lenders concerning Cash Collateral have been fully resolved and potentially endless, costly and uncertain risk and litigation to the Debtor's estate avoided.

Unfortunately, Mr. Liddle and his professionals are determined to continue down a reckless path of combative litigation, unwarranted conflict, unsubstantiated allegations and deliberate mischaracterizations of the law, all of which only further diminish this very limited estate to the detriment and peril of all of its legitimate creditors.

Pursuant to the reasonable terms of the Final Order, the Debtor's estate will avoid significant costly and risky litigation that is likely to erode the remainder of the estate. Nothing in the Final Order is impermissible under the Bankruptcy Code, in no way constitutes a *sub rosa* plan and, if viewed in the context of a settlement and compromise, demonstrates the Trustee's sound

business judgment and falls well above the lowest range of reasonableness as such term is applied to compromises in this Court.

The Objection is replete with inaccuracies, most notably (a) that the Cash Collateral may not entirely be property of the Debtor's estate and (b) that the liens and claims of the Prepetition Lenders have not been deemed valid and enforceable, ***notwithstanding the validation of such liens and claims twice by two interim orders of this Court!*** On the property of the estate contention, Mr. Liddle is simply incorrect as a matter of New York partnership law, as his alleged individual interests in the Debtor's earned fees are subordinate to the property rights of the Debtor's estate to same.

Moreover, the Final Order does not pre-determine and in fact, expressly preserves final or ultimate treatment of the Prepetition Lenders' secured claims under Section 506(b) and the application of the Adequate Protection Payment thereto; nor does it waive any parties' rights under Section 506(c).

The Final Order effectively resolves all disputes and controversies between the estate and the Prepetition Lenders with respect to the significant Cash Collateral squandered by the Debtor prior to the Trustee's appointment and fairly compensates the Prepetition Lenders for such use as required under Bankruptcy Code Sections 361 and 363(c)(3). The Prepetition Lenders have even agreed, as an accommodation to the Debtor's estate - and at the suggestion of the United States Trustee -  to limit the rate of interest under the Adequate Protection Payment to contract, non-default rate, despite the abundance of case law that might have otherwise entitled them to default rate.

Since the Order materially benefits the Debtor's estate, reserves and preserves all issues related to a plan and the application of the Adequate Protection Payment, resolves potential

3

significant litigation and adequately compensates the Prepetition Lenders for the use of their Cash Collateral in the Chapter 11 case, the Court should enter the Final Order so the case can finally move towards confirmation without further unnecessary and endless controversy, litigation or interference by Mr. Liddle.

## The Prepetition Lenders are Entitled to Adequate Protection in the Form of Interest Only Payments at the Contract Rate of Interest

Sections 361 and 363 of the Bankruptcy Code require that the Prepetition Lenders be adequately compensated and protected for the estate's use of the Cash Collateral.

Despite the fact that this Court has, in other cases, awarded secured creditors default rate of interest, see, e.g., *In re Residential Capital, LLC*, 508 B.R. 851 (Bankr. S.D.N.Y. 2014), the Prepetition Lenders have agreed to be paid the Adequate Protection Payment based on the non-default, contract rate. This is also recognized as permissible in this Court. *See In re 785 Partners LLC*, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012)(contract rate interest should apply to post-petition payment to secured creditor); *In re Madison 92 Associates LLC*, 472 B.R. 189, 198 (Bankr. S.D.N.Y. 2012)(most courts apply contract rate to post-petition payment to secured creditor); *Urban Communications PCS Ltd. Prtnshp. V. Gabriel Cap., LP*, 394 B.R. 325, 328 (S.D.N.Y. 2008).

As an accommodation to the estate, and at the suggestion of the United States Trustee, the Prepetition Lenders have agreed, in the Final Order, to apply the contract, non-default rate of interest to the Adequate Protection Payment. Moreover, there is nothing in the Final Order that pre-determines its ultimate application to the Prepetition Lenders' secured claims, as such issue is preserved under the Final Order. The Final Order also does not pre-determine the extent of the Prepetition Lenders' secured claims under Section 506(a) and (b); nor is there any waiver of

parties' rights under Section 506(c). Such issues are all preserved subject to and pending confirmation of a plan.

### The Final Order Is In No Way A *Sub Rosa* Plan

Cash collateral orders are a routine part of bankruptcy practice and procedure and are commonly entered well in advance of the filing or confirmation of a plan of reorganization.

Moreover, the Final Order, as discussed above, reserves all interested parties' rights under Section 506 as to the ultimate application of the Prepetition Collateral to the Prepetition Liens as well as the rights of other parties to attempt to surcharge such collateral.

The Final Order does not contain any provisions governing the treatment of creditors or numerous other material provisions that would be contained in a plan. It simply provides an adequate protection payment to the Prepetition Lenders in consideration for the use of their Cash Collateral and the long delay they have suffered in receiving *any* payment from the Debtor.

To suggest that a cash collateral arrangement is somehow a *sub rosa* plan has no basis in fact or existing case law. A recent decision out of Washington state Bankruptcy Court supports this view. *See In re Claar Cellars, LLC*, 202 WL 1238924 (Bankr. E.D. Wa. 3/13/2020) (Payment to a secured creditor from its collateral not deemed a violation of *Jevic Holding*). The Adequate Protection Payment in no way deviates from the priority scheme cautioned against in *Jevic*. See also, generally, *In re Iridium, LLC,* 478 F. 3rd 452, 464 (2d Cir. 2007)(pre-plan settlement did not violate the Bankruptcy Code).

The Second Circuit as well as this Court has rejected *sub rosa* plan arguments in the context of pre-plan asset disposition and distribution under Section 363, which section also governs cash collateral.

In *In re Chrysler LLC*, 576 F. 3rd 108 (2d. Cir. 2009), the Second Circuit, in addressing a *sub rosa* issue raised in the context of a 363 sale, held

> The term "sub rosa" is something of a misnomer. It bespeaks a covert or secret activity, whereas secrecy has nothing to do with a Section 363 transaction. Transactions blessed by bankruptcy courts are openly presented, considered, approved and implemented. *Braniff* [700 F. 2d 935 (5th Cir. 1983)] seems to have used "sub rosa" to describe transactions that treat the requirements of the Bankruptcy Code as something to be evaded or subverted. But even in that sense the term is unhelpful. The sale of assets is permissible under Section 363(b); and it is elementary that the more assets sold that way, the less will be left for a plan of reorganization or liquidation. But the size of the transaction, and the residuum of corporate assets is, under our precedent, just one consideration for the exercise of discretion by the bankruptcy judge(s), along with an open-ended list of salient factors.
> *In Re Chrysler, LLC, supra*, 576 F.3rd at 117.

The Court went on to add:

> Thus the Sale has inevitable and enormous influence on any eventual plan of reorganization or liquidation. But it is not a "sub rosa plan" in the *Braniff* sense because it does not specifically "dictate" or "arrange" *ex ante,* by contract, the terms of any subsequent plan.
> *Id.*

*Accord, In re General Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009).

The same analysis and holdings of the *Chrysler* and *General Motors* courts can and should be applied to the contents of the Final Order. Although the Final Order effectively resolves certain aspects of the Chapter 11 case, mainly the agreement to provide adequate protection, none of the other critical elements of a plan are present.

Accordingly, the allegation that the Final Order is a *sub rosa* plan has no merit.

## The Cash Collateral Is Exclusive Property of the Debtor's Estate, Subject to the Perfected Security Interests of the Prepetition Lenders

Liddle argues, without the correct legal support, that some of the Debtor's collections might not be property of the Debtor's estate and therefore not subject to the liens of the Prepetition Lenders. The Trustee has rejected such theory as evidenced by his consent to the Final Order. Moreover, Liddle is incorrect as a matter of law, as based upon NY Partnership Law, all of the collections in the estate are exclusive property of the Debtor's estate.

Mr. Liddle's understanding of New York partnership law with respect to the Debtor's contingency fee cases relies on the wrong section of the New York Partnership Law and is thus misguided. Mr. Liddle argues that under Section 73 of the New York Partnership Law, he is entitled to an as of yet undetermined percentage of fees from the Debtor's contingency cases, which should be ascertained based on the services he had rendered on those cases after the date of the Debtor's dissolution in "January 2019". Mr. Liddle's reliance on such section is misguided. N.Y. Partnership Law § 73 is entitled *Rights of Retiring or Estate of Deceased Partner When the Business is Continued*, and states:

> When any partner retires or dies, and the business is continued under any of the conditions set forth in section seventy-two, subdivisions one, two, three, five and six, or section sixty-nine, paragraph (b) of subdivision two, without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim

> arising under this section, as provided by section seventy-two,
> subdivision eight of this chapter.

N.Y. Partnership Law § 73. As the title implies, this section sets forth the rights of a retiring partner (or the estate of a deceased partner) with respect to the assets of the partnership when the business is continued after dissolution by the remaining partner. Mr. Liddle was not the *retiring partner* of the Debtor – he was in fact the *remaining partner* who continued the Debtor's business after the firm's dissolution and during the wind-up period.

As the remaining (and not retiring) partner of the firm, Mr. Liddle's interest in the contingency fee cases is actually delineated in N.Y. Partnership Law § 72(2), which states:

> When all but one partner retire and assign (or the representative of a deceased partner assigns) their rights in partnership property to the remaining partner, who continues the business without liquidation of partnership affairs, either alone or with others, creditors of the dissolved partnership are also creditors of the person or partnership so continuing the business.

N.Y. Partnership Law § 72(2). The primary purpose of this section is to protect creditors when the remaining partner continues the dissolved partnership's business by making the remaining partner personally liable for the partnership's debts. *Kalichman v. Beverly Holding Co.*, 520 N.Y.S.2d 255, 258 (1987) (holding that remaining partner that carried on the partnership business after the dissolution of the partnership must personally "bear all of the losses"). Since Mr. Liddle continued the business of the Debtor after its dissolution, Mr. Liddle's alleged interest in the contingency fee cases (which are partnership assets) became subordinated to the interests of the Debtor's estate under N.Y. Partnership Law § 72(2).

The cases cited by Mr. Liddle that apply N.Y. Partnership Law § 73 are inapposite. In each of the cited cases, a partner departed a dissolved law firm partnership, and the court was asked to adjudicate the rights of such retiring partner to the firm's fees in the remaining contingency cases post-dissolution. The respective courts held that the fees from these cases

were indeed property of the dissolved partnerships and not the retiring partner, but under N.Y. Partnership Law § 73, "the dissolved firm is entitled only to the value of the case at the date of dissolution, with interest" and the retiring partner is entitled to the "amount attributable to the lawyer's efforts after dissolution." *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 298 (2d Cir. 2000) (*citing Kirsch v. Leventhal*, N.Y.S.2d 330, 332 (3d Dep't 1992)). Unlike the partners in the cited cases, however, who were all "retiring partners" under the Partnership Law, Mr. Liddle was the "remaining partner" of the Debtor who continued to operate the firm during the wind-up period, and as such effectively subordinated his rights to the contingency fees to the Debtor's estate under N.Y. Partnership Law § 72(2).

Accordingly, Liddle's attempt to now "cloud title" to the assets of the Debtor's estate and the Cash Collateral for his own pecuniary gain or benefit has not been made in good faith, is not based in applicable law and merely represents another destructive tactic in his arsenal which has already burdened the estate greatly in time and cost and should be rejected outright by this Court.

**The Trustee Has the Right to Determine for the Estate, the Validity of the Prepetition Liens and has Exercised Sound and Reasonable Business Judgment in Determining Same**

Liddle complains in his Objection that the Final Order forecloses the ability of parties in interest (namely Liddle himself) to challenge the nature, extent and validity of the Prepetition Liens, despite (a) the fact that the Liens have been previously acknowledged and validated in the prior Eighth and Ninth Interim Cash Collateral Stipulations and (b) all interested parties, including Liddle, have had more than sufficient time since the commencement of this Chapter 11 case to commence such challenge action. Other than Mr. Liddle having made vague and unsupported allegations, no challenge or action was ever undertaken.

And now the Trustee, in his capacity as authorized fiduciary of the Debtor's estate, has determined in his sound business judgment, that a final order, inter alia, validating the Prepetition

Liens is appropriate. The Trustee and his sophisticated professionals have done a thorough and complete review and analysis of the Prepetition Liens and underlying agreements and have concluded that no offsets, defenses or counterclaims exist on behalf of the Debtor's estate.

The Trustee has the power, subject to Court approval, to, inter alia, obtain the use of Cash Collateral and validate prepetition liens on behalf of the estate.

The Court, absent legitimate cause, can and should approve such arrangements if the Trustee believes they are in the best interests of the estate.

If the Court were to apply here the standards for approval of compromises under Bankruptcy Rule 9019, the Court could and should easily conclude that the compromises contained in the Final Order and negotiated between the Trustee and the Prepetition Lenders at arms' length, are fair and reasonable and fall well above the lowest range of reasonableness standard applied by this Court and the Second Circuit, respectively. *See., e.g., Protective Committee v. Anderson*, 390 U.S. 414 (1968), *reh'g denied*, 391 U.S. 909 (1968).

In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in *Anderson,* as developed and applied by the case law. Thus, courts assess a proposed settlement based upon a consideration of some or all of the following factors:

    (i)    the relative benefits to be received by creditors under the proposed settlement;

    (ii)    the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

    (iii)    the prospect of complex and protracted litigation if settlement is not approved;

    (iv)    the attendant expense, inconvenience and delay of litigation;

(v) the probable difficulties of collecting on any judgment that might be obtained;

(vi) the competency and experience of counsel who support the proposed settlement;

(vii) the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

(viii) the nature and breadth of any releases to be issued as a result of the proposed settlement; and

(ix) the paramount interest of the creditors and proper deference to their reasonable views.

See *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993); *In re Purified Down Products Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re International Distribution Centers, Inc.*, 103 B.R 420, 422 (S.D.N.Y. 1989); *In re Fugazy*, 150 B.R. 103,106 (Bankr. S.D.N.Y. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991); *In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 287* (Bankr. S.D.N.Y. 1990).

In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial, "mini-trial," or "a rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether against the background of those issues, the settlement is reasonable. *Newman v. Stein*, 464 F. 2d 689, 692 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972). *See also International Distribution*,103 B.R. at 423; *Drexel Burnham*, 134 B.R. at 496. In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See Anderson*, 390 U.S. at 444; *Purified Down Products*, 150 B.R. at 519, 524; *International Distribution Centers*, 103 B.R. at 423.

The settlement evaluation process is not designed to substitute the court's judgment for that of a trustee. *Carla Leather*, 44 B.R. at 465. While the Court is not expected to "rubber stamp" a proposed settlement, the Court should give considerable weight to the informed judgment of the Trustee that the compromise is fair and equitable, *See Anderson*, 390 U.S. at 444; *Ionosphere*, 156 B.R. at 426; *International Distribution Centers*, 103 B.R. at 423; *Drexel*, 134 B.R. at 496; *Carla Leather*, 44 B.R. at 472. As articulated by the District Court in *International Distribution Centers*, the Court should give weight to the support not only of the Trustee and his counsel, but of other counsel to a settlement in determining the wisdom of the compromise. *International Distribution Centers*, 103 B.R. at 423.

## CONCLUSION

The terms and provisions of the Final Order are fair, reasonable and in the best interests of the estate. The Objection has not been made in good faith and is replete with inaccuracies and erroneous conclusions of law. Accordingly, the Court should approve and enter the Final Order without further obstruction and interference by Mr. Liddle so the Trustee and its non-insider creditors can move forward with a plan and attempt to recover the maximum they can in light of the Debtor's vast mismanagement of the estate.

**WHEREFORE,** the Prepetition Lenders request that the Court (a) overrule the Objection in its entirety and (b) enter the Final Order and grant such other and further relief as is just, proper and equitable under the circumstances.

Dated: New York, New York
      September 19, 2020

Respectfully submitted,

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for Counsel Financial II,*
*LIG Capital LLC and*
*Counsel Financial Holdings LLC*
605 Third Avenue
New York, New York 10158
(212) 557-7200


By: */s/ Robert L. Rattet*
    Robert L. Rattet, Esq.
    Jonathan S. Pasternak, Esq.