Michael S. Weinstein
GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP
711 Third Avenue
New York, New York 10017
(212) 907-7300

*Counsel for Jonathan L. Flaxer, chapter 11 trustee for*
*Liddle & Robinson, L.L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| In re | Chapter 11 |
| LIDDLE & ROBINSON, L.L.P., | Case No. 19-12346 (SHL) |
| Debtor. | |

_____

## CHAPTER 11 TRUSTEE'S FIRST AMENDED PLAN OF LIQUIDATION FOR LIDDLE & ROBINSON, L.L.P.

Jonathan L. Flaxer, chapter 11 trustee for Liddle & Robinson, L.L.P., hereby proposes

this First Amended Chapter 11 Plan of Liquidation for Liddle & Robinson, L.L.P. pursuant to

section 1121(a) of the Bankruptcy Code.

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS ............................................................6

1.1.    Defined Terms. ....................................................................6

1.2.    Interpretation. ...................................................................16

1.3.    Rules of Construction. ...........................................................16

1.4.    Other Terms. ....................................................................16

ARTICLE II. PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE
CLAIMS AND PRIORITY TAX CLAIMS ........................................16

2.1.    Allowance and Treatment of Ordinary Administrative Claims. ......................16

2.2.    Allowance and Treatment of Administrative Claims of the Trustee and Professional
Persons. .......................................................................17

2.3.    Allowance and Treatment of Priority Tax Claims. ...............................17

ARTICLE III. CLASSIFICATION OF CLAIMS AND PARTNERSHIP INTERESTS ............17

3.1.    Classification of Allowed Claims and Partnership Interests. ........................17

3.2.    Classes. ........................................................................18

3.3.    Unimpaired Claims. ............................................................18

3.4.    Impaired Claims and Partnership Interests. .....................................18

3.5.    Impairment Controversies. ......................................................18

3.6.    Classification Controversies. ...................................................18

ARTICLE IV. PROVISIONS FOR TREATMENT OF THE  ALLOWED COUNSEL
FINANCIAL SECURED CLAIMS ........................................19

4.1.    Classification. ..................................................................19

4.2.    Treatment. ......................................................................19

ARTICLE V. PROVISIONS FOR TREATMENT OF PRIORITY CLAIMS ...........................20

5.1.    Classification. ..................................................................20

5.2.    Treatment. ......................................................................20

**TABLE OF CONTENTS**
**(continued)**

ARTICLE VI. PROVISIONS FOR TREATMENT OF GENERAL UNSECURED
    CLAIMS ......................................................................................................21

6.1.   Classification...............................................................................................21

6.2.   Treatment. ...................................................................................................21

ARTICLE VII. PROVISIONS FOR TREATMENT OF PARTNERSHIP INTERESTS ...........21

7.1.   Classification...............................................................................................21

7.2.   Treatment. ...................................................................................................22

ARTICLE VIII. PLAN ADMINISTRATOR ................................................................22

8.1.   Agreement to Be Bound; Term....................................................................22

8.2.   Powers. .......................................................................................................22

8.3.   Exculpation. ................................................................................................25

8.4.   Indemnification. ..........................................................................................26

8.5.   Insurance. ...................................................................................................26

8.6.   Bond. ..........................................................................................................27

8.7.   Compensation. ............................................................................................27

8.8.   Reimbursement of Other Plan Administrator Expenses. ................................27

8.9.   Professionals Retained by Plan Administrator. .............................................27

8.10.  No Requirement for Disbursement of Own Funds. ........................................29

8.11.  No Audit......................................................................................................29

8.12.  Appointment of Successor. ..........................................................................29

8.13.  Release and Discharge. ................................................................................29

8.14.  No Other Duties. ..........................................................................................30

8.15.  Reliance on Provisions.................................................................................30

ARTICLE IX. IMPLEMENTATION OF THE PLAN ....................................................30

9.1.   Effective Date. ............................................................................................30

3601532.5

**TABLE OF CONTENTS**
**(continued)**

9.2.     Vesting of Assets. ..................................................................................................30

9.3.     Continuation of Stay. ............................................................................................30

9.4.     Operation of Liquidating Debtor. .........................................................................30

9.5.     Company Action. ..................................................................................................31

9.6.     Dissolution of Liquidating Debtor. .......................................................................31

9.7.     Release and Discharge of Trustee. ........................................................................31

ARTICLE X. DISTRIBUTION AND RESERVES ...........................................................32

10.1.    Use of Opening Cash Balance for Initial Distribution of Assets and Creation of
         Reserves. ..............................................................................................................32

10.2.    Subsequent Distributions. ....................................................................................32

10.3.    Final Distribution. ................................................................................................33

10.4.    Effect of Reserves; Replenishment of Reserves. ..................................................34

10.5.    Procedures for Treating and Resolving Disputed Claims. .....................................34

10.6.    Additions to Post Confirmation Fund. ..................................................................34

10.7.    Distribution of Amounts Reserved for Disallowed Claims for Which a Reserve has Been
         Established. ..........................................................................................................34

10.8.    Bank Accounts. ....................................................................................................35

10.9.    Interest on Claims. ...............................................................................................35

10.10.   Delivery of Distributions. ....................................................................................35

10.11.   Undeliverable and Unclaimed Distributions..........................................................35

10.12.   Means of Cash Payment........................................................................................36

10.13.   Withholding and Reporting Requirements. ...........................................................36

10.14.   Setoffs. .................................................................................................................36

10.15.   Fractional Dollars.................................................................................................37

10.16.   Allocation of Plan Distributions Between Principal and Interest. ..........................37

**TABLE OF CONTENTS**
**(continued)**

ARTICLE XI. SUBSTANTIAL CONSUMMATION ............................................................37

11.1.   Substantial Consummation. ...................................................................38

ARTICLE XII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...........................38

12.1.   Assumption of Executory Contracts and Unexpired Leases..............................38

12.2.   Rejection Claims Bar Date.....................................................................38

ARTICLE XIII. CONDITIONS TO CONFIRMATION OF PLAN AND TO
          EFFECTIVE DATE ...................................................................38

13.1.   Conditions to Confirmation. ..................................................................38

13.2.   Conditions to Effective Date...................................................................38

13.3.   Waiver of Conditions. ...........................................................................39

13.4.   Failure to Satisfy Conditions. .................................................................39

ARTICLE XIV. MISCELLANEOUS ..............................................................................39

14.1.   Effect of Confirmation. .........................................................................39

14.2.   Time of the Essence. .............................................................................40

14.3.   Notices. ..............................................................................................40

14.4.   No Additional Notice. ...........................................................................41

14.5.   Headings; Entire Plan. ..........................................................................41

14.6.   Governing Law. ...................................................................................41

14.7.   Jury Trial. ...........................................................................................41

14.8.   Award of Attorneys' Fees and Expenses; Posting a Bond. ..............................42

14.9.   Non-Material Modifications. ..................................................................42

14.10.  Cram-Down........................................................................................42

14.11.  Controlling Documents.........................................................................42

14.12.  Quarterly Trustee Fees. .........................................................................42

14.13.  Injunction. ..........................................................................................43

iv

**TABLE OF CONTENTS**
**(continued)**

14.14.  Trustee Exculpation. ........................................................................................44

14.15.  Compromise and Settlement of Allowed Counsel Financial Claims. ..............................44

14.16.  Assignment of Partner Claims. ..........................................................................44

14.17.  Insurance Policy. ...........................................................................................45

14.18.  Releases. .....................................................................................................45

ARTICLE XV. RETENTION OF JURISDICTION ......................................................................45

15.1.   Court Exclusive Jurisdiction. ............................................................................45

ARTICLE XVI. RESERVATION OF RIGHTS ...........................................................................47

ARTICLE I.
DEFINED TERMS

1.1.    Defined Terms.  For the purpose of this Plan, each of the terms set forth in this

Article I shall have the meaning ascribed thereto below and such meaning shall be equally

applicable to the singular and plural forms of the terms defined.  All of the definitions and

provisions contained in this Article I are and shall be regarded as integral, substantive and

operative provisions of this Plan.  Terms used but not defined herein shall have the meaning

ascribed to such terms in Section 101 of the Bankruptcy Code.

"Adequate Protection Payment" means the amount of $1,226,610.94 paid on or

about October 2, 2020 on account of an asserted diminution of value claim pursuant to the Final

Order (1) Authorizing Use of Cash Collateral by the Trustee of Liddle & Robinson, L.L.P., (2)

Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final

Hearing [Dkt. No. 364].

"Administrative and Priority Claims Reserve" means the amount reserved from

time to time by the Plan Administrator in his sole discretion for the payment of Disputed

Administrative Claims, Disputed Priority Tax Claims.

"Administrative Claim" means any cost or expense of administration of the

Chapter 11 Case allowed under section 503(b) of the Bankruptcy Code, including the Trustee's

statutory commission, the fees and expenses of Professional Persons retained by the Trustee or

the Debtor, and compensation or reimbursement of expenses and any other fees or charges

assessed against the Debtor.

"Administrative Claims Bar Date" means (a) with respect to Ordinary

Administrative Claims incurred on or prior to June 30, 2020, November 11, 2020, which was the

last date for filing such Ordinary Administrative Claims in the Chapter 11 Case, or (b) with respect to (i) Ordinary Administrative Claims incurred after June 30, 2020, and (ii) Administrative Claims for the Trustee's commissions and the fees and expenses of Professional Persons, the date that is thirty (30) days after the Effective Date.

"Allowed" when used as an adjective preceding (a) the word "Claim," "Administrative Claim," "Priority Claim," "Priority Tax Claim," or "General Unsecured Claim" means any Claim against the Debtor (i) that is listed in the Debtor's Schedules of Assets and Liabilities, as may be amended from time to time, for which no proof of claim has been filed with the Court on or before the Bar Date, and is not designated as disputed, contingent or unliquidated, and as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by this Plan, (ii) in respect of which a proof of claim has been filed with the Court on or before the Bar Date (or in the case of an Administrative Claim, in respect of which a request for payment of such Administrative Claim or proof of claim has been filed with the Court on or before the Administrative Claims Bar Date) and as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by this Plan, or (iii) as to which an objection has been interposed and such Claim has been allowed in whole (or in part to the extent Allowed) by a Final Order of a court of competent jurisdiction.

"Allowed CFH Claim" shall mean the Allowed Claim of CFH in the amount of $2,157,154.

"Allowed CFH Deficiency Claim" shall mean a General Unsecured Claim in an amount equal to the Allowed CFH Claim less the Allowed CFH Secured Claim, which shall be calculated the time of any distribution by the Estate to General Unsecured Creditors pursuant to this Plan.

7

"<u>Allowed CFH Secured Claim</u>" shall mean the secured claim of CFH in the amount of the value of CFH's lien in the assets of the Debtor as of the Petition Date, including, without limitation, the Partner Claims.

"<u>Allowed CFII Claim</u>" shall mean the Allowed Claim of CFII in the amount of $6,541,925.

"<u>Allowed CFII Deficiency Claim</u>" shall mean a General Unsecured Claim in an amount equal to the Allowed CFII Claim less the Allowed CFII Secured Claim, which shall be calculated the time of any distribution by the Estate to General Unsecured Creditors pursuant to this Plan.

"<u>Allowed CFII Secured Claim</u>" shall mean the secured claim of CFII in the amount of the value of CFII's lien in the assets of the Debtor as of the Petition Date, including, without limitation, the Partner Claims.

"<u>Allowed CFII Secured Effective Date Claim</u>" shall have the meaning given to it in Section 4.2 hereof

"<u>Allowed Counsel Financial Claims</u>" shall mean, collectively (i) the Allowed CFH Claim, (ii) the Allowed CFII Claim, and (iii) the Allowed LIG Claim.

"<u>Allowed Counsel Financial Deficiency Claims</u>" shall mean, collectively (i) the Allowed CFH Deficiency Claim, (ii) the Allowed CFII Deficiency Claim, and (iii) the Allowed LIG Deficiency Claim.

"<u>Allowed Counsel Financial Secured Claims</u>" shall mean, collectively (i) the Allowed CFH Secured Claim, (ii) the Allowed CFII Secured Claim, and (iii) the Allowed LIG Secured Claim.

"<u>Allowed LIG Claim</u>" shall mean the Allowed Claim of LIG in the amount of $544,343.

8

"Allowed LIG Deficiency Claim" shall mean a General Unsecured Claim in an amount equal to the Allowed LIG Claim less the Allowed LIG Secured Claim, which shall be calculated the time of any distribution by the Estate to General Unsecured Creditors pursuant to this Plan.

"Allowed LIG Secured Claim" shall mean the secured claim of LIG in the amount of the value of LIG's lien in the assets of the Debtor as of the Petition Date, including, without limitation, the Partner Claims.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and as codified under title 11 of the United States Code, and in effect on the Petition Date.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure applicable to the Chapter 11 Case.

"Bar Date" means July 10, 2020, which was the last date for filing proofs of claim in the Chapter 11 Case.

"Business Day" means any day on which commercial banks are not required or authorized to close in the State of New York.

"Cash" means lawful currency of the United States of America (U.S. dollars), certified check, bank check, cashier's check or wire transfer from a domestic bank.

"Cash Collateral Order" means any order of the Court that authorizes or authorized the Debtor or the Trustee to use cash collateral pursuant to section 363(c)(2) of the Bankruptcy Code.

"Chapter 11 Case" means the Debtor's case under chapter 11 of the Bankruptcy Code, Case No. 19-12346 pending in the United States Bankruptcy Court for the Southern District of New York.

9

"CFH" means Counsel Financial Holdings LLC, a Delaware limited liability company.

"CFII" means Counsel Financial II LLC, a Delaware limited liability company.

"Claim" has the meaning given to such term in section 101(5) of the Bankruptcy Code.

"Claims Objection Date" shall mean the later of (i) the first Business Day that is more than six (6) months following the Effective Date or such later date as the Court may, with or without cause, approve, or (ii) the first Business Day that is more than three (3) months following a determination by the Plan Administrator, in its sole discretion, that funds will be available to make a distribution to holders of General Unsecured Claims.

"Confirmation Date" means the date upon which a Confirmation Order is entered by the Court.

"Confirmation Hearing" means the hearing to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

"Confirmation Order" means an order entered by the Court, pursuant to section 1129 of the Bankruptcy Code, in form and substance acceptable to the Trustee.

"Counsel Financial" means, collectively, (i) CFII, (ii) LIG, and (iii) CFH.

"Counsel Financial Released Parties" shall mean Counsel Financial and their respective officers, directors, employees, agents, servants, representatives, attorneys, consultants, heirs, executors, trustees, administrators, successors and assigns.

"Court" means the United States Bankruptcy Court for the Southern District of New York and any other court having competent jurisdiction over the Chapter 11 Case.

"Debtor" means Liddle & Robinson, L.L.P., a New York limited liability partnership and the debtor in the Chapter 11 Case.

3601532.5

"Disclosure Statement" means the disclosure statement for the Plan approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 (including all scheduled and exhibits thereto), as such disclosure statement may be amended or modified.

"Disputed" when used as an adjective proceeding the word "Claim," "Administrative Claim," "Priority Claim," "Priority Tax Claim," or "General Unsecured Claim," means any Claim (i) for which an objection to the allowance of such Claim, in whole or in part, has been or is filed prior to the date provided under this Plan for the filing of such an objection, and which objection has not been (a) withdrawn or settled, or (b) determined by a Final Order; or (ii) in the case of an Administrative Claim that may be Allowed only upon entry of a Final Order of the Court allowing the same, an Administrative Claim for which no such Final Order has been entered.

"Enjoined Claims" shall have the meaning given to it in Paragraph 14.13 hereof.

"Effective Date" means the first date on which all of the conditions contained in Paragraph 13.2 of this Plan have occurred or have been waived pursuant to Paragraph 13.3 hereof.

"Estate" means the chapter 11 estate of the Debtor created pursuant to section 541(a) of the Bankruptcy Code.

"Fee Amounts" means the legal fees owed to the Debtor that are collected after the Effective Date.

"Fee Share" means with respect to any Fee Amount for legal fees owed to the Debtor, an amount equal to the ratio (expressed as a percentage) that the amount of the legal fees incurred by the Debtor prior to the Petition Date with respect to such Fee Amount bears to the aggregate amount of the legal fees incurred by the Debtor, the Liquidating Debtor, and Estate, collectively, with respect to such Fee Amount.

"Final Distribution" means the last distribution to holders of Allowed Claims in accordance with the Plan by the Plan Administrator, which distribution will include all remaining assets in the Post Confirmation Fund.

"Final Order" means an order of the Court, or any other court of competent jurisdiction, that is no longer subject to the imposition of any stay pending appeal or any other stay, or subject to review, reversal, modification or amendment by appeal; provided, however, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule may be, but has not been filed shall not cause an order not to be a Final Order.

"General Unsecured Claim" means any general unsecured Claim arising prior to the Petition Date that is not the Allowed Counsel Financial Secured Claims, an Administrative Claim, a Priority Claim or a Priority Tax Claim, including, but not limited to, the Allowed Counsel Financial Deficiency Claims.

"General Unsecured Claims Reserve" means that amount, if any, reserved for the payment of the Disputed General Unsecured Claims.

"LIG" means LIG Capital LLC, a Delaware limited liability company.

"Liquidating Debtor" means the Debtor following the occurrence of the Effective Date of the Plan.

"Local Bankruptcy Rules" means the Local Rules of the United States Bankruptcy Court for the Southern District of New York applicable to the Chapter 11 Case.

"Opening Cash Balance" means all Cash of the Liquidating Debtor on the Effective Date.

"Ordinary Administrative Claim" means an Administrative Claim other than (x) the Trustee's statutory commission in accordance with the Bankruptcy Code or (y) the Administrative Claim of any Professional Persons retained by the Trustee or the Debtor.

"Partner Claims" means the amounts owed to the Debtor by former partners (except Jeffrey Lew Liddle), including, but not limited to, amounts owed for or on account of negative capital balances.

"Partnership Interest" means any general partners' ownership interest in the Debtor.

"Petition Date" means July 22, 2019.

"Plan" means this First Amended Chapter 11 Plan of Liquidation, together with any schedules or exhibits hereto, and any further amendments or modifications of the same, and any Plan Supplements.

"Plan Administrator" means Jonathan L. Flaxer.

"Plan Administrator Expense" means any reasonable expense of the Plan Administrator incurred in connection with his service as Plan Administrator.

"Plan Administrator Indemnified Parties" means the Plan Administrator and his employees, agents, representatives, consultants, attorneys and professionals.

"Plan Administrator Reserve" means that amount reserved for the payment of the fees and expenses of the Plan Administrator, including professional fees and fees permitted to be paid by the Plan Administrator, which shall initially be all amounts remaining in the Post Confirmation Fund after payments pursuant to Section 10.1(a) and (b) of this Plan.

"Plan Supplement" means a volume of exhibits to the Plan, if any, to be filed not later than fourteen (14) days prior to the Confirmation Hearing.

"Post Confirmation Fund" means all Cash constituting property of the Estate or the Liquidating Debtor, including the net proceeds of any causes of action brought on behalf of the Estate or the Liquidating Debtor.

"Priority Claim" means any Claim entitled to priority in accordance with section 507 of the Bankruptcy Code other than Administrative Claims and Priority Tax Claims.

"Priority Tax Claim" means any Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

"Pro Rata Share" means with respect to any distribution on account of any Allowed Claim or Partnership Interest, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim or Partnership Interest bears to the aggregate amount of all Allowed Claims or Partnership Interests in its Class.

"Professional Person" means an attorney, accountant, appraiser, auctioneer or other similar professional person engaged and/or retained in the Chapter 11 Case by the Debtor or the Trustee.

"Property of the Estate" means all that is included as Property of the Estate by section 541 of the Bankruptcy Code including cash, physical assets and causes of action.

"Quarterly Trustee Fees" means those fees payable on a quarterly basis to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

"Rejection Bar Date" shall have the meaning given to it in Paragraph 12.12 hereof.

"Reserve(s)" means one or more of the following: (a) the Administrative and Priority Claims Reserve, (b) the General Unsecured Claims Reserve, (c) the Plan Administrator Reserve, and (d) the Unclaimed Distribution Reserve.

3601532.5

"<u>Reviewed Professional</u>" shall mean any Professional Person retained by the Plan Administrator other than any expert or consultant retained in connection with any action, proceeding, claim, threatened claim or investigation, whether or not such expert or consultant is designated to testify or otherwise offer an expert opinion in connection with such matter.

"<u>Settlement</u>" shall have the meaning given to it in Paragraph 14.16 hereof.

"<u>Statutory Rate</u>" means the rate of interest specified in 28 U.S.C § 1961.

"<u>Stay Relief Assets</u>" means the "Assets" as defined in the Stay Relief Stipulation.

"<u>Stay Relief Stipulation</u>" means that certain Stipulation and Order entered by the Court on _____, *inter alia*, granting stay relief to Counsel Financial [Dkt. No. ____].

"<u>Termination Date</u>" shall mean the date of entry of an order approving a Final Distribution in the Chapter 11 Case and closing this Chapter 11 Case.

"<u>Trustee</u>" means Jonathan L. Flaxer solely in his capacity as chapter 11 trustee of the Debtor.

"<u>Trustee Professional Persons</u>" means, collectively, (i) Golenbock Eiseman Assor Bell & Peskoe LLP, (ii) CBIZ Accounting, Tax & Advisory of NY LLC and CBIZ Valuation Group, LLC, (iii) Richard Lynne, C.P.A., PLLC, and (iv) The Benefit Practice.

"<u>Trustee Released Parties</u>" shall mean the Trustee, the Estate, the Trustee Professional Persons, the respective officers, directors, employees, agents, servants, representatives, heirs, executors, trustees, or administrators of any Trustee Professional Person, and any of their successors and assigns.

"<u>Unclaimed Distribution Reserve</u>" means that amount reserved for unclaimed distributions in accordance with Paragraph 10.11 of this Plan.

"<u>United States Trustee</u>" means the Office of the United States Trustee for the Bankruptcy Court of the Southern District of New York.

3601532.5

"Voting Deadline" means the deadline fixed by the Bankruptcy Court in an order approving the Disclosure Statement for submitting ballots to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code.

1.2.    Interpretation.  Words denoting the singular shall include the plural and vice versa, as appropriate, and words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent that any term or provisions of the Plan is determined by the Court to be ambiguous.

1.3.    Rules of Construction.  The rules of construction set forth in section 102 of the Bankruptcy Code shall be applicable to all of the provisions of this Plan.  A term that is used in this Plan and not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, shall have the meaning set forth therein.  Any reference contained in this Plan to a particular exhibit, sub-paragraph, paragraph or article shall be deemed to be a reference to an exhibit, sub-paragraph, paragraph or article of this Plan.

1.4.    Other Terms.  The words "herein," "hereof," "hereto," "hereunder," and other terms of similar import refer to the Plan as a whole and not to any particular article, paragraph, sub-paragraph, or clause contained in the Plan.  The word "including" when used herein shall mean "including without limitation" in each instance.

ARTICLE II.
PROVISIONS FOR PAYMENT OF ALLOWED
ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

2.1.    Allowance and Treatment of Ordinary Administrative Claims.  If an application or request for payment of an Ordinary Administrative Claim has been filed on or prior to the Administrative Claims Bar Date, then such Ordinary Administrative Claim shall be an Allowed Ordinary Administrative Claim if (i) no objection to the allowance of such Ordinary Administrative Claim has been interposed as of the Claims Objection Date, and (ii) the approval of the Court is not required by this Plan, the Bankruptcy Code or other applicable law, rule or regulation in order for such Ordinary Administrative Claim to be Allowed.  Notwithstanding anything contained herein to the contrary, if an objection to the allowance of an Ordinary

3601532.5

Administrative Claim is interposed by the Claims Objection Date, then such Ordinary Administrative Claim shall be Allowed only upon entry of a Final Order of the Court allowing such Administrative Claim in whole or in part.  Except to the extent that the holder of an Allowed Ordinary Administrative Claim agrees to a different treatment or unless the Court orders otherwise, Allowed Ordinary Administrative Claims shall be paid in full in Cash on the Effective Date or as soon as practicable after such Claims become Allowed Ordinary Administrative Claims.  Nothing contained herein shall be construed as depriving the Trustee or the Plan Administrator of the capacity to pay amounts permitted to be paid by any Cash Collateral Order or other order entered in the case.

2.2.    <u>Allowance and Treatment of Administrative Claims of the Trustee and Professional Persons</u>.  Applications for payment of the Trustee's statutory commission in accordance with the Bankruptcy Code, and for the payment of fees and reimbursement of expenses of Professional Persons retained by the Debtor and/or the Trustee, shall be filed no later than thirty (30) days following the Effective Date.  Except to the extent that the Trustee or a Professional Person agrees otherwise, the Trustee's statutory commission and the fees and expenses of the Professional Person(s) shall be paid in accordance with, and as soon as practicable after entry of, an order(s) of the Court approving such commission, fees and expenses.

2.3.    <u>Allowance and Treatment of Priority Tax Claims</u>.  Except to the extent that the holder of an Allowed Priority Tax Claim agrees to a different treatment or unless the Court orders otherwise, Allowed Priority Tax Claims shall be paid in full in Cash on the Effective Date or as soon as practicable after such Claims become Allowed Priority Tax Claims.

ARTICLE III.
CLASSIFICATION OF CLAIMS AND PARTNERSHIP INTERESTS

3.1.    <u>Classification of Allowed Claims and Partnership Interests</u>.  Except as otherwise provided herein, for purposes of voting and all other confirmation matters, all Claims and Partnership Interests will be classified as set forth in this Article III.  A Claim is in a particular class only to the extent that the Claim falls within the description of that class and is in a different class to the extent that the remainder of the Claim falls within the description of such different

3601532.5

class.  In addition, a Claim or Partnership Interest is in a particular class only to the extent that the Claim or Partnership Interest is Allowed.

3.2.  <u>Classes</u>.  The Claims against and the Partnership Interests of the Debtor are classified under the Plan as follows:

| Class 1 | -- | Allowed Counsel Financial Secured Claims |
|---------|----|------------------------------------------|
| Class 2 | -- | Allowed Priority Claims |
| Class 3 | -- | Allowed General Unsecured Claims |
| Class 4 | -- | Partnership Interests |

3.3.  <u>Unimpaired Claims</u>.  By virtue of the treatment accorded the Claims placed class 2, such class is not impaired, and holders of Claims in Class 2 shall be conclusively deemed to have accepted this Plan pursuant to the mandatory acceptance provisions of section 1126(f) of the Bankruptcy Code.

3.4.  <u>Impaired Claims and Partnership Interests</u>.  Holders of Claims in Classes 1  and 3, and holders of Partnership Interests in Class 4 are impaired.

3.5.  <u>Impairment Controversies</u>.  If a controversy arises as to whether any Claim or Partnership Interest, or any class of Claims or Partnership Interests Securities, is impaired under the Plan, the Court shall, upon notice and motion, determine such controversy at or prior to the Confirmation Hearing.

3.6.  <u>Classification Controversies</u>.  If a controversy arises as to whether any Claim or Partnership Interest, or any class of Claims or Partnership Interests, is properly classified under the Plan, the Court shall, upon notice and motion, determine such controversy at the Confirmation Hearing.  If (i) the Court determines that the classification of a Claim or Partnership Interest, or any class of Claims or Partnership Interests, is improper, or (ii) the Trustee agrees to change a classification of a Claim or Partnership Interest, in whole or in part, after soliciting votes on the Plan, then the ballots previously cast by the holders of such Claim or Partnership Interest shall be counted in, and the Claim or Partnership Interest shall receive the treatment prescribed in, the class

18

in which the Court determines or the Trustee agrees, as applicable, that such Claim or Partnership Interest should be classified without the necessity of resoliciting votes on the Plan.

## ARTICLE IV.
## PROVISIONS FOR TREATMENT OF THE
## ALLOWED COUNSEL FINANCIAL SECURED CLAIMS

4.1.    <u>Classification</u>.  Class 1 consists of the Allowed Counsel Financial Secured Claims. Class 1 is impaired.

4.2.    <u>Treatment</u>.  With respect to the Allowed CFII Secured Claim, CFII shall receive (i) the amount of $1,226,610.94; provided, however, that the Adequate Protection Payment shall credited against this amount, plus (ii) the Fee Share attributable to any Fee Amounts paid to the Debtor or Liquidating Debtor, as applicable, less the reasonable fees and out-of-pocket expenses incurred by the Plan Administrator and any professional retained by the Plan Administrator in effecting the recovery and collection of any Fee Amount that resulted in a Fee Share, plus (iii) assignment of the Partner Claims, plus (iv) the Stay Relief Assets as set forth in Paragraph 5 of the Stay Relief Stipulation.

With respect to the Allowed LIG Secured Claim and Allowed CFH Secured Claim, upon the payment in full of the Allowed CFII Claim, the Fee Share attributable to any Fee Amounts paid to the Debtor or Liquidating Debtor, as applicable, less the reasonable fees and out-of-pocket expenses incurred by the Plan Administrator and any professional retained by the Plan Administrator in effecting the recovery and collection of any Fee Amount that resulted in a Fee Share, shall be paid to LIG until the Allowed LIG Claim is paid in full, then to CFH until the Allowed CFH Claim is paid in full.

If each of the Allowed CFII Claim, Allowed LIG Claim, and Allowed CFH Claim is paid in full, then the Fee Share attributable to any Fee Amounts paid to the Debtor or Liquidating Debtor, as applicable, subsequent to the Effective Date, less the reasonable fees and out-of-pocket expenses incurred by the Plan Administrator and any professional retained by the Plan Administrator in effecting the recovery and collection of any Fee Amount that resulted in a Fee Share, shall be paid to the Allowed Counsel Financial Secured Claims *pro rata* until each holder of an Allowed Counsel Financial Secured Claim receives all post-petition interest owed with respect such claims.

3601532.5

Notwithstanding the foregoing, all distributions to the holders of Class 1 Claims shall be subordinate to:

(1) any fees due to the Clerk of the Bankruptcy Court,

(2) any quarterly or other fees and interest payable to the U.S. Trustee pursuant to, *inter alia*, 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717, and

(3) the monthly fee payable to the Estate's information technology consultant in the amount of $2,000;

(4) any Allowed, but unpaid, Administrative Claims of the Trustee or the Trustee Professional Persons; and

(5) funding of the Plan Administrator Reserve to be in the amount of not less than $25,000, and thereafter, to the extent the Plan Administrator Reserve is less than $25,000, replenishment of the Plan Administrator Reserve to restore it to $25,000;

provided, however, that the subordination provided for in subsections (4) and (5) above shall not exceed $500,000 in the aggregate; and provided further that the subordination provided in subsection (4) above is only effective to the extent that the portion of any Fee Amount that is not a Fee Share is insufficient to fund or replenish the Plan Administrator Reserve as provided in subsection (4) above.

For the avoidance of doubt, the balance of the Allowed Counsel Financial Claims that has not been paid in accordance with this Section 4.2 shall be treated as Allowed Class 3 Claims (*i.e.*, the Allowed Counsel Financial Deficiency Claims).

## ARTICLE V.
## PROVISIONS FOR TREATMENT OF PRIORITY CLAIMS

5.1.    <u>Classification</u>.    Class 2 consists of all Priority Claims, if any.    Class 2 is not impaired.

**5.2.**    <u>Treatment</u>.    Allowed Priority Claims shall be paid in full in Cash on the Effective Date or as soon as practicable after such Claims become Allowed Priority Claims.

ARTICLE VI.
PROVISIONS FOR TREATMENT OF GENERAL UNSECURED CLAIMS

6.1.    Classification.  Class 3 consists of Allowed General Unsecured Claims.  Class 3 is impaired.

6.2.    Treatment.  Holders of Allowed General Unsecured Claims shall receive a Pro Rata Share of the Cash in the Post Confirmation Fund after payment in full of Allowed Administrative Claims (except to the extent that holders of such Claims agree to different treatment), Allowed Priority Claims, Allowed Priority Tax Claims, funding of Reserves, and payment of United States Trustee fees (including Quarterly Trustee Fees), and payments, if any, with respect to the Allowed Counsel Financial Secured Claims in accordance with Section 4.2 hereof; provided, however, for each distribution, when calculating the amount distributable on account of the Allowed Counsel Financial Deficiency Claims, if the total amount distributed with respect to any Allowed Counsel Financial Deficiency Claim would exceed the ratio (expressed as a percentage) to be received by other holders of Allowed General Unsecured Claims as a result of such distribution, then the Pro Rata Share allocable to the Allowed Counsel Financial Deficiency Claims shall be reduced such that each Allowed Counsel Financial Deficiency Claim calculated at the time of such distribution shall receive the same ratio (expressed as a percentage) of its claim as other holders of Allowed Claims in Class 3.  For example, if holders of General Unsecured Claims receive a ten (10%) percent distribution at a time when the Allowed CFII Deficiency Claim equals $100,000 (*i.e.*, $10,000 on account of a $100,000 claim), and a subsequent distribution shall be made such that all holders of Allowed General Unsecured Claims shall receive a fifteen (15%) percent distribution, in the aggregate, however the Allowed CFII Deficiency Claim at such time equals $66,666.67, then the Allowed CFII Deficiency Claim shall not receive a further distribution because the holder of such claim, in retrospect, has already effectively received a fifteen (15%) percent distribution ($10,000/$66,666.67 = 15%) as a result of the pay down of the Allowed CFII Secured Claim and the resulting decrease of the Allowed CFII Deficiency Claim.

ARTICLE VII.

PROVISIONS FOR TREATMENT OF PARTNERSHIP INTERESTS

7.1.    Classification.  Class 4 consists of all Partnership Interests of the Debtor.  Class 4 is impaired and deemed to reject the plan.

21

3601532.5

7.2.    <u>Treatment.</u>  Holders of Partnership Interests shall neither receive nor retain any property under the Plan.  Partnership Interests shall be cancelled effective upon entry of a Final Order closing the Chapter 11 Case.

ARTICLE VIII.
PLAN ADMINISTRATOR

8.1.    <u>Agreement to Be Bound; Term</u>.    The Plan Administrator shall execute an acknowledgement that he has read the terms of this Plan and agreement to be bound by such terms in the form annexed hereto as **Exhibit A.**    From and after the Effective Date, the Plan Administrator shall serve in accordance with the terms of this Plan until the earlier to occur of (x) the entry of an order discharging the Plan Administrator, or (y) the appointment of a successor Plan Administrator in accordance herewith.

8.2.    <u>Powers</u>.    The rights and powers of the Plan Administrator shall include the following:

(a)    investing the Cash of the Liquidating Debtor in any money market vehicles which are rated no less than "A" or "A1/P1" by Moody's Investors Service and Standard & Poor's and have a maturity of no more than one (1) year or such other investment in accordance with section 345 of the Bankruptcy Code; it being understood that the Plan Administrator shall have no duty or obligation to invest Cash of the Liquidating Debtor at interest;

(b)    prosecuting, litigating, settling or otherwise disposing of all Claims of any type or nature asserted against the Estate or the Liquidating Debtor, including all objections to Claims asserted by the Trustee prior to the Effective Date or objecting to any Claim that is not the subject of an objection prior to the Claims Objection Date;

(c)    prosecuting, litigating, settling or otherwise disposing of any claim or cause of action that has been or could be filed or asserted by the Trustee, the Debtor and/or the Liquidating Debtor, including, without limitation actions under chapter 5 of the Bankruptcy Code;

22

(d)      conducting examinations in accordance with Bankruptcy Rule 2004, including, without limitation, seeking relief compelling the attendance of any person or entity to be examined and the production of documents in accordance therewith;

(e)      complying with all orders and directives of the Court;

(f)      reviewing, objecting, settling, and taking any and all other actions that may be necessary with respect to Administrative Claims;

(g)      calculating and overseeing the payment of all distributions to be made under the Plan and other orders of the Court to holders of Allowed Claims;

(h)      entering into joint defense, joint prosecution and other similar agreements, including agreements that permit the Plan Administrator to share the costs and proceeds of litigation with persons or entities that are not parties in interest in the Chapter 11 Case;

(i)      establishing the Reserves, maintaining and distributing the proceeds of any litigation or other property, in accordance with the terms of this Plan;

(j)      replenishing and/or augmenting the Reserves with additional Cash as and when needed, in the sole discretion of the Plan Administrator;

(k)      without further order of the Court, retaining or employing professionals to assist the Plan Administrator in carrying out any of his duties and obligations under the Plan on such terms and for such matters as the Plan Administrator may, in his sole discretion, deem reasonable and appropriate and compensating such professionals on such terms as the Plan Administrator may deem reasonable and appropriate; it being expressly understood that such professionals and the terms of their retention or employment may include (y) Golenbock Eiseman Assor Bell & Peskoe LLP as counsel, and (z) CBIZ Accounting, Tax & Advisory of NY LLC and CBIZ Valuation Group, LLC as consultants, each retained and paid at their ordinary and customary hourly rates, as the same may be adjusted from time

23

to time, or such lower hourly rates agreed to by the Plan Administrator and such professional;

(l)    paying from the Post Confirmation Fund any Plan Administrator Expense as and when such expense is incurred, and being reimbursed for such expense as set forth in Paragraph 10.8 hereof;

(m)    seeking determination of any tax liability of the Debtor or Liquidating Debtor under section 505 of the Bankruptcy Code;

(n)    preparing and filing tax and informational returns, if any, for the Debtor and Liquidating Debtor;

(o)    setting off amounts owed to the Debtor or Liquidating Debtor against any and all amounts due to be distributed to the holder of an Allowed Claim to the extent permitted by applicable law;

(p)    asserting or waiving, in its sole discretion, any privilege belonging to the Debtor, the Liquidating Debtor and/or the Trustee;

(q)    furnishing such information and filing such reports concerning the Estate's administration as may be required by the Plan, the Court, or the United States Trustee;

(r)    on the Effective Date, paying all Quarterly Trustee Fees due and owing on such date, and thereafter, paying all such fees plus interest, if any, on a quarterly basis;

(s)    compensating himself and his retained professionals in accordance with the terms of this Plan;

(t)    paying the legal fees and costs of indemnifying the Plan Administrator Indemnified Parties in accordance with the terms of this Plan;

(u)    obtaining insurance for himself in accordance with the terms of this Plan;

24

(v)     seeking an order and final decree closing the Chapter 11 Case, including, but not limited to, filing a final accounting with the Court on or prior to the Final Distribution which sets forth the amount collected and disbursed and the fees and expenses incurred in administering the Liquidating Debtor, and seeking any orders necessary to approve such accounting;

(w)     requesting the appointment of a successor designated by the Plan Administrator upon notice to those parties identified in Paragraph 10.12 hereof and entry of an order of the Court approving such appointment in accordance with the terms of this Plan;

(x)     seeking any orders necessary to terminate the duties of the Plan Administrator under the Plan, and discharge the Plan Administrator from any liability under the Plan;

(y)     interpreting any provisions of this Plan, and/or the Confirmation Order in his sole discretion, unless such interpretation is clearly erroneous;

(z)     executing, delivering, filing, or recording such contracts, instruments, releases, and other agreements or documents, and taking such actions as may be necessary or appropriate to effectuate the duties and responsibilities of the Plan Administrator under this Plan;

(aa)    having the authority to comply with all applicable laws; and

(bb)    taking all other actions, if any, which the Plan Administrator may deem necessary or appropriate, in his sole discretion, to comply with the provisions of this Plan and/or the Confirmation Order, to sell, liquidate, distribute or otherwise fully administer any Property of the Estate, the Debtor and/or the Liquidating Debtor and to wind down and dissolve the Liquidating Debtor.

8.3.    Exculpation.  The Plan Administrator shall have no liability whatsoever to any holder of a Claim or Partnership Interest or any party in interest in the Chapter 11 Case or any party who could have filed a Claim in the Chapter 11 Case arising out of or in any way related to

25

the performance (or lack thereof) of his duties under this Plan, other than for his willful misconduct, gross negligence, ultra vires acts, or breaches of fiduciary duty, except that in any case, the Plan Administrator shall have no liability for any act taken or omission made in good faith reliance upon the advice of counsel or other professionals. No implied covenants or obligations shall be read into the Plan or herein against the Plan Administrator. No claim may be filed or prosecuted against the Plan Administrator except upon application first being filed in the Court for authority to bring such claim for good cause shown, and entry of an order of the Court authorizing the filing of such claim. The Court reserves exclusive jurisdiction over the Plan Administrator and enjoins the filing of any such claim absent compliance by the proposed plaintiff with the provisions hereof.

8.4.    <u>Indemnification</u>.    The Liquidating Debtor shall, to fullest extent permitted by applicable law, indemnify and hold harmless each of the Plan Administrator Indemnified Parties from and against any and all liabilities, losses, damages, claims, costs and expenses including but not limited to reasonable attorneys' and other professional fees arising out of or due to their actions or omissions with respect to the performance of their respective duties under this Plan provided that such Plan Administrator Indemnified Party acted in good faith. To the extent that the Liquidating Debtor indemnifies and holds harmless a Plan Administrator Indemnified Party as provided above, the legal fees and related costs incurred by counsel to or other professionals for such Plan Administrator Indemnified Party shall be paid by the Plan Administrator from the Post Confirmation Fund as and when incurred. Prior to obtaining an order closing the Chapter 11 Case and until such time as the Plan Administrator obtains the release and discharge provided in Paragraph 8.13 of this Plan, the Plan Administrator shall be entitled to retain sufficient Cash, in his sole discretion, to pay in full the estimated legal fees and related costs which may be incurred by counsel to or other professionals for any Plan Administrator Indemnified Party. The provisions of this Paragraph 8.4 shall be available to any successor Plan Administrator or the estate of any decedent of any of the Plan Administrator Indemnified Parties, and shall survive the termination of the duties of the Plan Administrator as provided herein.

8.5.    <u>Insurance</u>.    The Plan Administrator shall be authorized to obtain, using Cash from the Post Confirmation Fund, such insurance as he may, in his sole discretion, reasonably desire for himself and the Plan Administrator Indemnified Parties with respect to the liabilities, duties and obligations of the Plan Administrator Indemnified Parties which insurance coverage may remain

26

in effect for a reasonable period after the termination of the duties of the Plan Administrator as provided for herein.

8.6.    <u>Bond</u>.  The Plan Administrator shall obtain a bond or surety in such amount as may be required by the United States Trustee or applicable law, unless such requirement is waived by the Court.

8.7.    <u>Compensation</u>.  The Plan Administrator shall be entitled to be paid for his services at the rate of $750 per hour.  Such compensation shall be paid to the Plan Administrator on ten (10) days' written notice to the holder of the Allowed CFII Secured Claim and the Office of the United States Trustee who shall have the right to object in writing within such ten (10) day period by specifying the reason for such objection, and the amount of any objectionable compensation. In the absence of any written objection within such ten (10) day period, such compensation shall thereafter be paid to the Plan Administrator in the ordinary course of business.  In the event of an objection in writing to such compensation on or prior to the expiration of the ten (10) day period, then in such event (x) the balance of compensation to which no written objection has been raised may be paid in the ordinary course of business as set forth herein, and (y) the objectionable portion of such compensation may be paid upon entry of an order of the Court authorizing the payment of such compensation or upon the consent of the objecting party.  The Plan Administrator may be paid the compensation set forth in this Paragraph 8.7 from Cash or any asset of the Estate, the Debtor or the Liquidating Debtor, from the Plan Administrator Reserve, from the Post Confirmation Fund, or in the manner that the Plan Administrator, in his sole discretion, deems reasonably appropriate.  Other than as expressly provided in this Paragraph 8.7, such compensation shall not be subject to approval by the Court.

8.8.    <u>Reimbursement of Other Plan Administrator Expenses</u>.  The Plan Administrator shall be reimbursed for Plan Administrator Expenses in the ordinary course of business. Reimbursement of Plan Administrator Expenses shall not be subject to approval of the Court.

8.9.    <u>Professionals          Retained          by          Plan          Administrator</u>.

(a)    Compensation *in General*.  Subject to the provisions of this Paragraph 8.9, any professionals retained or employed by the Plan Administrator shall be

entitled to reasonable compensation for services rendered and reimbursement of reasonable expenses incurred.

(b)     Compensation *of Professionals Other Than Reviewed Professionals*. The fees and reasonable expenses of professionals retained by the Plan Administrator other than the Reviewed Professionals shall be paid in the ordinary course of business and shall not be subject to the approval of the Court.

(c)     *Compensation of Reviewed Professionals*. The Plan Administrator shall provide the holder of the Allowed CFII Secured Claim and the United States Trustee with ten (10) days' written notice of any proposed payment to any Reviewed Professional. Within such ten (10) day period, the United States Trustee, the holder of the Allowed CFII Secured Claim, and the Plan Administrator shall have the right to object in writing to any such proposed payment(s) to Reviewed Professionals as unreasonable under the facts and circumstances. Such written objection shall state the reason therefor and the amount of the proposed payment which is objectionable. In the absence of a written objection interposed on or prior to the expiration of such ten (10) day period, such payment(s) to such Reviewed Professional(s) shall be made by the Plan Administrator in the ordinary course of business. If a written objection to such payment is interposed on or prior to the expiration of the ten (10) day period, then in such event (x) the balance to which no objection has been raised may be paid in the ordinary course of business by the Plan Administrator as set forth herein, and (y) the objectionable portion of such payment may be paid upon entry of an order of the Court authorizing same or as consented to by such objecting party. In no event shall the Plan Administrator be liable for all or any portion of the fees or expenses of Reviewed Professionals which the Court fails to authorize after a timely written objection is raised.

3601532.5

(d)     *Fee* Disputes.  Any disputes related to any fees or expenses of any person or entity retained by the Plan Administrator shall be brought before the Court.

8.10.    <u>No Requirement for Disbursement of Own Funds</u>.  No provision of the Plan shall require the Plan Administrator to spend his own funds or otherwise incur any financial liability in the performance of his duties hereunder, or in the exercise of any of his rights and powers.

8.11.    <u>No Audit</u>.  The Plan Administrator shall have no obligation to provide audited financial statements with respect to any reports required by this Plan, the Bankruptcy Rules, Local Bankruptcy Rules, or the United States Trustee.

8.12.    <u>Appointment of Successor</u>.  Upon notice to the holder of the Allowed CFII Secured Claim and the United States Trustee, and entry of an order of the Court, the Plan Administrator may appoint a successor, it being understood that there shall exist no period of time in which no person or entity has assumed the rights, and is responsible for performing the duties and obligations, of the Plan Administrator hereunder.  The Plan Administrator shall have the right to petition the Court to appoint a successor Plan Administrator.  Any such successor shall have and shall assume all of the rights, duties and obligations of the Plan Administrator as set forth in this Plan, and shall serve in accordance with the terms of this Plan until the earlier to occur of (x) the entry of an order closing the Chapter 11 Case, or (y) the subsequent appointment of a successor who assumes all of the rights, obligations and duties of the Plan Administrator in accordance herewith.

8.13.    <u>Release and Discharge</u>.  Upon the Termination Date, the duties of the Plan Administrator shall be terminated without further action, and the Plan Administrator shall, to the fullest extent permissible under applicable law, be deemed forever released and discharged from all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, then existing or thereafter arising in law or in equity, that are based in whole or in part on any act or omission transaction, event or other occurrence in any way relating to the Debtor, the Chapter 11 Case or the Plan, including the duties and obligations of the Plan Administrator hereunder.  Notwithstanding the foregoing, nothing contained herein is intended to relieve the Plan Administrator from liability for willful misconduct, gross negligence, ultra vires acts, or breaches of fiduciary duty, if any, except

29

that Plan Administrator shall not have any liability for any act taken or omission made in good faith reliance upon the advice of counsel or other professionals.

8.14.    <u>No Other Duties</u>.  The Plan Administrator shall have no duties or obligations of any kind or nature, including any obligation to commence or prosecute any claim or cause of action, other than those expressly set forth in this Plan and the Confirmation Order.

8.15.    <u>Reliance on Provisions</u>    The Plan Administrator has accepted the duties and responsibilities contained in this Plan in specific reliance upon, among other provisions, Paragraphs 8.3, 8.4, 8.5, 8.10, 8.11, 8.13 and 8.14 hereof; in the absence of any one of the provisions and protections set forth in this Plan, Jonathan L. Flaxer would not otherwise have agreed to accept the duties and responsibilities of Plan Administrator contained in this Plan.

ARTICLE IX.

<u>IMPLEMENTATION OF THE PLAN</u>

9.1.    <u>Effective Date</u>.  The "Effective Date" shall occur on the first Business Day following the occurrence, or waiver, of all conditions precedent to the Effective Date set forth in Paragraph 13.2 hereof.

9.2.    <u>Vesting of Assets</u>.  On the Effective Date, all Property of the Estate, including Claims and causes of action, whether or not an action or proceeding has been commenced with respect thereto, that have not been assigned to Counsel Financial pursuant to this Plan shall vest in the Liquidating Debtor in accordance with section 1141 of the Bankruptcy Code, subject to the Allowed Counsel Financial Secured Claims as set forth herein.

9.3.    <u>Continuation of Stay</u>.  Pursuant to section 362© of the Bankruptcy Code, the automatic stay of section 362(a) of the Bankruptcy Code shall continue in full force and effect with respect to the Liquidating Debtor, the Trustee, and/or the Plan Administrator following the Effective Date of the Plan until the Termination Date.

9.4.    <u>Operation of Liquidating Debtor</u>.  The Liquidating Debtor shall be authorized to engage in any lawful activity for which limited liability partnerships may be organized under the

3601532.5

law of the State of New York to the extent and only to the extent that such activities are necessary to wind down and liquidate its assets and liabilities in accordance with the Plan.

9.5.    <u>Company Action</u>.    The entry of the Confirmation Order shall constitute authorization for the Debtor, the Liquidating Debtor, the Trustee or the Plan Administrator (as the case may be) to take or cause to be taken all limited liability partnership actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court without further approval, act or action under any applicable law, order, rule or regulation, including without limitation, any action required by the holders of Partnership Interests, including, among other things: (i) the implementation of all settlements and compromises as set forth in or contemplated by the Plan; and (ii) executing and/or entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

9.6.    <u>Dissolution of Liquidating Debtor</u>.    Upon the distribution of all assets pursuant to this Plan and the filing by the Plan Administrator of a certification to that effect with the Court (which may be included in the application for the entry of the final decree), the Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtor or payments to be made in connection therewith; <u>provided</u>, <u>however</u>, that the Plan Administrator or the Liquidating Debtor by the Plan Administrator may take appropriate action to dissolve under applicable non-bankruptcy law.  From and after the Effective Date, the Liquidating Debtor shall not be required to file any document, or take any action, to withdraw their business operations from any states where the Debtor previously conducted business.

9.7.    <u>Release and Discharge of Trustee</u>.    From and after the Effective Date, the Trustee shall be discharged from his duties and obligations as chapter 11 trustee for the Debtor and released and discharged from any liability with respect thereto.  Notwithstanding the foregoing, and notwithstanding the Effective Date of the Plan, the Trustee shall not be discharged from his duty to timely file a Final Report and Account as required by sections 704(a)(9) and 1106(a)(1) of the Bankruptcy Code, which report shall account for the period from the Trustee's appointment through the Effective Date and shall be filed within a reasonable period after the Effective Date.

Additionally, notwithstanding the foregoing, nothing herein shall relieve the Trustee from liability for willful misconduct, gross negligence, ultra vires acts, or breaches of fiduciary duty.

ARTICLE X.
DISTRIBUTION AND RESERVES

10.1.    <u>Use of Opening Cash Balance for Initial Distribution of Assets and Creation of Reserves</u>  On the Effective Date, unless the Court orders otherwise, the Plan Administrator shall use the Opening Cash Balance to:

(a)    pay in Cash in full all (i) Quarterly Trustee Fees, (ii) Allowed (and unpaid) Administrative Claims, (iii) Allowed (and unpaid) Priority Claims, and (iv) Allowed (and unpaid) Priority Tax Claims;

(b)    establish the Administrative and Priority Claims Reserve with sufficient funds to pay in full all Quarterly Trustee Fees, Administrative Claims, and Priority Claims that are not paid on the Effective Date, including (i) the Trustee's statutory commission, (ii) estimated fees and expenses of Professional Persons retained by the Trustee and/or the Debtor, (iii) Disputed Ordinary Administrative Claims, (iv) Disputed Priority Tax Claims, and (v) Disputed Priority Claims; and

(c)    establish the Plan Administrator Reserve;

(d)    distribute a Pro Rata Share of Cash from the Post Confirmation  Fund, if any, to holders of Allowed General Unsecured Claims; and

(e)    retain a Pro Rata Share of Cash from the Post Confirmation Fund, if any, required to fund the General Unsecured Claims Reserve for each holder of a Disputed General Unsecured Claim.

10.2.    <u>Subsequent Distributions</u>.  After the Effective Date, the Plan Administrator shall pay in Cash in full the following Claims upon entry of a Final Order allowing such Claims or as the same becomes due in the ordinary course of business: (a) the Allowed (and unpaid) Administrative Claims, (b) Allowed (and unpaid) Priority Tax Claims, and (c) Allowed (and unpaid) Priority Claims.  The Plan Administrator shall make subsequent distributions to the

32

holders of all other Allowed (and unpaid) Claims in accordance with the terms of this Plan in its sole discretion.

10.3.    <u>Final Distribution</u>.

(a)    The Plan Administrator shall make the Final Distribution when, in the reasonable judgment of the Plan Administrator, (i) all Property of the Estate has been liquidated and there are no potential sources of additional Cash for distribution, (ii) all Quarterly Trustee Fees, Administrative Claims, Priority Claims, and Priority Tax Claims have been Allowed and paid in full, disallowed or withdrawn, (iii) there remain no Disputed Claims entitled to receive a distribution pursuant to this Plan, and (iv) the Plan Administrator is in a position to make the Final Distribution in accordance with applicable law.

(b)    Prior to the Final Distribution, the Plan Administrator may seek an order approving the termination and discharge of the Plan Administrator.

(c)    On the Termination Date, the Plan Administrator shall:

(i)    from the Plan Administrator Reserve, establish a wind-up reserve which shall include, without limitation, Cash sufficient, in the sole discretion of the Plan Administrator, to pay in full all accrued and unpaid fees and expenses of the Plan Administrator and Reviewed Professionals, and to pay the estimated legal fees and related costs which may be incurred by counsel to or other professionals for any Plan Administrator Indemnified Party in accordance with <u>Paragraph 8.4</u> of this Plan, respectively, until such time as the Plan Administrator obtains the release and discharge provided in <u>Paragraph 8.13</u> of this Plan;

(ii)    transfer any remaining cash in the Reserves to the Post Confirmation Fund; and

(iii)    distribute any Cash in the Post Confirmation Fund as specified in the Plan to holders of Allowed Claims in accordance with the Plan.

3601532.5

10.4.    <u>Effect of Reserves; Replenishment of Reserves</u>.  Nothing contained herein shall be construed as prohibiting, limiting or restricting in any way the Plan Administrator from expending any amount in excess of the amount held in any of the Reserves to the extent such expenditure is otherwise authorized by this Plan.  From and after the Effective Date, the Plan Administrator shall be authorized to withhold such additional amounts from the Post Confirmation Fund which it may reasonably require to augment and/or replenish any of the Reserves.

10.5.    <u>Procedures for Treating and Resolving Disputed Claims</u>.

(a)    *Deadline for Objecting to Claims*.  Objections to Claims may be filed by the Plan Administrator prior to the Claims Objection Date.

(b)    *No Distributions Pending Allowance*.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

(c)    *Estimate of Contingent and Unliquidated Claims*.  The Plan Administrator will retain distributions with respect to all Disputed Claims in the applicable Reserve.  The Plan Administrator may request estimation pursuant to section 502© of the Bankruptcy Code for any Disputed Claim that is contingent or unliquidated and the fixing or liquidation of which, as the case may be, would unduly delay the Final Distribution.

10.6.    <u>Additions to Post Confirmation Fund</u>.  The Plan Administrator will add to the Post Confirmation Fund (a) any dividends, payments or other distributions made on account of, as well as any obligations arising from, the property held in the Post Confirmation Fund, to the extent that such property continues to be held in the Post Confirmation Fund at the time such distributions are made or such obligations arise, and (b) any net realized cash proceeds received by the Plan Administrator after the Effective Date from among other things, the liquidation of non-cash assets , if any, and the prosecution of any causes of action.

10.7.    <u>Distribution of Amounts Reserved for Disallowed Claims for Which a Reserve has Been Established</u>.  To the extent a Disputed Claim is disallowed, in whole or in part, the amount

34

reserved for that Disputed Claim or the Disputed portion of the Claim, as the case may be, increased by the share of any earnings attributable to the investment of such Cash during the time the Disputed Claim was held in a Reserve and decreased by any taxes paid or payable on such portion of the applicable Reserve, will be reallocated to the Post Confirmation Fund and distributed in accordance with the Plan.Bank Accounts. The funds held in the Post Confirmation Fund, and the Reserves may be held in one account, provided that separate book entries are maintained for each one of the foregoing.

10.9.   Interest on Claims. Interest shall not accrue or be paid on any Class 2 or 3 Claims, and no holder of a Class 2 or 3 Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim. Class 1 Claims shall not be entitled to post-petition interest unless all Class 1 Claims are paid in full.

10.10.   Delivery of Distributions. Distributions to holders of Allowed Claims shall be made at the holder's addresses set forth in the Debtor's Schedules of Assets and Liabilities filed with the Court, proofs of claim, or transfers of claim filed pursuant to Bankruptcy Rule 3001 (or at the last known addresses of such holders if the Plan Administrator has been notified in writing of a change of address).

10.11.   Undeliverable and Unclaimed Distributions.

(a)    *Holding and Investment of Undeliverable and Unclaimed Distributions*. If the distribution to any holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed for ninety (90) days, no further distributions shall be made to such holder unless and until the Plan Administrator is notified in writing of such holder's then-current address. Undeliverable and unclaimed distributions shall be held in the Unclaimed Distribution Reserve for the benefit of all such similarly situated persons until the earlier to occur of (x) such time as the distribution becomes deliverable or is claimed, or (y) the Termination Date.

(b)    *Failure to Claim Undeliverable Distributions*. Distribution checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the issuance thereof. After such date, the holder of such

claim shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim or any interest earned thereon, for an undeliverable or unclaimed distribution against the Liquidating Debtor, the Estate, the Plan Administrator or their property.  In such case, any Cash or other property held in an Unclaimed Distribution Reserve for distribution on account of such Claim for undeliverable or unclaimed distributions shall become the property of the Liquidating Debtor, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of the Plan. Nothing contained in the Plan shall require the Plan Administrator to locate any holder of an Allowed Claim whose address has changed as it is the sole responsibility of any holder of a Claim whose address changes to notify the Plan Administrator of such change.   Any unclaimed or undeliverable distributions returned after the Final Distribution or checks that are not cashed within nine (90) days of the Final Distribution shall be paid or delivered as the Plan Administrator shall instruct or shall be deposited with the Court.  The Plan Administrator may petition the Court to alter the procedures contained in this Sub-Paragraph 10.11(b).

10.12.  <u>Means of Cash Payment</u>.   Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.<u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all distributions thereunder, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

10.14.  <u>Setoffs</u>.

3601532.5

(a)     *By Debtor*.   The Plan Administrator, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy laws, shall be allowed, but not be required, to set off against any claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or Liquidating Debtor may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Administrator, as the case may be, of any such claim that the Debtor or Liquidating Debtor may have against such holder.

(b)     *By Third Parties*.   Any holder of a Claim must assert any setoff rights against a claim by the Estate against the holder of such Claim by filing an appropriate motion seeking authority to setoff prior to the entry of an order of the Court closing the Chapter 11 Case or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by the Debtor or the Estate, notwithstanding any statement to the contrary in a proof of claim or any other pleading or document filed with the Court or delivered to the Trustee.

10.15.  <u>Fractional Dollars</u>.   Notwithstanding any other provision of the Plan, the Plan Administrator shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar.

10.16.  <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, for income tax purposes, such distribution shall be allocated (to the extent permitted) *first*, to the principal amount of the Claim and *second*, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

ARTICLE XI.
SUBSTANTIAL CONSUMMATION

37

3601532.5

11.1.    Substantial Consummation.  The Plan shall be "substantially consummated" within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code on the Effective Date of this Plan.

## ARTICLE XII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

12.1.    Assumption of Executory Contracts and Unexpired Leases.  Except as may be ordered by the Court prior to the Effective Date pursuant to sections 1123(b)(2) and 365 of the Bankruptcy Code and any applicable Bankruptcy Rule(s), all executory contracts and unexpired leases of the Debtor shall be deemed rejected as of the Effective Date.

12.2.    Rejection Claims Bar Date  Holders of Claims arising from the rejection of any executory contract or unexpired lease shall file a proof of claim on or prior to thirty (30) days after the Effective Date.  Any such Claim filed thereafter shall be deemed disallowed in its entirety without the need of further order of the Court.

## ARTICLE XIII.
## CONDITIONS TO CONFIRMATION OF PLAN AND TO EFFECTIVE DATE

13.1.    Conditions to Confirmation.  Confirmation of this Plan shall not occur unless each and every one of the conditions set forth in this Paragraph 13.1 has been either satisfied or waived in writing by the Trustee in his sole and absolute discretion in accordance with Paragraph 13.3 hereof:

(a)    the Confirmation Order shall be in form and substance reasonably acceptable to the Trustee;

(b)    the Confirmation Order shall provide, among other things, that no claim may be filed or prosecuted against the Plan Administrator except upon application first being filed in the Court for authority to bring such claim for good cause shown, and entry of a Final Order of the Court authorizing the filing of such claim.

13.2.    Conditions to Effective Date.  Notwithstanding any other provision of this Plan or the Confirmation Order, the Effective Date shall not occur unless each and every one of the

3601532.5

conditions set forth in this Paragraph 13.2 has been either satisfied or waived in writing by the Trustee in his sole and absolute discretion in accordance with Paragraph 13.3:

    (a)    at least fifteen (15) days shall have elapsed since the entry of the Confirmation Order, with the last day of such calculation being a Business Day, and the Confirmation Order shall not be the subject of a stay by a court of competent jurisdiction on such date.

13.3.  <u>Waiver of Conditions</u>.  If any of the conditions to confirmation of this Plan or if any of the conditions to the occurrence of the Effective Date set forth in Paragraph 13.1 and Paragraph 13.2, respectively, have not been or cannot be satisfied within the time established under this Plan for the satisfaction of such condition, then the Trustee may, but shall have no obligation to, in the exercise of his sole and absolute discretion, waive any such condition or extend the deadline for the satisfaction of such condition upon the filing with the Court of a written notice of such waiver or extension.

13.4.  <u>Failure to Satisfy Conditions</u>.  If any condition set forth in Paragraph 13.1 and Paragraph 13.2 has not been satisfied within the deadline established pursuant to Paragraph 13.1 and Paragraph 13.2, or any date to which such deadline may be extended pursuant to Paragraph 13.3, or has not been waived in accordance with Paragraph 13.3, then this Plan and the Confirmation Order shall automatically be without further force or effect, and the Trustee shall have no further obligations under this Plan or the Confirmation Order.

ARTICLE XIV.<br>MISCELLANEOUS

14.1.  <u>Effect of Confirmation</u>.  The distributions and other treatment afforded all holders of Claims and Partnership Interests hereunder shall be in full and complete satisfaction of all Claims against, and Partnership Interests in, the Debtor.  From and after the Effective Date, holders of Claims against and Partnership Interests in the Debtor, the Liquidating Debtor and the Estate shall be treated in accordance with the terms of this Plan and shall have no other rights, remedies or causes of action against the Debtor, the Liquidating Debtor or the Estate other than as set forth in this Plan.  From and after the Effective Date, and except as otherwise set forth in this Plan, all holders of Claims (including persons or entities that could have filed a Claim) and Partnership Interests shall be precluded from asserting against the Trustee, the Plan Administrator, or against

39

any property of the Estate or of the Liquidating Debtor, any Claim based upon any act or omission, transaction or other activity of any kind or nature in connection with this Chapter 11 Case which occurred prior to the Effective Date.  Notwithstanding the foregoing, nothing contained herein shall relieve the Trustee or the Plan Administrator from liability for willful misconduct, *ultra vires* acts, gross negligence or breach of fiduciary duty.

14.2.    <u>Time of the Essence</u>.  Time is of the essence with respect to all dates and deadlines set forth herein (whether or not specifically so indicated), including without limitation the deadline for confirmation of this Plan, and the deadline for the occurrence of the Effective Date.

14.3.    <u>Notices</u>.  Except as otherwise specifically set forth in this Plan, any notice, request or demand given or made under this Plan or under the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or as may be required by the United States Trustee shall (a) be in writing, (b) need only be hand delivered or sent by a reputable overnight courier service, and (c) be deemed given when received at the addresses set forth below.

*If to the United States Trustee*:

> Office of the United States Trustee
> 201 Varick Street, Suite 1006
> New York, NY   10014
> Attn.:  Andrea B. Schwartz, Esq.
> Email:  Andrea.B.Schwartz@usdoj.gov

*If to the Trustee and/or the Plan Administrator:*

> Jonathan L. Flaxer
> c/o Golenbock Eiseman Assor Bell & Peskoe LLP
> 711 Third Avenue, 17th Floor
> New York, New York 10017
> Email:  jflaxer@golenbock.com

> With a copy to:

> Golenbock Eiseman Assor Bell & Peskoe LLP
> 711 Third Avenue, 17th Floor
> New York, New York 10017
> Attn.:  Michael S. Weinstein, Esq.
> Email:  mweinstein@golenbock.com

*If to Counsel Financial:*

3601532.5

Counsel Financial II LLC
6400 Main Street, Suite 120
Williamsville, New York 14221
Attn: Paul Cody, CEO
Email: pcody@counselfinancial.com

With a copy to:

Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, New York 10158
Attn.: Robert L. Rattet
Email: rlr@dhclegal.com

14.4.    <u>No Additional Notice</u>.  Except as otherwise specifically set forth in this Plan, no person or entity shall be entitled to notice of any act, request or demand given or made under this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or as may be required by the United States Trustee other than (a) those set forth in Paragraph 14.3 of this Plan, and (b) those persons or entities who request notice in writing by providing such request to each of the parties set forth in Paragraph 14.3 of this Plan on or prior to the Effective Date.

14.5.    <u>Headings; Entire Plan</u>.

(A)    The headings of the articles, paragraphs and sub-paragraphs of this Plan are inserted for convenience only and shall not affect the interpretation hereof.

(B)    This Plan, including any schedules, exhibits and other attachments hereto, shall constitute the entire Plan.

14.6.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed in accordance with the laws of the State of New York.

14.7.    <u>Jury Trial</u>.  The holder of a Claim that accepts any distribution of property under this Plan shall be deemed to have waived such holder's right(s) to a trial by jury on account of any claim, demand, debt, right, cause of action or liability, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen then existing or thereafter arising in law or in equity based in whole or in part on any act or omission transaction, event or other occurrence

in any way relating to the Plan, the Debtor, the Liquidating Debtor, the Trustee and/or their respective professionals, officers, members, managers, agents and/or affiliates. Nothing contained in this Plan shall be deemed in any way to limit, restrict or foreclose the abilities and/or rights of the Plan Administrator to request a trial by jury, which abilities and/or rights are expressly preserved.

14.8.    <u>Award of Attorneys' Fees and Expenses; Posting a Bond</u>.  In the event that (x) Plan Administrator is forced to defend against a claim raised by the holder of a Claim (whether Disputed or Allowed) or an affiliate of the holder of a Claim, (y) the Plan Administrator prevails, and (z) the assets available for distribution to holders of Allowed Claims under this Plan are diminished thereby, then in such instance, the Court may award to the Plan Administrator its reasonable attorneys' fees and expenses.  At any time after a claim is asserted against the Plan Administrator, the Plan Administrator may (a) request that the Court require that the holder of such Claim or its affiliate, as the case may be, post a bond to secure the payment of such reasonable attorneys' fees and expenses, and withhold any distribution that would otherwise be made under this Plan to the holder of such Claim if such Claim is or becomes an Allowed Claim.

14.9.    <u>Non-Material Modifications</u>.  Non-material modifications to this Plan may be made on notice to those parties identified in Paragraph 14.3 of this Plan, and upon entry of an order of the Court approving such non-material modification(s).

14.10.    <u>Cram-Down</u>.  In the event that either Class 1 or 3 does not vote to accept this Plan, the Plan constitutes a request that it be approved pursuant to section 1129(b) of the Bankruptcy Code.

14.11.    <u>Controlling Documents</u>.  In the event and to the extent that any provision of the Plan is inconsistent with any provision of the Disclosure Statement, the provisions of this Plan shall control and take precedence.  In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of this Plan, the provisions of the Confirmation Order shall control and take precedence.

14.12.    <u>Quarterly Trustee Fees</u>.  The Debtor shall pay all Quarterly Trustee Fees, plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments

and disbursements in and outside the ordinary course of the Debtor's business, until the Chapter 11 Case is closed.

14.13.  <u>Injunction</u>.  Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or Entities, together with their respective present and former employees, agents, officers, directors, principals and affiliates, who have held, hold or may hold Claims against or Partnership Interests in the Debtor are permanently enjoined, from and after the Effective Date, from (i) pursuing any and all such Claims and/or any and all rights and/or remedies arising under or relating to Partnership Interests (other than the rights of such Persons and Entities to enforce this Plan, and such other contracts, instruments, releases and other agreements or documents delivered hereunder, if any, first arising thereunder after the Effective Date), known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any actual or alleged act, omission, transaction, event, or other occurrences taking place on or prior to the Effective Date (collectively, the "<u>Enjoined Claims</u>"), (ii) commencing or continuing in any manner any action or other proceeding of any kind based on any Enjoined Claim against any of the Debtor, the Estate, the Plan Administrator or the Liquidating Debtor, (iii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, decree or other award against any of the Debtor, the Plan Administrator or the Liquidating Debtor, (iv) creating, perfecting or enforcing any encumbrance of any kind against any of the Debtor, the Estate, the Plan Administrator or the Liquidating Debtor or against the property or interests in property of any of the foregoing based on any Enjoined Claim, or (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due or owing to the Debtor or against the property or interests in property of any of the Debtor, the Estate or the Liquidating Debtor based on any Enjoined Claim; <u>provided</u>, <u>however</u>, that this provision shall not impact or affect the rights and powers of any governmental entity or agency exercising its police or regulatory power or the rights of Counsel Financial from exercising its rights or pursuing any claims against the Debtor's current and former partners.  For the avoidance of doubt, this provision shall not impair or affect the right of any Person or Entity to assert an Enjoined Claim in a defensive manner to offset, recoup or otherwise limit the recovery of any affirmative claims asserted against such Person or Entity (including affirmative claims asserted by or on behalf of the Estate and any claims assigned by the Estate pursuant to this Plan).

43

14.14.  <u>Trustee Exculpation</u>.    Neither the Trustee nor any of the Professional Persons retained by him, shall have or incur any liability whatsoever, in any form, to the Estate, the Liquidating Debtor or any Persons or Entities, together with their respective present and former employees, agents, officers, directors, principals and affiliates who have held, hold or may hold Claims against or Partnership Interests in the Debtor, for any act or omission in connection with or arising out of the involvement of any of them in the conduct of the Chapter 11 Case, including the type or value of distributions, if any, reserved under the Plan for holders of Claims, the solicitation of votes for acceptance or rejection of the Plan, the pursuit of confirmation and consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, other than acts or omissions found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to constitute willful misconduct, gross negligence, *ultra vires* acts, or breach of fiduciary duty by such person or entity.  Nothing in this Plan shall limit the liability of the lawyers to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

14.15.  <u>Compromise and Settlement of Allowed Counsel Financial Claims</u>    Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration of the contributions, payments, distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of the claims of Counsel Financial against the Estate, and the Plan constitutes a request for the Court to authorize and approve such compromise and settlement (the "<u>Settlement</u>").  Distributions to be made pursuant to the Plan shall be made on account of and in consideration of the Settlement.   Entry of the Confirmation Order shall constitute the Court's approval, as of the Effective Date of the Plan, of all components of the Settlement and the Court's finding that the Settlement is in the best interests of the Debtor and the Estate, and the holders of Claims and interests, and is fair, equitable and reasonable.

14.16.  <u>Assignment of Partner Claims</u>.   On the Effective Date, the Partner Claims shall be assigned by the Trustee, on behalf of the Estate, to Counsel Financial, and the Liquidating Debtor shall have no further interest in any recovery from the Partner Claims.

3601532.5

14.17.  <u>Insurance Policy</u>.  The Trustee, on behalf of the Debtor and the Estate, reaffirms that the Estate has no property or other interest in the life insurance policy issued by Principal Life Insurance Company and owned by Counsel Financial with respect to Jeffrey L. Liddle.

14.18.  Releases.   By voting for this Plan, or in the case of the Trustee by proposing this Plan, as of the Effective Date, (i) the Trustee, on behalf of the Debtor and its Estate, shall be deemed to release the Counsel Financial Released Parties, and (ii) Counsel Financial shall be deemed to have released the Trustee Released Parties, from and against any and all actions, cause of actions, suits, debts, dues, sums of money, accounts, demands, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, claims, demands or remedies whatsoever, known or unknown, in law or equity, which any of them ever had, now have or hereafter can, shall or may have for, upon, arising from, connected with or related to the Debtor that arose from the beginning of time to the Effective Date.  For the avoidance of doubt, (x) nothing contained in the Plan shall affect any rights, interests, or claims of Counsel Financial as against any parties other than the Trustee Released Parties, including, but not limited to, partners or former partners of the Debtor.

ARTICLE XV.
RETENTION OF JURISDICTION

15.1.  <u>Court Exclusive Jurisdiction</u>.  The Court shall retain jurisdiction over all matters arising out of or relating to the Chapter 11 Case and the Plan pursuant to sections 105, 1127 and 1142(b) of the Bankruptcy Code and Bankruptcy Rule 3020(d) for, *inter alia*, the following specific purposes:

(a)  to consider any modification of this Plan under section 1127 of the Bankruptcy Code;

(b)  to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of this Plan or the Confirmation Order;

(c)  to enforce the reservation of exclusive jurisdiction over the Plan Administrator and the injunction against the filing of any claim against the

3601532.5

Plan Administrator absent approval by the Court, and thus to consider and rule on any requests for the authority to file such claims;

(d)    to enter and implement such orders as may be necessary or appropriate to carry out the provisions of this Plan or in the event that the Confirmation Order is stayed, reversed, revoked or vacated for any reason;

(e)    to hear and determine all applications for the payment of Administrative Claims, whether filed pursuant to section 330 of the Bankruptcy Code or otherwise;

(f)    to hear and determine all objections to Claims, objections to requests or applications for payment of Administrative Claims, adversary proceedings, controversies, suits and disputes that may be pending as of the Confirmation Date or commenced subsequent to the Confirmation Date;

(g)    to determine or approve the compromise or settlement of any Claim or cause of action against the Debtor;

(h)    to hear and determine any estimation proceedings commenced by the Plan Administrator under section 502© of the Bankruptcy Code;

(i)    to hear and determine the Plan Administrator's requests pursuant to Bankruptcy Rule 2004, including, without limitation, compelling the attendance of any person or entity to be examined, and the production of documents in accordance therewith;

(j)    to hear and determine all matters concerning state, local and federal taxes in accordance with sections 106, 505, 1141 and 1146 of the Bankruptcy Code;

(k)    to correct any defect, cure any omission or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of this Plan;

46

(l)     to hear and determine any disputes related to the fees and expenses of the professionals retained by the Plan Administrator, if any;

(m)     to appoint a successor to the Plan Administrator, if any;

(n)     to consider and act on matters pertaining to the sale, distribution, transfer, liquidation, assignment, repayment or other disposition of any Property of the Estate, the Debtor and/or the Liquidating Debtor;

(o)     to consider and act on such other matters as are consistent with this Plan;

(p)     to determine any and all applications, adversary proceedings or contested matters pending on the Confirmation Date, or commenced thereafter, and arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case; and

(q)     to enter a final decree closing the Chapter 11 Case under Bankruptcy Rule 3022.

## ARTICLE XVI.
## RESERVATION OF RIGHTS

The filing of this Plan, including any statement or provision contained in this Plan or in any disclosure statement proposed or filed with respect to this Plan, and the taking by the Trustee of any action with respect to this Plan shall not (a) be or be deemed to be an admission against interest, or (b) until after the occurrence of the Effective Date, be or be deemed to be a waiver of any rights. In the event that this Plan is not confirmed or that the Effective Date does not occur, the rights of all parties in interest in the Chapter 11 Case shall be fully reserved. In such event and under such circumstance, neither this Plan, nor any statement contained herein nor in any disclosure statement proposed or filed in connection herewith, may be used in any suit, action, proceeding or controversy in the Chapter 11 Case or otherwise.

47

3601532.5

Dated: New York, New York
       January 12, 2021

Respectfully submitted,

**JONATHAN L. FLAXER, solely in his capacity as chapter 11 trustee for Liddle & Robinson,  L.L.P.**

By: /s/ Jonathan L. Flaxer

Dated: New York, New York
       January 12, 2021

GOLENBOCK EISEMAN ASSOR BELL
  & PESKOE LLP
Counsel for Jonathan L. Flaxer, chapter 11
trustee for Liddle & Robinson, L.L.P.
711 Third Avenue
New York, NY 10017
(212) 907-7300

By: /s/ Michael S. Weinstein
     Michael S. Weinstein, Esq.

48

3601532.5

## EXHIBIT A

## <u>Acknowledgement and Agreement of Plan Administrator</u>

(See Section 8.1 of the Plan)

3601532.5

Acknowledgement and Agreement of
Plan Administrator

Reference is made to the Chapter 11 Trustee's First Amended Plan of Liquidation for Liddle & Robinson, L.L.P., dated January 12, 2021 (as such Plan may be amended, supplemented, modified and in effect from time to time, the "**Plan**"). Capitalized terms used but not defined herein shall have the meaning given in the Plan.

In accordance with Section 8.1 of the Plan, Jonathan L. Flaxer hereby (i) acknowledges that he has read the Plan, and (ii) from and after the Effective Date, accepts his appointment as Plan Administrator pursuant to the Plan, and in such capacity, agrees to perform the duties and obligations imposed upon him by the Plan, the Confirmation Order, and any other order entered by the Court concerning the Plan.

This instrument has been duly executed and delivered by Jonathan L. Flaxer and is the valid and binding obligation of Jonathan L. Flaxer, enforceable against him in accordance with its terms.

Acknowledged and agreed
this _____ day of February, 2021

_____
Jonathan L. Flaxer

3601532.5